**No. 22-56199**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YUGA LABS, INC.,

*Plaintiff-Appellee*,

*v.*

RYDER RIPPS, JEREMY CAHEN,

*Defendants-Appellants*,

and

DOES 1–10.

*Defendants*.

On Appeal from the United States District Court
for the Central District of California, No. 2:22-cv-04355 (Walter, J.)

**APPELLANTS RYDER RIPPS AND JEREMY CAHEN'S
REPLY IN SUPPORT OF MOTION FOR JUDICIAL NOTICE**

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
(650) 858-6062

HENRY M. NIKOGOSYAN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
(213) 443-5316

LOUIS W. TOMPROS
ANDREW P. MELENDEZ
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6886

ANDREW K. WAKS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6297

March 10, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT .......................................................................................................... 2

I. YUGA'S BROAD ARGUMENTS FOR WHY JUDICIAL NOTICE IS IMPROPER SHOULD BE REJECTED ................................................... 2

II. YUGA'S DOCUMENT-SPECIFIC ARGUMENTS SHOULD ALSO BE REJECTED ............................................................................................ 4

    A. This Court Should Take Judicial Notice Of Mr. Ripps's Website And Social Media ................................................... 4

    B. This Court Should Take Judicial Notice Of The Appearance Of Certain Bored Ape Cartoons ............................... 7

    C. This Court Should Take Judicial Notice Of Certain News Publications And Other Relevant Reporting ......................... 8

    D. This Court Should take Judicial Notice Of The Congressional Research Service Report On NFTs ................... 10

CONCLUSION ..................................................................................................... 11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Castillo-Villagra v. INS*, 972 F.2d 1017 (9th Cir. 1992) ............................................ 7

*Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149 (9th Cir. 1986) ............................. 9

*Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997 (N.D. Cal. 2012) ........................................................................... 8

*Gallinger v. Becerra*, 898 F.3d 1012 (9th Cir. 2018) .................................................. 9

*Garcia v. Salvation Army*, 918 F.3d 997 (9th Cir. 2019) ......................................... 3

*Genasys Inc. v. Vector Acoustics, LLC*, 2022 WL 16577872 (S.D. Cal. Nov. 1, 2022) ........................................................................................................ 5

*Harris v. Foulk*, 591 F. App'x 551 (9th Cir. 2015) ..................................................... 9

*Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275 (C.D. Cal. Sept. 30, 2016) ..................................................................................................... 7

*Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633 (N.D. Cal. 2020) .................................. 7

*In re MacBook Keyboard Litigation*, 2019 WL 6465285 (N.D. Cal. Dec. 2, 2019) ........................................................................................................... 5

*Johnson v. Ashley Furniture Industries, Inc.*, 2014 WL 6892173 (S.D. Cal. Nov. 4, 2014) ................................................................................... 10

*Juliana v. United States*, 2018 WL 9802138 (D. Or. Oct. 15, 2018) ...................... 10

*Khoja v. Orexigen Therapeutics*, 899 F.3d 988 (9th Cir. 2018) ...................... 1, 2, 3

*Koenig v. USA Hockey, Inc.*, 2010 WL 4783042 (S.D. Ohio June 14, 2010) ........... 5

*Organic Cannabis Foundation, LLC v. Commissioner of Internal Revenue*, 962 F.3d 1082 (9th Cir. 2020) ....................................................... 11

*Orloff v. Cleland*, 708 F.2d 372 (9th Cir. 1983) ...................................................... 10

*Ritter v. Hughes Aircraft Co.*, 58 F.3d 454 (9th Cir. 1995) ...................................... 9

*Trigueros v. Adams*, 658 F.3d 983 (9th Cir. 2011)....................................................1, 2

*United States ex rel. RBC Four Co., LLC v. Walt Disney Co.*, 2013
    WL 12131741 (C.D. Cal. Aug. 9, 2013) ......................................................10

*United States v. Castro*, 887 F.2d 988 (9th Cir. 1989) ............................................6, 9

*United States v. Esquivel*, 88 F.3d 722 (9th Cir. 1996) ..........................................1, 3

*Valdivia v. Schwarzenegger*, 599 F.3d 984 (9th Cir. 2010) .......................................8

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954
    (9th Cir. 2010) ....................................................................................................8

*Woodside Investments, Inc. v. Complete Business Solutions Group,
    Inc.*, 2020 WL 869206 (E.D. Cal. Feb. 21, 2020) ........................................4, 5

## STATUTES, RULES, AND REGULATIONS

Fed. R. Evid.
    201 .......................................................................................................2, 3, 11
    902(6)..........................................................................................................10

## OTHER AUTHORITIES

21B Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 5110.1 (2d ed. 2022 Update).......................................................2

Appellants agree with Yuga that this Court should, as a general matter, "'review the decision below on the basis of the record that was before the district court.'" Opp. 2. As Appellants have explained—and Yuga does not dispute—every document at issue in this motion (with the exception of one offered solely for helpful background on a new kind of technology) was presented to the district court. Mot. 1-2. While the court did not take judicial notice of those documents, Federal Rule of Evidence 201(d) is express that such notice may be taken "at any stage of the proceeding." This Court has even gone a step further than the fact pattern here and has taken judicial notice of documents that were not presented to the district court in any form. *See, e.g.*, *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011); *United States v. Esquivel*, 88 F.3d 722, 726-727 (9th Cir. 1996). Indeed, despite Yuga's blustery assertion that Appellants' motion should "be rejected out of hand," Opp. 2, it does not identify a single case from any jurisdiction that has denied a request under comparable circumstances.

The remainder of Yuga's arguments fare no better. For example, Yuga contends that whether this Court takes judicial notice is irrelevant to the second step of the anti-SLAPP inquiry (which is the equivalent of a Rule 12(b)(6) analysis) because "'district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint outside Rule 12(b)(6).'" Opp. 3 (quoting *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018)). But

- 1 -

Yuga leaves out that the *Khoja* Court stated in the very next breath that "judicial notice under Federal Rule of Evidence 201" is an "exception[] to this rule." *Id*. And Yuga's document-specific arguments largely ignore Appellants' request that this Court take notice of the exhibits only for narrow purposes that have already been approved by either this Court or the district courts within it.

Appellants' motion for judicial notice should be granted.

## ARGUMENT

### I. YUGA'S BROAD ARGUMENTS FOR WHY JUDICIAL NOTICE IS IMPROPER SHOULD BE REJECTED

Yuga (unpersuasively) argues that this Court should deny judicial notice for two overarching reasons.

*First*, Yuga contends that Appellants' motion is improper because Appellants "did not ask the district court to take judicial notice of the proffered materials." Opp. 2. But "[j]udicial notice [may be taken] at any stage of the proceeding." Fed. R. Evid. 201(d). Accordingly, "[a]n appellate court can take judicial notice of a fact even though the trial court did not notice the fact." 21B Wright & Miller, Federal Practice and Procedure § 5110.1 (2d ed. 2022 Update). And, as noted above, this Court has gone one step further than the facts of this case and taken notice even of documents that were not presented to the district court. *Trigueros*, 658 F.3d at 987 (state-court habeas records); *Esquivel*, 88 F.3d at 726-

727 (9th Cir. 1996) (census data); *see also supra* p. 1.¹ The sole item here that was not presented to the district court—the CRS Report—is offered "purely for background purposes," making the facts therein a proper subject for judicial notice, even though they are not drawn "from the record" in the district court. *Garcia v. Salvation Army*, 918 F.3d 997, 1001 n.1 (9th Cir. 2019).

*Second*, Yuga argues that judicial notice is improper because the underlying materials are irrelevant. Opp. 2-3. Not so. As Appellants explained (Mot. 2), the materials are relevant to the second step of the anti-SLAPP analysis, which—as Yuga acknowledges—requires the district court to "'apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.'" Opp. 2-3. While that analysis generally focuses on the allegations of the pleadings, Yuga's own case law makes clear that judicially noticeable materials can also be considered. *See Khoja*, 899 F.3d at 998.

Yuga relatedly suggests that Appellants are improperly seeking to challenge the district court's 12(b)(6) ruling (as opposed to discussing the second step of the anti-SLAPP analysis). Opp. 2. Not so. That aspect of the court's decision is not at issue on appeal. Appellants' Br. 17 n.6. Appellants' brief is focused exclusively

---

¹ Yuga provides no explanation for why it matters that Appellants did not expressly seek judicial notice. Because the materials were in the district court record, the court had discretion to take notice regardless of whether it was asked to do so. *See* Fed. R. Evid. 201(c)(1) ("The court … may take judicial notice on its own.").

on anti-SLAPP steps 1 and 2, referencing the district court's separate 12(b)(6) ruling only to explain why it should not govern this Court's ruling at anti-SLAPP step 2. *See, e.g.*, *id.* 17 n.6, 28, 37.

## II. YUGA'S DOCUMENT-SPECIFIC ARGUMENTS SHOULD ALSO BE REJECTED

### A. This Court Should Take Judicial Notice Of Mr. Ripps's Website And Social Media

As explained, a court may take judicial notice that a moving party's own "'website exists and makes certain representations … to the public,'" even without "assum[ing] the veracity of any of the representations the website contains." Mot. 3 (quoting *Woodside Invs., Inc. v. Complete Bus. Sols. Grp., Inc.*, 2020 WL 869206, at *2 (E.D. Cal. Feb. 21, 2020).[2] Here, Appellants ask this Court to consider the documents to show what they told purchasers about the purpose and origin of the RR/BAYC NFTs, which is a proper use of the judicial notice. *See* Mot. 3-4. Yuga's arguments in response are unavailing.

*First*, Yuga cites a number of cases for the proposition that "the contents of websites and social media posts" are generally not judicially noticeable. Opp. 5. But Yuga does not cite a single case from this Court, and the decisions it does rely

---

[2] Yuga argues that *Woodside* should be disregarded because the request for judicial notice in that case was unopposed. Opp. 6 n.4. But nothing in the decision suggests that the lack of opposition made any difference to the ultimate outcome— the Court still conducted a full Rule 201 analysis. *See Woodside Invs.*, 2020 WL 869206, at *1-2.

on address a moving party's request for the court to adopt as true statements made on a party's website. Here, in contrast, Appellants merely ask this Court to "take notice of the existence" of those websites and the "representations made on" them, Mot. 3, a request district courts in the Ninth Circuit routinely grant. *See, e.g.*, *Woodside Invs.*, 2020 WL 869206, at *2; *Genasys Inc. v. Vector Acoustics, LLC*, 2022 WL 16577872, at *5 (S.D. Cal. Nov. 1, 2022) (a court may "judicially notice[] a party's website" to establish "'that the website exists and makes certain representations … to the public'"); *In re MacBook Keyboard Litig.*, 2019 WL 6465285, at *6 (N.D. Cal. Dec. 2, 2019) (taking judicial notice of a party's "webpages" and its "representations to the public on those webpages"). Indeed, Yuga's own case law makes clear that a request for judicial notice is proper where it "involve[s] taking judicial notice not of the content of information appearing on the defendant's website, but simply the fact that the defendant ha[s] made the statements at issue." *Koenig v. USA Hockey, Inc.*, 2010 WL 4783042, at *3 (S.D. Ohio June 14, 2010), *cited in* Opp. 5 n.3.

*Second*, Yuga appears to suggest that Appellants *are* asking this Court to consider the underlying documents for their truth. Opp. 5-6. In reality, Appellants ask the Court to consider the underlying documents only to show what representations they made to the public. To be sure, those public representations bear, in turn, on whether purchasers would have understood the expressive content

- 5 -

of the RR/BAYC NFTs or been misled as to their origin. But there is a vital difference between observing *what* a party has said and accepting that party's statements as true—even when a court is asked to draw further inferences from the fact that a statement was made. *See United States v. Castro*, 887 F.2d 988, 1000 (9th Cir. 1989) (explaining the difference between evidence "introduced for the truth of [its] contents" and evidence "introduced to show what information was available" to others at a given time).

*Third*, Yuga complains that the documents should not be admitted because they are "hearsay and prejudicial to Yuga Labs, and were not properly authenticated." Opp. 6. Yuga, however, has failed to explain the basis for these objections—either in its opposition or in the (improper) district court filing the opposition cross-references. *See id.*.[3] In any event, such objections are better suited to the introduction of evidence at summary judgment or trial, not to a request for judicial notice—which is, after all, "a way to establish the existence of facts *without* evidence." *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir.

---

[3] As Appellants explained below, Yuga's 51-page list of "objections" was inappropriate. The district court's local rules and Standing Order limit oppositions to motions to 25 pages. *See* Dist. Ct. Dkt. 58 at 11. Yuga impermissibly attempted to circumvent that restriction by filing both a 25-page opposition brief and the "objections" document, which included both evidentiary objections and additional substantive arguments supplementing those in its brief. *E.g.*, Dkt. 54 at 1-4 (argument regarding the origins of the Yuga's name, art, and logo). Tellingly, the district court did not credit—or even address—any of Yuga's objections. ER 4-14.

1992) (emphasis added); *see also Hsu v. Puma Biotech., Inc.*, 213 F. Supp. 3d 1275, 1280 (C.D. Cal. Sept. 30, 2016) (explaining that "judicial notice lets a party skip … authentication … for certain facts").

### B. This Court Should Take Judicial Notice Of The Appearance Of Certain Bored Ape Cartoons

As explained, a court may take judicial notice of "'publicly accessible websites whose accuracy and authenticity is not subject to dispute.'" Mot. 4 (quoting *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 648 n.4 (N.D. Cal. 2020)). This Court may therefore take judicial notice of the appearance of the two Bored Ape cartoons reproduced in Appellants' screenshots from the OpenSea marketplace.

In response, Yuga argues only that the documents "were not properly authenticated at the district court." Opp. 6. But Yuga does not appear to contest the accuracy or authenticity of the only aspects of the documents that Appellants have asked this Court to take notice of—i.e., the two cartoon images. Under the circumstances, formal "authentication" is unnecessary for "judicial notice [to be] possible," at least where—as here—the party opposing notice has "never

challenged the[] authenticity" of the materials at issue. *Valdivia v. Schwarzenegger*, 599 F.3d 984, 994 (9th Cir. 2010).[4]

### C. This Court Should Take Judicial Notice Of Certain News Publications And Other Relevant Reporting

As explained, the Court may take judicial notice of online news articles that recount facts "not reasonably subject to dispute," *Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012), or that are "introduced to 'indicate what was in the public realm at the time'" of their publication, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). The news articles and other public reporting that Appellants ask this Court to judicially notice all fall into one of those two categories. *See* Mot. 5-8.

In response, Yuga contends—again without explanation—that the articles are inherently not "generally known nor unquestionably accurate." Opp. 7. To the contrary, courts frequently take judicial notice of articles to "'indicate what was in the public realm at the time'" of an article's publication. *Von Saher*, 592 F.3d at 960. That is all that Appellants ask for the five documents listed on page 7 of their motion. Yuga's related suggestion (at 7), that those articles are impermissible

---

[4] Yuga cites again to its objections filed with the district court, Opp. 6, but even if those objections were proper, they targeted the exhibits as a whole—they said nothing about the two specific *images* on which Appellants have sought notice.

- 8 -

hearsay fails for the same basic reason. Appellants are not offering them for their truth, but simply to establish the public's awareness of certain issues—a quintessential example of information that falls outside of the hearsay rule. *See Castro*, 887 F.2d at 1000.

The same basic analysis applies to the news articles listed on pages 5-6 of Appellants' motion. There is no blanket rule against taking notice of newspaper articles so long as they satisfy the normal Rule 201 standard. *See Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458-459 (9th Cir. 1995). Here, Appellants have asked this Court to take judicial notice of a discrete set of facts reflected in the news articles, none of which Yuga has actually disputed—i.e., some basic information about Mr. Ripps's prior conceptual art, a handful of uncontested facts about alt-right groups, and the appearance of Mr. Ripps's RR/BAYC logo. *See* Mot. 5-6. And again, courts routinely take judicial notice of such newspaper articles. *See Ritter*, 58 F.3d at 458-459; *Gallinger v. Becerra*, 898 F.3d 1012, 1020 (9th Cir. 2018) (taking judicial notice of "newspaper articles" to assess legislative intent); *Harris v. Foulk*, 591 F. App'x 551, 552 n.1 (9th Cir. 2015) (granting "motion for judicial notice of certain newspaper articles"); *Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1152 n.3 (9th Cir. 1986) (taking "judicial notice" of facts contained in "several articles" in "major newspapers").

Yuga also objects, once again, that these materials have not been adequately authenticated. But, as before, Yuga does not contest the accuracy of the materials at issue, and points to no case law holding that whether a document is adequately authenticated is dispositive as to the judicial notice question. In any event, "[n]ewspaper articles are self-authenticating." *Orloff v. Cleland*, 708 F.2d 372, 378 n.6 (9th Cir. 1983) (citing Fed. R. Evid. 902(6)).

### D. This Court Should take Judicial Notice Of The Congressional Research Service Report On NFTs

Finally, Appellants asked this Court to take judicial notice of a Congressional Research Service Report on NFTs. Mot. 8-9. While Yuga argues that such a report is not appropriate for judicial notice, Opp. 7-8, it does not cite a single case supporting its position. In fact, Yuga simply ignores that district courts routinely take notice of such reports. *See* Mot. 8-9 (citing *Juliana v. United States*, 2018 WL 9802138, *2 (D. Or. Oct. 15, 2018)); *see also, e.g.*, *Johnson v. Ashley Furniture Indus., Inc.*, 2014 WL 6892173, at *1 (S.D. Cal. Nov. 4, 2014); *United States ex rel. RBC Four Co., LLC v. Walt Disney Co.*, 2013 WL 12131741, at *3 n.4 (C.D. Cal. Aug. 9, 2013).

To the extent that Yuga's objection is that Appellants failed to specify which aspects of the CRS report this Court should take notice of, Appellants' opening brief does so. Appellants' Br. 5. For avoidance of doubt, Appellants ask this Court to consider only pages 1-4 of the report and within those pages, only the

specific facts recited on page 5 of their brief—i.e., the definition of an NFT, what "ownership" means in the context of NFTs, and what makes NFTs non-fungible. *Id.* Appellants respectfully submit that such information could be useful to this Court in resolving a dispute that turns in significant part on the nature and function of NFTs. The Court may therefore take judicial notice of that "official information," which is "posted on a government website" and "is 'not subject to reasonable dispute.'" *Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*, 962 F.3d 1082, 1096 (9th Cir. 2020) (quoting Fed. R. Evid. 201(b)).

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that this Court grant their motion for judicial notice.

Respectfully submitted,

/s/ Louis W. Tompros

| | |
|---|---|
| THOMAS G. SPRANKLING<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>2600 El Camino Real<br>Suite 400<br>Palo Alto, CA 94306<br>(650) 858-6062 | LOUIS W. TOMPROS<br>ANDREW P. MELENDEZ<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>(617) 526-6886 |
| HENRY M. NIKOGOSYAN<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>350 South Grand Avenue | ANDREW K. WAKS<br>WILMER CUTLER PICKERING<br>   HALE AND DORR LLP<br>2100 Pennsylvania Avenue NW |

- 12 -

Suite 2400  
Los Angeles, CA 90071  
(213) 443-5316

Washington, DC 20006  
(202) 663-6297

March 10, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(c)(1), the undersigned hereby certifies that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A).

1. Exclusive of the exempted portions of the motion, as provided in Fed. R. App. P. 27(a)(2)(B), the motion contains 2,597 words.

2. The motion has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14 point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Louis W. Tompros  
LOUIS W. TOMPROS

March 10, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Louis W. Tompros
LOUIS W. TOMPROS