*No. 22-56199*

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

YUGA LABS, INC.,

*Plaintiff-Appellee,*

v.

RYDER RIPPS, JEREMY CAHEN,

*Defendants-Appellants,*

*and*

DOES 1-10,

*Defendant.*

---

**On Appeal from the United States District Court
for the Central District of California, No. 2:22-cv-04355 (Walter, J.)**

---

**RESPONSE BRIEF OF PLAINTIFF-APPELLEE
YUGA LABS, INC.**

---

ERIC BALL
KIMBERLY CULP
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
650.988.8500

*Attorneys for Plaintiff-Appellee
Yuga Labs, Inc.*

TODD R. GREGORIAN
ETHAN M. THOMAS
MARY MORNAY GRIFFIN
RINA PLOTKIN
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
415.875.2300

## CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1 of the Federal Rules of Appellate Procedure, Plaintiff-Appellee Yuga Labs, Inc. certifies that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.

April 20, 2023                                      FENWICK & WEST LLP


*/s/ Todd R. Gregorian*
Todd R. Gregorian

*Attorneys for Plaintiff-Appellee*
*Yuga Labs, Inc.*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...............................................................iv

INTRODUCTION .........................................................................1

JURISDICTIONAL STATEMENT ...........................................................4

STATEMENT OF THE ISSUES...............................................................5

PERTINENT STATUTORY PROVISIONS ...................................................5

STATEMENT OF THE CASE ...............................................................6

    I.    Yuga Labs and The Bored Ape Yacht Club..........................................6

    II.    NFTS are Subject to the Same Risk of Counterfeiting as Traditional Physical Goods .......................................................8

    III.    Defendants' Commercial Exploitation of Yuga Labs' Marks .............9

    IV.    Yuga Labs' Lawsuit and The District Court's Denial of Defendants' anti-SLAPP Motion .......................................................16

SUMMARY OF THE ARGUMENT ...........................................................20

STANDARD OF REVIEW ...................................................................21

ARGUMENT ................................................................................21

    I.    Defendants Failed to Demonstrate That Yuga Labs' Claims Arise From Protected Statements or Conduct in Furtherance of Free Speech .......................................................................22

        A.    Defendants' unauthorized use of Yuga Labs' marks in the sale of counterfeit NFTs is not protected speech...............24

        B.    Yuga Labs' claims do not arise from Ripps' public statements defaming the company. ..........................................28

C. Defendants cannot invoke anti-SLAPP protection by alleging that Yuga Labs' claims are retaliatory or pretextual. ................................................................... 32

D. Yuga Labs' claims based on false comparative advertising are exempt from the anti-SLAPP statute. .............. 33

II. The Complaint Stated Legally Sufficient Claims Based on Defendants' Trademark Infringement ................................... 35

A. Yuga Labs sufficiently pled its claims for trademark infringement, unfair competition, and false advertising. .......... 37

1. The *Rogers* test does not apply to Defendants' commercial use of the marks. ......................................... 38

a. The counterfeit NFTs are not expressive. ............ 39

b. Defendants' use of the marks is not artistically relevant. .............................................. 41

c. Defendants' use of the marks was explicitly misleading. ........................................................ 41

2. Defendants failed to establish nominative fair use on the pleadings. .......................................................... 43

B. Yuga Labs sufficiently pled its remaining state law claims. ...................................................................... 47

CONCLUSION .......................................................................... 53

STATEMENT OF RELATED CASES ................................................ 54

CERTIFICATE OF COMPLIANCE ................................................... 55

ADDENDUM OF PERTINENT STATUTORY PROVISIONS ........................... 56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2TheMart.com Secs. Litig.*,
 114 F. Supp. 2d 955 (C.D. Cal. 2000) ..............................................................30

*Applied Underwriters v. Lichtenegger*,
 913 F.3d 884 (9th Cir. 2019) ..............................................................45

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
 457 F.3d 1062 (9th Cir. 2006) ..............................................................43

*Baral v. Schnitt*,
 1 Cal. 5th 376 (2016) ..............................................................23

*Batzel v. Smith*,
 333 F.3d 1018 (9th Cir. 2003) ..............................................................4

*Bel Air Internet, LLC v. Morales*,
 20 Cal. App. 5th 924 (2018) ..............................................................29

*Bonni v. St. Joseph Health Sys.*,
 11 Cal. 5th 995 (2021) ..............................................................22, 23, 30

*Bosley Med. Inst., Inc. v. Kremer*,
 403 F.3d 672 (9th Cir. 2005) ..............................................................33

*Brother Records, Inc. v. Jardine*,
 318 F.3d 900 (9th Cir. 2003) ..............................................................44, 46

*Brown v. Elec. Arts, Inc.*,
 724 F.3d 1235 (9th Cir. 2013) ..............................................................37

*Burgert v. Lokelani Berice Pauahi Bishop Tr.*,
 200 F.3d 661 (9th Cir. 2000) ..............................................................6, 36

*Cariou v. Prince*,
 714 F.3d 694 (2d Cir. 2013) ..............................................................26

*City of Cotati v. Cashman*,
29 Cal. 4th 69 (2002) ...................................................................33, 35

*City of Dallas v. Stanglin*,
490 U.S. 19 (1989)................................................................................39

*Code Rebel v. Aqua Connect, Inc.*,
No. CV 13-4539, 2013 WL 5405706 (C.D. Cal. Sept. 24, 2013) .....................51

*Cohen v. California*,
403 U.S. 15 (1971)................................................................................27

*Collier v. Harris*,
240 Cal. App. 4th 41 (2015) ...............................................................36

*CRST Van Expedited, Inc. v. Werner Enter., Inc.*,
479 F.3d 1099 (9th Cir. 2007) ...........................................................48

*DC Comics v. Pac. Pictures Corp.*,
706 F.3d 1009 (9th Cir. 2013) ...........................................................21

*Dillon v. Legg*,
68 Cal.2d 728 (1968) ...........................................................................52

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
967 F.2d 1280 (9th Cir. 1992) ...........................................................43

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) ...................................................39, 46

*Edge v. City of Everrett*,
929 F.3d 657 (9th Cir. 2019) .............................................................27

*Equilon Enter. v. Consumer Cause Inc.*,
29 Cal. 4th 53 (2002) ..........................................................................33

*Feldman v. Arizona Sec'y of State's Off.*,
843 F.3d 366 (9th Cir. 2016) .............................................................27

*FilmOn.com Inc. v. DoubleVerify Inc.*,
7 Cal. 5th 133 (2019) ...................................................................25, 33

*Flatley v. Mauro*,
  39 Cal. 4th 299 (2006) ...................................................................22, 25

*Flo & Eddie, Inc. v. Pandora Media, LLC*,
  No. 20-56134, 2022 WL 1800780 (9th Cir. June 2, 2022) .................................4

*Forest Guardians v. U.S. Forest Serv.*,
  329 F.3d 1089 (9th Cir. 2003) ...................................................................33

*Gaynor v. Bulen*,
  19 Cal. App. 5th 864 (2018) ...................................................................30

*Gordon v. Draper Creative, Inc.*,
  909 F.3d 257 (9th Cir. 2018) ...........................................................*passim*

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
  742 F.3d 414 (9th Cir. 2014) ...................................................................35

*Harik v. Cal. Teachers Ass'n*,
  326 F.3d 1042 (9th Cir. 2003) ...................................................................51

*Hermes Int'l v. Rothschild*,
  —— F. Supp. 3d ——, No. 22-cv-384,
  2023 WL 1458126 (S.D.N.Y. Feb. 2, 2023) .........................................................6

*Hermes Int'l v. Rothschild*,
  603 F. Supp. 3d 98 (S.D.N.Y. May 18, 2022) ...................................................6

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010) ...................................................................4

*J'Aire Corp. v. Gregory*,
  24 Cal. 3d 799 (1979) ...................................................................52

*Jack Daniel's Props. v. VIP Prods.*
  No. 22-148 (argued Mar. 22, 2023) ...................................................................36

*Jordan-Benel v. Univ. City Studios, Inc.*,
  859 F.3d 1184 (9th Cir. 2017) ...........................................................21, 23

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...................................................................37

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ....................................................48

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003) ...........................................47

*Levi Strauss & Co. v. Shilon*,
121 F.3d 1309 (9th Cir. 1997) ...........................................24

*Makaeff v. Trump Univ. LLC*,
715 F.3d 254 (9th Cir. 2013) .............................................29

*Makaeff v. Trump Univ., LLC*,
736 F.3d 1180 (9th Cir. 2013)
(Watford, J., dissenting from denial of rehearing en banc) ...................................4

*Mattel Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) ........................................26, 44

*Mattel, Inc., v. MCA Records*,
296 F.3d 894 (9th Cir. 2002) .............................................39

*Meeker v. Meeker*,
No. C 02–00741, 2004 WL 2554452 (N.D. Cal. Nov. 10, 2004) .....................47

*Mindys Cosms., Inc. v. Dakar*,
611 F.3d 590 (9th Cir. 2010) ......................................21, 22, 48

*New Kids on the Block v. News Am. Pub., Inc.*,
971 F.2d 302 (9th Cir. 1992) ........................................44, 46

*Newtok Village v. Patrick*,
21 F.4th 608 (9th Cir. 2021) .............................................32

*Nordyke v. Santa Clara Cnty.*,
110 F.3d 707 (9th Cir. 1997) ............................................24

*Optional Cap., Inc. v. Akin Gump Strauss, Hauer & Feld LLP*,
18 Cal. App. 5th 95 (2017) ..............................................23

*Panavision Int'l, L.P. v. Toeppen*,
No. 96–3284, 1996 WL 768036 (C.D. Cal. Nov. 27, 1996) ...........................51

*Park v. Board of Trustees of Cal. State Univ.*,
  2 Cal. 5th 1057 (2017) ...................................................................22, 23

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir.), *as amended*,
  897 F.3d 1224 (9th Cir. 2018) (Gould, J., concurring) ....................4, 22, 29, 36

*Punchbowl, Inc. v. AJ Press, LLC*,
  52 F.4th 1091 (9th Cir. 2022) .........................................................26

*Quintana v. Baca*,
  233 F.R.D. 562 (C.D. Cal. 2005)......................................................30

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) .......................................................18, 39

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*,
  44 F.4th 867 (9th Cir. 2022) ............................................................51

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
  483 U.S. 522 (1987).........................................................................28

*Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*,
  788 F.2d 600 (9th Cir. 1986) ...........................................................33

*Stolz v. Wong Comm'ns. LP*,
  25 Cal. App. 4th 1811 (1994) ..........................................................52

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) .....................................................49, 50

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
  252 F. App'x 123 (9th Cir. 2007).....................................................51

*Toyota Motor Sales, USA, Inc., v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010) .....................................................44, 45

*Trilogy at Glen Ivy Maint. Ass'n v. Shea Homes, Inc.*,
  235 Cal. App. 4th 361 (2015) ..........................................................31

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
  875 F.3d 1192 (9th Cir. 2017) .....................................................40, 41

*Vera Mona, LLC v. Dynasty Grp. USA LLC*,
   No. EDCV 20-2615, 2021 WL 3623297 (C.D. Cal. Apr. 15, 2021)..................51

*Verceles v. LA Unified School Dist.*,
   63 Cal. App. 5th 776 (2021) ................................................................27

*Vess v. Ciba–Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .....................................................21, 22

*VIP Prods. LLC v. Jack Daniel's Props., Inc.*,
   953 F.3d 1170 (9th Cir. 2020) .....................................................36, 38

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
   42 Cal. App. 4th 507 (1996) ...............................................................50

*Will v. Hallock*,
   546 U.S. 345 (2006)............................................................................4

## Statutes and Rules

Cal. Civ. Proc. Code
   § 425.16................................................................................................1
   § 425.16(b)(2) ...................................................................................29
   § 425.16(e) ........................................................................................22
   § 425.17(c)(2) ...................................................................................34

Fed. R. Civ. P. 8(d) .................................................................................51

## Other Authorities

Aronow, W., "Setting the Record Straight," *Consensus Magazine*,
   Feb 9, 2023, https://www.coindesk.com/consensus-
   magazine/2023/02/09/setting-the-record-straight..................................3

Jen McFarland Flint, The Exchange: The Road Ahead for Crypto,
   https://www.alumni.hbs.edu/stories/Pages/story-bulletin.aspx?num=8834.........8

## INTRODUCTION

Plaintiff-Appellee Yuga Labs, Inc. ("Yuga Labs") is the creator of the Bored Ape Yacht Club ("BAYC"), a limited collection of non-fungible tokens ("NFTs"). Each BAYC NFT is a unique virtual collectible, consisting of a blockchain entry linked to a digital image of an ape—original artwork created by Yuga Labs. The NFTs also confer certain rights, such as access to online spaces and a copyright license to commercialize the linked artwork. After these NFTs became wildly popular, Defendants-Appellants Ryder Ripps and Jeremy Cahen began creating counterfeit "RR/BAYC" NFTs—using the exact artwork and identification numbering from the BAYC collection—and selling them in the same online marketplaces using Yuga Labs' trademarks and logos.

Yuga Labs filed suit seeking to stop Defendants' counterfeiting, dispel the confusion in the market, and restore the goodwill to its marks. Yuga Labs' federal claims are proceeding to trial at the district court. This appeal is about various state law claims Yuga Labs also asserted concerning the trademark infringement, false advertising, and interference with Yuga Labs' business, which Defendants originally moved to strike under the California anti-SLAPP statute. The anti-SLAPP statute allows a defendant to move to strike a complaint where the causes of action asserted arise, *inter alia*, from public statements or other conduct in furtherance of the right of speech in connection with an issue of public interest. Cal. Civ. Proc. Code

1

§ 425.16. The statute provides a two-step test. A moving defendant must carry its burden to show that the claim it seeks to strike "arises" from one of four enumerated categories of protected activity. If it does, the nonmovant must show that its claims possess "minimal merit"—i.e., that the complaint has pled a legally sufficient cause of action.

The district court denied Defendants' motion at the first step, based on Defendants' failure to show that any of Yuga Labs' claims sought to impose liability based on protected activity. ER-13. The district court rejected Defendants' arguments that Ripps had created the counterfeit "RR/BAYC" NFTs to draw more attention to his false claims that Yuga Labs secretly incorporates Nazi references and racist tropes into its business; that the sale of the counterfeit NFTs is itself an act of "protest"; and that Yuga Labs had sued to "silence" these criticisms. Instead, it found these alleged subjective motivations irrelevant to the commercial activity targeted by the complaint, and ruled correctly that the state law claims arise solely from Defendants' sale of counterfeit NFTs that they promoted under Yuga Labs' marks.

Defendants denigrate this ruling as based only on the facts that Yuga Labs "did not file a defamation claim" and that Ripps and Cahen "sold their art rather than simply giving it away." Opening Brief of Defendants-Appellants ("OB") at 2. But this mischaracterizes the district court's ruling and disparages what are in fact two

longstanding principles recognized by precedent. The first is that an anti-SLAPP movant challenging the legal sufficiency of the pleadings cannot use extrinsic evidence to manipulate the complaint, attempting to "prove" that a cause of action is about something other than the unprotected activities expressly alleged. And here, Defendants themselves conceded from the very beginning that they used Yuga Labs' marks as alleged, OB2–3; SER-130–31, and that "Yuga sued Mr. Ripps not for defamation, but for ***trademark*** infringement." SER-117 (emphasis in original).[1] The second principle is that a defendant cannot immunize himself from liability for tortious conduct by claiming that he intended the tort to "express" a point of view. The complaint alleges that Defendants sold counterfeit NFTs under Yuga Labs' marks—that Ripps allegedly intended for this conduct to express his disregard for Yuga Labs (in addition to inflicting obvious commercial harm) is irrelevant.

The Court should affirm the district court's holding that Defendants' commercial sale of counterfeit goods is not protected conduct or speech. But if it does not, it should decline Defendants' request to take the "further step" (OB3) of considering the second part of the anti-SLAPP inquiry. The district court considered

---

[1] Mr. Ripps' accusations are scurrilous and false, but Yuga Labs' founders have chosen to meet them with counter speech rather than a lawsuit. *See*, *e.g.,* Aronow, W., "Setting the Record Straight," *Consensus Magazine*, Feb 9, 2023, https://www.coindesk.com/consensus-magazine/2023/02/09/setting-the-record-straight.

the legal sufficiency of the complaint only in a separate and unappealable portion of its order denying Defendants' Rule 12(b)(6) motion to dismiss. ER-5–12. The appropriate outcome if the Court reverses the anti-SLAPP ruling would be to remand. Alternatively, if the Court does reach this analysis, it should hold that Yuga Labs sufficiently stated all its claims for relief.

## JURISDICTIONAL STATEMENT

Yuga Labs agrees with the jurisdictional statement of Defendants, except as follows. This Court has previously held that the denial of an anti-SLAPP motion under California Code of Civil Procedure § 425.16 is reviewable under the collateral order doctrine. *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003). But to be reviewable, a collateral order must be "completely separate from the merits of the action." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citations omitted). An anti-SLAPP motion under the California statute expressly requires an evaluation of the merits. *See, e.g.*, *Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2010). Thus, such an order should not be reviewable under the collateral order doctrine. *See Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1190–92 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing en banc); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir.), *as amended*, 897 F.3d 1224 (9th Cir. 2018) (Gould, J., concurring); *see also Flo & Eddie, Inc. v. Pandora Media,*

*LLC*, No. 20-56134, 2022 WL 1800780, at *3 (9th Cir. June 2, 2022) (Bress, D., concurring).[2]

## STATEMENT OF THE ISSUES

1.      Do Yuga Labs' state law claims alleging specific acts of trademark infringement and false advertising "arise from" a protected statement or other conduct in furtherance of the right of free speech?

2.      Should the Court consider the legal sufficiency of the state law claims in the complaint, even though the district court did not reach that issue in connection with its anti-SLAPP ruling, and only did so in its unreviewable denial of the Rule 12(b)(6) motion to dismiss?  If so, did the complaint adequately allege claims for trademark infringement, unfair competition, false advertising, conversion, and tortious interference?

## PERTINENT STATUTORY PROVISIONS

The pertinent statutory provisions are reproduced in an addendum to this brief.

*See* Ninth Cir. R. 28-2.7.

---

[2] Here, for example, Defendants have asked the Court to rule that Yuga Labs failed to state a legally cognizable cause of action, OB3, 26–40, and thus review and reverse what is normally an unappealable order going directly to the merits—i.e., the district court's denial of their Rule 12(b)(6) motion.

## STATEMENT OF THE CASE[3]

### I.  YUGA LABS AND THE BORED APE YACHT CLUB

The Bored Ape Yacht Club is one of the most well-known and successful collections of NFTs.  ER-204–205 (¶ 1).[4]  It consists of 10,000 NFTs, each linked to a unique digital image of an ape with various combinations of features.  *Id.*  Yuga Labs created the collection (ER-204 ¶ 1) and has common-law rights in the associated trademarks, including BORED APE YACHT CLUB, BAYC, BORED APE, APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and Ape Skull Logo trademarks ("BAYC marks").  ER-207 (¶ 11).  Yuga Labs has used the BAYC marks both domestically and internationally and has pending trademark applications for registration of most of these marks with the United States Patent and Trademark Office.  ER-212–217 (¶¶ 23–33).

---

[3] The facts are drawn from the complaint allegations, which, for purposes of this appeal of a denial on an anti-SLAPP motion, the Court accepts as true and interprets in the light most favorable to the plaintiff.  *Burgert v. Lokelani Berice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000).

[4] NFTs are data entries on a distributed digital ledger associated with content.  *See Hermes Int'l v. Rothschild*, ––– F. Supp. 3d ––––, No. 22-cv-384, 2023 WL 1458126, at **2, 6 (S.D.N.Y. Feb. 2, 2023) ("NFTs are digital records of ownership, typically recorded on a publicly accessible ledger known as a 'blockchain.'").  An NFT is thus computer code, but to the consumer it appears as a digital image.  *Hermes Int'l v. Rothschild*, 603 F. Supp. 3d 98, 104 (S.D.N.Y. May 18, 2022).  In this case, the BAYC NFTs were created through a smart contract developed by Yuga Labs and deployed to the Ethereum blockchain.  ER-208 (¶ 16).

Yuga Labs began marketing the BAYC collection under its trademarks in April 2021, ER-204–205, 208, 126 (¶¶ 1, 16, 31), and since that time its NFTs have soared in popularity. The BAYC NFTs were each sold originally for .08 Ethereum, which (based on the price of Ethereum at the time) amounted to approximately $169 to $236 USD. ER 208 (¶ 16). But Bored Ape NFTs have a thriving secondary market—they often resell for hundreds of thousands of dollars—and that success has enhanced the BAYC brands. ER-210–211 (¶¶ 20, 22). Indeed, BAYC NFTs have resold on secondary markets or NFT exchanges for as much as $3.4 million dollars. ER 210 (¶ 20).

Prominent celebrities have announced their ownership of Bored Ape NFTs, including TV host Jimmy Fallon, musicians Justin Beiber, Madonna, Snoop Dogg, and Eminem, and athletes Stephen Curry, Serena Williams, and Shaquille O'Neal. ER-210 (¶ 21). A holder of a genuine Bored Ape NFT obtains benefits provided by, among others, Yuga Labs, which to date have included access to social events and clubs (including a virtual clubhouse hosted by Yuga Labs, a Discord channel, and a music and art event called "ApeFest"), a commercial copyright license with respect to the linked ape artwork, and the ability to "mutate" the Bored Ape NFT into a new "Mutant Ape" NFT. ER-204–205, 208–209, 227–228 (¶¶ 1, 17, 18, 53). Yuga Labs is also developing a "metaverse" called Otherside in which the BAYC NFTs will have a central role. ER-209 (¶ 18).

## II.  NFTS ARE SUBJECT TO THE SAME RISK OF COUNTERFEITING AS TRADITIONAL PHYSICAL GOODS

An NFT cannot literally be "copied," just as a physical painting cannot literally be cloned.  *See* OB5.  But bad actors can still make and sell knockoff NFTs and attempt to pass them off as genuine or otherwise harm the goodwill of the sellers of the genuine NFTs.  A counterfeiter can create (or "mint") their own NFT that links to the very same digital image as the original and sell it under the same trademark on the same online marketplaces.  *See* ER-217–227 (¶¶ 33–52).  Counterfeiters can even interfere with the online tools for verifying the provenance of NFTs by mislabeling their own NFTs with the names and marks of the originals.  *See* ER-221–222 (¶¶ 39–40) (alleging that even consumers who attempt to verify the authenticity of NFTs on Etherscan will be "misled into thinking that these NFTs were officially sold by Yuga Labs").[5]  In other words, like any other counterfeit good, counterfeit NFTs can be made to display the same labeling and other visual indicators of the genuine product, and they can be sold under another's marks in the same marketplaces explicitly to mislead consumers and the public as to their origin and authenticity.

---

[5] *See also*, *e.g.*, Jen McFarland Flint, The Exchange: The Road Ahead for Crypto, https://www.alumni.hbs.edu/stories/Pages/story-bulletin.aspx?num=8834 (reporting on academic research noting "while the technology is technically transparent, it's still very opaque for the average consumer, or even for the very sophisticated consumer.  This shows up in the extent to which even very sophisticated actors are having their crypto assets stolen.").

## III.    DEFENDANTS' COMMERCIAL EXPLOITATION OF YUGA LABS' MARKS

This case results from Defendants' straightforward misuse of Yuga Labs' trademarks that resulted in confusion in the market.  Defendants began minting a collection of NFTs designed, promoted, and marketed to appear just like genuine BAYC NFTs.  They linked to the same artwork as the originals, and Defendants marketed them using the names "BAYC," "Bored Ape Yacht Club," and "RR/BAYC NFT" as well as Yuga Labs' BAYC skull logo, and sold them in the same marketplaces to the same consumers.  *See* ER-217–227 (¶¶ 33–52); OB10.  For example, the image below depicts both a genuine Bored Ape Yacht Club NFT (left) and Defendants' "RR/BAYC" NFT (right) as each was listed for sale on the same online marketplace:



ER-217 (¶ 33).  The counterfeit NFTs contain no new artistic component—no alteration to the images, no critical message, no change in what the consumer sees by owning one.  *Id.*  In other words, the counterfeit NFTs do not in any way "recontextualize" Yuga Labs' art.  They sell the same art, using the same marks, but

recorded as a different entry on the digital ledger, which causes the revenue from a sale to flow to Defendants instead of Yuga Labs.  ER-228–29 (¶¶ 55–57); OB10.

Some of the counterfeit NFTs themselves even incorporate artwork that displays the BAYC marks:

 

ER-217–218 (¶ 34).

In May 2022, Defendants created a website that allowed users to "reserve" the counterfeit RR/BAYC NFTs.  ER-217–218 (¶ 34).  The website used Yuga Labs' BAYC mark in the title of the page ("RR/BAYC") and in the domain name (http://rrbayc.com).  Its browser icon (left) also incorporated an exact copy of Yuga Labs' Ape Skull logo (right):




ER-217–218 (¶ 34).

Defendants argue that there was a "disclaimer" on Ripps' website, OB 13, but it only appeared for the consumers who reached the point of purchase on that same website. Defendants were at the same time pushing their counterfeit NFTs onto other online markets where Yuga Labs' BAYC NFTs are sold without any such disclaimer. They created sales pages on both OpenSea and Foundation (popular online marketplaces for the sale and re-sale of NFTs), using the BAYC marks in titles of their pages. ER-217–222 (¶¶ 33–40). On Foundation, Defendants sold their NFTs using Yuga Labs' trademarks as part of the listing:



ER-219–221 (¶ 37). At that time, a Google search for "BAYC Foundation.app" or "Bored Ape Yacht Club Foundation.app" would lead consumers directly to Defendants' infringing NFTs:



*Id.* Defendants took pains to make their listings look authentic to Yuga Labs' in every respect. For example, when a user hovered the cursor over an RR/BAYC NFT listing on the Foundation page, an unreadable, but slightly altered Yuga Labs logo and the name "Bored Ape Yacht Club" would appear:



ER-221 (¶ 38).  When OpenSea and Foundation removed Defendants' pages due to trademark infringement, Defendants simply created new pages for their NFTs on those sites using the same trademarks.  ER-218–221 (¶¶ 35–37); ER-228 (¶ 54).

The Foundation page for the counterfeit NFTs also linked to Etherscan, a popular website for verifying blockchain transactions including checking the authenticity of an NFT.  There, the "token tracker" (a human-readable name to represent an NFT collection) misleadingly displays the name "Bored Ape Yacht Club (BAYC)" as the name of the counterfeit collection:



ER-221–222 (¶¶ 39–40). The Etherscan page contains no art, criticism, satire, or other expressive content other than using Yuga Labs' trademark. In other words, in the very place where consumers would go to verify whether an NFT is authentic or a mere lookalike, Defendants caused their counterfeit tokens to be labeled as "Bored Ape Yacht Club (BAYC)" with no qualification or disclaimer. ER-221–222 (¶ 39). Even customers exercising this extra step of diligence would thus encounter Defendants' explicitly misleading use of Yuga Labs' marks.

Defendants posted marketing on Twitter encouraging others to buy their NFTs, with Ripps even changing the header image on his personal Twitter account to add Yuga Labs' Ape Skull logo and BAYC trademark (modified to "RR BAYC"). ER-223 (¶ 43). Defendants also designed and built a commercial website—with the confusing name "Ape Market," the domain name apemarket.com, and the unmodified Ape Skull logo as the browser icon—that they intended to be a market for their infringing NFTs and divert secondary sales and royalties of genuine BAYC NFTs. ER-225–226 (¶ 46); ER-228–299 (¶ 55). Here again, there was no commentary associated with this commercial endeavor to compete directly with Yuga Labs and with the other marketplaces selling Yuga Labs' NFTs. Instead, Defendants committed additional false advertising by claiming falsely in their promotions for the site that they held trademark registrations for RR/BAYC and ApeMarket, thus further misleading consumers. ER-225–226 (¶ 46).

Defendants ultimately admit to this behavior—i.e., that they marketed the counterfeit NFTs using Yuga Labs' BAYC marks. SER-130 (admitting Ripps "uses BAYC marks" in connection with the sale of RR/BAYC NFTs); SER-134 (admitting "Mr. Ripps's [sic] used BAYC's marks . . ."); SER-135 ("Mr. Ripps has been clear that RR/BAYC serves this goal by using the asserted marks to criticize Yuga[] . . . ."); OB2–3. And less than a month after they started, Ripps took to Instagram to announce that "I probably should brag and mention the project has made over $1m so far." ER-229–230 (¶ 57). The counterfeit NFT sales thus enriched Defendants by millions, at the expense of confusing consumers, generating an environment ripe for further confusion, and harming Yuga Labs' business and its brand. ER-204–206 (¶¶ 1, 3, 5), ER-226 (¶¶ 47–48); ER-230 (¶ 58).

Defendants contend that their trademark infringement is performance art, part of an ongoing harassment campaign that they describe as "satire" and "public criticism." OB9. For example, Ripps "doxxed" Yuga Labs' founders—who had been anonymous—by providing their personal identities to a well-known media publication, which then published this information. ER-226–227 (¶ 50). Ripps has also accused Yuga Labs and its employees of covertly spreading offensive coded messages through the ape images associated with their NFTs. ER-226 (¶ 49); *see also* SER-58–62 (objections to Defendants' evidence).[6] Defendants' brief on appeal

---

presents only a selection of these offensive accusations (*compare* OB9–10 *with* SER-119–25), but Yuga Labs has responded to all of them with public counter-speech (*see supra* n.1; ER-227 (¶ 51)), electing to enforce only its intellectual property rights against Defendants in court.

## IV. YUGA LABS' LAWSUIT AND THE DISTRICT COURT'S DENIAL OF DEFENDANTS' ANTI-SLAPP MOTION

Yuga Labs filed suit on June 24, 2022, asserting both federal and state-law claims concerning Defendants' infringement of the BAYC marks. Defendants moved to strike the state law claims under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, or to dismiss under Fed. R. Civ. P. 12(b)(6). Defendants devoted just a little over two pages of their 25-page district court brief to arguing that the complaint challenges activity protected by the statute. *See* SER-127–29. They argued that the sale of a counterfeit RR/BAYC NFTs is an act that itself "communicates protest and criticism of Yuga's references to racist and neo-Nazi

---

[6] Defendants did not argue in their motion that Cahen had engaged in expressive conduct or protected speech, only that Ripps did so. *See*, *e.g*., SER-122 ("Mr. Ripps created the RR/BAYC project"; "Mr. Ripps's use of pointers to the same images is a form of 'appropriation art'"). Even on appeal, Defendants make no specific arguments as to how Mr. Cahen engaged in a protected activity that gave rise to Yuga Labs' claims. *See*, *e.g*., OB9 ("This case arises from Mr. Ripps's public criticism of Yuga"), 15 ("the complaint itself repeatedly takes aim at Mr. Ripps's artwork and speech"), 22–23 ("Mr. Ripps was engaged in a long-running effort to focus public attention on Yuga's products on both Twitter and Instagram"), 23 ("Ripps's artistic message was the very essence of the RR/BAYC collection").

themes." SER-127. In reply, they varied their argument, contending that the sale of the counterfeits was part of a singular "RR/BAYC project" that included all of Ripps' commentary about Yuga Labs and could not be segregated from it. SER-9–10.

Defendants' motion challenged only the legal sufficiency of Yuga Labs' claims as pled, yet they still submitted with their moving papers two witness declarations and 36 exhibits as evidence. ER-15–203. Defendants' explanation was that they had requested relief from the district court "based solely on the allegations in the Complaint and documents the Complaint incorporated by reference," SER-18, but that the district court could still consider their exhibits as "background" material, SER-19.

The district court denied the motion on December 16, 2022, ER-4, holding that none of the state law claims arise from protected activity. ER-13. As to the argument that Defendants had made public statements about Yuga Labs, it ruled that "is not enough for Defendants to simply state that they engaged in allegedly protected speech that is relevant to Plaintiff's claim to prevail on their anti-SLAPP motion." *Id.* "Instead, Defendant's allegedly protected speech must form at least part of the basis of Plaintiff's claims." *Id.* Defendants had failed to make this showing, because despite "Ripps's public criticism . . . through Twitter, Instagram, podcasts, and the website gordongoner.com, Plaintiff has not brought claims against

17

Defendants for defamation, slander, or libel.  Instead, Plaintiff's claims are limited to and arise out of Defendant's unauthorized use of the BAYC marks for commercial purposes."  ER-14.  The district court therefore denied the motion at the first step of the anti-SLAPP analysis.

The district court did not reach the second step of the anti-SLAPP analysis, but in ruling on the Rule 12(b)(6) motion to dismiss, it considered the legal sufficiency of the claims, and held that Yuga Labs had properly alleged each of its causes of action.  ER-9–12.[7]  As to the trademark claims, the district court considered whether the alleged infringement fell within the test announced by *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) concerning expressive or artistic uses of a mark.  And it held that Defendants had failed to establish that they were entitled to dismissal as a matter of law based on *Rogers*.[8]

<u>First</u>, the district court ruled that the conduct at issue was not expressive: "Defendants' sale of what is admittedly a 'collection of NFTs that point to the same online digital images as the BAYC collection' is the only conduct at issue in this action and does not constitute an expressive artistic work protected by the First

---

[7] Yuga Labs voluntarily withdrew its claim for unjust enrichment, based on a split among courts in this Circuit as to whether unjust enrichment is a standalone cause of action, but continues to pursue unjust enrichment as a remedy.  SER-51–52.

[8] This Court has adopted the *Rogers* test.  *See Gordon v. Draper Creative, Inc.*, 909 F.3d 257, 260–61 (9th Cir. 2018).

Amendment." ER-9. The "larger RR/BAYC 'project'" was not the subject of the litigation, and the infringing NFTs themselves "do not express an idea or point of view, but, instead, merely 'point to the same online digital images associated with the BAYC collection.'" *Id.* (citation omitted). Nor did the district court discern any expressive use of Yuga Labs' marks on the token tracker, Ape Market, or the Foundation sales page where Defendants promoted and sold their NFTs. *Id.* The district court concluded that "[t]hese are all commercial activities designed to sell infringing products, not expressive artistic speech protected by the First Amendment." ER-9–10. Second, even if the *Roger*s test did apply, the district court held it did not afford a defense on the facts as alleged, since "Defendants' use of the BAYC marks is not artistically relevant to Defendants' 'art.'" ER-10. Third, even if those rulings were both incorrect, the district court held Defendants would *still* lack a defense because "Defendants' use of the BAYC marks is explicitly misleading"—"Defendants admit that they have used the BAYC marks in the same marketplaces to identify and sell NFTs bearing the exact same images underlying the BAYC NFTs and without adding any expressive content." *Id.* They had "used Plaintiff's BAYC Marks to make their competing product look identical to Plaintiff's product and ensure that the consumer was explicitly misled in the token tracker, which is the place where a consumer should be able to authenticate and verify who created the NFT." *Id.*

The district court also rejected Defendants' nominative fair use defense because Defendants "frequently used the entirety of the BAYC Marks without modification" and used the "BAYC Marks 'prominently and boldly,' to market their RR/BAYC NFTs, 'suggest[ing] sponsorship.'" ER-11. The district court also explained that Defendants did not use the BAYC marks to sell Yuga Labs' NFTs, but to sell their own infringing works. *Id.*

Defendants appealed the anti-SLAPP ruling with respect to the state law claims, and the case is proceeding toward trial on Yuga Labs' federal claims.

## SUMMARY OF THE ARGUMENT

The district court held correctly that the California anti-SLAPP statute does not apply to Yuga Labs' state law claims. Those claims seek redress for the sale of counterfeit NFTs that Defendants advertised and sold using Yuga Labs' BAYC marks. The fact that Ripps views his counterfeiting as part of a larger work of "performance art" and intended it to "express" his contempt of Yuga Labs does not bring his trademark infringement within the protection of the statute. Yuga Labs' claims do not challenge Ripps' separate purported commentary about it, and neither the complaint's allegations discussing his harassment campaign nor Defendants' extrinsic evidence about it demonstrate otherwise. This Court should affirm the district court's ruling and reject application of the anti-SLAPP statute at the first step.

The Court need not reach the second step of the anti-SLAPP analysis that considers whether the complaint states legally sufficient claims; there are prudential reasons to remand these issues even if the Court reverses the district court's ruling at the first step. Regardless, Yuga Labs plausibly alleged its trademark claims. Defendants' sale of counterfeit NFTs using the BAYC marks is not an expressive work under *Rogers*, nor does it constitute a nominative fair use of the marks. Yuga Labs has also plausibly alleged its other state law claims for conversion and interference.

## STANDARD OF REVIEW

When a district court denies a motion to strike under California's anti-SLAPP statute based on the legal sufficiency of the pleadings, this Court reviews the denial *de novo*. *Jordan-Benel v. Univ. City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017) (citing *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015–16 (9th Cir. 2013)).

## ARGUMENT

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). First the court must determine whether the defendant has made "a prima facie showing that the plaintiff's suit 'arises from an act in furtherance of the defendant's rights of petition or free speech.'" *Id.* (*quoting Vess v. Ciba–Geigy Corp.*

21

*USA*, 317 F.3d 1097, 1110 (9th Cir. 2003)). If the defendant makes the required showing, the plaintiff must then "demonstrate a probability of prevailing on the challenged claim." *Mindys Cosms.*, 611 F.3d at 595 (quoting *Vess*, 317 F.3d at 1110). Where the defendant brings an anti-SLAPP motion on the pleadings, as Defendants have here, the analysis of the second part is identical to the Rule 12(b)(6) standard of review. *Planned Parenthood*, 890 F.3d at 834.

## I.   DEFENDANTS FAILED TO DEMONSTRATE THAT YUGA LABS' CLAIMS ARISE FROM PROTECTED STATEMENTS OR CONDUCT IN FURTHERANCE OF FREE SPEECH

While the anti-SLAPP statute is read broadly, "the scope of Section 425.16 is not without limits." *Flatley v. Mauro*, 39 Cal. 4th 299, 313 (2006) (cleaned up) (citation omitted). The statute enumerates four categories of protected activity.[9] The moving party's burden at the first step is to identify "what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1009 (2021); *see also Park v. Board of Trustees of Cal. State Univ.*, 2 Cal. 5th 1057, 1063 (2017). A claim arises from protected activity only "when that activity underlies or forms

---

[9] These are: (i) written or oral statements in a legislative, judicial, or executive proceeding; (ii) written oral statements in connection with an issue under consideration or review by a legislative, executive, or judicial body; (iii) any written or oral statements made in a public forum in connection with an issue of public interest; and (iv) other conduct in furtherance of the exercise of the right of petition or free speech in connection with an issue of public interest. Cal. Civ. Proc. Code § 425.16(e).

the basis for the claim." *Park*, 2 Cal. 5th at 1062. "[E]ven if a defendant engages in free speech activity that is relevant to a claim, that does not necessarily mean such activity is the basis for the claim." *Jordan-Benel*, 859 F.3d at 1193. For example, allegations of protected activity that "merely provide context, without supporting a claim for recovery," are not the proper subject of a motion to strike. *Bonni*, 11 Cal. 5th at 1012 (citation omitted).

Defendants failed to show that Yuga Labs' state law claims arise from any category of protected conduct. At the district court, Defendants resisted this burden, failing to discuss with specificity the elements of the claims or the fact allegations on which liability for each rests.[10] That is because, as Defendants themselves acknowledged, Yuga Labs sued them "not for defamation, but for **trademark** infringement." SER-117 (emphasis in original). Yuga Labs' state law claims arise from the promotion and sale of the counterfeit NFTs using the BAYC trademarks;

---

[10] Defendants continue to argue (at OB22) that the Court should apply the "gravamen test," disregarding the specific causes of action alleged and considering instead the "principal thrust" of the complaint. But the California Supreme Court in *Baral v. Schnitt*, 1 Cal. 5th 376, 394 (2016) and *Bonni*, 11 Cal. 5th at 1011, rejected this use of the "gravamen test" in favor of a claim-by-claim approach that requires evaluating each set of facts allegedly giving rise to relief. Use of the gravamen test "to determine the essence or gist" of the complaint is incorrect. *Bonni*, 11 Cal. 5th at 1012; *cf. Optional Cap., Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 111 (2017) ("The 'gravamen is defined by the *acts on which liability is based*, not some philosophical thrust or legal essence of the cause of action.'") (citation omitted).

they do not seek to impose liability for the false statements Defendants have made about the company or its founders that are not even alleged in the complaint (and which have gone on both before and after Defendants began their infringement).

On appeal, Defendants continue to argue broadly that the complaint challenges protected activity because (1) Ripps intended his counterfeiting to express and garner publicity for his other opinions about Yuga Labs, (2) he viewed all such activity as a singular art project, and (3) Yuga Labs purportedly sued to retaliate rather than redress his trademark infringement. SER-9–11; SER-127–29; OB20–26. None of these arguments has merit or brings Yuga Labs' claims within the ambit of the anti-SLAPP statute. Even more, Defendants failed to address the express exemption from the anti-SLAPP statute for commercial advertising statements. Counterfeiting is not conduct in furtherance of the free speech right, and the anti-SLAPP statute is not so broad as to immunize from liability anyone who perceives himself as a righteous counterfeiter.

### A. Defendants' unauthorized use of Yuga Labs' marks in the sale of counterfeit NFTs is not protected speech.

In *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309 (9th Cir. 1997), this Court held that a defendant's offer to sell counterfeit goods is not a protected First Amendment expression. *Id.* at 1312–13; *see also Nordyke v. Santa Clara Cnty.*, 110 F.3d 707, 710 (9th Cir. 1997) (holding that the "First Amendment does not protect all proposals to engage in commercial transactions" where "the underlying transaction

is illegal."). Consistent with this, the anti-SLAPP statute also does not protect tortious or illegal acts, even those with an expressive underpinning. *See Flatley*, 39 Cal. 4th at 324. And the California Supreme Court has directed that courts interpreting the statute should consider whether the conduct targeted by the complaint was commercial in nature. *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 148 (2019).

The principle that the anti-SLAPP statute does not protect tortious commercial conduct resolves the first step of the analysis here. The allegations in the complaint arise from tortious commercial activity, and not from protected speech. Each of Yuga Labs' state law causes of action arises from allegations that Defendants infringed the BAYC marks by using them to advertise their own counterfeit NFTs and pass them off as genuine. ER-230 (¶ 59), 232–33 (¶¶ 72–73), 235–45. As part of this conduct, Defendants used the BAYC marks on their websites, various third-party marketplaces, and even on the Etherscan token-tracker used by consumers to validate the source of NFTs. ER-217–27 (¶¶ 33–52). Worse still, they use the marks in their own competitive commercial marketplace. ER-228–29 (¶ 55). It is *this* use of the BAYC marks that has caused confusion and damaged Yuga Labs' brand, and for which Yuga Labs' seeks redress. ER-232–33 (¶¶ 72–73). The complaint thus makes clear that liability is based on Defendants' sale of the counterfeit NFTs using the BAYC marks.

Moreover, while an expressive work is not rendered non-expressive just because it is sold commercially, *Punchbowl, Inc. v. AJ Press, LLC*, 52 F.4th 1091, 1097 (9th Cir. 2022), nothing in the complaint or the broader record shows that Defendants engaged in protected expression by selling the counterfeit NFTs using the BAYC marks. The NFTs themselves communicate no message about Yuga Labs—they consist only of blockchain entries that link to the same images as genuine BAYC NFTs and are named according to the same numbering sequence. ER-227 (¶ 52). There are no modifications to the image or number that reflect any "satire" or "commentary." Nor is any such message communicated by labeling these NFTs as "Bored Ape Yacht Club" or even "RR/BAYC," beyond the suggestion that they are associated with Yuga Labs. Defendants' counterfeit sales are thus distinctly *unlike* the examples of "appropriation art" that Defendants put forth as justifying their conduct. *See* OB7 n.3, 25.[11]

---

[11] *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) concerned depictions of nude Barbie dolls with kitchen appliances, about which the Court noted it was "not difficult to see the commentary" about "Barbie's influence on general roles and the position of women in society." *Id.* at 802. *Cariou v. Prince*, 714 F.3d 694, 708, 710–11 (2d Cir. 2013) concerned plaintiff's images that the defendant had incorporated into new artwork. The court explained that the defendant's images "ha[d] a different character, g[a]ve [the plaintiff's] photographs a new expression, and employ[ed] new aesthetics with creative and communicative results distinct from [plaintiff's]." *Id.* at 708.

It is also irrelevant that Ripps claims that he *intended* Defendants' NFT sales to express a "protest" of Yuga Labs or some other message. *See*, *e.g.*, OB4. That is because a defendant is not entitled to First Amendment protection simply because he claims his conduct had an expressive purpose. *See Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 392 (9th Cir. 2016); *see also Edge v. City of Everett*, 929 F.3d 657, 669 (9th Cir. 2019).[12] The reason for this is obvious: a contrary rule would allow any counterfeiter to escape liability simply by claiming his sales are performance and appropriation art.

So while Defendants claim that Ripps is like the war protestor in *Cohen v. California*, 403 U.S. 15, 17, 25 (1971), that case instead provides a useful contrast. There, the Supreme Court ruled that the defendant could not be convicted criminally for wearing a jacket bearing the words "Fuck the Draft" because his conviction "rest[ed] solely upon speech, not upon any separately identifiable conduct" that the state could regulate "without effectively repressing [his] ability to express himself." *Id.* at 18 (cleaned up). Though Defendants here may have been similarly *motivated*

---

[12] In *Feldman*, for example, this Court rejected the argument that ballot collection was expressive conduct because it "convey[s] . . . support for the democratic process and for particular candidates and political parties" and that "voting is important." 843 F.3d at 392. Even if ballot collectors intend to communicate those messages, the Court "cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *Id.* (citation omitted); *see also Verceles v. LA Unified School Dist.,* 63 Cal. App. 5th 776, 790 n.6 (2021).

to express contempt, they did not actually *say* or *express* anything (OB23); instead they misappropriated Yuga Labs' marks and logos to sell thousands of NFTs to unsuspecting consumers.

Ultimately, the "mere fact that the [defendant] claims an expressive, as opposed to a purely commercial, purpose does not give it a First Amendment right to 'appropriat[e] to itself the harvest of those who have sown.'" *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 541 (1987) (alteration in original) (citation omitted). The district court ruled correctly that Defendants failed to demonstrate their sale of the counterfeit NFTs using the BAYC marks was a protected activity, and this Court should affirm that ruling.

### B. Yuga Labs' claims do not arise from Ripps' public statements defaming the company.

Defendants argue on appeal that the "RR/BAYC" NFTs and all of Ripps' other criticism of Yuga Labs were part of a single "art project" that the Court cannot disaggregate to impose legal liability. OB34–36.

In support of this argument, Defendants have followed a well-known but rejected practice—attempting to "prove" that a cause of action is about something other than the unprotected activities expressly alleged in the complaint. "Consistent with the primary role of the complaint in identifying the claims at issue, courts have rejected efforts by moving parties to redefine the factual basis for a plaintiff's claims as described in the complaint to manufacture a ground to argue that the plaintiff's

28

claims arise from protected conduct." *Bel Air Internet, LLC v. Morales*, 20 Cal. App. 5th 924, 936 (2018). Rather than map the fact allegations in the complaint to specific causes of action, Defendants focus on the reams of documents that they submitted to try to show that Ripps is an artist who has allegedly achieved notoriety for his work (OB6–7 (citing ER-16, 42, 45, 50, 68, 69)), that he "was engaged in a long-standing effort" to criticize Yuga Labs on his Twitter and Instagram social media pages and a website he created at "gordongoner.com," (OB22–23 (citing ER-222)), and that his goal for his "RR/BAYC" counterfeiting project was merely to gain greater publicity for his theories about imagery in the original BAYC collection, (OB22 (citing ER-226–27)).

To begin with, Defendants have not established that this Court can consider any of this material. They cite (OB6 n.2) to a footnote in *Makaeff v. Trump Univ. LLC*, 715 F.3d 254 (9th Cir. 2013) explaining that the California anti-SLAPP statute directs the court to consider materials outside the pleadings in ruling on a motion to strike. *Id.* at 262 n.5 (citing Cal. Civ. Proc. Code § 425.16(b)(2)). The Court has since held that this provision conflicts with Federal Rules of Civil Procedure 12(b)(6) and 56 to the extent that it requires a presentation of evidence without an accompanying right to discovery. *Planned Parenthood*, 890 F.3d at 832–35. Defendants fail to show why the presentation of evidence to prove a legal claim "arises" from protected activity does not similarly conflict with those rules or with

Federal Rule of Civil Procedure 12(f), which typically requires the court to view the pleadings in the light most favorable to the non-moving party and resolve doubts about the relevance of challenged allegations in favor of plaintiff. *See Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005); *In re 2TheMart.com Secs. Litig*., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

More importantly, all of Defendants' evidence still goes only to their alleged subjective motive for selling counterfeit NFTs using the BAYC marks (a motive that may be completely pretextual given the millions of dollars at stake) and is thus irrelevant. Even if the Court considers all of it, it *objectively* remains the case that none of Yuga Labs' causes of action arise from the harassment campaign that preceded Ripps' counterfeiting. The essence of the first step in the anti-SLAPP analysis is to distinguish the allegations that give rise to the claim from those that are not the basis for liability or merely provide evidence for the claim, *Gaynor v. Bulen*, 19 Cal. App. 5th 864, 887 (2018). Allegations of protected activity "that merely provide context, without supporting a claim for recovery" cannot be stricken under the anti-SLAPP statute. *Bonni*, 11 Cal. 5th at 1012 (citation omitted). It is immaterial that the complaint acknowledges that Ripps considers himself a conceptual artist and that he was prolific in his efforts to defame Yuga Labs elsewhere on the internet. *See* OB15. These facts were alleged only to give the district court context about Defendants' behavior and the events leading to the

tortious conduct, and *no element* of any claim asserted in the complaint depends on them.

Of course, it cannot be the rule that the mere existence of some alleged protected activity transforms any later conduct into speech protected by the First Amendment. If an activist were to throw a rock through the window of a luxury handbag designer's window, this conduct is tortious even if the activist had engaged in previous commentary or criticism. If the activist makes counterfeit handbags after months of posting defamatory theories about the designer online, the counterfeit is still a counterfeit. And these results cannot be any different just because a complaint apprises the court of the events leading up to the act for which the defendant is liable.

For a similar reason, this is not simply a matter of artful pleading, as Defendants claim (OB22), but of the differences between real-world activities.[13] The allegedly protected conduct is separate from the counterfeit NFTs and accompanying uses of the BAYC marks, and thus easily separable from those unprotected activities that form the basis of Yuga Labs' claims. Indeed, Defendants

---

[13] Defendants rely principally on *Trilogy at Glen Ivy Maint. Ass'n v. Shea Homes, Inc.*, 235 Cal. App. 4th 361, 368 (2015) for the proposition that a plaintiff cannot avoid application of the anti-SLAPP statute by labeling a claim a tort or contract claim when it is based on protected conduct. OB22. But *Trilogy* provides no support beyond this dicta, since the court ruled there that the complaint arose from a breach of fiduciary duty and not incidental allegations in the complaint discussing protected activity. 235 Cal. App. 4th at 371.

pursued their harassment campaign for months before the counterfeiting began. Yuga Labs did not sue, nor has it ever sued, over Defendants' false statements about the company and its employees. Instead, Yuga Labs sued in June 2022 (the month after Defendants' trademark infringement began) to protect its intellectual property. As plaintiff, Yuga Labs is the master of its complaint, *see Newtok Village v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021), and was free to elect to bring trademark infringement claims, and to decline to bring defamation claims as it did in this case.

### C. Defendants cannot invoke anti-SLAPP protection by alleging that Yuga Labs' claims are retaliatory or pretextual.

Defendants suggest throughout their brief that Yuga Labs' ulterior motive for asserting trademark claims and related torts is to retaliate against them and chill their future (defamatory) speech. OB2. The record reflects the precise opposite: that Yuga Labs endured months of harassment and false accusations that it addressed with its own public statements, and sued Ripps and Cahen only in response to their sale of counterfeits under the BAYC marks. SER-123 (Ripps targeted Yuga Labs beginning November 2021). In any event, these assertions about retaliation and chilling effect are not just insufficient to establish entitlement to relief—they are irrelevant:

> The anti-SLAPP statute cannot be read to mean that any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under Section 425.16, whether or not the claim is based on conduct in exercise of those rights.

*City of Cotati v. Cashman*, 29 Cal. 4th 69, 77 (2002) (cleaned up) (citations omitted).

In other words, application of the anti-SLAPP statute depends solely on the evaluation of the legal claims asserted in the complaint and their factual basis—"the plaintiff's 'intentions are ultimately beside the point.'" *Bosley Med. Inst.*, *Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005) (quoting *Equilon Enter. v. Consumer Cause Inc.*, 29 Cal. 4th 53, 67 (2002)).

### D. Yuga Labs' claims based on false comparative advertising are exempt from the anti-SLAPP statute.

Finally, Defendants have not attempted to distinguish among Yuga Labs' trademark, unfair competition, and false advertising claims. But Yuga Labs' false advertising claims are not subject to striking for the additional reason that they are categorically exempt from the California anti-SLAPP law.[14]

The California anti-SLAPP law, Cal. Code Civ. Proc. § 425.17(c), exempts claims based on "comparative advertising"—e.g., where the speaker makes representations of fact about their goods or services or those of a competitor to a potential customer to make a sale. *FilmOn.com Inc*, 7 Cal. 5th at 147. The

---

[14] Though the district court did not address this argument, Yuga Labs raised it (SER-38), and this Court "may affirm the judgment on any basis supported by the record even if the district court did not rely on that basis." *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986); *see also Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1097 (9th Cir. 2003).

exemption is absolute and applies "notwithstanding that the conduct or statement concerns an important public issue." Cal. Civ. Proc. Code § 425.17(c)(2).

For its false advertising claim, Yuga Labs alleged that Defendants made "the false and misleading implied factual claim in their advertising that their RR/BAYC NFTs are equivalent to authentic Bored Ape NFTs" and "advertised their copycat "Ryder Ripps Bored Ape Yacht Club" as equivalent to the authentic Bored Ape Yacht Club." ER-239 (¶¶ 116–117). More important, if the Court accepts any of Defendants' arguments that Ripps' *criticisms* of Yuga Labs were "implied" or otherwise communicated by his use of the BAYC marks, any false advertising claims challenging that use would be exempt as well. That is because, even by their own admissions, Defendants "critiqued" BAYC NFTs to *sell their own*, which makes those critiques representations about the competing product sufficient to satisfy the statute. *See*, *e.g.*, OB3 (Defendants used Yuga Labs' "trademark for purposes of criticism or comparison"); OB32 ("called on others to purchase his NFTs as a way of *criticizing* the Bored Ape Yacht Club"); OB35 (Defendants "invoke[d] the Bored Ape name and logo" in promoting their NFTs).

* * *

In sum, Yuga Labs' state law claims are grounded in its allegations that Defendants used Yuga Labs' BAYC marks to deceive consumers into purchasing counterfeit NFTs. Those actions are tortious commercial activity that is not

protected First Amendment expression or conduct that furthers the free speech right. Accordingly, the Court should affirm.

## II.   THE COMPLAINT STATED LEGALLY SUFFICIENT CLAIMS BASED ON DEFENDANTS' TRADEMARK INFRINGEMENT

Where a court determines the movant has not met its burden at the first step of the anti-SLAPP analysis, the motion fails without needing to proceed to the second step. *See City of Cotati*, 29 Cal. 4th at 80–81. The district court thus did not consider whether the complaint pled legally sufficient claims in connection with the anti-SLAPP motion and did so only for Defendants' Rule 12(b)(6) motion to dismiss. Defendants still urge that if this Court reverses and rules that the complaint challenges protected activity, it should "in the spirit of judicial economy" reach the second step of the analysis. OB26.

While the Court has discretion to reach this legal issue, *see*, *e.g.*, *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014), there are reasons that weigh against doing so here. Addressing the issue in the first instance on appeal would mean that this Court is effectively reviewing an unappealable order—the district court's denial of the motion to dismiss—and doing so may encourage future improvident appeals. Moreover, this Court's holding at step one of the anti-SLAPP analysis may bear directly not just on the second step analysis, but also on the federal proceeding at the district court, since the parties continue to dispute whether Yuga Labs' federal trademark claims are subject to the

standard likelihood of confusion test or the *Rogers* test for expressive works. Finally, the Supreme Court is reviewing this Circuit's application of the *Rogers* test in *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170 (9th Cir. 2020), and may ultimately modify the test itself. *See Jack Daniel's Props. v. VIP Prods.* No. 22-148 (argued Mar. 22, 2023). All this favors following the usual practice of remanding to the district court to allow it to conduct the rest of the anti-SLAPP analysis in the first instance. *See Collier v. Harris*, 240 Cal. App. 4th 41, 57–58 (2015) ("The majority of appellate courts . . . have declined to [decide the second prong] either because contested evidentiary issues existed or simply because it was appropriate for the trial court to decide the issue first.") (collecting cases).

If the Court decides to review the second step anti-SLAPP issues, it should hold that Yuga Labs plausibly alleged its state law claims. "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim," as here, courts "should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood*, 890 F.3d 828, 834 (9th Cir. 2018). Such review requires that "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Burgert*, 200 F.3d at 663.

Defendants' arguments on appeal defy this well-worn standard. They have asked the Court to take judicial notice of twenty exhibits and an unspecified number

36

of related "facts," including statements from Ripps' personal websites, social media posts, listings from an online marketplace, and twelve news articles.[15]  And they now ask the Court to construe allegations in the complaint against Yuga Labs based on this independent fact-finding.  This is wholly improper.  *See Khoja v. Orexigen Therapeutics*, *Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (the court "may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) . . . .").  The Court, if it reaches step two, should therefore direct the district court on remand still to deny the motion.

### A. Yuga Labs sufficiently pled its claims for trademark infringement, unfair competition, and false advertising.

Defendants challenge these claims primarily on the grounds that, they contend, the *Rogers* test should apply to them and, if so, that Yuga Labs' has failed to plead the facts sufficient to meet the elements of the test.  OB26–32.[16]

The *Rogers* test balances "the competing interests at stake when a trademark owner claims that an expressive work infringes on its trademark rights."  *Gordon*, 909 F.3d at 260–61.  It is therefore "reserved for expressive works," *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013), and "requires the defendants to make

---

[15] As explained in Yuga Labs' response to Defendants' request for judicial notice, Defendants never requested judicial notice of these documents at the district court, and those that they did submit as "evidence" below remain subject to Yuga Labs' evidentiary objections.  *See* SER-54–108.

[16] Defendants alternatively argue that they have established nominative fair use as a matter of law based on the allegations in the complaint.  OB32–36.

a threshold legal showing that the allegedly infringing use is part of an expressive work protected by the First Amendment." *Gordon*, 909 F.3d at 264. If the defendant makes that threshold showing, then the plaintiff claiming trademark infringement must show that "the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Id.* The *Rogers* test is "not an automatic safe harbor for any minimally expressive work that copies someone else's mark." *Id.* at 261.

Defendants lost on all aspects of their *Rogers* argument at the district court. The district court held at the pleading stage that: (1) *Rogers* did not apply to the alleged commercial use of the BAYC trademarks to sell counterfeit NFTs because that use was commercial and not expressive; (2) even if expressive, the alleged use of the marks was not artistically relevant; and (3) the use was explicitly misleading. ER-9–11. Those rulings were correct.

### 1. The *Rogers* test does not apply to Defendants' commercial use of the marks.

Determining application of the *Rogers* test is similar, though not identical, to determining application of the anti-SLAPP statute. The court first asks whether a work is "expressive," and as such must "analyze whether the work is 'communicating ideas or expressing points of view.'" *VIP Prod. LLC*, 953 F.3d at 1174 (citation omitted). A work is expressive if *the work itself* "evinces an intent to convey a particularized message" *and* the circumstances show that "the likelihood

38

was great that the message would be understood by those who viewed it." *Gordon*, 909 F.3d at 268 (cleaned up). Subjective motivations are irrelevant, the overriding concern still being that accused parties tend to claim after-the-fact that their use of a mark was expressive. *Cf. City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) ("[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall").

### a. The counterfeit NFTs are not expressive.

The district court held correctly that Defendants failed to establish at the pleading stage that their use of the BAYC marks to sell NFTs was expressive. ER-9–10. The only artistic expression at issue is *Yuga Labs'* art. The counterfeit RR/BAYC NFTs link to those same Bored Ape images, without any expressive additions or modifications or commentary by Defendants. And Defendants are alleged to have used the BAYC marks only to promote and sell the NFTs—a use that they also expressly admit. SER-130. This bears no resemblance to trademark uses that courts have considered expressive, like naming a film about aspiring dancers after famous ones, *Rogers*, 875 F.2d at 996; writing a song that uses a trademarked doll name, *Mattel, Inc., v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002); or depicting a trademark in a video game sequence, *E.S.S. Entm't 2000, Inc.*

*v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008). Instead, it is a purely commercial, and not expressive, use of the marks.

Defendants fall back on allegations and extrinsic evidence that they claim show that Ripps is a successful artist who intended his infringement as a "broader" statement or protest. OB28 & n.10. But even if this Court were to look beyond the pleadings, these arguments still fail, because Ripps' intent is irrelevant, and consumers were distinctly *unlikely* to understand his use of the marks to convey any message other than designating the counterfeit NFTs as genuine. *See Gordon*, 909 F.3d at 268. This is true of every use of the marks alleged in the complaint but shown most clearly in the NFT marketplaces, where consumers would see the listed NFTs for sale with no indication that these commercial sales were part of a supposed art project, and in Defendants' manipulation of the Etherscan token tracker so that consumers would see the BAYC mark when trying to determine the legitimacy of their NFT. Such consumers would have no reason to know that Ripps separately posted a fig leaf disclaimer to his website rrbayc.com describing his counterfeiting as "satire," OB28 (citing ER-26), or that he proclaimed "LONG LIVE CONCEPTUAL ART" to his Instagram followers as he celebrated making $1 million from counterfeit NFT sales, OB28 (citing ER-229–230).[17]

---

[17] Defendants' claim that their use of the mark to sell counterfeit NFTs was merely "auxiliary" to some expressive work elsewhere (OB29) fails for similar reasons. In *Twentieth Century Fox Television v. Empire Distribution, Inc*., 875 F.3d 1192, 1195

The district court was thus correct to hold that Defendants failed to establish that *Rogers* applies to the alleged uses.

### b. Defendants' use of the marks is not artistically relevant.

For the same reasons, Defendants' use of the marks was not artistically relevant. That is true notwithstanding the typically low bar to establish such relevance, *Gordon*, 909 F.3d at 268, because "[a] mark that has no meaning beyond its source-identifying function is more likely to be used in a way that has 'no artistic relevance to the underlying work whatever,' because the work may be 'merely borrow[ing] another's property to get attention.'" *Twentieth Century Fox Television*, 875 F.3d at 1198 (citations omitted). This is the precise type of use that Yuga Labs alleged—a use in commerce that purposefully misidentified a product to consumers. *See* ER-221–222 (¶¶ 39–40).[18]

### c. Defendants' use of the marks was explicitly misleading.

Finally, Defendants' use was "'explicitly misleading as to source or content.'" *Gordon*, 909 F.3d at 269. In determining whether a use of a mark is explicitly

---

(9th Cir. 2017), the defendant titled its television show "Empire" and used that mark in selling music and other merchandise promoting the show. Here, Defendants' uses of the mark promoted their counterfeit NFT sales, they did not point to Mr. Ripps' social media announcements to his followers.

[18] There is also no need to show that all of Mr. Ripps' criticism of Yuga Labs was a mere pretext to sell NFTs. *See* OB31. The trademark uses at issue are those directed to passing off Defendants' NFTs as genuine.

misleading, the court considers: (1) "the degree to which the junior user uses the mark in the same way as the senior user" and (2) "the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." *Id.* at 270. The use of a mark is explicitly misleading when the mark is used "as the centerpiece of an expressive work itself unadorned with any artistic contribution by the junior user, which may reflect nothing more than an effort to induce the sale of goods or services by confusion or lessen the distinctiveness and thus the commercial value of a competitor's mark." *Id.* at 271 (cleaned up).

Here, again, Defendants used the BAYC marks on the same marketplaces where Yuga Labs' Bored Ape NFTs are found to identify and sell NFTs linking to exactly the same images as the Bored Ape NFTs. ER-205, 217 (¶¶ 2, 33). They used the same unique Yuga Labs number assigned to each Bored Apes NFT to name each of their counterfeit NFTs. ER-227 (¶ 52). And Defendants used the BAYC marks on the Etherscan token-tracker to deceive even consumers who sought to verify the authenticity of their NFTs. ER-219–22 (¶¶ 37–39). All this was sufficient at the pleading stage to allege an explicitly misleading use of the marks.

And, again, this is not overcome by Defendants' extrinsic evidence of their website disclaimer and social media criticism, OB32, neither of which a consumer would have seen when buying an NFT elsewhere. As to the disclaimer, this Court has been "justifiably skeptical of such devices—particularly when exact copying is

42

involved." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006). This is especially true when the disclaimer only accompanies the initial sale. "Shorn of their disclaimer-covered packaging," such goods "display no indication visible to the general public that the items are not associated with [the plaintiff]. The disclaimers do nothing to dispel post-purchase confusion." *Id.* at 1077–78 (reversing order granting summary judgment for defendants where disclaimers denying connection to plaintiff were "not visible once the product is removed from the packaging and in use"); *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 n.6 (9th Cir. 1992) (affirming summary judgment order finding infringement and noting that the defendant's disclaimer had little impact). (And here, Defendants' evidence shows only that the disclaimer appeared on rrbayc.com, not in the several other marketplaces where they sold their NFTs.) At best, Defendants' "disclaimer" and other arguments about why consumers would not be confused—such as the claim that Ripps "ensured" that third-party websites labeled his listings as "part of his project" (OB32)—merely introduce issues for them to prove in their defense. They apply, at most, to initial sales only; they do not entitle Defendants to prevail on the pleadings.

### 2. Defendants failed to establish nominative fair use on the pleadings.

Alternatively, Defendants argue that their use of the marks was a nominative fair use. OB32. In raising a nominative fair use defense, a defendant necessarily

admits trademark use, but asserts that they are referring to the plaintiff's products in some way. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). It requires that (1) the product or service in question is not readily identifiable without use of the trademark; (2) only so much of the mark or marks is used as is reasonably necessary to identify the product or service; and (3) the defendant must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Id.*; *see also Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003). Nominative fair use thus only allows for truthful and non-misleading uses of a mark. *Toyota Motor Sales, USA, Inc., v. Tabari*, 610 F.3d 1171, 1177 (9th Cir. 2010).

Defendants seize on the district court's observation that they are using the BAYC marks to sell their own counterfeit NFT's and not Yuga Labs' (ER-11) to argue that fair use does not require use of the mark to *sell* the plaintiff's product. OB33. That is true in the abstract—a defendant could, for example, use the plaintiff's mark to describe the plaintiff's product in a comparative advertisement for the defendant's product. *See Walking Mountain Prods.*, 353 F.3d at 809. But that makes no difference here, as the district court did not *hold* that fair use is limited to promotion of the plaintiff's product—it commented on the record in this case— and its analysis is correct.

First, Defendants' asserted motive does not change the fact that they labeled their competing products with Yuga Labs' BAYC marks. Doing so to present counterfeits as genuine is a misleading use and not a fair one. *See Tabari*, 610 F.3d at 1177. Defendants argue that Ripps' "art project" would not be possible without using Yuga's marks to reference the Bored Ape collection. OB34. But counterfeiting is nothing like using a mark in a book review or a presentation criticizing a company's services, even if Ripps intended that counterfeiting as a "provocation." *See* OB34 (citing *Applied Underwriters v. Lichtenegger*, 913 F.3d 884, 894 (9th Cir. 2019)).[19]

Second, Defendants did not use the BAYC marks only to the extent reasonably necessary. Instead, they used the entirety of each mark often without modification, ER 217 (¶ 33), and plastered them across social media accounts, NFTs marketplaces, and NFT verification sites without accompanying commentary or criticism. ER-226 (¶ 48). Again, Defendants argue that such "wholesale uses" were essential to Ripps' work (OB35)—but presumably that is because using less of the marks would have made it harder to sell counterfeits. Defendants also point to

---

[19] Moreover, the complaint alleges that BAYC is well-known in the NFT community and beyond (ER-209–11 (¶¶ 19–22)) and thus readily identifiable without wholesale copying of BAYC marks and logos across the internet. As one example, the cover of *Rolling Stone* featured an article with Bored Ape images, titled "*How Four NFT Novices Created a Billion-Dollar Ecosystem of Cartoon Apes*" that evoked the brand without using the marks. *Id.* ¶ 19.

extrinsic evidence that they say proves that Ripps sometimes modified the marks, such as internet posts where he accused Yuga Labs of adopting Nazi symbols. *Id.* But such non-identical uses are ineligible for a nominative fair use defense. *See E.S.S. Entm't 2000*, 547 F.3d at 1099. And in any event, Yuga Labs' claims are not limited to such modified marks.

Third, Defendants used the BAYC marks "prominently and boldly," to market the RR/BAYC NFTs, and thus "suggesting sponsorship." *Brother Recs., Inc.*, 318 F.3d at 908. Here, Defendants argue that Ripps' counterfeiting was an "implied" criticism, OB36 (citing *New Kids on the Block*, 971 F.2d at 308–309), essentially turning the law on its head. Any future defendant could claim fair use by arguing that his counterfeiting expressed a similar message of contempt for the plaintiff mark holder. Again, Defendants point to evidence outside the complaint that Ripps' criticized Yuga Labs in other spaces on the internet. *Id.* For the reasons discussed above, such evidence, even if considered, does not prove as a matter of law that a reasonably prudent consumer would understand Defendants' use of the BAYC marks in their NFT sales listings and other promotions as anything other than designating origin and authenticity.

**B. Yuga Labs sufficiently pled its remaining state law claims.**

Finally, the rest of Yuga Labs' claims at issue in this appeal are sufficiently pled under the Rule 12(b)(6) standard and not subject to striking. The district court denied the motion to dismiss as to these claims, ruling that the issues Defendants had raised implicated fact issues best resolved at summary judgment. ER-12. Defendants argue that the district court erred by failing to provide them with a reasoned opinion about each of these claims. OB37. But any such error relates only to the unappealable motion to dismiss order: having ruled that Defendants failed to show that Yuga Labs asserted claims based on protected activity, the district court did not have to consider the sufficiency of the complaint in connection with the anti-SLAPP motion. In any event, the district court ruled correctly.

*Conversion.* To state a claim for conversion, a plaintiff must allege "right to possession of property" and "wrongful disposition of the property right," *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003), which Yuga Labs has done. ER-311–12. Relying on an unreported district court decision, Defendants argue that conversion claims do not apply to intellectual property. OB37–39 (citing *Meeker v. Meeker*, No. C 02–00741, 2004 WL 2554452, at *6 (N.D. Cal. Nov. 10, 2004)). But this Court held the opposite in *Cohen*, 337 F.3d at 1035, ruling that intangible intellectual property rights such as an internet domain name can be converted. And it has expressly extended that holding to a conversion claim for "a wrongful

appropriation of trademark rights." *Mindys Cosms.*, 611 F.3d at 600–01. Even still, Yuga Labs alleged further facts beyond mere infringement, such as Defendants' public claim to hold their own registration in the "RR/BAYC" mark. ER-225–226 (¶ 46). Yuga Labs has thus properly stated a claim, and the district court did not err in deferring the resolution of related fact issues to summary judgment.

***Intentional interference with prospective economic advantage.*** To state a claim for intentional interference with prospective economic advantage, a plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1108–09 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).

Defendants contend that Yuga Labs has alleged no "wrongful" disruptive act. OB39. This argument fails because Yuga Labs adequately pled both its other state-law claims as argued in this appeal, as well as Lanham Act violations for false designation of origin, false advertising, and cybersquatting that are still proceeding at the district court. *See* ER-242 ¶¶ 141, 145.

Defendants also contend that to allege disruption of an economic relationship, a plaintiff must allege a specific event like a lost customer contract or a failed negotiation. OB40. But Defendants' cited authority, *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008), did not so hold. In that case, the parties were competing producers of karaoke records, and the plaintiff alleged that defendants had not obtained all necessary copyright licenses but marketed their records as authorized. *Id.* at 1141. This Court affirmed the dismissal of the interference claim based on these allegations when the plaintiff had alleged only that its "ongoing business and economic relationships with Customers have been disrupted." *Id.* at 1151. It held that such an allegation was insufficient because it did not give rise to any inference of disruption (*id.*)—i.e., the plaintiff had pled no relationships that would suffer from defendants' failure to secure the licenses. While the Court suggested a lost contract or failed negotiation as examples of allegations that would be sufficient, it did not hold that such allegations were required. *See id.*

In any case, here Yuga Labs alleged facts about its economic relationships that carried a probability of future economic benefit, including past purchasers of Bored Ape NFTs who are likely to purchase additional NFTs or resell (ER-242 at ¶¶ 141–42), celebrities who have publicly announced holding a Bored Ape NFT (ER-210 at ¶ 21 (listing examples); and brands who have worked with Bored Ape Yacht Club to create clothing and entertainment experiences (ER-211 at ¶ 22 (listing

examples)). *See also* ER-208 at ¶¶ 16–17; ER-210–211 at ¶ 20. And Yuga Labs alleged how Defendants disrupted these economic relationships through their counterfeiting. *See*, *e.g.*, ER-226 at ¶ 48; ER-244 at ¶ 157. These allegations are specific and far from those at issue in Defendants' cited authority *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (1996), where the plaintiff had alleged that it had an economic relationship with "the entire market of all possible but as yet unidentified buyers for its property." *Id.* at 527. Yuga Labs' allegations at minimum allow favorable inferences about which individuals it has economic relationships with, how Yuga Labs has had and was likely to continue having economic benefit from those relationships, and how Defendants disrupted those relationships. *See Sybersound Records*, 517 F.3d at 1151. This is sufficient to state a claim.

**Negligent interference with prospective economic advantage.** Defendants attack this claim on the same bases as the intentional interference claim (OB40–41), and those arguments fail for the same reasons. Defendants also contend that because Yuga Labs alleged that the parties are "competitors," they owe Yuga Labs no duty of care with respect to prospective customers and thus could not have been negligent. *Id.* (citing ER-231, 232, 239). This argument fails as well.

First, Defendants abandoned this argument by failing to respond to Yuga Labs' arguments in opposition (SER-51; SER-10–11), thus failing to preserve it for

appeal. *See Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 883 (9th Cir. 2022) (failure to respond to an argument in a reply brief "is a textbook case of abandonment"); *Harik v. Cal. Teachers Ass'n,* 326 F.3d 1042, 1052 (9th Cir. 2003) (issues abandoned in the district court will not be considered on appeal).

Second, a plaintiff may plead in the alternative, and thus Yuga Labs' allegations of competition by Defendants in connection with their trademark infringement and false advertising does not establish that fact for purposes of other claims. Fed. R. Civ. P. 8(d); *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.,* 252 F. App'x 123, 126 (9th Cir. 2007) ("in light of Rule 8(e)(2)'s liberal pleading policy, a pleading 'should not be construed as an admission against another alternative or inconsistent pleading in the same case.'") (citation omitted).[20]

Third, rather than the categorical rule Defendants offer, California courts apply a more fact-dependent inquiry to determine whether a defendant owes a plaintiff a duty of care. "Whether a duty is owed is simply a shorthand way of

---

[20] District courts in this circuit therefore regularly deny motions to dismiss negligent interference claims in cases between two competitors, including where the plaintiff is alleging trademark infringement. *See*, *e.g.*, *Vera Mona, LLC v. Dynasty Grp. USA LLC*, No. EDCV 20-2615, 2021 WL 3623297, at *4 (C.D. Cal. Apr. 15, 2021); *Panavision Int'l, L.P. v. Toeppen*, No. 96–3284, 1996 WL 768036, at *3 (C.D. Cal. Nov. 27, 1996); *Code Rebel v. Aqua Connect, Inc.*, No. CV 13–4539, 2013 WL 5405706, at *7 (C.D. Cal. Sept. 24, 2013) ("as [p]laintiff's direct competitor, [p]laintiff has alleged sufficient facts to show that [d]efendant knew, or should have known, that if it did not act with due care, its actions would interfere with those relationships.").

phrasing what is 'the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979) (quoting *Dillon v. Legg*, 68 Cal.2d 728, 734 (1968)).  This analysis considers six factors, none of which concern whether the parties are competitors.  *Id.* at 804 ("(1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to defendant's conduct, and (6) the policy of preventing future harm.").  Defendants have not addressed any of these factors, despite citing *J'Aire* in their brief (OB41), and accordingly have not shown that Yuga Labs' negligent interference claim should have been dismissed at the pleading stage under its framework.[21]  Again, the district court did not err in deferring these issues to summary judgment.

---

[21] *Stolz v. Wong Comm'ns. LP*, 25 Cal. App. 4th 1811, 1825 (1994) is not to the contrary.  There, the plaintiff and the defendants had submitted two competing applications to the FCC for a license to the same radio broadcast frequency.  *Id.* at 1815–16.  The court held that there was no claim for interference with prospective advantage, even though only one applicant could win the license. No party held a property right in a license, and the purpose of the FCC Act was to protect the public, not to protect applicants from competition.  *Id.* at 1818–19.

## CONCLUSION

For the foregoing reasons, the Court should affirm the ruling of the district court.

Dated: April 20, 2023

Respectfully submitted,

FENWICK & WEST LLP


By: _/s/ Todd R. Gregorian_

Todd R. Gregorian

*Attorneys for Plaintiff-Appellee Yuga Labs, Inc.*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the undersigned counsel for Plaintiff-Appellee Yuga Labs, Inc. is not aware of any related cases pending before this Court.

Dated: April 20, 2023   Respectfully submitted,

        FENWICK & WEST LLP


        By: _/s/ Todd R. Gregorian_
           Todd R. Gregorian

        *Attorneys for Plaintiff-Appellee*
        *Yuga Labs, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-56199

I am the attorney or self-represented party.

**This brief contains** | 12,705 | **words,** including | 190 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Todd Gregorian | **Date** | April 20, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          *Rev. 12/01/22*

**ADDENDUM**
**OF PERTINENT STATUTORY PROVISIONS**

**ADDENDUM**
**TABLE OF CONTENTS**

Cal. Civ. Proc. Code § 425.16 ................................................................. A-1

Cal. Civ. Proc. Code § 425.17 ................................................................. A-5

**Cal. Civ. Proc. Code § 425.16**

**(a)**     The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

**(b)**     **(1)**     A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

**(2)**     In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

**(3)**     If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of

A-1

the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

**(c)** **(1)** Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

**(2)** A defendant who prevails on a special motion to strike in an action subject to paragraph (1) shall not be entitled to attorney's fees and costs if that cause of action is brought pursuant to Section 11130, 11130.3, 54960, or 54960.1 of the Government Code, or pursuant to Chapter 2 (commencing with Section 7923.100) of Part 4 of Division 10 of Title 1 of the Government Code. Nothing in this paragraph shall be construed to prevent a prevailing defendant from recovering attorney's fees and costs pursuant to Section 7923.115, 11130.5, or 54960.5 of the Government Code.

**(d)** This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

**(e)** As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

**(f)** The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.

**(g)** All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed

motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

**(h)**    For purposes of this section, "complaint" includes "cross-complaint" and "petition," "plaintiff" includes "cross-complainant" and "petitioner," and "defendant" includes "cross-defendant" and "respondent."

**(i)**    An order granting or denying a special motion to strike shall be appealable under Section 904.1.

**(j)**    **(1)**    Any party who files a special motion to strike pursuant to this section, and any party who files an opposition to a special motion to strike, shall, promptly upon so filing, transmit to the Judicial Council, by email or facsimile, a copy of the endorsed, filed caption page of the motion or opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any order issued pursuant to this section, including any order granting or denying a special motion to strike, discovery, or fees.

**(2)**    The Judicial Council shall maintain a public record of information transmitted pursuant to this subdivision for at least three years, and may store the information on microfilm or other appropriate electronic media."

**Cal. Civ. Proc. Code § 425.17**

**(a)**  The Legislature finds and declares that there has been a disturbing abuse of Section 425.16, the California Anti-SLAPP Law, which has undermined the exercise of the constitutional rights of freedom of speech and petition for the redress of grievances, contrary to the purpose and intent of Section 425.16. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process or Section 425.16.

**(b)**  Section 425.16 does not apply to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist:

**(1)**  The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision.

**(2)**  The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.

**(3)**  Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

**(c)**    Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:

> **(1)**    The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.

> **(2)**    The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue.

**(d)**    Subdivisions (b) and (c) do not apply to any of the following:

**(1)**     Any person enumerated in subdivision (b) of Section 2 of Article I of the California Constitution or Section 1070 of the Evidence Code, or any person engaged in the dissemination of ideas or expression in any book or academic journal, while engaged in the gathering, receiving, or processing of information for communication to the public.

**(2)**     Any action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation.

**(3)**     Any nonprofit organization that receives more than 50 percent of its annual revenues from federal, state, or local government grants, awards, programs, or reimbursements for services rendered.

**(e)**     If any trial court denies a special motion to strike on the grounds that the action or cause of action is exempt pursuant to this section, the appeal provisions in subdivision (i) of Section 425.16 and paragraph (13) of subdivision (a) of Section 904.1 do not apply to that action or cause of action.