*No. 22-56199*

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

YUGA LABS, INC.,

*Plaintiff-Appellee,*

v.

RYDER RIPPS, JEREMY CAHEN,

*Defendants-Appellants,*

*and*

DOES 1-10,

*Defendants.*

---

**On Appeal from the United States District Court
for the Central District of California, No. 2:22-cv-04355 (Walter, J.)**

---

**SUPPLEMENTAL EXCERPTS OF RECORD
Volume 1 of 1**

---

ERIC BALL
KIMBERLY CULP
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
650.988.8500

*Attorneys for Plaintiff-Appellee
Yuga Labs, Inc.*

TODD R. GREGORIAN
ETHAN M. THOMAS
MARY MORNAY GRIFFIN
RINA PLOTKIN
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
415.875.2300

**INDEX**

| Document | Dist. Ct. Dkt. No. | Page |
|---|---|---|
| Defendants' Reply in Support of Anti-SLAPP Motion to Strike and Motion to Dismiss (filed October 24, 2022) | 58 | SER3 |
| Yuga Labs, Inc.'s Opposition to Defendants' Motion to Strike and Dismiss (filed October 17, 2022) | 53 | SER22 |
| Yuga Labs, Inc.'s Objections to Defendants' Evidence Filed with Defendants' Motion to Strike and Dismiss (filed October 17, 2022) | 54 | SER54 |
| Defendants' Notice of Motion; Anti-SLAPP Motion to Strike and Motion to Dismiss (filed October 3, 2022) | 48 | SER109 |

1  Louis W. Tompros (*pro hac vice*)
   louis.tompros@wilmerhale.com
2  Monica Grewal (*pro hac vice*)
   monica.grewal@wilmerhale.com
3  Scott W. Bertulli (*pro hac vice*)
   scott.bertulli@wilmerhale.com
4  **WILMER CUTLER PICKERING**
      **HALE AND DORR LLP**
5  60 State Street
   Boston, MA 02109
6  Telephone: (617) 526-6000
   Fax: (617) 526-5000
7
   Derek Gosma (SBN 274515)
8  derek.gosma@wilmerhale.com
   Henry Nikogosyan (SBN 326277)
9  henry.nikogosyan@wilmerhale.com
   **WILMER CUTLER PICKERING**
10     **HALE AND DORR LLP**
   350 South Grand Ave., Suite 2400
11 Los Angeles, CA 90071
   Telephone: (213) 443-5300
12 Fax: (213) 443-5400

13 Attorneys for Defendants
   *Ryder Ripps and Jeremy Cahen*
14

15                 **UNITED STATES DISTRICT COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

17                       **WESTERN DIVISION**

18

19
                                          | Case No. 2:22-cv-04355-JFW-JEM
20 Yuga Labs, Inc.,                       |
                                          | **REPLY IN SUPPORT OF ANTI-**
21                      Plaintiff,        | **SLAPP MOTION TO STRIKE AND**
                                          | **MOTION TO DISMISS**
22                                        |
23          v.                            |
                                          |
24 Ryder Ripps, Jeremy Cahen, Does 1-10,  | Hearing Date: Nov. 7, 2022, at 1:30p.m.,
25                                        | Pursuant to Standing Order ¶ 5(a)
                                          | Judge: Hon. John F. Walter
26                      Defendants.       |
27
28

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................. 1

II.    ARGUMENT........................................................................................ 2

       A.    The Entirety of the RR/BAYC Project Is Protected Speech...................... 2

       B.    Yuga's Claims Fail the *Rogers* Test ........................................ 4

       C.    Defendants' Conduct Is Protected as Nominative Fair Use .................... 6

       D.    Yuga's Cybersquatting Claim Also Fails The *Rogers* Test.................... 8

       E.    Yuga's False Advertising Claim Is Insufficiently Pleaded...................... 8

       F.    Yuga's Dropped Unjust Enrichment Claim Should Be Stricken.............. 9

       G.    Yuga's Conversion Claim Is Not Cognizable............................................ 9

       H.    Yuga's Intentional and Negligent Interference Claims Are
             Deficient ................................................................................. 10

       I.     Yuga's Substantive Arguments in Its Objections to Defendants'
             Exhibits Should Be Rejected.................................................... 11

III.   CONCLUSION ................................................................................. 12

1

## TABLE OF AUTHORITIES

2

Page(s)

3

4

**Cases**

5

*Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884 (9th Cir. 2019). ............. 6, 7

6

*Battle v. Taylor James, LLC*, No. 21-cv-07915-FWS-KES, 2022 WL 2162930

7

(C.D. Cal. June 15, 2022) ............................................................................. 3

8

9

*Brown v. Electronic Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013) ................................... 8

10

*Calista Enterprises Ltd. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099 (9th Cir.

11

2014) ............................................................................................................ 8

12

13

*Chanel, Inc. v. Hsio Yin Fu*, No. 16-cv-02259, 2017 WL 1079544 (N.D. Cal.

14

Mar. 22, 2017) ............................................................................................. 4

15

*Dr. Suess Enteprises, L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020) ............... 1

16

17

*E.S.S. Enterntainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th

18

Cir. 2008) ..................................................................................................... 8

19

*Garcia v. Allstate Ins*, 1:12-cv-00609-AWI-SKO, 2012 WL 4210113 (E.D. Cal.

20

Sep. 18, 2012) ............................................................................................ 12

21

22

*Givenchy S.A. v. BCBG Max Azria Group., Inc.*, No. 10-cv-08394, 2012 WL

23

3072327 (C.D. Cal. Apr. 25, 2012) ............................................................. 4

24

*Gordon v. Drape Creative, Inc*, 909 F.3d 257 (9th Cir. 2018) .................................... 4

25

26

*Gotham Inurance. Co. v. Shasta Techs., LLC*, No. 13-cv-3810-PJH, 2014 WL

27

1347766 (N.D. Cal. April 3, 2014) ............................................................. 12

28

-ii-

*Halle Proerties, L.L.C. v. Bassett,* No. 06-cv-7694-ABC-JWJ, 2007 WL
    2344931 (C.D. Cal. Aug. 14. 2007) ................................................... 11

*Hermes International v. Rothschild*, No. 22-CV-384 (JSR), 2022 WL 1564597
    (S.D.N.Y. May 18, 2022) ....................................................................... 5

*Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988 (9th Cir. 2018) ........................... 3

*Kremen v. Cohen,* 337 F.3d 1024 (9th Cir. 2003) ........................................ 9

*Nam v. Alpha Floors, Inc.*, No. 216CV6810JLSJCGX, 2017 WL 11635994
    (C.D. Cal. Jan. 4, 2017) ....................................................................... 10

*New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS, 2014 WL
    2988271 (C.D. Cal. June 30, 2014) ...................................................... 11

*Scottsdale Ins. Co. v. Grant & Weber*, No. 2:16-cv-00610 (C.D. Cal. Feb 17,
    2017) (Dkt. Nos. 106, 107) .................................................................. 12

*Settimo Association. v. Environ Sytem, Inc.*, 14 Cal. App. 4th 842 (1993) ................. 10

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) .................... 10

*Tatiana Sauquillo v. California Highway Patrol*, No. 2:19-cv-07651 (C.D. Cal.
    Sep 11, 2019) (Dkt. No. 11) ................................................................. 12

*Tensor Law P.C. v. Rubin*, 2019 WL 3249595 (C.D. Cal. April 10, 2019) ................. 12

*Tethys Bioscience, Inc. v. Mintz*, No. 09–5115, 2010 WL 2287474 (N.D. Cal.
    June 4, 2010) ........................................................................................ 10

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ................................................ 3

Case No. 2:22-cv-04355-JFW-JEM        REPLY ISO MOTION TO STRIKE

*Vaccarino v. Midland Nat. Life Ins. Co.*, No. 2:11-CV-05858-CAS, 2014 WL
    572365 (C.D. Cal. Feb. 3, 2014) ............................................................... 11

*Word Aflame Tabernacle, Inc. v. City of La Habra Heights*, No. 2:20-cv-09899
    (C.D. Cal. Nov 5, 2021) (Dkt. Nos. 88, 90, 91) ..................................... 12

-iv-

I.   **INTRODUCTION**

Trademark law cannot be used to silence free speech.  The First Amendment limits a trademark holder's right to muffle its critics, and to survive dismissal under the *Rogers* test, Yuga would have had to plead that Mr. Ripps's and Mr. Cahen's use of its alleged marks either is "not artistically relevant" or "explicitly misleads consumers."  *Dr. Suess Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020).  Yuga's Opposition Brief confirms that it did not and cannot do either: its effort to contest the artistic relevance of its marks to the RR/BAYC project is weak, and it fails to identify even a *single consumer* that has ever been misled.

Instead, Yuga's Opposition Brief tries to save its futile trademark claims (Claims 1-7) by artificially separating the *sale* of RR/BAYC NFTs from Defendants' free speech activity associated with the RR/BAYC *project*.  But artwork—especially performance and conceptual art—cannot be understood divorced from its context.  As the allegations of the Complaint make clear, the *sale* of RR/BAYC NFTs *was* part of Defendants' protected speech.  In fact, Yuga itself alleges that Mr. Ripps described the RR/BAYC project as "satire" and encouraged collectors to purchase RR/BAYC project NFTs specifically to protest Yuga.  Dkt. No. 1. ¶¶ 5, 56, 72, 116.  The Complaint, through its incorporation of the https://rrbayc.com website (Dkt. No 1 ¶¶ 34, 36, 48, 81), also explains that "RR/BAYC uses satire and appropriation to protest and educate people regarding The Bored Ape Yacht Club and the framework of NFTs" and that "[t]he work is an extension of and in the spirit of other artists who have worked within the field of appropriation art."  Yuga cannot escape the *Rogers* test by separating RR/BAYC sales from the overall RR/BAYC project—the sales were an integral part of the artistic project.

Yuga's Opposition Brief also attempts to dodge nominative fair use by claiming that the Defendants improperly used exact copies of the BAYC digital images.  Dkt. No. 23 at 19.  But Yuga ignores that Defendants' commentary required reference to

-1-

1   those exact images to express that NFTs are not themselves digital images, but rather

2   are digital tokens that can point to digital images—a point that Mr. Ripps has

3   emphasized in his work for years.  Had the RR/BAYC project used different images, it

4   could not have made the point that Yuga is not selling digital images when it sells

5   BAYC NFTs (and of course, if Yuga's concern was that Mr. Ripps and Mr. Cahen

6   were using copies of protected images, their remedy would be in copyright law, not a

7   trademark action.)  All claims should be dismissed.

8   **II.   ARGUMENT**

9       **A.   The Entirety of the RR/BAYC Project Is Protected Speech**

10        The allegations in the Complaint contradict Yuga's argument that that the

11  RR/BAYC project has "no expressive content or transformation" and is unprotected

12  "commercial speech."  Dkt. No. 53 at 7, 10.  Yuga can only reach this conclusion by

13  artificially severing the ***sale*** of RR/BAYC NFTs from the public commentary by Mr.

14  Ripps and Mr. Cahen in the RR/BAYC ***project***.  But the RR/BAYC project as a

15  whole—which includes the sale of RR/BAYC NFTs—was created as an act of protest

16  and criticism of Yuga, as the Complaint itself alleges.  For example, the Complaint

17  alleges that Mr. Ripps explained in a May 25th tweet "how the website rrbayc.com

18  works" stating that you pick an ape "it will get transferred to your wallet, Then you

19  can say fuck off to @BoredApeYC!"  Dkt. No. 1 ¶ 53.  This allegation shows that the

20  ***sale*** of the RR/BAYC NFTs—the "transfer[] to your wallet"—was not a separate act

21  distinct from the protest against Yuga but was inextricably intertwined with it.

22        The Complaint further alleges that Mr. Ripps has described RR/BAYC as

23  "satire," stated that he "would like to illuminate what nfts are, and show bayc for what

24  it really is," and has encouraged collectors to purchase RR/BAYC NFTs to protest

25  Yuga's racist messages and imagery.  Dkt. No. 1 ¶¶ 3, 5, 49, 56, 57, 72, 116.  The

26  Complaint also incorporates by reference https://rrbayc.com by repeatedly discussing

27  and including hyperlinks to the webpage.  *See Khoja v. Orexigen Therapeutics*, Inc.,

28

Case No. 2:22-cv-04355-JFW-JEM            REPLY ISO MOTION TO STRIKE

1  899 F.3d 988, 1007 (9th Cir. 2018) (affirming incorporation by reference of a

2  document repeatedly referenced in the complaint); *Battle v. Taylor James, LLC*, No.

3  21-cv-07915-FWS-KES, 2022 WL 2162930, at *6 (C.D. Cal. June 15, 2022) (holding

4  that a hyperlink in a complaint incorporated the linked document); *United States v.*

5  *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a

6  complaint, it may be incorporated by reference into a complaint").  The webpage

7  explains:

8  > Through the process of "re-minting", the original BAYC images are
9  > recontextualized – illuminating truths about their origins and meanings as
10 > well as the nature of Web3 – the power of NFTs to change meaning,
   > establish provenance and evade censorship.

11 > RR/BAYC uses satire and appropriation to protest and educate people
12 > regard The Bored Ape Yacht Club and the framework of NFTs.  The work
13 > is an extension of and in the spirt of other artists who have worked within
   > the field of **appropriation art**.

14
15 These allegations show that the sale RR/BAYC NFTs and the public commentary of

16 the RR/BAYC project are inextricably linked.   Specifically, The RR/BAYC project is

17 performance and conceptual art that uses the ***sale*** of unique NFTs to recontextualize

18 BAYC images in a manner that sheds light on Yuga's racist and neo-Nazi messaging.

19     Yuga also attempts to drive a wedge between the RR/BAYC's founders,

20 suggesting that somehow only Mr. Ripps and not Mr. Cahen engaged in protected

21 speech.  Dkt. No. 53 at 10.  But again, this contradicts the allegations of the

22 Complaint.  Yuga has alleged that "Ripps, Cahen, and Does 1-5 … promote ***their***

23 RR/BAYC NFT collection" and that "in May 2022, Ripps, Cahen, ***and*** Does 1-5

24 created a website that allows users 'reserve' RR/BAYC NFTS"—this is the same

25 website (https://rrbayc.com) that explains the context behind the satirical RR/BAYC

26 project.  Dkt. No. 1 at ¶¶ 33, 34.  According to the allegations of the Complaint, Mr.

27 Cahen undoubtedly participated in the free speech activity alongside Mr. Ripps.

28

-3-

Case No. 2:22-cv-04355-JFW-JEM                    REPLY ISO MOTION TO STRIKE

1    Last, Yuga argues that its silencing of First Amendment protected speech is
2    somehow superfluous to this litigation, because Yuga is solely interested in enforcing
3    trademark rights.  Dkt. No. 53 at 11.  But, as discussed in detail below, the
4    enforcement of trademark rights stops at the door of the First Amendment—that is the
5    point of the *Rogers* test and the nominative fair use doctrine.  Moreover, Yuga's
6    argument that this lawsuit is about commercial protection flies in the face of its actual
7    conduct: there are countless entities that profit from counterfeit BAYC or Yuga NFTs.
8    *See* Dkt. No. 48-2.  But Yuga has not sued any actual knock-offs.  Instead, it sued
9    only Mr. Ripps and Mr. Cahen, who have been publicly criticizing Yuga's use of
10   racist and neo-Nazi messages and imagery.

11        **B.    Yuga's Claims Fail the *Rogers* Test**

12        Yuga's trademark infringement claims (Claims 1-7) are fundamentally flawed
13   because they do not and cannot allege that the underlying conduct was not artistically
14   relevant.  Dkt. No. 53 at 13.  To the contrary, as explained above, the Complaint
15   confirms that the RR/BAYC project is conceptual art aimed at criticizing Yuga's use
16   of racist messages and imagery.  These allegations go well beyond the *Rogers* test's
17   "above zero" requirement for artistic relevance.  *Gordon v. Drape Creative, Inc*, 909
18   F.3d 257, 268 (9th Cir. 2018).

19        Despite the Complaint's repeated allegations of artistic expression, Yuga argues
20   that the RR/BAYC project "is no more artistic than the sale of a counterfeit handbag,
21   making the *Rogers* test inapplicable."  Dkt. No. 53 at 9.  But the handbag cases that
22   Yuga cites, such as *Chanel, Inc. v. Hsio Yin Fu*, No. 16-cv-02259, 2017 WL 1079544,
23   at *4 (N.D. Cal. Mar. 22, 2017) and *Givenchy S.A. v. BCBG Max Azria Group., Inc.*,
24   No. 10-cv-08394, 2012 WL 3072327, at *6 n.8 (C.D. Cal. Apr. 25, 2012), are
25   inapposite.  These handbag cases involve garden-variety counterfeiting operations
26   where there was no credible claim of artistic expression.  This is not such a case.
27   Here, the Defendants include a well-known artist, and their work has triggered
28

-4-

1  widespread public commentary about Yuga's use of racist and neo-Nazi messages and

2  imagery and the nature of an emerging technology (NFTs).

3      The Complaint also fails to plead that the RR/BAYC project is explicitly

4  misleading.  Rather, Yuga concedes that use of a mark is ***not*** explicitly misleading

5  when "the junior user employed the mark in ***different contexts*** and markets than the

6  senior users."  Dkt. No. 53 at 14 (emphasis added).  Context matters.  As explained

7  earlier, the Complaint alleges that Mr. Ripps and Mr. Cahen created RR/BAYC to

8  "show bayc for what it really is" and to allow collectors to say "fuck off to

9  @BoredApeYC!"  Dkt. No. 1 ¶¶ 53, 57.  The Complaint also admits that Mr. Ripps

10  and Mr. Cahen primarily marketed and sold RR/BAYC NFTs on their Twitter pages,

11  https://rrbayc.com, and Foundation.app—none of which are marketplaces that sell any

12  Yuga products and (but for Foundation.app) are replete with content critical of Yuga.

13  *See, e.g., id.* ¶¶ 34, 48, 53, 57.  These allegations contradict a claim of explicitly

14  misleading conduct.

15      Yuga's reliance on the *Hermès* decision (Opp at 15) is likewise unavailing

16  because it likewise ignores the context of the RR/BAYC project.  In *Hermès*, the

17  defendant made statements ***praising*** the Hermès brand, typical of those made when

18  parties are working collaboratively.  *Hermes Int'l v. Rothschild*, No. 22-CV-384

19  (JSR), 2022 WL 1564597, at \*6 (S.D.N.Y. May 18, 2022).  As a result, the *Hermès*

20  complaint alleged multiple accounts of explicitly misleading use of the mark,

21  including consumers posting that they believed there was an affiliation between

22  Hermès and the NFT collection, and several news articles, including in *Elle* and the

23  *New York Post*, that reported (incorrectly) the NFTs were made in partnership with

24  Hermès.  *Id.* at \*2.  Here, by contrast, the Complaint alleges that the RR/BAYC

25  project has been heavily critical of Yuga (Dkt. No. 1 ¶¶ 3, 5, 49, 56, 57, 72), which

26  precludes a reasonable consumer from believing that Yuga partnered with Mr. Ripps

27  and Mr. Cahen for the RR/BAYC collection.  Put more simply: who could ever

28

Case No. 2:22-cv-04355-JFW-JEM                    REPLY ISO MOTION TO STRIKE

1  believe that Yuga was sponsoring the artists making "accusations of racism" and

2  encouraging people to "say fuck off to @BoredApeYC!"?  Dkt. No. 1 ¶¶ 3, 49, 53.

3  And of course, the Complaint also fails to allege even a single instance of actual

4  confusion; in fact, it fails to mention actual confusion entirely.

5      Finally, Yuga concedes that that collectors of RR/BAYC NFTs would sign a

6  disclaimer that explained that RR/BAYC NFTs have no association with Yuga.  Dkt.

7  No. 53 at 16.  This is an admission by Yuga that Defendants acted in good faith and

8  explained to the public the context of RR/BAYC NFTs, how they criticize Yuga, and

9  that they point to the same digital images as BAYC NFTs to educate the public about

10  the framework of NFTs (that NFTs are not digital images).  Yuga tries to fix this hole

11  in its Complaint by stating for the first time in their Opposition Brief that the

12  RR/BAYC NFTs "explicitly misled other consumers through both initial interest and

13  post-sale confusion."  Dkt. No. 53 at 7.  But the Complaint makes no such allegation.

14      **C.    Defendants' Conduct Is Protected as Nominative Fair Use**

15      Yuga argues that it is improper to address nominative fair use at the pleadings

16  stage.  Yuga is wrong.  It is well-established that trademark claims can be dismissed

17  pursuant to Rule 12(b)(6) under nominative fair use.  *Applied Underwriters, Inc. v.*

18  *Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019) (affirming dismissal of complaint due

19  to nominative fair use).  The Ninth Circuit held in *Applied Underwriters* that dismissal

20  under nominative fair use was appropriate when (1) defendants were critical of

21  plaintiff's products, (2) defendants used a disclaimer, and (3) defendants used

22  plaintiff's mark in a manner that identified the defendants.  *Id*.

23      The allegations in this case plainly meet all three elements of the *Applied*

24  *Underwriters* test.  With respect to the first factor (criticism), the Complaint itself

25  confirms that RR/BAYC is critical of Yuga by alleging that it is "satire," meant to

26  "show bayc for what it really is," that Mr. Ripps has made "accusations of racism,"

27  and that the project allows collectors to say, "fuck off to @BoredApeYC!"  Dkt. No. 1

28

-6-

1    ¶¶ 5, 49, 53, 57.  As to the second factor (disclaimer), the incorporated website

2    https://rrbayc.com explains that RR/BAYC is not a Yuga affiliated project, and Yuga

3    admits that collectors were required to acknowledge a disclaimer before purchasing

4    RR/BAYC NFTs on https://rrbayc.com.  And for the third factor (identification), the

5    Complaint alleges that that the RR/BAYC project was carried out in a manner that

6    identified Defendants, such as on their personal Twitter and Instagram accounts, and

7    the website https://rrbayc.com.  Dkt. No. 1 ¶¶ 5, 49, 57.  Even the token tracker that

8    the Complaint incorporates by discussing and hyperlinking (https://etherscan.io/addre

9    ss/0x2ee6af0dff3a1ce3f7e3414c52c48fd50d73691e) identifies "*ryder-ripps.eth" as

10   the creator.  Compl. ¶ 39; Dkt. No. 48 at 16.  And of course, the "RR" in the name of

11   the project are Mr. Ripps' own initials.

12         Nor is Defendants' use of Yuga's exact marks[1] an issue.  As alleged in the

13   Complaint, the RR/BAYC project uses satire to criticize Yuga.  That criticism cannot

14   exist without referencing the BAYC collection by name, and the Ninth Circuit has

15   recognized that nominative fair use protects this kind of referential use of trademarks

16   so that defendants can identify specific brands or products without using descriptive

17   phrases.  *Applied Underwriters,* 913 F.3d at 894.

18         Further, the RR/BAYC project necessarily requires using pointers to digital

19   images that include the entirety of Yuga's Nazi-derived logo.  As explained on

20   https://rrbayc.com, one of the purposes of RR/BAYC was to "educate[] people

21   regarding . . . the framework of NFTs."  The RR/BAYC project shows that NFTs offer

22   no exclusivity with associated digital resources by using verifiably unique NFTs to

23   point to the same (publicly available) digital images as the BAYC NFTs.  Had

24   Defendants altered the digital images (and the marks contained therein) in any way,

25   the RR/BAYC project would no longer expose that Yuga is not selling digital images

26

27   [1] Notably, since filing its Complaint, Yuga has abandoned its application for federal

28   registration of the asserted mark APE. (Dkt. No. 1 ¶ 27).

-7-

1    when it sells BAYC NFTs.  In a similar vein, pointers to the BAYC digital images,

2    and the Yuga marks contained therein, were necessarily used to identify the BAYC

3    collection as the subject of this critique and to recontextualize "the original BAYC

4    images … illuminating truths about their origins and meanings."  Dkt. No. 48-4

5    (excerpt from https://rrbayc.com webpage).

6         **D.**    **Yuga's Cybersquatting Claim Also Fails The *Rogers* Test**

7         Contrary to Yuga's position, the Court can and should apply the *Rogers* test to

8    the cybersquatting claim at issue here.  The Ninth Circuit has held that the *Rogers* test

9    "requires courts to construe the Lanham Act to apply to artistic works only where the

10   public interest in avoiding consumer confusion outweighs the public interest in free

11   expression." *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc*., 547 F.3d 1095, 1099

12   (9th Cir. 2008) (internal quotation omitted).  Thus, the root of the test is a balancing of

13   First Amendment protections against "the public's right to be free from consumer

14   confusion…." *Brown v. Elec. Arts, Inc*., 724 F.3d 1235, 1242 (9th Cir. 2013).  The

15   *Rogers* test, therefore, applies to any trademark-related claims that involve consumer

16   confusion, and cybersquatting is undisputedly one of those claims. *See Calista*

17   *Enters. Ltd. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099, 1031 (9th Cir. 2014)

18   (holding that cybersquatting claims require likelihood of confusion).

19        **E.**    **Yuga's False Advertising Claim Is Insufficiently Pleaded**

20        Yuga fails to allege any misleading representations of fact to support its false

21   advertising claim.  Instead, Yuga's Opposition Brief offers the conclusory assertion

22   that Defendants "advertised their copycat 'Ryder Ripps Bored Ape Yacht Club' as

23   equivalent to the Bored Ape Yacht Club" without providing any statements or

24   supporting allegations.  Dkt. No. 53 at 21.  And without presenting any statements

25   where Defendants equated Defendants' artwork to Bored Ape Yacht Club, Yuga

26   further argues that these "false equivalences" could deceive reasonable consumers.

27   Dkt. No. 53 at 21.

28

1    Yuga's Opposition Brief conveniently ignores instances where Defendants
2    expressly distinguished between RR/BAYC and Bored Ape Yacht Club.  The
3    Complaint alleges that Mr. Ripps set up a website for his RR/BAYC NFT collection
4    (https://rrbayc.com) and, on its main page, informed potential consumers that the
5    RR/BAYC project is satirical and uses appropriation to criticize Yuga and shed light
6    on nature of NFTs.  Dkt. No. 1 ¶¶ 34, 48.  The Complaint further alleges that Mr.
7    Ripps explained in a May 25th tweet that collectors can purchase RR/BAYC NFTs on
8    his website to protest Yuga's use of racist and neo-Nazi messaging.  Dkt. No. 1 ¶ 53.
9    Yuga also admits that the website required consumers to acknowledge a disclaimer
10   explaining that RR/BAYC NFTs are not associated with Yuga.  Dkt. No. 53 at 16.
11   Thus, according to the allegations in the Complaint, Mr. Ripps and Mr. Cahen's
12   representations regarding the nature of the RR/BAYC artwork were not misleading.

13        **F.    Yuga's Dropped Unjust Enrichment Claim Should Be Stricken**

14        Because Yuga has stated in its Opposition Brief that it has withdrawn its unjust
15   enrichment claim (but has not actually amended its Complaint), Defendants' motion to
16   strike it on anti-SLAPP grounds is unopposed and should be granted.

17        **G.    Yuga's Conversion Claim Is Not Cognizable**

18        Yuga admits that its conversion claim rests on the premise that Defendants have
19   misappropriated Yuga's trademarks.  But as outlined in Defendants' initial brief and
20   herein, Yuga has failed to plead an actionable claim of trademark infringement and,
21   therefore, failed to establish a wrongful disposition of property necessary for
22   conversion.  *Kremen v. Cohen,* 337 F.3d 1024, 1029 (9th Cir. 2003) (to state a claim
23   for conversion you must allege "right to possession of property, wrongful disposition
24   of the property right and damages.") (internal citation and quotation omitted).
25        But even if Yuga had pleaded an actionable trademark infringement claim, its
26   conversion claim should still be dismissed.  Although courts have "split on whether
27   [conversion] is a cognizable claim" in the trademark context (*Nam v. Alpha Floors,*

28

-9-

1   *Inc.*, No. 216CV6810JLSJCGX, 2017 WL 11635994, at *8 (C.D. Cal. Jan. 4, 2017)),

2   the Court here should follow those cases that have found that the application of

3   conversion to intangible property "should not be expanded to displace other, more

4   suitable law." *Tethys Bioscience, Inc. v. Mintz*, No. 09–5115, 2010 WL 2287474, at

5   *7 (N.D. Cal. June 4, 2010) (internal citation and quotation omitted).  Accordingly,

6   Yuga's should not be able to use conversion to supplant its trademark-related claims,

7   which better address the nature of trademarks, the interests at stake, and the

8   appropriate determination of remedies.

9        **H.    Yuga's Intentional and Negligent Interference Claims Are Deficient**

10            Yuga's Opposition provides no additional factual information regarding its

11   intentional interference and negligent interference claims. Yuga largely rests on the

12   arguments they already made in their Complaint and, thus, fails to plausibly allege

13   intentional interference or negligent interference.  Specifically, Yuga attempts to use

14   their trademark infringement claims (Claims 1-7) to meet many of the elements of

15   their interference claims (such as independent wrongful acts).  Dkt. No. 53 at 22-23.

16   But this attempt fails because, as stated above, Yuga has not plausibly alleged its

17   trademark-related claims.

18            Yuga also ignores Defendants' argument that it is insufficient to plead a

19   "market theory" of liability by suggesting that Defendants generally disrupted Yuga's

20   relationship with the entire market of BAYC customers.  Dkt. No. 48 at 24 (citing

21   *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008)).

22   Instead, Yuga simply concludes, without citing any allegations, that their Complaint

23   "sufficiently alleges a business relationship with Bored Ape holders." Dkt. No. 53 at

24   22.  Yuga then cites to *Settimo Assocs. v. Environ Sys., Inc.*, 14 Cal. App. 4th 842, 846

25   (1993) to argue that "California law does not prohibit alleging loss of customers for

26   intentional interference claims." Dkt. No. 53 at 22.  But *Settimo Associates* dealt with

27   a competitive bidding process among sub-contractors and is completely silent on

28

Case No. 2:22-cv-04355-JFW-JEM                    REPLY ISO MOTION TO STRIKE

1    whether interference claims apply to the general market of costumers.  *Settimo*

2    *Assocs.*, 14 Cal. App. 4th at 845.  Further, Yuga has yet to allege more than

3    conclusory statements about their loss of customers.  *See* Dkt. No. 1 ¶¶ 145, 157.

4    **I.    Yuga's Substantive Arguments in Its Objections to Defendants'**
         **Exhibits Should Be Rejected**

5

6         Yuga's objections should be ignored (if not stricken outright) for violating the

7    Local Rules and this Court's Standing Order, which make clear that "oppositions to

8    motions shall not exceed 25 pages."  Dkt. No. 14 at ¶ 5(c); L.R. 11-6.  Courts in this

9    district recognize that litigants may not circumvent these page limits by making

10   multiple filings.  *Vaccarino v. Midland Nat. Life Ins. Co.*, No. 2:11-CV-05858-CAS,

     2014 WL 572365, at *4 (C.D. Cal. Feb. 3, 2014); *New Show Studios LLC v. Needle*,
11
     No. 2:14-CV-01250-CAS, 2014 WL 2988271, at *1 (C.D. Cal. June 30, 2014).  Here,
12
     in addition to Yuga's 25-page Opposition Brief, Yuga has filed a 51-page objection
13
     that packages substantive arguments that should have been in the Opposition Brief.
14
     For example, the objection raises arguments about (1) the veracity of Defendants'
15
     accusations of racism, (2) the relevance of Defendants' critical commentary to the
16
     RR/BAYC project, (3) whether the RR/BAYC project is artistic expression,
17
     (4) whether the court should take judicial notice of public documents, and (5) which
18
     documents have been incorporated by reference in the Complaint.  *See, e.g.*, Dkt. No.
19
     54 at 1-3, 8-9, 13, 14, 15, 17.  At a minimum, Yuga should have sought leave of Court
20
     before filing such extensive additional briefing.
21
          In any event, there was nothing improper about Defendants' use of exhibits in
22
     their motion.  Defendants request relief from this Court based solely on the allegations
23
     in the Complaint and documents the Complaint incorporated by reference, such as
24
     https://rrbayc.com, https://etherscan.io/address/0x2ee6af0dff3a1ce3f7e3414c52c48fd5
25
     0d73691e, and https://apemarket.com/.  *See* Dkt. No. 1 ¶¶ 34, 36, 39, 46, 48, 81; *see*
26
     *also Halle Props., L.L.C. v. Bassett,* No. 06-cv-7694-ABC-JWJ, 2007 WL 2344931, at
27
     *6 (C.D. Cal. Aug. 14. 2007) ("a court may consider documents which are not
28

-11-

1   physically attached to the complaint but 'whose contents are alleged in [the] complaint

2   and whose authenticity no party questions.'"); *Gotham Ins. Co. v. Shasta Techs., LLC*,

3   *No. 13-cv-3810-PJH, 2014 WL 1347766, at *3 (N.D. Cal. April 3, 2014)* ("[T]he

4   court may consider … documents referenced extensively in the complaint and

5   documents that form the basis of the plaintiff's claims.").

6          Defendants attached additional exhibits to their motion only as background

7   information and context to the First Amendment-protected activity in this case, as is

8   typical for anti-SLAPP motions at the pleadings stage.[2] *See, e.g.*, *Tensor Law P.C. v.*

9   *Rubin, 2019 WL 3249595, at *4 (C.D. Cal. April 10, 2019)* ("Although the Court

10  provided an overview of Defendant's account of the facts in this Order, the Court need

11  not refer to any of the evidence submitted by Defendant in deciding whether Plaintiff

12  has set forth a legally sufficient claim against Defendant."); *Garcia v. Allstate Ins*,

13  *1:12-cv-00609-AWI-SKO, 2012 WL 4210113, at *14 (E.D. Cal. Sep. 18, 2012)*

14  (granting anti-SLAPP motion at the pleadings stage "[b]ased on consideration of the

15  declarations, pleadings, and exhibits to the present motion.").

16  **III.   CONCLUSION**

17          For the reasons set forth above, Yuga's objections (Dkt. No. 54) should be

18  stricken under the Local Rules and Standing Order, Yuga's state law claims (Claims

19  4-11) should be stricken under the California anti-SLAPP statute, and Yuga's federal

20  law claims (Claims 1-3) should be dismissed pursuant to Federal Rule 12(b)(6).

21

22

---

23  [2] It is routine practice to use exhibits in an anti-SLAPP motion at the pleadings stage

24  when those exhibits solely serve as background information for the accused First
    Amendment activity and not as grounds for relief. *See e.g.*, *Tatiana Sauquillo v.*

25  *California Highway Patrol, No. 2:19-cv-07651 (C.D. Cal. Sep 11, 2019) (Dkt. No.*
    *11)*; *Word Aflame Tabernacle, Inc. v. City of La Habra Heights, No. 2:20-cv-09899*

26  *(C.D. Cal. Nov 5, 2021) (Dkt. Nos. 88, 90, 91)*; *Scottsdale Ins. Co. v. Grant & Weber*,

27  *No. 2:16-cv-00610 (C.D. Cal. Feb 17, 2017) (Dkt. Nos. 106, 107)*.

28

Case No. 2:22-cv-04355-JFW-JEM                                    REPLY ISO MOTION TO STRIKE

| | |
|---|---|
| 1 | Dated: October 24, 2022 |

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (pro hac vice)
monica.grewal@wilmerhale.com
Scott W. Bertulli (pro hac vice)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Derek Gosma (SBN 274515)
derek.gosma@wilmerhale.com
Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
   HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

-13-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on October 24, 2022.


By: /s/  *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

-1-

Case No. 2:22-cv-04355-JFW-JEM          REPLY ISO MOTION TO STRIKE

ERIC BALL (CSB No. 241327)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

ANTHONY M. FARES (CSB No. 318065)
afares@fenwick.com
ETHAN M. THOMAS (CSB No. 338062)
ethomas@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:22-cv-04355-JFW-JEM |
| Plaintiff, | **YUGA LABS, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AND DISMISS** |
| v. | |
| RYDER RIPPS, JEREMY CAHEN, and DOES 1-10, | Date: Nov. 7, 2022 |
| Defendants. | Time: 1:30 p.m. |
| | Dept: Courtroom 7A |
| | Judge: Honorable John F. Walter |

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................... 2

        A.      Yuga Labs' Allegations Accepted as True ............................... 2

                1.      Yuga Labs Alleges a Likelihood of Consumer Confusion ......... 3

                2.      Yuga Labs Pleads Multiple Examples of Explicitly Misleading Activity Leading to Actual Confusion. .................. 4

III.    LEGAL STANDARD .......................................................................... 5

IV.     ARGUMENT ....................................................................................... 7

        A.      Defendants' Infringing NFTs Are Not Protected Speech. ................... 7

                1.      Defendants' Infringing NFTs Are Not "Expressive Works" and Do Not Warrant Application of the *Rogers* Test ........................................................................................... 8

                2.      Defendants' Sale of Infringing RR/BAYC NFTs Are Not "Protected Activity" Under California's Anti-SLAPP Law. ............................................................................................ 9

        B.      Yuga Labs Plausibly Alleges Trademark Infringement. .................... 12

                1.      Defendants' Use of BAYC Marks Is Not Artistically Relevant. ........................................................................................ 13

                2.      Defendants' Use of BAYC Marks Is Explicitly Misleading. ..................................................................................... 13

                3.      Defendants' Use of BAYC Marks Is Not A Fair Use. ............. 18

        C.      Yuga Labs Has Pled Its Additional Federal and State Law Claims. .......................................................................................... 19

                1.      Yuga Labs Plausibly Alleges Cybersquatting and Unfair Competition. ................................................................................. 19

                2.      Yuga Labs Plausibly Alleges False Advertising. ..................... 20

                3.      Yuga Labs Plausibly Alleges Conversion. ............................... 21

                4.      Yuga Labs Plausibly Alleges Intentional Interference. ........... 22

                5.      Yuga Labs Plausibly Alleges Negligent Interference. ............. 23

                6.      Yuga Labs' Unjust Enrichment Claim Should Not Be Stricken by the Anti-SLAPP Statute. ....................................... 23

FENWICK & WEST LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**
**(continued)**

Page

D.    None of Yuga Labs' Claims May Be Stricken Under
California's Anti-SLAPP Law..........................................................24

V.    CONCLUSION ............................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACI Int'l. Inc. v. Adidas-Salomon AG,*
    359 F. Supp. 2d 918 (C.D. Cal. 2005) ............................................................ 7, 12

*BMW of North America v. Mini Works, LLC,*
    463 Fed. App'x. 689 (Fed. Cir. 2011) .................................................................. 20

*Bonni v. St. Joseph Health Sys.,*
    11 Cal. 5th 995 (2021) ............................................................................... 6, 11, 12

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,*
    174 F.3d 1036 (9th Cir. 1999) ............................................................... 7, 12, 16

*Brother Recs., Inc. v. Jardine,*
    318 F.3d 900 (9th Cir. 2003) ................................................................................ 19

*Brown v. Elec. Arts, Inc.,*
    722 F. Supp. 2d 1148 (C.D. Cal. 2010) ............................................................... 25

*Calista Enterprises Ltd. v. Tenza Trading Ltd.,*
    43 F. Supp. 3d 1099 (9th Cir. 2014) .................................................................... 20

*Celebrity Chefs Tour, LLC v. Macy's, Inc.,*
    16 F. Supp. 3d 1123 (S.D. Cal. 2014) .................................................................. 20

*Chanel, Inc. v. Hsiao Yin Fu,*
    No. 16-cv-02259, 2017 WL 1079544 (N.D. Cal. Mar. 22, 2017) ........................ 7

*City of Cotati v. Cashman,*
    29 Cal. 4th 69 (2002) ............................................................................................ 11

*Dillon v. Legg,*
    68 Cal.2d 728 (1968) ............................................................................................ 23

*Dr. Seuss Enters., L.P. v. ComicMix LLC,*
    300 F. Supp. 3d 1073 (S.D. Cal. 2017) ............................................................... 18

*DTS, Inc. v. Nero AG,*
    No. 14-cv-9791, 2015 WL 12811268 (C.D. Cal. Dec. 3, 2015) ......................... 11

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
    547 F.3d 1095 (9th Cir. 2008) .............................................................................. 18

*Eng. & Sons, Inc. v. Straw Hat Rests., Inc.,*
    176 F. Supp. 3d 904 (N.D. Cal. 2016) ................................................................. 22

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Episcopal Church Cases*,
   45 Cal. 4th 467 (2009).............................................................................24

*Fed. Deposit Ins. Corp. v. Dintino*,
   167 Cal. App. 4th 333 (2008)..................................................................23

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (2019)..............................................................................10

*Givenchy S.A. v. BCBG Max Azria Grp., Inc.*,
   No. CV 10-8394, 2012 WL 3072327 (C.D. Cal. Apr. 25, 2012)........16

*Gordon v. Drape Creative, Inc.*,
   909 F.3d 257 (9th Cir. 2018)............................................................*passim*

*Hard Rock Cafe Licensing Corp. v. Pac. Graphics, Inc.*,
   776 F. Supp. 1454 (W.D. Wash. 1991) ....................................................16

*Hermes International v. Rothschild*,
   No. 22-cv-384, 2022 WL 1564597 (S.D.N.Y. May 18, 2022) ............15

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010)..............................................................6, 24

*Hylton v. Frank E. Rogozienski, Inc.*,
   177 Cal. App. 4th 1264 (2009)................................................................11

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
   2 F.4th 1150 (9th Cir. 2021)....................................................................12

*J'Aire Corp. v. Gregory*,
   24 Cal. 3d 799 (1979)..............................................................................23

*Jaeyoung Nam v. Alpha Floors*,
   No. 16-cv-6810, 2017 WL 11635994 (C.D. Cal. Jan. 4, 2017) ...........21

*Jordan-Benel v. Universal City Studios, Inc.*,
   859 F.3d 1184 (9th Cir. 2017)..................................................................9

*Kiedis v. Showtime Networks*,
   No. CV078185, 2008 WL 11173143 (C.D. Cal. Feb. 19, 2008) ..........17

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) ................................................................21

*Lectrodryer v. SeoulBank*,
   77 Cal. App. 4th 723 (2000)....................................................................24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ........................................................... 6

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) (Kozinski, J., concurring) ....................... 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ......................................................... 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ......................................................... 6

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
    No. 15-cv-03522, 2015 WL 5071977 (N.D. Cal. Aug. 27, 2015) ............ 6, 9

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) .......................................................... 18

*Panavision Int'l, L.P. v. Toeppen*,
    1996 WL 768036 (C.D. Cal. Nov. 27, 1996) .................................... 23

*Perry v. Brown*,
    No. CV 18-9543, 2019 WL 1452911 (C.D. Cal. Mar. 13, 2019)
    (Walter, J.), *aff'd and remanded*, 791 F.App'x 643 (9th Cir. 2019) .......... 18

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018), *amended*,
    897 F.3d 1224 (9th Cir. 2018) .......................................................... 6

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) .................................................*passim*

*Rousselot B.V. v. St. Paul Brands, Inc.*,
    No. CV190458, 2019 WL 6825763 (C.D. Cal. July 24, 2019) .............. 17

*Settimo Assocs. v. Environ Sys., Inc.*,
    14 Cal. App. 4th 842 (1993) .......................................................... 22

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
    875 F.3d 426 (9th Cir. 2017) ........................................................... 3

*Summit Ent., LLC v. B.B. Dakota, Inc.*,
    No. CV-10-04328, 2011 WL 13216987 (C.D. Cal. Nov. 21, 2011) .......... 19

*Sybersound. Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ......................................................... 23

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. Jan. 9, 2014) (Walter, J) .................................. 24

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*,
  221 F. Supp. 2d 410 (S.D.N.Y. 2002) .................................................................... 9

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010) ...................................................................... 18, 19

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ...................................................................... 13, 14

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
  143 F. Supp. 3d 982 (N.D. Cal. 2015) .................................................................. 12

*Vera Mona, LLC v. Dynasty Grp. USA LLC*,
  No. CV202615, 2021 WL 3623297 (C.D. Cal. Apr. 15, 2021) ............................ 23

*Wisk Aero LLC v. Archer Aviation Inc.*,
  No. 21-cv-02450, 2021 WL 4932734 (N.D. Cal. Sept. 14, 2021) .......................... 6


**STATUTES AND RULES**

Cal. Bus. & Prof. Code § 17200 .............................................................................. 20

Cal. Code Civ. Proc. § 425.16 ...................................................................... 6, 10, 11, 25

Cal. Code Civ. Proc. § 425.17 .................................................................................. 10

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 5, 6

Fed. R. Civ. P. 15(a)(2) ................................................................................................ 25


**OTHER AUTHORITIES**

J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition
  § 23:20 (5th ed. 2018) ............................................................................................ 16

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.      INTRODUCTION

Defendants' scam has explicitly misled consumers into thinking that their NFTs ("non-fungible tokens" or "tokens") are affiliated, sponsored, or associated with Yuga Labs.  Worse still: they intentionally cultivated and relished in the harm they caused by this confusion.  Defendants do not dispute that they are using Yuga Labs' BAYC Marks to sell identical NFT products on the same marketplaces Yuga Labs sells its NFTs.  This is textbook trademark infringement and explicitly misleading use of these marks.  *See Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 269-271 (9th Cir. 2018). Facing the Complaint's undisputed allegations of trademark infringement, Defendants cower behind their argument that their willful infringement is protected "art."  But the First Amendment does not protect scams designed to mislead consumers.  And, Defendants' actions are pure commerce, not protected speech.  They are using Yuga Labs' trademarks to sell their own competing products, trading off of Yuga Labs' goodwill, and misleading consumers about the source and features of their products.  If Defendants' motion is not denied, it would "turn trademark law on its head" (*id.* at 270) and allow anyone to rebut trademark infringement claims with the flimsy and false claim that the infringement is "art."

In just one example of Defendants' intentional and explicitly misleading trademark infringement, they marked their NFT's token tracker—which is used to help consumers verify the source of an NFT—with Yuga Labs' trademarks: "Bored Ape Yacht Club (BAYC)."  Compl. ¶ 39.



There is no commentary on this page.  There is no art.  There is not even a reference

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   to Defendants.  Yuga Labs' trademark is the **only** trademark that consumers see to

2   identify the source of Defendants' competing product.

3        Defendants' trademark infringement has caused, and continues to cause, actual

4   confusion.  Yuga Labs states a claim for trademark infringement, and Defendants'

5   purported defenses provide no escape.

6        Along with its trademark infringement claims, Yuga Labs sufficiently pled its

7   cybersquatting, false advertising, unfair competition, conversion, tortious

8   interference, and unjust enrichment claims.  Defendants registered and use, in bad

9   faith, Yuga Labs' trademarks in the rrbayc.com and apemarket.com domains.

10  Defendants falsely advertised that their infringing products were equivalent to Yuga

11  Labs' authentic products to further scam consumers into buying their copycat NFTs.

12  And Defendants interfered with Yuga Labs' actual and prospective economic

13  advantage through trademark infringement, unfair competition, false advertising, and

14  offering fake Yuga Labs NFTs.

15       With their motion, Defendants shirk from their infringing conduct by hiding

16  behind the same false claims against Yuga Labs' founders that they peddle on social

17  media.  The Court is not a sounding board for their bogus claims; this is not a

18  defamation lawsuit, and Defendants' offensive and false accusations against Yuga

19  Labs' founders are not the basis for any claim in this lawsuit.  Yuga Labs' founders

20  will personally continue to respond to those actions in the public forum.  In this Court,

21  Yuga Labs seeks relief from Defendants' explicit misleading of consumers through

22  their infringement of BAYC Marks.

23  **II.     FACTUAL BACKGROUND**

24       **A.     Yuga Labs' Allegations Accepted as True**

25       Defendants have scammed consumers into buying RR/BAYC NFTs by

26  misusing Yuga Labs' trademarks.  Compl. ¶ 2.  The RR/BAYC NFTs are merely a

27  re-packaging of the exact same images underlying Yuga Labs' authentic BAYC

28  NFTs.  *Id.*  Brazenly, Defendants promote and sell these RR/BAYC NFTs using the

1   very same trademarks that Yuga Labs uses to promote authentic Bored Ape NFTs in

2   the exact same marketplaces where Bored Ape NFTs are sold.  *Id.* ¶¶ 2, 33.  Even

3   worse, Defendants market these copycats as falsely equivalent to authentic Bored Ape

4   NFTs.  *Id.* ¶ 2.

5              **1.    Yuga Labs Alleges a Likelihood of Consumer Confusion.**

6        Defendants' motion admittedly does not challenge that Yuga Labs adequately

7   alleges a likelihood of confusion from their use of BAYC Marks.  Decl. of Louis

8   Tompros (Dkt. 36) ("Tompros Decl.") ¶ 6.  Yuga Labs' "slam-dunk evidence of a

9   conceptually strong mark together with the use of identical marks on identical goods"

10  proves likelihood of confusion and infringement.  *Stone Creek, Inc. v. Omnia Italian*

11  *Design, Inc.*, 875 F.3d 426, 436 (9th Cir. 2017) (abrogated on other grounds).

12       Defendants do not deny "the strength of the mark[s]," nor that Yuga Labs has

13  the exclusive right to use them.  Compl. ¶¶ 23-32.  As for the "relatedness of the

14  goods," Defendants concede that they are selling the same type of product (NFTs)

15  with the identical underlying Bored Ape images.  Mot. at 6 ("The RR/BAYC project

16  is a collection of NFTs that point to the same online digital images as the BAYC

17  collection[.]"); *see also* Compl. ¶ 33.  This is especially misleading to consumers who

18  see what appears to be a Yuga Labs NFT displaying BAYC Marks.  *Id.* ¶ 2.  The

19  "similarity of the marks" is indisputable, and Defendants concede that they used

20  BAYC Marks, without modification in most instances, to sell RR/BAYC NFTs.  Mot.

21  at 18 ("Mr. Ripps's [sic] used BAYC's marks . . . ."); *see generally*, Compl. ¶¶ 33-

22  47.  Ripps himself "gloated that it is consumers' own fault for being confused by his

23  fake NFTs, even though Ripps' actions lay bare that he welcomes the confusion."  *Id.*

24  ¶ 40.  Defendants concede they sold their copycat NFTs using the same "marketing

25  channels" as Yuga Labs.  Mot. at 15-16; Compl. ¶ 33.  RR/BAYC NFTs were even

26  repeatedly removed from OpenSea, Foundation, and other marketplaces, as those

27  marketplaces sought to protect their users from Defendants' explicitly misleading

28  activities.  *See id.* ¶¶ 33 n.1, 35-37, 54.  Finally, Defendants concede that their intent

FENWICK & WEST LLP
ATTORNEYS AT LAW

in using Yuga Labs' marks was to identify the BAYC collection—even though they were not selling genuine Yuga Labs products.  Mot. at 18; *see also* Compl. ¶ 52.

### 2.   Yuga Labs Pleads Multiple Examples of Explicitly Misleading Activity Leading to Actual Confusion.

Beyond creating a likelihood of confusion, Defendants' use of BAYC Marks is explicitly misleading.  Defendants "do not distinguish their use of Yuga Labs' BAYC Marks from the identical look, sound, and commercial impression of" BAYC Marks and "promote[] and sell[] these RR/BAYC NFTs using *the very same trademarks* that Yuga Labs uses to promote and sell authentic Bored Ape Yacht Club NFTs."  Compl. ¶¶ 2, 47.  This explicitly misleading conduct exacerbates Defendants' other uses of BAYC Marks "to trade on Yuga Labs' goodwill and confuse consumers" (*id.* ¶ 42), such as their misleading uses of BAYC Marks to promote RR/BAYC NFTs on Twitter (*id.* ¶¶ 42-46), their Ape Market NFT marketplace (*id.* ¶ 46), and the rrbayc.com website (*id.* ¶ 34), among others.

More specifically, Defendants "use[] every opportunity to make these RR/BAYC NFTs resemble the authentic Bored Ape NFTs as closely as possible to confuse consumers into buying them."  *Id.* ¶ 52.  As Defendants admit, the images underlying the RR/BAYC NFTs are purposefully *identical* to those used in Yuga Labs' BAYC NFTs, and contain BAYC Marks within the images.  *Id.* ¶ 34; Decl. of Ryder Ripps (Dkt. 48-1) ("Ripps Decl.") ¶ 8.  RR/BAYC #362 is one such copycat example; it uses the BAYC, BA YC Logo, and Ape Skull Logo marks.  Compl. ¶ 34.  Relatedly, Defendants' use of Yuga Labs' "unique number[ing]" to identify and sell their RR/BAYC NFTs reflects Defendants' intentional effort to make their knockoff NFTs resemble Bored Ape NFTs in every possible way.  *Id.* ¶ 52.  Further evidencing Defendants' efforts to explicitly mislead consumers, Defendants marked the token tracker of their product with Yuga Labs' trademarks:  "Bored Ape Yacht Club (BAYC)."  *Id.* ¶ 39.  Token trackers are "important for validating the authenticity of an NFT."  *Id.* ¶¶ 39, 40.  So, Defendants made their competing product look identical

Fenwick & West LLP
ATTORNEYS AT LAW

1  to Yuga Labs', and in the place where a consumer could authenticate and check who

2  created the NFT, (the token tracker), Defendants used Yuga Labs' trademarks to

3  ensure the consumer was explicitly misled.

4        Defendants also sell these RR/BAYC NFTs on the same NFT marketplaces that

5  Bored Ape NFTs are sold and under the same marks.  *Id*. ¶ 33.  For example,

6  Defendants' "Foundation page was also deliberately misleading and confusing to

7  consumers and used Yuga Labs' BAYC marks in an attempt to trick community

8  members into buying their NFTs instead of the official BAYC NFTs." *Id*. ¶ 37.  On

9  this page, Defendants "prominently and confusingly used Yuga Labs' BORED APE

10  YACHT CLUB trademark as the title of the page" and "used Yuga Labs' BAYC

11  trademark in an unauthorized hyperlink labeled 'BAYC' and in the URL of the page."

12  *Id*.  "[E]ven the top result in a Google search for 'BAYC Foundation.app' or 'Bored

13  Ape Yacht Club Foundation.app' was a misleading link titled 'Bored Ape Yacht Club

14  – Foundation.app' that redirected to the fake RR/BAYC NFT collection."  *Id*.  When

15  users hovered over the NFTs on this Foundation page, "the page displayed a miniature

16  version of their warped BA YC BORED APE YACHT CLUB Logo mark.  At such a

17  small size, it is difficult for a consumer to tell the difference" between this knockoff

18  and the real thing.  *Id*. ¶ 38.  Defendants' OpenSea pages, and other marketplaces,

19  were also explicitly misleading by using "Yuga Labs' BAYC trademark in the title of

20  the page, in the cover photo of the page, and in the page URL[.]"  *Id*. ¶¶ 35-36, 41.

21  Defendants even falsely claim that they own a trademark registration for RR/BAYC

22  to explicitly mislead consumers about the legitimacy of their NFTs.  *See id*. ¶ 46.

23        Defendants' intentional and explicitly misleading activities detailed in the

24  Complaint were part of their efforts to profit from using Yuga Labs' exact marks to

25  sell NFTs that ordinary consumers could have—and indeed have—mistaken for

26  genuine BAYC NFTs.

27  **III.   LEGAL STANDARD**

28        "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks

1   a cognizable legal theory or sufficient facts to support a cognizable legal theory."
2   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).   In
3   reviewing the plausibility of a complaint, courts "accept factual allegations in the
4   complaint as true and construe the pleadings in the light most favorable to the
5   nonmoving party."   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,
6   1031 (9th Cir. 2008).   "As a general rule, 'a district court may not consider any
7   material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"   *Lee v. City of
8   Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (cleaned up).

9          California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16, "does not apply
10   to federal law causes of action."   *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th
11   Cir. 2010).   The threshold issue on an anti-SLAPP motion to strike state-law claims
12   is whether Defendants made "a prima facie showing that the lawsuit arises from an
13   act in furtherance of its First Amendment right to free speech."   *Nat'l Abortion Fed'n*
14   *v. Ctr. for Med. Progress*, No. 15-cv-03522, 2015 WL 5071977, at *3 (N.D. Cal. Aug.
15   27, 2015).   However, "[a]llegations of protected activity that merely provide context,
16   without supporting a claim for recovery, cannot be stricken under the anti-SLAPP
17   statute."   *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1012 (2021).   If the movant
18   clears this first hurdle, then the plaintiff must "show a reasonable probability that it
19   will prevail on its claim."   *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450,
20   2021 WL 4932734, at *4-5 (N.D. Cal. Sept. 14, 2021).   Where, as here, Defendants
21   contend that the claims are legally deficient, the court applies a Rule 12(b)(6) standard
22   of review.   *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890
23   F.3d 828, 834 (9th Cir. 2018), *amended,* 897 F.3d 1224 (9th Cir. 2018).   And where,
24   as here, Yuga Labs' complaint clearly states a claim, the anti-SLAPP motion fails.[1]

25
26   [1]  Judges on the Ninth Circuit have at times called on the court to reconsider whether
     federal courts apply the anti-SLAPP statute.  *See, e.g.*, *Makaeff v. Trump Univ., LLC*,
27   715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, J., concurring).  And the Second, Fifth,
     and Eleventh Circuits have rejected the application of anti-SLAPP statutes in federal
28   court.  Yuga Labs reserves its argument that the anti-SLAPP statute is inapplicable in
     federal court.

## IV.   ARGUMENT

### A.   Defendants' Infringing NFTs Are Not Protected Speech.

Defendants may not use BAYC Marks to sell NFTs that admittedly use Yuga Labs' images (with no expressive content or transformation) in the sale of the same goods (NFTs) and on the same marketplaces where Yuga Labs' NFTs are sold.  This is true notwithstanding that Defendant Ripps is a claimed artist intent on publicizing falsehoods about Yuga Labs' founders, and it is undeniably true as to Defendant Cahen who makes no claim to creating any art.  If the Court accepts Defendants' argument that the trademark infringement *is* the art, it would create a gaping loophole in trademark law, as any street corner counterfeiter, and even direct business competitors, could sell knockoff products by claiming their sale is performance and appropriation art.   But just like common counterfeiters, Defendants' sale of RR/BAYC NFTs is a purely commercial enterprise which they use to profit off of Yuga Labs' goodwill.  This is commercial infringement; not art.

Defendants argue for an exemption for their infringement because some who bought an RR/BAYC NFT supposedly knew it was fake. Mot. at 7-8.  This is a factual issue the Court cannot resolve on a motion to dismiss.  Regardless, even if someone knows they are buying a knockoff, **the sale still infringes**. *See Chanel, Inc. v. Hsiao Yin Fu*, No. 16-cv-02259, 2017 WL 1079544, at *4 (N.D. Cal. Mar. 22, 2017) (finding infringement even if purchasers of counterfeit Chanel handbags "know that they are [ ] purchasing nongenuine goods").   Thus, even if some purchasers knew the RR/BAYC NFTs were fake, Defendants' use of BAYC Marks infringed Yuga Labs' rights because Defendants traded on Yuga Labs' goodwill and explicitly misled other consumers through both initial interest and post-sale confusion.  *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999); *ACI Int'l. Inc. v. Adidas-Salomon AG*, 359 F. Supp. 2d 918, 921 (C.D. Cal. 2005).

FENWICK & WEST LLP
ATTORNEYS AT LAW

**1.     Defendants' Infringing NFTs Are Not "Expressive Works" and Do Not Warrant Application of the *Rogers* Test.**

The Ninth Circuit only applies the *Rogers v. Grimaldi* analysis when "artistic expression is at issue," requiring defendants to make a "threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Gordon*, 909 F.3d at 264; *see also Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989). Defendants' sale of a "collection of NFTs that point to the same online digital images as the BAYC collection, but use verifiably unique entries on the blockchain" (Mot. at 6) is not an expressive work protected by the First Amendment, and applying *Rogers* is improper.

In particular, the RR/BAYC NFTs do not express an idea or point of view. They are merely tokens that "point to the same online digital images associated with the BAYC collection." Mot. at 18-19. Even Defendants' token tracker uses an exact copy of Yuga Labs' mark—**with no expressive content**. Compl. ¶¶ 39-40. Likewise, Defendants' NFT marketplace sales, copycat Twitter accounts, and Ape Market contain no "artistic expression or critical commentary." *Id.* ¶¶ 33, 37, 42-45, 46. For example, the title of their Foundation sales page was simply "Bored Ape Yacht Club" (*id.* ¶ 37), and googling "BAYC Foundation.app" resulted in a misleading link entitled "Bored Ape Yacht Club – Foundation.app" that redirected to Defendants' Foundation sales page. *Id.* The Ape Market website used a skull logo identical to Yuga Labs' skull logo and was established "solely to sell their RR/BAYC NFTs alongside authentic Yuga Labs NFTs." *Id.* ¶ 46, 55. These are all commercial activities to sell infringing products. Defendants even concede that Ape Market contained no speech because it "never had any content." Mot. at 17.

The only claimed expression Defendants point to comes from material beyond the Complaint. Indeed, Defendants filed two improper declarations and thirty-six exhibits to try to connect their defamation of Yuga Labs' founders to their unfair competition with Yuga Labs because the Complaint itself does not put those matters

1   at issue.  Defendant Ripps' so-called criticism is not the subject of the Complaint and

2   is readily separated from the sales and marketing of RR/BAYC NFTs.  For instance,

3   although Defendant Ripps' improper declaration cites his false assertions about Yuga

4   Labs' founders, that same declaration separates those assertions from his creation of

5   the infringement of Yuga Labs' marks.  *See* Ripps Decl. ¶¶ 5-9.[2]

6          Defendants' sale and promotion of the RR/BAYC NFTs is merely a business

7   venture to trade on Yuga Labs' brand value, resulting in a massive windfall for

8   Defendants.  Their sale of RR/BAYC NFTs is no more artistic than the sale of a

9   counterfeit handbag, making the *Rogers* test inapplicable.  *See, e.g.*, *Tommy Hilfiger*

10  *Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 415 (S.D.N.Y. 2002)

11  (holding *Rogers* test inapplicable when trademark was "being used at least in part to

12  promote a somewhat non-expressive, commercial product").

13          **2.    Defendants' Sale of Infringing RR/BAYC NFTs Are Not**
                 **"Protected Activity" Under California's Anti-SLAPP Law.**

14

15         For similar reasons, Defendants' sale of infringing NFTs is not "protected

16  activity" under the anti-SLAPP statute because Defendants fail to show that Yuga

17  Labs' lawsuit arises from an act in furtherance of Defendants' "First Amendment right

18  to free speech." *Nat'l Abortion Fed'n*, 2015 WL 5071977, at *3.  It is not enough for

19  an anti-SLAPP movant to identify the existence of allegedly protected activity; the

20  protected activity must at least partially form the basis of the claim.  *See Jordan-Benel*

21  *v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190, 1193 (9th Cir. 2017) ("[E]ven if

22  a defendant engages in free speech activity that is relevant to a claim, that does not

23  necessarily mean such activity is the basis for the claim.").

24         Here, Defendants' so-called "speech" is separate from the infringing NFT sales.

25  *See* Ripps Decl. ¶¶ 5-9; *see also supra* § IV.A.1.  More importantly, the lawsuit does

26

27  [2]  If the Court considers Defendants' improper evidence of their attacks against Yuga
      Labs' founders, this factual dispute about how to define their commercial activity
28  warrants denial of their motion to allow for discovery and expert testimony.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    not arise out of Defendants' speech; it arises out of their garden-variety trademark

2    infringement.  Indeed, the Complaint does not seek to enjoin Defendants' defamatory

3    speech.  The anti-SLAPP motion fails at the outset for this reason.  Additionally, the

4    motion is deficient on several other grounds.

5         **First**, Defendants offer no argument that Cahen's activities were in furtherance

6    of any expression.  *See, e.g.*, Mot. at 1 ("Yuga sued Mr. Ripps not for defamation, but

7    for trademark infringement.").  Therefore, the motion must fail as to him.

8         **Second**, Defendants have not shown that the *sale and marketing* of thousands

9    of infringing NFTs is protected activity.   Any speech involved in the sale and

10   promotion of NFTs is *commercial* speech not protected by the anti-SLAPP statute.

11   Indeed, the anti-SLAPP statute contains an explicit exemption for causes of action

12   based on "comparative advertising."  *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.

13   5th 133, 147 (2019).  And here, Yuga Labs' claims are exempt because Defendants'

14   allegedly protected speech was (1) made when Defendants were selling their NFTs

15   and (2) targeted to potential or actual buyers of BAYC NFTs.  *Compare* Cal. Code

16   Civ. Proc. § 425.17(c) (stating that § 425.16 does not apply to certain causes of action

17   against businesses that make statements about the goods, services, or business

18   operations of their competitors) *with* Compl. ¶ 33 ("Defendants . . . use *the very same*

19   *marks* to promote their RR/BAYC NFT collection.") and *id.* ¶¶ 144-145 (Defendants

20   "intentionally sought to . . . appropriat[e] Yuga Labs' trademarks . . . [resulting in]

21   [a]ctual interference with the relationship between Yuga Labs and individuals who

22   have purchased or might purchase Bored Ape NFTs . . . .").  But even if not explicitly

23   exempted by § 425.17(c), the heavily commercial nature of Defendants' conduct

24   weighs strongly in favor of finding that any speech associated with the sale is not the

25   kind of public participation contemplated by the anti-SLAPP statute.  *FilmOn.com*

26   *Inc.*, 7 Cal. 5th at 148 ("[T]he very contextual cues revealing a statement to be

27   'commercial' in nature—whether it was private or public, to whom it was said, and

28   for what purpose—can bear on whether it was made in furtherance of free speech in

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   connection with a public issue."). Defendants' argument posits that *their* trademark
2   infringement is a distinct, protected form of trademark infringement because they are
3   critical of Yuga Labs' founders. But their NFTs contain no commentary at all. The
4   act of infringement itself is not free speech—even if it is motivated by some criticism
5   of Yuga Labs' founders—it is an infringing scheme to profit from the popularity of
6   Bored Ape NFTs.

7       **Third**, even if Ripps engaged in *some* protected activity (Defendants make no
8   argument that Cahen did), that activity is merely incidental to infringement.
9   Defendants "must identify the acts alleged in the complaint that [they] assert[] are
10  protected and what claims for relief are predicated on them." *Bonni*, 11 Cal. 5th at
11  1010. "[C]ollateral or incidental allusions to protected activity will not trigger
12  application of the anti-SLAPP statute." *Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal.
13  App. 4th 1264, 1272 (2009); *see also* *DTS, Inc. v. Nero AG*, No. 14-cv-9791, 2015
14  WL 12811268, at *3 (C.D. Cal. Dec. 3, 2015) ("The mere fact that a claim was
15  triggered by protected activity or filed after protected activity took place does not
16  mean that the claim arose from that activity for purposes of the anti-SLAPP statute.")
17  (cleaned up). Defendants base their motion not on any claim in the Complaint, but
18  on a theory that this trademark case is pretextual or retaliatory. Yet despite months
19  of peddling his false claims, Yuga Labs only sued Ripps (among others) when he and
20  others sold thousands of RR/BAYC NFTs using BAYC Marks. As Defendants
21  acknowledge, "Yuga sued Mr. Ripps not for defamation, but for **trademark**
22  infringement." Mot. at 1. "The anti-SLAPP statute cannot be read to mean that any
23  claim asserted in an action which arguably was filed in retaliation for the exercise of
24  speech or petition rights falls under section 425.16, whether or not the claim is *based
25  on* conduct in exercise of those rights." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 77
26  (2002) (cleaned up).

27      **Fourth**, this trademark case is not appropriate for anti-SLAPP because there is
28  no risk that this lawsuit will chill constitutional rights. Even when a defendant points

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  to allegations in the Complaint that involve protected activity, an anti-SLAPP motion

2  should not be entertained where the allegations about protected activity "are largely

3  superfluous to [the plaintiff's] primary allegations" and the claims do not risk chilling

4  constitutional rights. *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F.

5  Supp. 3d 982, 1022 (N.D. Cal. 2015). Where such allegations "merely provide

6  context," an anti-SLAPP motion cannot prevail. *Bonni*, 11 Cal. 5th at 1012. Here,

7  Yuga Labs' primary allegations of trademark infringement do not seek to stifle

8  Defendants' speech. And indeed, Defendants' continued false attacks on Yuga Labs'

9  founders demonstrates that they are not stifled.

10      Defendants' motion to strike Yuga Labs' state-law claims under California's

11  anti-SLAPP statute has no merit from the outset and should be denied.

12      **B.    Yuga Labs Plausibly Alleges Trademark Infringement.**

13      Defendants do not contend that the Complaint fails to sufficiently allege

14  trademark infringement or deny Yuga Labs' ownership and priority of the BAYC

15  Marks. By using BAYC Marks to sell identical products to the same consumers on

16  the same markets that Yuga Labs uses, Defendants created confusion that was

17  "explicitly misleading." *Supra* § II.A.2; *Gordon*, 909 F.3d at 270-71.

18      Defendants' conduct led to actual confusion, initial interest confusion, and

19  post-purchase confusion. *See Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150,

20  1165 (9th Cir. 2021) ("Evidence of actual confusion by consumers is strong evidence

21  of likelihood of confusion."); *Brookfield Commc'ns, Inc.*, 174 F.3d at 1062 (Initial

22  interest confusion occurs when the defendant uses the plaintiff's trademark "in a

23  manner calculated to capture initial consumer attention, even though no actual sale is

24  finally completed as a result of the confusion.") (cleaned up); *ACI Int'l. Inc.*, 359 F.

25  Supp. 2d at 921 ("The law in the Ninth Circuit is clear that 'post-purchase confusion,'

26  i.e., confusion on the part of someone other than the purchaser who, for example,

27  simply sees the item after it has been purchased, can establish the required likelihood

28  of confusion under the Lanham Act.").

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Defendants cannot debate the wealth of allegations highlighting their

2    misleading activity establishing a likelihood of confusion and thus Yuga Labs

3    sufficiently pled its trademark infringement claims.  *See, e.g.*, *supra* § II.A.

### 1.    Defendants' Use of BAYC Marks Is Not Artistically Relevant.

6    Knowing that they cannot dispute that they have confused consumers,

7    Defendants grasp at the *Rogers* defense.  But even if the *Rogers* defense applies,

8    Defendants' use of BAYC Marks is not artistically relevant to Ripps' so-called "art"

9    under the first prong of the *Rogers* test.  While there is a low bar for artistic relevance,

10   it is not infinitely low.  For example, in *Twentieth Century Fox Television v. Empire*

11   *Distribution, Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017), the court found that using

12   the "Empire" mark in the title of a TV show was artistically relevant, but contemplated

13   that it would *not* be artistically relevant for a "pretextual expressive work meant only

14   to disguise a business profiting from another's trademark . . . ."  *Id*.  That is exactly

15   the situation here:  Defendants saw a chance to make money by ripping off NFTs and

16   calling their scam "performance art."  Defendants claim that Yuga Labs "has

17   conceded" artistic relevance by making oblique references to one of Defendant Ripps'

18   social media posts and the rrbayc.com website in the Complaint.  Mot. at 14.  Not so.

19   At most, they show Ripps' weak attempts to justify his infringements while

20   commercially promoting them.  This factual dispute may be resolved only after the

21   Defendants' motion is denied.

### 2.    Defendants' Use of BAYC Marks Is Explicitly Misleading.

23   Yuga Labs sufficiently pled that Defendants' use of its trademarks is explicitly

24   misleading under the *Rogers* test.  The two considerations relevant to whether a mark

25   is explicitly misleading are (1) "the degree to which the junior user uses the mark in

26   the same way as the senior user" and (2) "the extent to which the junior user has added

27   his or her own expressive content to the work beyond the mark itself."  *Gordon*, 909

28   F.3d at 270-71.  In *Gordon*, the Court analyzed these factors and found that

Fenwick & West LLP
Attorneys at Law

1    defendant's use of plaintiff's trademarked phrase in greeting cards involved minimal

2    artistic expression, and using it in the same way that plaintiff was using it created a

3    triable issue of fact on this point.  *Id.* at 271.  As shown above (*supra* § II.A.2),

4    Defendants admit they added *zero* expression to BAYC Marks and used them in

5    *exactly* the same way that Yuga Labs is using them.  Ripps Decl. ¶ 8.

6        *Gordon* noted that in prior *Rogers* cases finding that use of a mark was not

7    explicitly misleading, the junior user employed the mark in different contexts and

8    markets than the senior users.  909 F.3d at 270.  For example, *Gordon* explained that

9    in *Twentieth Century Fox* the mark of a record label was used in a television show,

10   but if it had been used in the same way as the senior user, such as naming the television

11   show after a preexisting one, "such identical usage could reflect the type of 'explicitly

12   misleading description' of source that *Rogers* condemns." *Id.*  *Gordon* concluded that

13   "the potential for explicitly misleading usage is especially strong when the senior user

14   and the junior user both use the mark in similar artistic expressions." *Id.*  This is

15   exactly what Defendants have done with their NFTs.  They used Yuga Labs' *exact*

16   *same* marks on the *exact same* marketplaces to identify and sell NFTs bearing the

17   *exact same* images underlying Yuga Labs' NFTs.  *See, e.g.*, Compl. ¶ 33; *supra*

18   § II.A.2.  Allowing Defendants to use BAYC Marks to market their infringements

19   would (as the Ninth Circuit observed) "turn trademark law on its head." *Gordon*, 909

20   F.3d at 270.  Indeed, "[i]f an artist pastes Disney's trademark at the bottom corner of

21   a painting that depicts Mickey Mouse, the use of Disney's mark, while arguably

22   relevant to the subject of the painting, could explicitly mislead consumers that Disney

23   created or authorized the painting, even if those words do not appear alongside the

24   mark itself." *Id.*  The same is true here with Defendants' infringement.

25       *Gordon* also observed that use of a mark is explicitly misleading when the mark

26   is used "as the centerpiece of an expressive work itself, unadorned with any artistic

27   contribution by the junior user, which may reflect nothing more than an effort to

28   induce the sale of goods or services by confusion or lessen the distinctiveness and

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    thus the commercial value of a competitor's mark." *Id*. at 271 (cleaned up).  Here,

2    Defendants concede they are using BAYC Marks as the centerpiece of their tokens,

3    including using "Bored Ape Yacht Club (BAYC)" to identify tokens with the exact

4    same images Yuga Labs' Bored Ape Yacht Club uses.  Mot. at 6.  There is no artistic

5    contribution on their part, and for the most part, the only embellishment they

6    occasionally add is an "RR" or "Ryder Ripps" in front of BAYC Marks.  *See, e.g.*,

7    Compl. ¶¶ 33-36, 42-43.  This spotlight on Yuga Labs' marks solely serves to "induce

8    the sale of goods or services by confusion."  *Gordon*, 909 F.3d at 271.

9         Faced with similar issues in an ongoing, first of its kind, NFT trademark case,

10   the judge in *Hermes International v. Rothschild* denied defendants' motion to dismiss

11   Hermes' trademark infringement lawsuit alleging that defendant's "Metabirkins"

12   NFTs infringed on Hermes' "Birkins" mark.  No. 22-cv-384, 2022 WL 1564597 at *1

13   (S.D.N.Y. May 18, 2022).  After a thorough *Rogers* analysis, the Court determined

14   that even though defendant altered the name of the mark (from Birkins to Metabirkins)

15   and the appearance of the NFT images was different from the real bags, Hermes

16   alleged sufficient facts of explicit misleadingness to survive a motion to dismiss.  *Id*.

17   at *7.  In particular, Hermes alleged the strength of its own mark, evidence of actual

18   confusion, and the junior user's bad faith in adopting the mark.  *Id*. at *6.  The

19   allegations of Defendants' explicitly misleading conduct here is even stronger than in

20   *Hermes*.  Defendants did not even change the mark in many instances, the underlying

21   images went unaltered, and they advertised the RR/BAYC NFTs, using BAYC Marks

22   (often without any reference to "RR"), as equivalent to the official BAYC NFTs.

23   These facts are enough to survive Defendants' motion to dismiss.  But Yuga Labs

24   alleges even more.

25        **First**, the Complaint alleges that Defendants' "fuck off" Tweets highlight that

26   Defendants wanted to lure people into their knockoff products by using BAYC Marks

27   and goodwill into purchasing what they falsely claim is an equivalent product.

28   Compl. ¶¶ 53, 72, 116.  That's false advertising and intentional infringement.  For

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  purposes of the motion to dismiss, Yuga Labs' interpretation must control here, and
2  any factual disputes over what these Tweets meant cannot be decided at the motion
3  to dismiss stage.  Even so, the sales pages themselves did not contain criticism, and a
4  reasonably prudent consumer was likely to be confused, as Defendants intended.

5          **Second**, the existence of a disclaimer on the rrbayc.com reservation site does
6  not negate the confusion Defendants caused on other websites or other uses of BAYC
7  Marks where Defendants marketed or sold the infringing NFTs without the
8  disclaimer.  *See, e.g.*, Compl. ¶¶ 35-39.  The fact that Defendants felt the need to
9  include a disclaimer (however ineffectual) demonstrates their awareness that their use
10  of BAYC Marks was confusing.  Even more, sales on NFT marketplaces cause initial
11  interest confusion, for example, when purchasers who thought they were following
12  links on Google to official BAYC sales pages were actually going to RR/BAYC sales
13  pages.  Compl. ¶ 37; *see Brookfield Commc'ns, Inc.,* 174 F.3d at 1062.  Defendants
14  likewise caused post-sale confusion when they and other RR/BAYC token holders
15  displayed them on Twitter and elsewhere as if they were real BAYC NFTs.  Compl.
16  ¶ 53; *see Givenchy S.A. v. BCBG Max Azria Grp., Inc.*, No. CV 10-8394, 2012 WL
17  3072327, at *6 n.8 (C.D. Cal. Apr. 25, 2012) (even if some consumers were not
18  confused, post-sale confusion could damage handbag manufacturer where
19  "consumers can acquire the prestige value of the [handbag] product by buying the
20  copier's cheaper imitation.") (citation omitted).

21          **Third**, Defendants make much of minor changes to the marks including by
22  *only sometimes* tacking on "RR" before "BAYC."  Mot. at 15-16.  But making only a
23  slight, and occasional, change to a mark is still likely to result in confusion.  *See* J.
24  Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 23:20 (5th ed.
25  2018) ("To find trademark infringement only by exact identity and not where the
26  junior user makes some slight modification would 'be in effect to reward the cunning
27  infringer and punish only the bumbling one.'"); *Hard Rock Cafe Licensing Corp. v.*
28  *Pac. Graphics, Inc.*, 776 F. Supp. 1454, 1462 (W.D. Wash. 1991) (changing the "Hard

Fenwick & West LLP
Attorneys at Law

1  Rock Cafe" mark to "Hard Rain Cafe" appropriated most of the mark, resulting in

2  confusion.).  And consumers do not necessarily know what "RR" means and could

3  reasonably assume it is a new product or co-branding.  *See Rousselot B.V. v. St. Paul*

4  *Brands, Inc.*, No. CV190458, 2019 WL 6825763, at \*12 (C.D. Cal. July 24, 2019)

5  (denying motion to dismiss on trademark claims and finding that use of plaintiff's

6  trademark "implies that they are part of [plaintiff's] co-branding program, even

7  though they are not.").  For example, Yuga Labs has another NFT collection

8  abbreviated "MAYC" and has marketed with brands like MTV.

9      Likewise, Defendants emphasize Ryder Ripps' account name on their

10  Foundation NFT sales page, but it was far overshadowed by the massive text and logo

11  bearing BAYC Marks.[3]  Mot. at 16; Compl. ¶ 37.  Indeed, Defendants had to blow up

12  the size of this text in their motion to even show it was there.  *Id*.  Like Ripps' initials,

13  the existence of the name does not conclusively prove that the NFTs came from

14  another source, and reasonable consumers could assume it is co-branding.

15      Defendants also ignore the many other instances where they used BAYC Marks

16  with no changes.  For example, their Foundation sales page directly co-opted BAYC

17  Marks in several places.  Compl. ¶¶37-38.  As the Court in *Kiedis v. Showtime*

18  *Networks* found, "certainly the potential for [] confusing similarity exists when the

19  titles are exactly the same . . . ."  No. CV078185, 2008 WL 11173143, at \*4 (C.D.

20  Cal. Feb. 19, 2008) (alteration omitted).

21      **Finally,** to the extent there remains any uncertainty about how to interpret

22  Defendants' actions, the Court should deny the motion to dismiss because these are

23  "factual issue[s] not appropriate for resolution without examining the evidence."  *Id.*

24  *at \*5* (denying motion to dismiss trademark claims about confusing similarity

25

---

26  [3] Contrary to Defendants' improper screenshots, the RR/BAYC contract did *not* show
    Ripps' name as the "contract creator" when he sold thousands of the infringing NFTs.
27  *See* Compl. ¶ 39; Mot. at 16.  Defendants' newly manufactured image in the Motion
    appears to be an attempt to mislead the Court as to what the NFT contract looked like
28  when Defendants explicitly misled consumers.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  between song and television show named "Californication.").

2       **3.    Defendants' Use of BAYC Marks Is Not A Fair Use.**

3       Defendants argue that their use of BAYC Marks is nominative fair use.  But

4  nominative fair use does *not* apply when a defendant uses a mark to "refer[] to

5  something other than the plaintiff's product[.]"  *New Kids on the Block v. News Am.*

6  *Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  Similarly, nominative fair use only

7  allows for "truthful use of a mark," for example a Lexus dealer who sells Lexus

8  vehicles at lexusbroker.com.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d

9  1171, 1177 (9th Cir. 2010).  Defendants' use of BAYC Marks is not "truthful" or

10  referential because Defendants are *not* selling Yuga Labs' BAYC NFTs.  Instead,

11  Defendants use BAYC Marks to market and sell their own competing knockoff NFTs.

12  Nor can they claim nominative fair use for their nonidentical modified versions of

13  BAYC Marks.  *See E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095,

14  1099 (9th Cir. 2008) (nominative fair use defense did not apply when mark was "not

15  identical to the plaintiff's" mark).  Defendants also improperly raise the nominative

16  fair use affirmative defense at the motion to dismiss stage, which is "more

17  appropriately resolved on a motion for summary judgment."  *See Perry v. Brown*, No.

18  CV 18-9543, 2019 WL 1452911, at *12 (C.D. Cal. Mar. 13, 2019) (Walter, J.), *aff'd*

19  *and remanded,* 791 F.App'x 643 (9th Cir. 2019) (denying motion to dismiss).

20       Even so, Defendants do not establish each element of the defense.  *Dr. Seuss*

21  *Enters., L.P. v. ComicMix LLC*, 300 F. Supp. 3d 1073, 1091 (S.D. Cal. 2017)

22  (defendant's failure to satisfy all *New Kids* factors warranted denial of their motion to

23  dismiss).  As to the first *New Kids* factor, BAYC has become well-known in the NFT

24  community and beyond (Compl. ¶¶ 19-22), and contrary to Defendants' contention,

25  is readily identifiable without the use of BAYC Marks.  For example, the cover of

26  *Rolling Stone* featured an article with Bored Ape images, titled "*How Four NFT*

27  *Novices Created a Billion-Dollar Ecosystem of Cartoon Apes*" that evoked the brand

28  without infringing BAYC Marks.  *Id.* ¶ 19.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Second, Defendants did not use BAYC Marks only to the extent reasonably

2  necessary.   Instead, they frequently used the entirety of each mark without

3  modification to confuse consumers and trade on Yuga Labs' goodwill.   In *Toyota*

4  *Motor Sales*, the court found that defendants' use of not just the Lexus word mark,

5  but the "stylized Lexus mark and 'Lexus L' logo was more use of the mark than

6  necessary," where they could "adequately communicate their message without using

7  the visual trappings of the Lexus brand." 610 F.3d at 1181; *see also Summit Ent.,*

8  *LLC v. B.B. Dakota, Inc.*, No. CV-10-04328, 2011 WL 13216987, at *9 (C.D. Cal.

9  Nov. 21, 2011) ("extensive use" of film franchise's marks and images were not

10  reasonably necessary to inform consumers jacket was worn in film).   Likewise, here,

11  Defendants used direct copies of Yuga Labs' BAYC Marks.   Compl. ¶¶ 34, 36, 38,

12  42-44, 46.   And Defendants typically used BAYC Marks with Yuga Labs' NFT

13  images and even mimicked Yuga Labs' social media posts to sell the RR/BAYC

14  NFTs, further adding to the confusion.   *Id.* ¶¶ 33-47.   Their infringement was

15  widespread across numerous social media accounts, NFT marketplaces, and NFT

16  verification websites. *Id*.   This excessive use of "the visual trappings of the [BAYC]

17  brand" is more than necessary to identify Yuga Labs' NFTs. *Toyota Motor Sales*, 610

18  F.3d at 1181.

19    Finally, Defendants used BAYC Marks "prominently and boldly," to market

20  the RR/BAYC NFTs, thus "suggesting sponsorship." *Brother Recs., Inc. v. Jardine,*

21  318 F.3d 900, 908 (9th Cir. 2003); *see supra* § IV.B.2.   That Defendants in only some

22  places criticized Yuga Labs and provided an ineffectual disclaimer does not prove

23  that a "reasonably prudent consumer" could not be confused, especially where

24  Defendants' use of BAYC Marks pervaded the stream of commerce. *Supra* § IV.B.

**C.    Yuga Labs Has Pled Its Additional Federal and State Law Claims.**

**1.    Yuga Labs Plausibly Alleges Cybersquatting and Unfair Competition.**

28    Defendants' only argument is that Yuga Labs' cybersquatting claim is

1   precluded by *Rogers* and nominative fair use.  Mot. at 13, 18.  But they cite no case

2   applying the *Rogers* test to cybersquatting, and the case they do cite is inapposite.

3   *Calista Enterprises Ltd. v. Tenza Trading Ltd.* merely requires a likelihood of

4   confusion, which Yuga Labs has sufficiently pled and which Defendants concede. 43

5   F. Supp. 3d 1099, 1031 (9th Cir. 2014); Compl. ¶¶ 81-82 (Defendants' domain names

6   are "confusingly similar to Yuga Labs' BAYC and APE marks."); Tompros Decl. ¶ 6.

7   Likewise, Defendants' citation to *BMW of North America v. Mini Works, LLC* did not

8   "apply[] nominative fair use to cybersquatting." Mot. at 18.  That court only opined

9   on the bad faith and safe harbor aspects of plaintiff's cybersquatting claim. 463 Fed.

10  App'x. 689, 690 (Fed. Cir. 2011).  In any event, as shown above, these doctrines do

11  not excuse Defendants' actions.  *See supra* § IV.B.  The Complaint has adequately

12  pled cybersquatting.  *See* Compl. ¶¶ 77-85.

13      Similarly, Defendants' only argument to dismiss Yuga Labs' unfair

14  competition claim is that it is precluded by *Rogers* and nominative fair use.  Mot. at

15  13, 18.  Because those defenses cannot be decided in Defendants' favor on their

16  motion, the unfair competition claim must proceed.  Even still, Yuga Labs has

17  sufficiently alleged unfair competition under common law and Cal. Bus. & Prof. Code

18  § 17200. *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1123, 1138 (S.D.

19  Cal. 2014) ("The decisive test of common law unfair competition is whether the

20  public is likely to be deceived about the source of goods or services by the defendant's

21  conduct.").  Defendants' scam deceives consumers.  *See* Compl. ¶¶ 99-112; *supra*

22  § IV.B.

23          **2.    Yuga Labs Plausibly Alleges False Advertising.**

24      Here too, Defendants contend that Yuga Labs' false advertising claim fails due

25  to "deficiencies under the *Rogers* test and nominative fair use."  Again, these

26  inapplicable defenses do not preclude Yuga Labs' claims.  *See supra* § IV.B.

27  Defendants also claim Yuga Labs has not plausibly alleged a misleading

28  representation of fact in support of its false advertising claim.  To the contrary, the

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Complaint alleges that Defendants "advertised their copycat 'Ryder Ripps Bored Ape
2    Yacht Club' as equivalent to the authentic Bored Ape Yacht Club" and stated, "[y]ou
3    reserve an ape which you can choose." Compl. ¶ 72. Defendants' claims are false.
4    And these false equivalences could make reasonable consumers "likely to believe that
5    if they hold one of the RR/BAYC NFTs they will have access to the authentic Bored
6    Ape Yacht Club (they will not), that they own rights to the underlying art (they do
7    not), or that they will have access to exclusive launches by Yuga Labs for holders of
8    authentic Bored Ape NFTs (they will not)." *Id*. ¶ 73. The "fuck off" Tweets do not
9    "distinguish[]" RR/BAYC NFTs from the official Bored Ape NFTs (Mot. at 21), but
10   rather falsely advertise their NFTs as a product equivalent to Yuga Labs' NFTs. Even
11   Defendants' incorrect claim that they own a registered trademark for RR/BAYC is
12   false advertising because it suggests a false equivalence and explicitly misleads
13   consumers about legitimacy that they simply do not have. *See* Compl. ¶ 46.

### 3.    Yuga Labs Plausibly Alleges Conversion.

15   Yuga Labs' conversion claim is legally sufficient because (1) Yuga Labs has
16   plausibly alleged wrongful disposition of property and (2) courts recognize that
17   plaintiffs may state a claim for conversion of their trademarks.

18   First, to state a claim for conversion, a plaintiff must allege "right to possession
19   of property" and "wrongful disposition of the property right[.]" *Kremen v. Cohen*,
20   337 F.3d 1024, 1029 (9th Cir. 2003). Defendants do not deny the validity or Yuga
21   Labs' right to possession of its BAYC trademarks. Yuga Labs alleges that Defendants
22   "substantially interfered with Yuga Labs' ownership and rights in [the BAYC] marks
23   by knowingly or intentionally using them to promote their own [infringing]
24   RR/BAYC NFTs." Compl. ¶ 133. This is supported by substantial evidence of
25   infringement. *See id.* ¶¶ 33-47. Yuga Labs sufficiently pled wrongful disposition.

26   Second, courts in this judicial district recognize claims for conversion of
27   trademarks. *See Jaeyoung Nam v. Alpha Floors*, No. 16-cv-6810, 2017 WL
28   11635994, at *8 (C.D. Cal. Jan. 4, 2017) (rejecting *Meeker* and concluding that "a

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   plaintiff may state a claim for conversion of a trademark.").  Contrary to Defendants'

2   misleading citations, the Northern District of California also recognizes claims for

3   conversion of trademarks.  *See Eng. & Sons, Inc. v. Straw Hat Rests., Inc.*, 176 F.

4   Supp. 3d 904, 923 (N.D. Cal. 2016) (rejecting *Meeker*).  Yuga Labs' trademark

5   conversion claim is adequately pled.

### 4. Yuga Labs Plausibly Alleges Intentional Interference.

7        Yuga Labs' intentional interference claim is sufficient because it has plausibly

8   alleged an independently wrongful act and provided examples of actual disruption to

9   an economic relationship.

10       First, Yuga Labs sufficiently alleges trademark infringement and thus an

11  independently wrongful act.  *See*, *supra* §§ II.A, IV.B.  But aside from trademark

12  infringement, Yuga Labs also alleges three *additional* independently wrongful acts:

13  "(b) engaging in unfair competition, (c) engaging in false advertising, and/or

14  (d) offering a competing fake product to devalue Yuga Labs' authentic Bored Ape

15  NFTs and the goodwill associated with them."  Compl. ¶ 144.  Each of these

16  independent acts was wrongful and well-pled.  *See*, *supra* §§ IV.B, IV.C.1-2.

17       Second, the Complaint sufficiently alleges a business relationship with Bored

18  Ape holders.  Contrary to Defendants' contention, California law does not prohibit

19  alleging loss of customers for intentional interference claims.  Rather, the standard

20  involves use of "improper methods of disrupting or diverting the business relationship

21  of another *which fall outside the boundaries of fair competition*."  *Settimo Assocs. v.*

22  *Environ* Sys.*, Inc.*, 14 Cal. App. 4th 842, 845 (1993) (emphasis added).  Yuga Labs

23  sufficiently alleges Defendants disrupted their business relationships through unfair

24  competition.  *See supra* §§ IV.B, IV.C.1; Compl. ¶¶ 139-149.  Defendants unfairly

25  competed and infringed by using BAYC Marks to sell copycat NFTs.  Compl. ¶ 145.

26       In any event, Yuga Labs also sufficiently alleges actual disruption to economic

27  relationships with Bored Ape holders.  *See id.* ¶¶ 141, 145.  These allegations are

28  based on specific examples and are far from the "conclusory" statement at issue in

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   *Sybersound*. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir.

2   2008). Yuga Labs can also readily amend to add even more examples.

3              **5.    Yuga Labs Plausibly Alleges Negligent Interference.**

4       Yuga Labs sufficiently alleges unreasonable conduct through trademark

5   infringement and other causes of action, and has demonstrated disruption of existing

6   business relationships with Bored Ape holders. *See supra* § IV.B.

7       Yuga Labs has also sufficiently pled a special relationship with Defendants.

8   Specifically, Defendants had a duty not to infringe on Yuga Labs' intellectual

9   property. Their intentional actions support the existence of a duty. *See Panavision*

10  *Int'l, L.P. v. Toeppen*, 1996 WL 768036, at *3 (C.D. Cal. Nov. 27, 1996) (denying

11  motion to dismiss negligent interference claim, taking into account Defendant's intent

12  to infringe on plaintiff's marks). That Defendants are competitors is distinguishable

13  from the duty analysis. "Whether a duty is owed is simply a shorthand way of

14  phrasing what is 'the essential question—whether the plaintiff's interests are entitled

15  to legal protection against the defendant's conduct.'" *J'Aire Corp. v. Gregory*, 24

16  Cal. 3d 799, 803 (1979) (quoting *Dillon v. Legg*, 68 Cal.2d 728, 734 (1968)). Here,

17  Yuga Labs' trademark interests are legally protected from Defendants' infringement.

18  Notably too, whether the parties are competitors is not one of the criteria under

19  California law to determine the existence of a duty. *Id*. And caselaw in this district

20  does not recognize it as one. *See, e.g.*, *Vera Mona, LLC v. Dynasty Grp. USA LLC*,

21  No. CV202615, 2021 WL 3623297, at *4 (C.D. Cal. Apr. 15, 2021) (finding

22  competitor who infringed plaintiff's trademark had special relationship sufficient to

23  support plaintiff's negligent interference claim, and denying motion to dismiss).

24              **6.    Yuga Labs' Unjust Enrichment Claim Should Not Be**
                **Stricken by the Anti-SLAPP Statute.**
25

26      This claim arises from equity and is unrelated to Defendants' purported speech.

27  *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008). It is a claim

28  for profits Defendants made by trading on Yuga Labs' goodwill; the basis for the

1   claim is not Defendants' speech.  Moreover, Yuga Labs plausibly alleges trademark

2   infringement (*supra* § IV.B), and has thus shown unjust retention of a benefit.

3   *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  Yet, given the split of

4   authority in California about whether unjust enrichment is a cause of action, and the

5   Court's prior rulings on this issue, Yuga Labs withdraws this claim but continues to

6   seek unjust enrichment as a remedy.  *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,

7   992 F. Supp. 2d 962, 981 (C.D. Cal. Jan. 9, 2014) (Walter, J).

8           **D.**    **None of Yuga Labs' Claims May Be Stricken Under California's**

9                 **Anti-SLAPP Law.**

10       Defendants have not established that they are being sued for protected activity,

11   and thus the anti-SLAPP statute does not apply and the motion fails.  *Supra* § IV.A.

12   The anti-SLAPP motion also fails because Yuga Labs states a claim for each state-

13   law cause of action.  Thus, even if Defendants can establish that their sale of

14   RR/BAYC NFTs is somehow a First Amendment protected activity (which it is not),

15   Yuga Labs' claims easily possess the "minimal merit" needed to survive an anti-

16   SLAPP motion.  *See Hilton*, 599 F.3d at 908.

17       Defendants are also not entitled to fees.  None of Yuga Labs' claims target

18   Defendants' protected activity—the remedies sought are classic trademark

19   infringement remedies.  Any conceivable protected activity is so incidental to these

20   claims as to make application of anti-SLAPP unreasonable.  *Episcopal Church Cases*,

21   45 Cal. 4th 467, 478 (2009) ("The additional fact that protected activity may lurk in

22   the background—and may explain why the rift between the parties arose in the first

23   place—does not transform a property dispute into a SLAPP suit."); *see also Hilton*,

24   599 F.3d at 901-02 ("an anti-SLAPP motion requires the court to ask, first, whether

25   the suit arises from the defendant's protected conduct and, second, whether the

26   plaintiff has shown a probability of success on the merits.  If the first question is

27   answered in the negative, then the motion must fail, even if the plaintiff stated no

28   cognizable claim.").  Additionally, if any state-law claims are dismissed, the partial

Fenwick & West LLP
ATTORNEYS AT LAW

1    dismissal will be "so insignificant that [Defendants] did not achieve any practical

2    benefit from bringing the motion," and such "technical victories" do not entitle

3    Defendants to fees under the statute. *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148,

4    1155 (C.D. Cal. 2010).   Here, all of Yuga Labs' federal claims for Defendant's

5    trademark infringement, which are the core claims at issue, are unaffected by

6    Defendants' motion to strike.

7          On the other hand, "[i]f the court finds that a special motion to strike is frivolous

8    or is solely intended to cause unnecessary delay, the court shall award costs and

9    reasonable attorney's fees to a plaintiff prevailing on the motion . . . ." Cal. Civ. Proc.

10   Code § 425.16(c)(1).  An award of fees for Yuga Labs is particularly warranted here,

11   where Defendants abused the anti-SLAPP statute to air their false assertions against

12   Yuga Labs' founders and distract from infringing actions they took against Yuga Labs

13   that are the subject of this lawsuit.  Indeed, their two declarations with 36 improper

14   and objectionable exhibits reinforces a fee award.  *See* Yuga Labs' Objections to

15   Evidence.  Defendants concede their motion is targeted at a non-existent defamation

16   claim; this is a trademark dispute in which the anti-SLAPP statute has no business.

17   **V.    CONCLUSION**

18         Defendants' motion presents no argument requiring the Court to strike or

19   dismiss Yuga Labs' claims, and it should be denied.  If the Court, though, determines

20   that any aspect of Yuga Labs' Complaint is insufficient, Yuga Labs requests the

21   opportunity to amend its Complaint.  Under Rule 15, "court[s] should freely give

22   leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).

23   Dated:  October 17, 2022              FENWICK & WEST LLP

24

25                                  By:  */s/ Eric Ball*
                                         Eric Ball
26                                       Attorneys for Plaintiff
                                         YUGA LABS, INC.
27

28

1  ERIC BALL (CSB No. 241327)
   eball@fenwick.com
2  KIMBERLY CULP (CSB No. 238839)
   kculp@fenwick.com
3  FENWICK & WEST LLP
   801 California Street
4  Mountain View, CA 94041
   Telephone:   650.988.8500
5  Facsimile:   650.938.5200

6
   ANTHONY M. FARES (CSB No. 318065)
7  afares@fenwick.com
   ETHAN MICHAEL THOMAS (CSB No. 338062)
8  ethomas@fenwick.com
   FENWICK & WEST LLP
9  555 California Street, 12th Floor
   San Francisco, CA  94104
10 Telephone:  415.875.2300
   Facsimile:  415.281.1350
11

12 Attorneys for Plaintiff
   YUGA LABS, INC.
13

14                    UNITED STATES DISTRICT COURT

15                  CENTRAL DISTRICT OF CALIFORNIA

16                        WESTERN DIVISION

17

18 YUGA LABS, INC.,                       Case No.: 2:22-CV-04355-JFW-JEM

19            Plaintiff,                   **YUGA LABS, INC.'S OBJECTIONS
                                           TO DEFENDANTS' EVIDENCE
20     v.                                  FILED WITH  DEFENDANTS'
                                           MOTION TO STRIKE AND
21 RYDER RIPPS, JEREMY CAHEN, and          DISMISS**
   DOES 1-10,
22                                         Date:      Nov. 7, 2022
                                           Time:      1:30 p.m.
23            Defendants.                  Dept:      Courtroom 7A
                                           Judge:     Honorable John F. Walter
24

25

26

27

28

FENWICK & WEST LLP (left margin, vertical)

# TABLE OF CONTENTS

**Page**

I. THE DECLARATION OF RYDER RIPPS .................................................. 1

    A. Objection Number 1 ..................................................... 1

    B. Objection Number 2 ..................................................... 5

    C. Objection Number 3 ..................................................... 6

    D. Objection Number 4 ..................................................... 6

    E. Objection Number 5 ..................................................... 7

    F. Objection Number 6 ..................................................... 8

    G. Objection Number 7 ................................................... 10

    H. Objection Number 8 ................................................... 11

    I. Objection Number 9 ................................................... 12

    J. Objection Number 10 ................................................. 13

II. THE DECLARATION OF LOUIS TOMPROS ......................................... 15

    A. Objection Number 11 ................................................. 15

    B. Objection Number 12 ................................................. 16

    C. Objection Number 13 ................................................. 18

    D. Objection Number 14 ................................................. 18

    E. Objection Number 15 ................................................. 19

    F. Objection Number 16 ................................................. 20

    G. Objection Number 17 ................................................. 21

    H. Objection Number 18 ................................................. 22

    I. Objection Number 19 ................................................. 23

    J. Objection Number 20 ................................................. 24

    K. Objection Number 21 ................................................. 25

    L. Objection Number 22 ................................................. 26

    M. Objection Number 23 ................................................. 28

    N. Objection Number 24 ................................................. 29

FENWICK & WEST LLP

# TABLE OF CONTENTS
## (continued)

Page

O.    Objection Number 25 ........................................................................ 30

P.    Objection Number 26 ........................................................................ 31

Q.    Objection Number 27 ........................................................................ 33

R.    Objection Number 28 ........................................................................ 34

S.    Objection Number 29 ........................................................................ 35

T.    Objection Number 30 ........................................................................ 36

U.    Objection Number 31 ........................................................................ 37

V.    Objection Number 32 ........................................................................ 38

W.    Objection Number 33 ........................................................................ 39

X.    Objection Number 34 ........................................................................ 40

Y.    Objection Number 35 ........................................................................ 41

Z.    Objection Number 36 ........................................................................ 42

AA.   Objection Number 37 ........................................................................ 43

BB.   Objection Number 38 ........................................................................ 44

CC.   Objection Number 39 ........................................................................ 45

DD.   Objection Number 40 ........................................................................ 46

EE.   Objection Number 41 ........................................................................ 47

FF.   Objection Number 42 ........................................................................ 48

GG.   Objection Number 43 ........................................................................ 49

HH.   Objection Number 44 ........................................................................ 50

Fenwick & West LLP

# TABLE OF AUTHORITIES

**CASES**

*Carlsen v. Bank of Am., N.A.,*
  No. CV 20-1463, 2020 WL 4258657 (C.D. Cal. June 11, 2020)...................4, 15

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
  896 F.2d 1542 (9th Cir. 1990).......................................................................4, 15

*Herring Networks, Inc. v. Maddow,*
  8 F.4th 1148 (9th Cir. 2021)...............................................................................16

*Khoja v. Orexigen Therapeutics,*
  899 F.3d 988 (9th Cir. 2018)........................................................................15, 17

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
  890 F.3d 828 (9th Cir.), *amended,* 897 F.3d 1224 (9th Cir. 2018)...............4, 16

**STATUTES AND RULES**

Federal Rule of Civil Procedure 12(b)(6).............................................*passim*

Federal Rule of Evidence 201 .............................................................*passim*

Federal Rule of Evidence 401 .............................................................*passim*

Federal Rule of Evidence 403 .............................................................*passim*

Federal Rule of Evidence 404 ...............................................................5, 6, 7

Federal Rule of Evidence 602 ...............................................................4, 14

Federal Rule of Evidence 701 .............................................................*passim*

Federal Rule of Evidence 702 .............................................................*passim*

Federal Rule of Evidence 801 .............................................................*passim*

Federal Rule of Evidence 901 .............................................................*passim*

FENWICK & WEST LLP

1    On October 3, 2022, Defendants filed the declarations of Ryder Ripps and
2    Louis Tompros in support of their Anti-SLAPP Motion to Strike and Motion to
3    Dismiss ("MTS")—despite knowing that the content of these declarations is false,
4    clearly unrelated to the case at hand, and intended to harass and disparage Yuga Labs'
5    founders. *See* Dkt. 48, 48-1, and 48-3. Yuga Labs hereby objects to portions of, or
6    the entirety of, these declarations, including their exhibits, as set forth below.

## I.    The Declaration of Ryder Ripps

### A.    Objection Number 1

9    <u>Material Objected To</u>:   The entirety of the Declaration of Ryder Ripps.
10   Dkt. 48-1.

11   <u>Grounds for Objection</u>:   Yuga Labs objects that Ripps' declaration lacks
12   foundation.  The purported "facts" about Yuga Labs' founders to which Ripps
13   purports to testify are false, Ripps knows they are false, and Ripps has no factual basis
14   to make them.  The facts that are known to Ripps contradict the false claims that he
15   has concocted about Yuga Labs' founders.  Ripps' knowledge that these claims are
16   false leaves only one conclusion – he is seeking to make a mockery of this case by
17   using Defendants' filings to harass and disparage Yuga Labs' founders.

18   Yuga Labs and its founders have publicly explained how Yuga Labs created
19   Yuga Labs' logo, the art for its NFTs, and the inspiration for its name.  Ripps is not a
20   founder of Yuga Labs or in any way connected with the company and thus does not
21   have any personal knowledge as to how and why Yuga Labs created its assets other
22   than what Yuga Labs has shared with the public.

23   But Ripps does not need to take Yuga Labs and its founders' words for the truth
24   to know that his claims are false.  Ripps is well aware of the publicly available emails
25   proving that the inspiration for the BAYC logo was a combination of maritime club
26   patches,   punk   rock   designs,   streetwear,   and   skating   culture.   *See*
27   https://medium.com/@team_69582/a-letter-from-the-founders-678e5a3431e7.   Not
28   one source of inspiration that Yuga Labs provided to the designer who created the

FENWICK & WEST LLP

1  logo was the Nazi *Totenkopf*. *Id.* Indeed, based on the inspirations shared by Yuga

2  Labs, the designer provided Yuga Labs with different logo options:



15  Yuga Labs selected the image that most looked like a patch, which it felt was

16  evocative of patches for old yacht clubs. *Id.* Although Ripps falsely claims that the

17  founders chose the orientation of the skull to match the orientation of the skull in the

18  Nazi *Totenkopf*, in reality, the angle of the skull was inspired by a photograph of a

19  real ape skull, which came from a Google image search result for "ape skull."



Fenwick & West LLP

1    Ripps has no factual basis for testifying under oath to the contrary.  It is

2  fantastical and harassing for the Defendants to continue to knowingly make false

3  statements that are legally irrelevant to this litigation.  But that is exactly the purpose

4  of Ripps' declaration.  He desires to misuse this case to harass and disparage Yuga

5  Labs' founders.

6    Ripps also knows that an expert on Nazism[1] from the Anti-Defamation League

7  reviewed and considered Ripps' claims of neo-Nazism and rejected them.  *See e.g.*,

8  Tompros Decl. Ex. 20, Dkt. 48-23, at 4.[2]  In particular, the expert concluded that there

9  is no apparent connection between BAYC's logo and the Nazi *Totenkopf* image.  *Id.*

10  Ripps has been aware of this denouncement of his demonstrably false claims since at

11  least February 2022.

12    The BAYC collection is irreverent, egalitarian, and a little bit weird.  Yuga

13  Labs wanted the BAYC collection to capture the vibe of a radical 1969 Warhol

14  Factory party where everyone, from bikers to beatniks to bankers, were invited.  The

15  BAYC collection has everything from S&M hats to rainbow suspenders, punk rock

16  jackets to togas, Hawaiian shirts to Cuban guayaberas, devil's horns to halos to

17  cowboy hats, cigars to kazoos to pizza slices, and sunglasses to robot eyes to laser

18  beams.  With over 170 mixing and matching traits in the collection, there is an Ape

19  that almost anyone can find themselves in.  That also means that what any one Ape

20  looks like is the function of this mixing and matching, not any person's purported

21  racism.  The entire concept is eclectic:  a bunch of apes hanging out in a yacht club in

22  a swamp, drawing on a bathroom wall.  Ripps knows this.

23    Additionally, there are two inspirations for the name of the company, Yuga

24  Labs.  The term "yuga" itself means "era" in Sanskrit.  Yuga Labs is building a

---

[1] Ripps is not such an expert, and any opinion he might offer is improper.  Fed. R. Evid. 701 and 702.

[2] Although Yuga Labs objects to this exhibit, along with many others filed by Defendants in support of their motion, Defendants' own evidence debunks their false claims.

1    company for a new era:  Web3.  There is also a Zelda videogame character named

2    Yuga that turns things into 2D art, which is similar to Yuga Labs' business.  Yuga

3    Labs has publicized these facts too, and Ripps knows them.

4         Ripps offers no factual basis – and cannot offer one – for his false assertion that

5    Yuga Labs engaged in a plot to deceive the public into popularizing Nazi symbolism,

6    alt-right dog whistles, or racist imagery.  There is no such factual basis because those

7    claims are false and disproven by evidence that is readily available in the public

8    domain and known to him.  Importantly, Federal Rule of Evidence 602 specifically

9    prohibits Ripps from presenting his false speculation as evidence to the Court, which

10   operates on facts and the law.

11        Yuga Labs further objects that the Court may not consider material beyond the

12   pleadings in ruling on a Rule 12(b)(6) motion.  *See Hal Roach Studios, Inc. v. Richard*

13   *Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  "[A] court may consider

14   material which is properly submitted as part of the complaint and matters which may

15   be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the

16   motion to dismiss into a motion for summary judgment."  *Carlsen v. Bank of Am.,*

17   *N.A.*, No. CV 20-1463, 2020 WL 4258657, at *4 (C.D. Cal. June 11, 2020).  However,

18   Ripps has not asked the Court to take judicial notice of the purported (false) facts in

19   his declaration.  Fed. R. Evid. 201(c) ("The court:  (1) may take judicial notice on its

20   own; or (2) must take judicial notice if a party requests it and the court is supplied

21   with the necessary information.").  Nor has Ripps established that the Court *can* take

22   judicial notice of the material he has submitted, which is information and an exhibit

23   that are not part of the Complaint and are not facts which are "accurately and readily

24   determined from sources whose accuracy cannot reasonably be questioned."  *Id.*

25   201(b)(2).

26        Yuga Labs further objects that the Court cannot consider evidence outside of

27   the Complaint on an anti-SLAPP motion analyzed under Rule 12(b)(6).  *See Planned*

28   *Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.),

FENWICK & WEST LLP

1  *amended*, [897 F.3d 1224 (9th Cir. 2018)](#) ("[W]e hold that, on the one hand, when an

2  anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district

3  court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider

4  whether a claim is properly stated.").

5

6      Plaintiff's objections to the Declaration of Ryder Ripps are hereby

7      _____  SUSTAINED.          _____  OVERRULED.

8

9      **B.    Objection Number 2**

10     <u>Material Objected To</u>:  Paragraph 1:  "I am a visual artist and creative director

11  whose multi-disciplinary practice aims to dismantle the porous boundaries between

12  art, the internet, and commerce, agitating the structure of the attention economy and

13  revealing the flow of power in online relationships."

14     <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

15  objections stated in Objection Number 1 that the Court should not consider evidence

16  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

17     Yuga Labs objects pursuant to Federal Rule of Evidence 401 that this

18  Paragraph 1 does not make a fact regarding Defendants' infringement of the BAYC

19  Marks more or less probable.

20     Yuga Labs further objects pursuant to Federal Rule of Evidence 404 that the

21  fact Ripps regards himself as an artist does not prove or tend to prove that his sale of

22  NFTs using the BAYC Marks is expressive or protected.

23

24     Plaintiff's objections to Paragraph 1 in the Declaration of Ryder Ripps are

25  hereby

26     _____  SUSTAINED.          _____  OVERRULED.

27

28

FENWICK & WEST LLP

## C.     Objection Number 3

Material Objected To:  Paragraph 2:  "My work often examines popular culture and highlights the effects of technology on society."

Grounds for Objection:   Yuga Labs objects on the same grounds as its objections stated in Objection Number 1 that the Court should not consider evidence outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

Yuga Labs objects pursuant to Federal Rule of Evidence 401 that this Paragraph 2 does not make a fact regarding Defendants' infringement of the BAYC Marks more or less probable.

Yuga Labs further objects pursuant to Federal Rule of Evidence 404 that the fact Ripps regards himself as an artist, or what the purpose of his art "often" is, does not prove or tend to prove that his sale of NFTs using the BAYC Marks is expressive or protected.

Plaintiff's objections to Paragraph 2 in the Declaration of Ryder Ripps are hereby

_____  SUSTAINED.              _____  OVERRULED.

## D.     Objection Number 4

Material Objected To:  Paragraph 3:  "Through my creative content company, OKFocus, I have led creative direction and design projects for companies like Nike and Red Bull, and developed branding for products such as Soylent meat replacements.  I have also worked closely with Kanye West in connection with his creative agency *Donda*, and have created art and executed creative direction with many leading musicians such as Grimes, James Blake, MIA, Pop Smoke, Pusha T, Tame Impala, and Travis Scott."

1    Grounds for Objection:   Yuga Labs objects on the same grounds as its

2  objections stated in Objection Number 1 that the Court should not consider evidence

3  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

4    Yuga Labs objects pursuant to Federal Rule of Evidence 401 that this

5  Paragraph 3 does not make a fact regarding Defendants' infringement of the BAYC

6  Marks more or less probable.

7    Yuga Labs further objects pursuant to Federal Rule of Evidence 404 that the

8  fact Ripps regards himself as an artist, that any third party might regard him as an

9  artist, or what work he may have developed, does not prove or tend to prove that his

10  sale of NFTs using the BAYC Marks is expressive or protected.

11

12    Plaintiff's objections to Paragraph 3 in the Declaration of Ryder Ripps are

13  hereby

14    _____ SUSTAINED.          _____ OVERRULED.

15

16    **E.    Objection Number 5**

17    Material Objected To:  Paragraph 4:  "Beginning at the end of 2021, I started

18  researching Yuga Labs, Inc. ('Yuga') and their use of neo-Nazi symbolism, alt-right

19  dog whistles, and racist imagery in their company and in the Bored Ape Yacht Club

20  ('BAYC') non-fungible tokens ('NFTs')."

21    Grounds for Objection:   Yuga Labs objects on the same grounds as its

22  objections stated in Objection Number 1 that the Court should not consider evidence

23  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

24    Yuga Labs objects that this Paragraph 4 lacks foundation to assert any of Ripps'

25  outlandish allegations, including that Yuga Labs uses neo-Nazi symbolism, alt-right

26  dog whistles, or racist imagery, which is a factually false claim as discussed in

27  connection with Objection Number 1.

28

1    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

2  Paragraph 4 does not make a fact regarding Defendants' infringement of the BAYC

3  Marks more or less probable.  What Ripps did in 2021 is not relevant to the facts

4  alleged in the Complaint and the facts to which Ripps admitted.  Specifically, by

5  Ripps' own testimony (in Paragraph 8 of his declaration), he did not begin the

6  RR/BAYC NFTs until May 13, 2022.  Ripps admits then that his false claims about

7  Yuga Labs' founders and Defendants' trademark infringement of the BAYC Marks

8  are two separate acts.

9    Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

10  probative value of Paragraph 4 is substantially outweighed by the danger of unfair

11  prejudice or confusing the issues.  While Yuga Labs condemns Ripps' willfully false

12  statements, Defendants' offensive accusations against Yuga Labs' founders are not

13  the basis for any claim in this lawsuit.

14    Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702

15  that Ripps is not qualified to offer his factually unsupported and disproven opinions.

16

17    Plaintiff's objections to Paragraph 4 in the Declaration of Ryder Ripps are

18  hereby

19    \_\_\_\_\_  SUSTAINED.          \_\_\_\_\_  OVERRULED.

20

21    **F.    Objection Number 6**

22    <u>Material Objected To</u>:  Paragraph 5:  "I began posting on social media, Twitter

23  and Instagram, going on podcasts, and speaking to investigative journalists to expose

24  the misconduct I had found and to start a public discussion of Yuga's offensive

25  material.    Additionally,   in   January   2022,   I   created   the   website

26  https://gordongoner.com to compile the information I found for the public to view

27  and discuss."

28

FENWICK & WEST LLP

1    <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its
2    objections stated in Objection Number 1 that the Court should not consider evidence
3    outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

4        Yuga Labs objects that Ripps lacks foundation to assert any of his false and
5    outlandish allegations, including that Yuga Labs' material is "offensive" and that any
6    "misconduct" occurred, which is a factually false claim as discussed in connection
7    with Objection Number 1.

8        Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this
9    Paragraph 5 does not make a fact regarding Defendants' infringement of the BAYC
10   Marks more or less probable.  What Ripps did in 2021 and early 2022 is not relevant
11   to the facts alleged in the Complaint and the facts to which Ripps admitted.
12   Specifically, by Ripps' own testimony (in Paragraph 8 of his declaration), he did not
13   begin the RR/BAYC NFTs until May 13, 2022.  Ripps admits then that his false
14   claims about Yuga Labs' founders and Defendants' trademark infringement of the
15   BAYC Marks are two separate acts.

16       Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any
17   probative value of Paragraph 5 is substantially outweighed by the danger of unfair
18   prejudice or confusing the issues.  This case focuses on trademark infringement and
19   false advertising by Defendants.  While Yuga Labs condemns Ripps' willfully false
20   statements, Defendants' offensive accusations against Yuga Labs' founders are not
21   the basis for any claim in this lawsuit.

22       Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702
23   that Ripps is not qualified to offer his factually unsupported and disproven opinions
24   that Yuga Labs' material is "offensive" or that any "misconduct" occurred.

25

26       Plaintiff's objections to Paragraph 5 in the Declaration of Ryder Ripps are
27   hereby

28       _____ SUSTAINED.        _____ OVERRULED.

FENWICK & WEST LLP

1    **G.    Objection Number 7**

2    <u>Material Objected To</u>:  Paragraph 6:  "I also spoke against the number of

3 celebrities that promoted BAYC NFTs.  It is my understanding that Yuga used the

4 following celebrities to promote the BAYC collection and their neo-Nazi

5 symbolism . . . ."

6    <u>Grounds for Objection</u>:  Yuga Labs objects on the same grounds as its

7 objections stated in Objection Number 1 that the Court should not consider evidence

8 outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

9    Yuga Labs objects that Ripps lacks foundation to assert any of his false and

10 outlandish allegations, including that Yuga Labs uses neo-Nazi symbolism, which is

11 a factually false claim as discussed in connection with Objection Number 1.

12 Furthermore, Ripps has no factual basis for testifying that "Yuga used the following

13 celebrities to promote the BAYC collection *and their neo-Nazi symbolism*" (emphasis

14 added) because that statement is false.  Even if his statement were not false (which it

15 is), Ripps is not a founder of Yuga Labs or in any way connected with the company

16 and thus could not have any personal knowledge of Yuga Labs' internal marketing

17 plans.

18    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

19 Paragraph 6 does not make a fact regarding Defendants' infringement of the BAYC

20 Marks more or less probable.  What Ripps did in 2021 and early 2022 is not relevant

21 to the facts alleged in the Complaint and the facts as admitted to by Ripps.

22 Specifically, by Ripps' own testimony (in Paragraph 8 of his declaration), he did not

23 begin the RR/BAYC NFTs until May 13, 2022.  Ripps admits then that his false

24 claims about Yuga Labs' founders and Defendants' trademark infringement of the

25 BAYC Marks are two separate acts.

26    Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

27 probative value of Paragraph 6 is substantially outweighed by the danger of unfair

28 prejudice or confusing the issues.  While Yuga Labs condemns Ripps' willfully false

FENWICK & WEST LLP

1  statements, Defendants' offensive accusations against Yuga Labs' founders are not

2  the basis for any claim in this lawsuit.

3       Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702

4  that Ripps is not qualified to offer his factually unsupported and disproven opinion

5  that Yuga Labs uses neo-Nazi symbolism.

6

7       Plaintiff's objections to Paragraph 6 in the Declaration of Ryder Ripps are

8  hereby

9  _____ SUSTAINED.          _____ OVERRULED.

10

11  **H.    Objection Number 8**

12      <u>Material Objected To</u>:  Paragraph 7: "In December 2021, Guy Oseary, Yuga's

13  talent manager, called me to discuss the public statements I had made about Yuga's

14  neo-Nazi symbolism.  On the call, Oseary made a series of vague threats, saying 'I

15  can be a nice guy or I can be a not nice guy' and that I would be better off being

16  friends with Yuga.  Oseary suggested that he understood Yuga used racist dog

17  whistles by stating 'who am I to judge someone's art.'  Oseary stated that he would

18  help me if I kept silent and that he could make my life difficult if I did not cooperate.

19  Oseary also offered to introduce me to Kanye West, not realizing that I already

20  worked with him, and later added me to a text message thread with West's manager.

21  When I had not posted anything new criticizing Yuga for about one week and

22  unpinned a Tweet criticizing Yuga, Oseary left me a voice memo thanking me for

23  my silence."

24      <u>Grounds for Objection</u>:  Yuga Labs objects on the same grounds as its

25  objections stated in Objection Number 1 that the Court should not consider evidence

26  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

27      Yuga Labs objects that Ripps lacks foundation to assert any of his false and

28  outlandish allegations, including that Yuga Labs uses neo-Nazi symbolism, which is

FENWICK & WEST LLP

1  a factually false claim as discussed in connection with Objection Number 1.

2      Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

3  Paragraph 7 does not make a fact regarding Defendants' infringement of the BAYC

4  Marks more or less probable.  This call that Ripps allegedly had in 2021 is not relevant

5  to the facts alleged in the Complaint and the facts as admitted to by Ripps.

6  Specifically, by Ripps' own testimony (in Paragraph 8 of his declaration), he did not

7  begin the RR/BAYC NFTs until May 13, 2022.  Ripps admits then that his false claims

8  about Yuga Labs' founders and Defendants' trademark infringement of the BAYC

9  Marks are two separate acts.

10      Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

11  probative value of Paragraph 7 is substantially outweighed by the danger of unfair

12  prejudice or confusing the issues.  While Yuga Labs condemns Ripps' willfully false

13  statements, Defendants' offensive accusations against Yuga Labs' founders are not

14  the basis for any claim in this lawsuit.

15      Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702

16  that Ripps is not qualified to offer his factually unsupported and disproven opinion

17  that Yuga Labs uses neo-Nazi symbolism.

18

19      Plaintiff's objections to Paragraph 7 in the Declaration of Ryder Ripps are

20  hereby

21      _____ SUSTAINED.          _____ OVERRULED.

22

23  **I.    Objection Number 9**

24  <u>Material Objected To</u>:  Paragraph 8:  "On May 13, 2022, I began creating the

25  artistic project, RR/BAYC.  The project has grown to include a collection of NFTs,

26  each of which uses a unique blockchain entry but includes a link to the same digital

27  image as the corresponding BAYC NFT.  The purpose of the project was to (1) bring

28  attention to Yuga's use of racist messages and imagery, (2) expose Yuga's use of

1 celebrities and popular brands to disseminate offensive material, (3) create social
2 pressure demanding that Yuga take responsibility for its actions, and (4) educate the
3 public about the nature of NFTs."

4     <u>Grounds for Objection</u>:  Yuga Labs objects on the same grounds as its
5 objections stated in Objection Number 1 that the Court should not consider evidence
6 outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

7     Yuga Labs objects that Ripps lacks foundation to assert (falsely) that
8 Defendants' "project" is artistic.  For instance, in August 2022 Cahen told an audience
9 that "NFTs are not art."  Yuga Labs objects that this Paragraph 8 lacks foundation to
10 assert (falsely) that Yuga Labs used "racist messages and images", used celebrities
11 and popular brands to "disseminate offensive material", that there is "offensive
12 material" contained within Yuga Labs' work, and that Yuga Labs has taken any such
13 falsely alleged actions.

14     Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702
15 that this is improper opinion testimony that Defendants' RR/BAYC NFTs are artistic.

16

17     Plaintiff's objections to Paragraph 8 in the Declaration of Ryder Ripps are
18 hereby

19     \_\_\_\_\_ SUSTAINED.     \_\_\_\_\_ OVERRULED.

20

21     **J.   Objection Number 10**

22     <u>Material Objected To</u>:  Paragraph 15 and Exhibit 1 (Dkt. 48-2):  "Attached
23 hereto as Exhibit 1, is a list of various NFT projects that use the BAYC NFT images
24 to make a profit off of the BAYC NFT brand without expressing any artistic or critical
25 commentary regarding Yuga.  To the best of my knowledge, Yuga has not
26 commenced litigation against any of them."

27     <u>Grounds for Objection</u>:  Yuga Labs objects on the same grounds as its
28 objections stated in Objection Number 1 that the Court should not consider evidence

1   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

2       Yuga Labs objects pursuant to Federal Rule of Evidence 401 that this
3   Paragraph 15 and Exhibit 1 do not make a fact regarding Defendants' infringement
4   of the BAYC Marks more or less probable.  Whether other potential infringers exist
5   is immaterial to Defendants' infringement of Yuga Labs' trademarks.  That someone
6   else may infringe Yuga Labs' trademarks is not a defense for Defendants' own
7   infringement.

8       Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that this
9   Paragraph 15 and Exhibit 1 are misleading, incomplete, and a waste of time.

10      Yuga Labs further objects that Ripps' offensive speculation is not permitted in
11  this Court, which operates on facts and the law.  Fed. R. Evid. 602.  Ripps does not
12  declare how this list, in Exhibit 1, was created or offer any factual basis for his
13  statement that Yuga Labs has not commenced litigation against any of them.  His
14  declaration lacks any indicia of personal knowledge from which he could offer this
15  testimony.

16      Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702
17  that this Paragraph 15 and Exhibit 1 are improper opinion testimony about what is and
18  is not "artistic" or "critical" commentary.  Although Ripps admits that these knockoff
19  BAYC NFTs are neither "artistic" nor "critical" of Yuga Labs (and, thus by extension
20  admits that Defendants' own identical knockoff NFTs, the subject of this lawsuit, are
21  also neither artistic nor critical), Ripps may not testify to his opinion about whether
22  these other NFTs are artistic or expressive, or not.

23      Yuga Labs further objects pursuant to Federal Rule of Evidence 901 that
24  Exhibit 1 is an unauthenticated data compilation.

25

26      Plaintiff's objections to Paragraph 15, including Exhibit 1, in the Declaration
27  of Ryder Ripps are hereby

28          _____ SUSTAINED.          _____ OVERRULED.

Fenwick & West LLP

## II.     The Declaration of Louis Tompros

### A.     Objection Number 11

<u>Material Objected To</u>:  The entirety of the Declaration of Louis Tompros.  Dkt. 48-3.

<u>Grounds for Objection</u>:  Yuga Labs objects that generally the Court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  "[A] court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment."  *Carlsen v. Bank of Am., N.A.*, No. CV 20-1463, 2020 WL 4258657, at *4 (C.D. Cal. June 11, 2020).  Defendants have not asked the Court to take judicial notice of the exhibits attached to Mr. Tompros' declaration.  Fed. R. Evid. 201(c) ("The court:  (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information.").  Nor have they established that the Court *can* take judicial notice of the material Mr. Tompros has submitted, which are exhibits that are not part of the Complaint and are not facts which are "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Id.* 201(b)(2).  The Ninth Circuit has made clear that "[a] court must also consider – and identify – which fact or facts it is noticing from . . . [a document].  Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018).  This is because the substance "is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes."  *Id.* at 1000.  Defendants have not even attempted to establish that the Court can or should consider any of the exhibits attached to the declaration of Mr. Tompros in ruling on Defendants' MTS.

1       Yuga Lags further objects that the Court cannot consider evidence outside of

2    the Complaint on an anti-SLAPP motion analyzed pursuant to Rule 12(b)(6).  *Cf.*

3    *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021) ("The

4    defendant determines which motions she files, not the plaintiff. Given that the parties

5    do not dispute that Maddow's motion challenged the legal sufficiency of Herring's

6    complaint, we conclude that Herring's reliance on evidence outside of its complaint

7    in defending against the motion was improper and inconsistent with the Federal

8    Rules."); *see also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*

9    890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) ("[W]e hold

10    that, on the one hand, when an anti-SLAPP motion to strike challenges only the legal

11    sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure

12    12(b)(6) standard and consider whether a claim is properly stated.").

13       Yuga Labs further objects that the exhibits to Mr. Tompros' declaration are not

14    authenticated.  Fed. R. Evid. 901.  Mr. Tompros does not declare when any exhibit

15    was created and, for all except Exhibits 1, 2, and 35, does not declare from where the

16    exhibit was obtained.

17       Yuga Labs further objects that Mr. Tompros' declaration seeks to introduce

18    irrelevant and prejudicial material.  Fed. R. Evid. 401, 403.

19       Yuga Labs further objects that Defendants offer the declaration of

20    Mr. Tompros for the improper purposes of harassing Yuga Labs and needlessly

21    increasing the cost of litigation.

22

23       Plaintiff's objections to the Declaration of Louis Tompros are hereby

24    \_\_\_\_\_ SUSTAINED.      \_\_\_\_\_ OVERRULED.

25

26    **B.   Objection Number 12**

27    <u>Material Objected To</u>:  Exhibit 2 (Dkt. 48-5) to the Declaration of Louis

28    Tompros.

FENWICK & WEST LLP

1    Grounds for Objection:   Yuga Labs objects on the same grounds as its

2  objections stated in Objection Number 11 that the Court should not consider evidence

3  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

4    Yuga Labs objects that this website is not properly the subject of judicial notice

5  and Defendants' have not sought judicial notice of this Exhibit 2.  Fed. R. Evid. 201.

6  "[T]he mere mention of the existence of a document is insufficient to incorporate the

7  contents" of a document.  *Khoja*, 899 F.3d at 1002 (citation omitted).  Yuga Labs

8  further objects that Defendants offer Exhibit 2 for the improper purposes of harassing

9  Yuga Labs and needlessly increasing the cost of litigation.

10   Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

11  Exhibit 2 does not make a fact regarding Defendants' infringement of the BAYC

12  Marks more or less probable.  While Ripps' statements on this website are false and

13  offensive, they are not at issue in this lawsuit.  Instead, Defendants' infringing actions

14  are at issue.

15   Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

16  probative value of Exhibit 2 is substantially outweighed by the danger of unfair

17  prejudice or confusing the issues.  While Yuga Labs condemns Ripps' willfully false

18  statements on this website, Defendants' offensive accusations against Yuga Labs'

19  founders are not the basis for any claim in this lawsuit.

20   Yuga Labs further objects that Exhibit 2 is not authenticated.   Fed. R.

21  Evid. 901.

22   Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

23  improper hearsay.

24

25   Plaintiff's objections to Exhibit 2 to the Declaration of Louis Tompros are

26  hereby

27   _____ SUSTAINED.  _____ OVERRULED.

28

FENWICK & WEST LLP

**C.     Objection Number 13**

<u>Material Objected To</u>:   Exhibit 3 (Dkt. 48-6) to the Declaration of Louis Tompros.

<u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its objections stated in Objection Number 11 that the Court should not consider evidence outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

Yuga Labs objects that this webpage is not properly the subject of judicial notice and Defendants have not sought judicial notice of this Exhibit 3.  Fed. R. Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 3 for the improper purposes of harassing Yuga Labs and needlessly increasing the cost of litigation.

Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this Exhibit 3 does not make a fact regarding Defendants' infringement of the BAYC Marks more or less probable.

Yuga Labs further objects that Exhibit 3 is not authenticated.   Fed. R. Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 3, and although Exhibit 3 contains information which might answer those concerns Mr. Tompros does not establish those facts and the document is not self-authenticating.

Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as improper hearsay.


Plaintiff's objections to Exhibit 3 to the Declaration of Louis Tompros are hereby

_____  SUSTAINED.     _____  OVERRULED.


**D.     Objection Number 14**

<u>Material Objected To</u>:   Exhibit 4 (Dkt. 48-7) to the Declaration of Louis Tompros.

FENWICK & WEST LLP

1    Grounds for Objection: Yuga Labs objects on the same grounds as its

2 objections stated in Objection Number 11 that the Court should not consider evidence

3 outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

4    Yuga Labs objects that this webpage is not properly the subject of judicial

5 notice and Defendants have not sought judicial notice of this Exhibit 4. Fed. R.

6 Evid. 201. Yuga Labs further objects that Defendants offer Exhibit 4 for the improper

7 purposes of harassing Yuga Labs and needlessly increasing the cost of litigation.

8    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

9 Exhibit 4 does not make a fact regarding Defendants' infringement of the BAYC

10 Marks more or less probable.

11    Yuga Labs further objects that Exhibit 4 is not authenticated. Fed. R.

12 Evid. 901. Mr. Tompros does not declare where or when he acquired Exhibit 4.

13    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

14 improper hearsay.

15

16    Plaintiff's objections to Exhibit 4 to the Declaration of Louis Tompros are

17 hereby

18    _____ SUSTAINED.    _____ OVERRULED.

19

20    **E.    Objection Number 15**

21    Material Objected To: Exhibit 5 (Dkt. 48-8) to the Declaration of Louis

22 Tompros.

23    Grounds for Objection: Yuga Labs objects on the same grounds as its

24 objections stated in Objection Number 11 that the Court should not consider evidence

25 outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

26    Yuga Labs objects that this webpage is not properly the subject of judicial

27 notice and Defendants have not sought judicial notice of this Exhibit 5. Fed. R.

28 Evid. 201. Yuga Labs further objects that Defendants offer Exhibit 5 for the improper

1  purposes of harassing Yuga Labs and needlessly increasing the cost of litigation.

2      Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

3  Exhibit 5 does not make a fact regarding Defendants' infringement of the BAYC

4  Marks more or less probable.

5      Yuga Labs further objects that Exhibit 5 is not authenticated. Fed. R. Evid. 901.

6  Mr. Tompros does not declare where or when he acquired Exhibit 5, and although

7  Exhibit 5 contains information which might answer those concerns Mr. Tompros does

8  not establish those facts and the document is not self-authenticating.

9      Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

10  improper hearsay.

11

12      Plaintiff's objections to Exhibit 5 to the Declaration of Louis Tompros are

13  hereby

14      _____ SUSTAINED.      _____ OVERRULED.

15

16      **F.    Objection Number 16**

17      <u>Material Objected To</u>:   Exhibit 6 (Dkt. 48-9) to the Declaration of Louis

18  Tompros.

19      <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

20  objections stated in Objection Number 11 that the Court should not consider evidence

21  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

22      Yuga Labs objects that this webpage is not properly the subject of judicial

23  notice and Defendants have not sought judicial notice of this Exhibit 6.  Fed. R.

24  Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 6 for the improper

25  purposes of harassing Yuga Labs and needlessly increasing the cost of litigation.

26      Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

27  Exhibit 6 does not make a fact regarding Defendants' infringement of the BAYC

28  Marks more or less probable.

FENWICK & WEST LLP

1   Yuga Labs further objects that Exhibit 6 is not authenticated.   Fed. R.

2   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 6, and

3   although Exhibit 6 contains information which might answer those concerns

4   Mr. Tompros does not establish those facts and the document is not self-

5   authenticating.

6   Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

7   improper hearsay.

8

9   Plaintiff's objections to Exhibit 6 to the Declaration of Louis Tompros are

10  hereby

11  _____  SUSTAINED.   _____  OVERRULED.

12

13  **G.   Objection Number 17**

14  <u>Material Objected To</u>:   Exhibit 7 (Dkt. 48-10) to the Declaration of Louis

15  Tompros.

16  <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

17  objections stated in Objection Number 11 that the Court should not consider evidence

18  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

19  Yuga Labs objects that this webpage is not properly the subject of judicial

20  notice and Defendants have not sought judicial notice of this Exhibit 7.  Fed. R.

21  Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 7 for the improper

22  purposes of harassing Yuga Labs and needlessly increasing the cost of litigation.

23  Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

24  Exhibit 7 does not make a fact regarding Defendants' infringement of the BAYC

25  Marks more or less probable.

26  Yuga Labs further objects that Exhibit 7 is not authenticated.   Fed. R.

27  Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 7.

28

FENWICK & WEST LLP

1   Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

2   improper hearsay.

3

4   Plaintiff's objections to Exhibit 7 to the Declaration of Louis Tompros are

5   hereby

6   _____   SUSTAINED.   _____   OVERRULED.

7

8   **H.   Objection Number 18**

9   <u>Material Objected To</u>:   Exhibit 8 (Dkt. 48-11) to the Declaration of Louis

10   Tompros.

11   <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

12   objections stated in Objection Number 11 that the Court should not consider evidence

13   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

14   Yuga Labs objects that this webpage is not properly the subject of judicial

15   notice and Defendants have not sought judicial notice of this Exhibit 8.  Fed. R.

16   Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 8 for the improper

17   purposes of harassing Yuga Labs and needlessly increasing the cost of litigation.

18   Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

19   Exhibit 8 does not make a fact regarding Defendants' infringement of the BAYC

20   Marks more or less probable.

21   Yuga Labs further objects that Exhibit 8 is not authenticated.   Fed. R.

22   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 8, and

23   although Exhibit 8 contains information which might answer those concerns

24   Mr. Tompros does not establish those facts and the document is not self-

25   authenticating.

26   Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

27   improper hearsay.

28

Fenwick & West LLP

1    Plaintiff's objections to Exhibit 8 to the Declaration of Louis Tompros are

2    hereby

3          _____ SUSTAINED.      _____ OVERRULED.

4

5    **I.    Objection Number 19**

6    Material Objected To:   Exhibit 9 (Dkt. 48-12) to the Declaration of Louis

7    Tompros.

8    Grounds for Objection:   Yuga Labs objects on the same grounds as its

9    objections stated in Objection Number 11 that the Court should not consider evidence

10   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

11   Yuga Labs objects that this webpage is not properly the subject of judicial

12   notice and Defendants have not sought judicial notice of this Exhibit 9.  Fed. R.

13   Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 9 for the improper

14   purposes of harassing Yuga Labs and needlessly increasing the cost of litigation.

15   Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

16   Exhibit 9 does not make a fact regarding Defendants' infringement of the BAYC

17   Marks more or less probable.

18   Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

19   probative value of Exhibit 9 is substantially outweighed by the danger of unfair

20   prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)

21   that Yuga Labs' founders are white supremacists and yet Defendants seek to introduce

22   Exhibit 9 to make that unfounded (and false) accusation.  Moreover, the document

23   itself indicates that "18" has been associated with a British white supremacist group

24   but only "occasionally" appears in cells in the U.S. that "tend to be small and short-

25   lived"; there is no evidence that any Yuga Labs founder has any relationship to any

26   "Combat 18" cell because none do.

27   Yuga Labs further objects that Exhibit 9 is not authenticated.  Fed. R.

28   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 9, and

FENWICK & WEST LLP

1   although Exhibit 9 contains information which might answer those concerns

2   Mr. Tompros does not establish those facts and the document is not self-

3   authenticating.

4       Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

5   improper hearsay.

6

7       Plaintiff's objections to Exhibit 9 to the Declaration of Louis Tompros are

8   hereby

9       _____ SUSTAINED.     _____ OVERRULED.

10

11      **J.    Objection Number 20**

12      <u>Material Objected To</u>:  Exhibit 10 (Dkt. 48-13) to the Declaration of Louis

13  Tompros.

14      <u>Grounds for Objection</u>:  Yuga Labs objects on the same grounds as its

15  objections stated in Objection Number 11 that the Court should not consider evidence

16  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

17      Yuga Labs objects that this Exhibit 10 is not properly the subject of judicial

18  notice and Defendants have not sought judicial notice of this Exhibit 10.  Fed. R.

19  Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 10 for the

20  improper purposes of harassing Yuga Labs and needlessly increasing the cost of

21  litigation.

22      Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

23  Exhibit 10 does not make a fact regarding Defendants' infringement of the BAYC

24  Marks more or less probable.

25      Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

26  probative value of Exhibit 10 is substantially outweighed by the danger of unfair

27  prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)

28

FENWICK & WEST LLP

1     that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek

2     to introduce Exhibit 10 to make that unfounded (and false) accusation.

3            Yuga Labs further objects that Exhibit 10 is not authenticated. Fed. R.

4     Evid. 901. Mr. Tompros does not declare where or when he acquired Exhibit 10, and

5     although Exhibit 10 contains information which might answer those concerns

6     Mr. Tompros does not establish those facts and the document is not self-

7     authenticating. Even more, information in Exhibit 10 suggests that Mr. Tompros did

8     not personally acquire Exhibit 10, further obscuring the source of Exhibit 10.

9            Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

10     improper hearsay.

11            Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702

12     as improper opinion testimony.

13

14            Plaintiff's objections to Exhibit 10 to the Declaration of Louis Tompros are

15     hereby

16       _____ SUSTAINED.       _____ OVERRULED.

17

18     **K.     Objection Number 21**

19     <u>Material Objected To</u>: Exhibit 11 (Dkt. 48-14) to the Declaration of Louis

20     Tompros.

21     <u>Grounds for Objection</u>: Yuga Labs objects on the same grounds as its

22     objections stated in Objection Number 11 that the Court should not consider evidence

23     outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

24            Yuga Labs objects that this webpage is not properly the subject of judicial

25     notice and Defendants have not sought judicial notice of this Exhibit 11. Fed. R.

26     Evid. 201. Yuga Labs further objects that Defendants offer Exhibit 11 for the

27     improper purposes of harassing Yuga Labs and needlessly increasing the cost of

28     litigation.

FENWICK & WEST LLP

1    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

2    Exhibit 11 does not make a fact regarding Defendants' infringement of the BAYC

3    Marks more or less probable.

4    Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

5    probative value of Exhibit 11 is substantially outweighed by the danger of unfair

6    prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)

7    that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek

8    to introduce Exhibit 11 to make that unfounded (and false) accusation.

9    Yuga Labs further objects that Exhibit 11 is not authenticated.  Fed. R.

10   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 11, and

11   although Exhibit 11 contains information which might answer those concerns,

12   Mr. Tompros does not establish those facts and the document is not self-

13   authenticating.

14   Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

15   improper hearsay.

16   Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702

17   as improper opinion testimony

18

19   Plaintiff's objections to Exhibit 11 to the Declaration of Louis Tompros are

20   hereby

21   _____ SUSTAINED.      _____ OVERRULED.

22

23   **L.    Objection Number 22**

24   Material Objected To:  Exhibit 12 (Dkt. 48-15) to the Declaration of Louis

25   Tompros.

26   Grounds for Objection:  Yuga Labs objects on the same grounds as its

27   objections stated in Objection Number 11 that the Court should not consider evidence

28   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

1    Yuga Labs objects that this webpage is not properly the subject of judicial

2   notice and Defendants have not sought judicial notice of this Exhibit 12.  Fed. R.

3   Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 12 for the

4   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

5   litigation.

6    Yuga Labs objects pursuant to Federal Rule of Evidence 401 that this Exhibit

7   12 does not make a fact regarding Defendants' infringement of the BAYC Marks

8   more or less probable.

9    Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

10   probative value of Exhibit 12 is substantially outweighed by the danger of unfair

11   prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)

12   that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek

13   to introduce Exhibit 12 to make that unfounded (and false) accusation.

14    Yuga Labs further objects that Exhibit 12 is not authenticated.   Fed. R.

15   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 12, and

16   although Exhibit 12 contains information which might answer those concerns,

17   Mr. Tompros does not establish those facts and the document is not self-

18   authenticating.

19    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

20   improper hearsay.

21    Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702

22   as improper opinion testimony.

23

24    Plaintiff's objections to Exhibit 12 to the Declaration of Louis Tompros are

25   hereby

26    _____ SUSTAINED.     _____ OVERRULED.

27

28

Fenwick & West LLP

**M.   Objection Number 23**

Material Objected To:  Exhibit 13 (Dkt. 48-16) to the Declaration of Louis Tompros.

Grounds for Objection:  Yuga Labs objects on the same grounds as its objections stated in Objection Number 11 that the Court should not consider evidence outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

Yuga Labs objects that this third-party social media post is not properly the subject of judicial notice and Defendants have not sought judicial notice of this Exhibit 13.  Fed. R. Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 13 for the improper purposes of harassing Yuga Labs and needlessly increasing the cost of litigation.

Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this Exhibit 13 does not make a fact regarding Defendants' infringement of the BAYC Marks more or less probable.

Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any probative value of Exhibit 13 is substantially outweighed by the danger of unfair prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely) that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek to introduce Exhibit 13 to make that unfounded (and false) accusation.

Yuga Labs further objects that Exhibit 13 is not authenticated.  Fed. R. Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 13, and although Exhibit 13 contains information which might answer those concerns, Mr. Tompros does not establish those facts and the document is not self-authenticating.  Moreover, Mr. Tompros has not authenticated, and likely cannot, that any Tweet was made by any specific person.

Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as improper hearsay.

1   Plaintiff's objections to Exhibit 13 to the Declaration of Louis Tompros are

2   hereby

3   _____ SUSTAINED.   _____ OVERRULED.

4

5   **N.   Objection Number 24**

6   <u>Material Objected To</u>:   Exhibit 14 (Dkt. 48-17) to the Declaration of Louis

7   Tompros.

8   <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

9   objections stated in Objection Number 11 that the Court should not consider evidence

10   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

11   Yuga Labs objects that this third-party social media post is not properly the

12   subject of judicial notice and Defendants have not sought judicial notice of this

13   Exhibit 14.  Fed. R. Evid. 201.  Yuga Labs further objects that Defendants offer

14   Exhibit 14 for the improper purposes of harassing Yuga Labs and needlessly

15   increasing the cost of litigation.

16   Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

17   Exhibit 14 does not make a fact regarding Defendants' infringement of the BAYC

18   Marks more or less probable.

19   Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

20   probative value of Exhibit 14 is substantially outweighed by the danger of unfair

21   prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)

22   that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek

23   to introduce Exhibit 14 to make that unfounded (and false) accusation.

24   Yuga Labs further objects that Exhibit 14 is not authenticated.  Fed. R.

25   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 14, and

26   although Exhibit 14 contains information which might answer those concerns,

27   Mr. Tompros does not establish those facts and the document is not self-

28

FENWICK & WEST LLP

1  authenticating.  Moreover, Mr. Tompros has not authenticated, and likely cannot, that

2  any Tweet was made by any specific person.

3      Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

4  improper hearsay.

5      Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702

6  as improper opinion testimony.

7

8      Plaintiff's objections to Exhibit 14 to the Declaration of Louis Tompros are

9  hereby

10      _____ SUSTAINED.     _____ OVERRULED.

11

12  **O.    Objection Number 25**

13  <u>Material Objected To</u>:  Exhibit 15 (Dkt. 48-18) to the Declaration of Louis

14  Tompros.

15  <u>Grounds for Objection</u>:  Yuga Labs objects on the same grounds as its

16  objections stated in Objection Number 11 that the Court should not consider evidence

17  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

18      Yuga Labs objects that this private communication between two third parties

19  is not properly the subject of judicial notice and Defendants have not sought judicial

20  notice of this Exhibit 15.   Fed. R. Evid. 201.   Yuga Labs further objects that

21  Defendants offer Exhibit 15 for the improper purposes of harassing Yuga Labs and

22  needlessly increasing the cost of litigation.

23      Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

24  Exhibit 15 does not make a fact regarding Defendants' infringement of the BAYC

25  Marks more or less probable.

26      Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

27  probative value of Exhibit 15 is substantially outweighed by the danger of unfair

28  prejudice or confusing the issues.  Exhibit 15 reflects a private conversation between

FENWICK & WEST LLP

1   two non-parties relating to their personal beliefs about Yuga Labs and where one party

2   admits that he does not feel like he knows "what's going on" but is nevertheless

3   willing to participate in a public dialogue about Yuga Labs at the behest of another

4   party.   Defendants also lack any foundation to assert (falsely) that Yuga Labs'

5   founders are associated with the "alt-right" and yet Defendants seek to introduce

6   Exhibit 15 to make that unfounded (and false) accusation.

7           Yuga Labs further objects that Exhibit 15 is not authenticated and there is no

8   possible way that Mr. Tompros could authenticate Exhibit 15 unless he was one of

9   the two parties participating in the private communication.   Fed. R. Evid. 901.

10  Mr. Tompros cannot even authenticate that any communication was made by any

11  specific person.   Mr. Tompros certainly does not lay any foundation as to how he

12  could even attempt to declare under oath that Exhibit 15 is a "true and correct copy

13  of two images showing direct messages between Richard Spencer and Frederick

14  Brennan."

15          Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

16  improper hearsay.

17          Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702

18  as improper opinion testimony.

19

20          Plaintiff's objections to Exhibit 15 to the Declaration of Louis Tompros are

21  hereby

22          _____  SUSTAINED.     _____  OVERRULED.

23

24          **P.     Objection Number 26**

25          <u>Material Objected To</u>:   Exhibit 16 (Dkt. 48-19) to the Declaration of Louis

26  Tompros.

27          <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

28  objections stated in Objection Number 11 that the Court should not consider evidence

1    outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

2         Yuga Labs objects that this webpage is not properly the subject of judicial

3    notice and Defendants have not sought judicial notice of this Exhibit 16.  Fed. R.

4    Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 16 for the

5    improper purposes of harassing Yuga Labs and needlessly increasing the cost of

6    litigation.

7         Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

8    Exhibit 16 does not make a fact regarding Defendants' infringement of the BAYC

9    Marks more or less probable.

10        Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

11   probative value of Exhibit 16 is substantially outweighed by the danger of unfair

12   prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)

13   that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek

14   to introduce Exhibit 16 to make that unfounded (and false) accusation.  The unknown

15   author of Exhibit 16 similarly lacks foundation to make those unfounded (and false)

16   accusations.

17        Yuga Labs further objects that Exhibit 16 is not authenticated.   Fed. R.

18   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 16, and

19   although Exhibit 16 contains information which might answer those concerns,

20   Mr. Tompros does not establish those facts and the document is not self-

21   authenticating.

22        Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

23   improper hearsay.

24        Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702

25   as improper opinion testimony.

26

27

28

1   Plaintiff's objections to Exhibit 16 to the Declaration of Louis Tompros are

2   hereby

3   _____ SUSTAINED.   _____ OVERRULED.

4

5   **Q.   Objection Number 27**

6   <u>Material Objected To</u>:   Exhibit 17 (Dkt. 48-20) to the Declaration of Louis

7   Tompros.

8   <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

9   objections stated in Objection Number 11 that the Court should not consider evidence

10   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

11   Yuga Labs objects that this webpage is not properly the subject of judicial

12   notice and Defendants have not sought judicial notice of this Exhibit 17.   Fed. R.

13   Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 17 for the

14   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

15   litigation.

16   Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

17   Exhibit 17 does not make a fact regarding Defendants' infringement of the BAYC

18   Marks more or less probable.

19   Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

20   probative value of Exhibit 17 is substantially outweighed by the danger of unfair

21   prejudice or confusing the issues.   Defendants lack any foundation to assert (falsely)

22   that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek

23   to introduce Exhibit 17 to make that unfounded (and false) accusation.

24   Yuga Labs further objects that Exhibit 17 is not authenticated.   Fed. R.

25   Evid. 901.   Mr. Tompros does not declare where or when he acquired Exhibit 17, and

26   although Exhibit 17 contains information which might answer those concerns,

27   Mr. Tompros does not establish those facts and the document is not

28   self-authenticating.

FENWICK & WEST LLP

1    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as
2  improper hearsay.

3

4    Plaintiff's objections to Exhibit 17 to the Declaration of Louis Tompros are
5  hereby

6    _____  SUSTAINED.    _____  OVERRULED.

7

8  **R.    Objection Number 28**

9  <u>Material Objected To</u>:  Exhibit 18 (Dkt. 48-21) to the Declaration of Louis
10  Tompros.

11  <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its
12  objections stated in Objection Number 11 that the Court should not consider evidence
13  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

14    Yuga Labs objects that this webpage is not properly the subject of judicial
15  notice and Defendants have not sought judicial notice of this Exhibit 18.  Fed. R.
16  Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 18 for the
17  improper purposes of harassing Yuga Labs and needlessly increasing the cost of
18  litigation.

19    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this
20  Exhibit 18 does not make a fact regarding Defendants' infringement of the BAYC
21  Marks more or less probable.

22    Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any
23  probative value of Exhibit 18 is substantially outweighed by the danger of unfair
24  prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)
25  that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek
26  to introduce Exhibit 18 to make that unfounded (and false) accusation.

27    Yuga Labs further objects that Exhibit 18 is not authenticated.  Fed. R.
28  Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 18, and

FENWICK & WEST LLP

1   although Exhibit 18 contains information which might answer those concerns,

2   Mr. Tompros does not establish those facts and the document is not self-

3   authenticating.

4       Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

5   improper hearsay.

6

7       Plaintiff's objections to Exhibit 18 to the Declaration of Louis Tompros are

8   hereby

9       _____ SUSTAINED.       _____ OVERRULED.

10

11  **S.    Objection Number 29**

12  Material Objected To:  Exhibit 19 (Dkt. 48-22) to the Declaration of Louis

13  Tompros.

14  Grounds for Objection:  Yuga Labs objects on the same grounds as its

15  objections stated in Objection Number 11 that the Court should not consider evidence

16  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

17      Yuga Labs objects that this Exhibit 19 comprised of a compilation of social

18  media posts by unnamed third parties is not properly the subject of judicial notice and

19  Defendants have not sought judicial notice of this Exhibit 19.  Fed. R. Evid. 201.

20  Yuga Labs further objects that Defendants offer Exhibit 19 for the improper purposes

21  of harassing Yuga Labs and needlessly increasing the cost of litigation.

22      Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

23  Exhibit 19 does not make a fact regarding Defendants' infringement of the BAYC

24  Marks more or less probable.

25      Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

26  probative value of Exhibit 19 is substantially outweighed by the danger of unfair

27  prejudice or confusing the issues.  While Yuga Labs condemns these third parties'

28  willfully false statements, Defendants' and third parties' offensive accusations against

FENWICK & WEST LLP

1    Yuga Labs' founders are not the basis for any claim in this lawsuit.  Defendants lack

2    any foundation to assert (falsely) that Yuga Labs' founders are associated with the

3    "alt-right" and yet Defendants seek to introduce Exhibit 19 to make that unfounded

4    (and false) accusation.

5         Yuga Labs further objects that Exhibit 19 is not authenticated.   Fed. R.

6    Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 19, and

7    although Exhibit 19 contains information which might answer those concerns,

8    Mr. Tompros  does  not  establish  those  facts  and  the  document  is  not

9    self-authenticating.

10        Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

11   improper hearsay.

12        Yuga Labs further objects pursuant to Federal Rule of Evidence 701 and 702

13   as improper opinion testimony.

14

15        Plaintiff's objections to Exhibit 19 to the Declaration of Louis Tompros are

16   hereby

17        _____  SUSTAINED.      _____  OVERRULED.

18

19   **T.    Objection Number 30**

20   Material Objected To:   Exhibit 20 (Dkt. 48-23) to the Declaration of Louis

21   Tompros.

22   Grounds for Objection:  Yuga Labs objects that this article is not properly the

23   subject of judicial notice and Defendants have not sought judicial notice of this

24   Exhibit 20.  Fed. R. Evid. 201.  Yuga Labs further objects that Defendants offer

25   Exhibit 20 for the improper purposes of harassing Yuga Labs and needlessly

26   increasing the cost of litigation.

27

28

1     Yuga Labs objects pursuant to Federal Rule of Evidence 401 that this Exhibit

2  20 does not make a fact regarding Defendants' infringement of the BAYC Marks

3  more or less probable.

4     Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

5  probative value of Exhibit 20 is substantially outweighed by the danger of unfair

6  prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)

7  that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek

8  to introduce Exhibit 20 to make that unfounded (and false) accusation.

9     Yuga Labs further objects that Exhibit 20 is not authenticated.  Fed. R.

10  Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 20.

11     Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

12  improper hearsay.

13

14     Plaintiff's objections to Exhibit 20 to the Declaration of Louis Tompros are

15  hereby

16     _____  SUSTAINED.     _____  OVERRULED.

17

18     **U.    Objection Number 31**

19     <u>Material Objected To</u>:   Exhibit 21 (Dkt. 48-24) to the Declaration of Louis

20  Tompros.

21     <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

22  objections stated in Objection Number 11 that the Court should not consider evidence

23  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

24     Yuga Labs objects that this webpage is not properly the subject of judicial

25  notice and Defendants have not sought judicial notice of this Exhibit 21.  Fed. R.

26  Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 21 for the

27  improper purposes of harassing Yuga Labs and needlessly increasing the cost of

28  litigation.

<div style="writing-mode: vertical-rl;">FENWICK & WEST LLP</div>

1    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

2    Exhibit 21 does not make a fact regarding Defendants' infringement of the BAYC

3    Marks more or less probable.

4    Yuga Labs further objects that Exhibit 21 is not authenticated.  Fed. R.

5    Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 21, and

6    although Exhibit 21 contains information which might answer those concerns,

7    Mr. Tompros does not establish those facts and the document is not self-

8    authenticating.

9

10    Plaintiff's objections to Exhibit 21 to the Declaration of Louis Tompros are

11    hereby

12    _____ SUSTAINED.      _____ OVERRULED.

13

14    **V.      Objection Number 32**

15    Material Objected To:  Exhibit 22 (Dkt. 48-25) to the Declaration of Louis

16    Tompros.

17    Grounds for Objection:   Yuga Labs objects on the same grounds as its

18    objections stated in Objection Number 11 that the Court should not consider evidence

19    outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

20    Yuga Labs objects that this webpage is not properly the subject of judicial

21    notice and Defendants have not sought judicial notice of this Exhibit 22.  Fed. R.

22    Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 22 for the

23    improper purposes of harassing Yuga Labs and needlessly increasing the cost of

24    litigation.

25    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

26    Exhibit 22 does not make a fact regarding Defendants' infringement of the BAYC

27    Marks more or less probable.

28

1    Yuga Labs further objects that Exhibit 22 is not authenticated.   Fed. R.

2   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 22, and

3   although Exhibit 22 contains information which might answer those concerns,

4   Mr. Tompros does not establish those facts and the document is not self-

5   authenticating.

6

7    Plaintiff's objections to Exhibit 22 to the Declaration of Louis Tompros are

8   hereby

9    _____ SUSTAINED.      _____ OVERRULED.

10

11   **W.    Objection Number 33**

12   <u>Material Objected To</u>:   Exhibit 23 (Dkt. 48-26) to the Declaration of Louis

13   Tompros.

14   <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

15   objections stated in Objection Number 11 that the Court should not consider evidence

16   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

17   Yuga Labs objects that this webpage is not properly the subject of judicial

18   notice and Defendants have not sought judicial notice of this Exhibit 23.  Fed. R.

19   Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 23 for the

20   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

21   litigation.

22   Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

23   Exhibit 23 does not make a fact regarding Defendants' infringement of the BAYC

24   Marks more or less probable.

25   Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

26   probative value of Exhibit 23 is substantially outweighed by the danger of unfair

27   prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)

28

FENWICK & WEST LLP

1   that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek

2   to introduce Exhibit 23 to make that unfounded (and false) accusation.

3        Yuga Labs further objects that Exhibit 23 is not authenticated.  Fed. R.

4   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 23, and

5   although Exhibit 23 contains information which might answer those concerns,

6   Mr. Tompros does not establish those facts and the document is not self-

7   authenticating.

8        Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

9   improper hearsay.

10

11       Plaintiff's objections to Exhibit 23 to the Declaration of Louis Tompros are

12   hereby

13       _____   SUSTAINED.      _____   OVERRULED.

14

15   **X.    Objection Number 34**

16   Material Objected To:   Exhibit 24 (Dkt. 48-27) to the Declaration of Louis

17   Tompros.

18   Grounds for Objection:   Yuga Labs objects on the same grounds as its

19   objections stated in Objection Number 11 that the Court should not consider evidence

20   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

21       Yuga Labs objects that this webpage is not properly the subject of judicial

22   notice and Defendants have not sought judicial notice of this Exhibit 24.  Fed. R.

23   Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 24 for the

24   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

25   litigation.

26       Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

27   Exhibit 24 does not make a fact regarding Defendants' infringement of the BAYC

28   Marks more or less probable.

FENWICK & WEST LLP

1    Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

2  probative value of Exhibit 24 is substantially outweighed by the danger of unfair

3  prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)

4  that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek

5  to introduce Exhibit 24 to make that unfounded (and false) accusation.

6    Yuga Labs further objects that Exhibit 24 is not authenticated.  Fed. R.

7  Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 24, and

8  although Exhibit 24 contains information which might answer those concerns,

9  Mr. Tompros does not establish those facts and the document is not self-

10  authenticating.

11    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

12  improper hearsay.

13

14    Plaintiff's objections to Exhibit 24 to the Declaration of Louis Tompros are

15  hereby

16    _____ SUSTAINED.    _____ OVERRULED.

17

18    **Y.    Objection Number 35**

19    <u>Material Objected To</u>:   Exhibit 25 (Dkt. 48-28) to the Declaration of Louis

20  Tompros.

21    <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

22  objections stated in Objection Number 11 that the Court should not consider evidence

23  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

24    Yuga Labs objects that this Exhibit 25 showing social media posts is not

25  properly the subject of judicial notice and Defendants have not sought judicial notice

26  of this Exhibit 25.  Fed. R. Evid. 201.  Yuga Labs further objects that Defendants

27  offer Exhibit 25 for the improper purposes of harassing Yuga Labs and needlessly

28  increasing the cost of litigation.

Fenwick & West LLP

1    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

2   Exhibit 25 does not make a fact regarding Defendants' infringement of the BAYC

3   Marks more or less probable.

4    Yuga Labs further objects pursuant to Federal Rule of Evidence 403 that any

5   probative value of Exhibit 25 is substantially outweighed by the danger of unfair

6   prejudice or confusing the issues.  Defendants lack any foundation to assert (falsely)

7   that Yuga Labs' founders are associated with the "alt-right" and yet Defendants seek

8   to introduce Exhibit 25 to make that unfounded (and false) accusation.

9    Yuga Labs further objects that Exhibit 25 is not authenticated.  Fed. R.

10   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 25, and

11   although Exhibit 25 contains information which might answer those concerns,

12   Mr. Tompros does not establish those facts and the document is not self-

13   authenticating.

14    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

15   improper hearsay.

16

17    Plaintiff's objections to Exhibit 25 to the Declaration of Louis Tompros are

18   hereby

19    _____  SUSTAINED.     _____  OVERRULED.

20

21    **Z.    Objection Number 36**

22    <u>Material Objected To</u>:   Exhibit 26 (Dkt. 48-29) to the Declaration of Louis

23   Tompros.

24    <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

25   objections stated in Objection Number 11 that the Court should not consider evidence

26   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

27    Yuga Labs objects that this webpage is not properly the subject of judicial

28   notice and Defendants have not sought judicial notice of this Exhibit 26.  Fed. R.

Fenwick & West LLP

1   Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 26 for the

2   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

3   litigation.

4         Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

5   Exhibit 26 does not make a fact regarding Defendants' infringement of the BAYC

6   Marks more or less probable.

7         Yuga Labs further objects that Exhibit 26 is not authenticated.   Fed. R.

8   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 26, and

9   although Exhibit 26 contains information which might answer those concerns,

10  Mr. Tompros does not establish those facts and the document is not self-

11  authenticating.

12        Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

13  improper hearsay.

14

15        Plaintiff's objections to Exhibit 26 to the Declaration of Louis Tompros are

16  hereby

17        _____ SUSTAINED.     _____ OVERRULED.

18

19  **AA.   Objection Number 37**

20  Material Objected To:  Exhibit 27 (Dkt. 48-30) to the Declaration of Louis

21  Tompros.

22  Grounds for Objection:   Yuga Labs objects on the same grounds as its

23  objections stated in Objection Number 11 that the Court should not consider evidence

24  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

25        Yuga Labs objects that this social media thread is not properly the subject of

26  judicial notice and Defendants have not sought judicial notice of this Exhibit 27.  Fed.

27  R. Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 27 for the

28

FENWICK & WEST LLP

1   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

2   litigation.

3        Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

4   Exhibit 27 does not make a fact regarding Defendants' infringement of the BAYC

5   Marks more or less probable.

6        Yuga Labs further objects that Exhibit 27 is not authenticated.  Fed. R.

7   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 27, and

8   although Exhibit 27 contains information which might answer those concerns,

9   Mr. Tompros does not establish those facts and the document is not self-

10  authenticating.

11       Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

12  improper hearsay.

13

14       Plaintiff's objections to Exhibit 27 to the Declaration of Louis Tompros are

15  hereby

16      \_\_\_\_\_  SUSTAINED.   \_\_\_\_\_  OVERRULED.

17

18  **BB.   Objection Number 38**

19  <u>Material Objected To</u>:   Exhibit 28 (Dkt. 48-31) to the Declaration of Louis

20  Tompros.

21  <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

22  objections stated in Objection Number 11 that the Court should not consider evidence

23  outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

24       Yuga Labs objects that this social media thread is not properly the subject of

25  judicial notice and Defendants have not sought judicial notice of this Exhibit 28.  Fed.

26  R. Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 28 for the

27  improper purposes of harassing Yuga Labs and needlessly increasing the cost of

28  litigation.

FENWICK & WEST LLP

1      Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

2    Exhibit 28 does not make a fact regarding Defendants' infringement of the BAYC

3    Marks more or less probable.

4      Yuga Labs further objects that Exhibit 28 is not authenticated.  Fed. R.

5    Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 28, and

6    although Exhibit 28 contains information which might answer those concerns,

7    Mr. Tompros does not establish those facts and the document is not self-

8    authenticating.

9      Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

10   improper hearsay.

11

12      Plaintiff's objections to Exhibit 28 to the Declaration of Louis Tompros are

13   hereby

14      \_\_\_\_\_ SUSTAINED.    \_\_\_\_\_ OVERRULED.

15

16   **CC.   Objection Number 39**

17   <u>Material Objected To</u>:  Exhibit 29 (Dkt. 48-32) to the Declaration of Louis

18   Tompros.

19   <u>Grounds for Objection</u>:  Yuga Labs objects on the same grounds as its

20   objections stated in Objection Number 11 that the Court should not consider evidence

21   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

22      Yuga Labs objects that this webpage is not properly the subject of judicial

23   notice and Defendants have not sought judicial notice of this Exhibit 29.  Fed. R.

24   Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 29 for the

25   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

26   litigation.

27

28

FENWICK & WEST LLP

1    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

2    Exhibit 29 does not make a fact regarding Defendants' infringement of the BAYC

3    Marks more or less probable.

4    Yuga Labs further objects that Exhibit 29 is not authenticated.  Fed. R.

5    Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 29, and

6    although Exhibit 29 contains information which might answer those concerns,

7    Mr. Tompros does not establish those facts and the document is not self-

8    authenticating.

9    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

10   improper hearsay.

11

12   Plaintiff's objections to Exhibit 29 to the Declaration of Louis Tompros are

13   hereby

14   _____  SUSTAINED.     _____  OVERRULED.

15

16   **DD.   Objection Number 40**

17   <u>Material Objected To</u>:   Exhibit 30 (Dkt. 48-33) to the Declaration of Louis

18   Tompros.

19   <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

20   objections stated in Objection Number 11 that the Court should not consider evidence

21   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

22   Yuga Labs objects that this webpage is not properly the subject of judicial

23   notice and Defendants have not sought judicial notice of this Exhibit 30.  Fed. R.

24   Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 30 for the

25   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

26   litigation.

27

28

1    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

2    Exhibit 30 does not make a fact regarding Defendants' infringement of the BAYC

3    Marks more or less probable.

4    Yuga Labs further objects that Exhibit 30 is not authenticated.   Fed. R.

5    Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 30, and

6    although Exhibit 30 contains information which might answer those concerns,

7    Mr. Tompros does not establish those facts and the document is not self-

8    authenticating.

9    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

10   improper hearsay.

11

12   Plaintiff's objections to Exhibit 30 to the Declaration of Louis Tompros are

13   hereby

14   _____  SUSTAINED.     _____  OVERRULED.

15

16   **EE.   Objection Number 41**

17   <u>Material Objected To</u>:   Exhibit 31 (Dkt. 48-34) to the Declaration of Louis

18   Tompros.

19   <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

20   objections stated in Objection Number 11 that the Court should not consider evidence

21   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

22   Yuga Labs objects that this webpage is not properly the subject of judicial

23   notice and Defendants have not sought judicial notice of this Exhibit 31.  Fed. R.

24   Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 31 for the

25   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

26   litigation.

27

28

Fenwick & West LLP

1    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

2    Exhibit 31 does not make a fact regarding Defendants' infringement of the BAYC

3    Marks more or less probable.

4    Yuga Labs further objects that Exhibit 31 is not authenticated.   Fed. R.

5    Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 31, and

6    although Exhibit 31 contains information which might answer those concerns,

7    Mr. Tompros does not establish those facts and the document is not self-

8    authenticating.

9    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

10   improper hearsay.

11

12   Plaintiff's objections to Exhibit 31 to the Declaration of Louis Tompros are

13   hereby

14   _____ SUSTAINED.      _____ OVERRULED.

15

16   **FF.   Objection Number 42**

17   <u>Material Objected To</u>:   Exhibit 32 (Dkt. 48-35) to the Declaration of Louis

18   Tompros.

19   <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

20   objections stated in Objection Number 11 that the Court should not consider evidence

21   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

22   Yuga Labs objects that this webpage is not properly the subject of judicial

23   notice and Defendants have not sought judicial notice of this Exhibit 32.  Fed. R.

24   Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 32 for the

25   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

26   litigation.

27

28

FENWICK & WEST LLP

1    Yuga Labs objects pursuant to Federal Rule of Evidence 401 that this Exhibit

2    32 does not make a fact regarding Defendants' infringement of the BAYC Marks

3    more or less probable.

4    Yuga Labs further objects that Exhibit 32 is not authenticated.  Fed. R.

5    Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 32, and

6    although Exhibit 32 contains information which might answer those concerns,

7    Mr. Tompros does not establish those facts and the document is not self-

8    authenticating.

9    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

10   improper hearsay.

11

12   Plaintiff's objections to Exhibit 32 to the Declaration of Louis Tompros are

13   hereby

14   _____ SUSTAINED.      _____ OVERRULED.

15

16   **GG.   Objection Number 43**

17   Material Objected To:  Exhibit 33 (Dkt. 48-36) to the Declaration of Louis

18   Tompros.

19   Grounds for Objection:  Yuga Labs objects on the same grounds as its

20   objections stated in Objection Number 11 that the Court should not consider evidence

21   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

22   Yuga Labs objects that this webpage is not properly the subject of judicial

23   notice and Defendants have not sought judicial notice of this Exhibit 33.  Fed. R.

24   Evid. 201.  Yuga Labs further objects that Defendants offer Exhibit 33 for the

25   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

26   litigation.

27

28

FENWICK & WEST LLP

1    Yuga Labs objects pursuant to Federal Rule of Evidence 401 that this Exhibit

2   33 does not make a fact regarding Defendants' infringement of the BAYC Marks

3   more or less probable.

4    Yuga Labs further objects that Exhibit 33 is not authenticated.   Fed. R.

5   Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 33, and

6   although Exhibit 33 contains information which might answer those concerns,

7   Mr. Tompros does not establish those facts and the document is not self-

8   authenticating.

9    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

10   improper hearsay.

11

12    Plaintiff's objections to Exhibit 33 to the Declaration of Louis Tompros are

13   hereby

14    _____ SUSTAINED.   _____ OVERRULED.

15

16   **HH.   Objection Number 44**

17   <u>Material Objected To</u>:  Exhibit 34 (Dkt. 48-37) to the Declaration of Louis

18   Tompros.

19   <u>Grounds for Objection</u>:   Yuga Labs objects on the same grounds as its

20   objections stated in Objection Number 11 that the Court should not consider evidence

21   outside of the pleadings in deciding the Rule 12(b)(6) or anti-SLAPP motions.

22    Yuga Labs objects that this Exhibit 34 is not properly the subject of judicial

23   notice and Defendants have not sought judicial notice of this Exhibit 34.  Fed. R.

24   Evid. 201.   Yuga Labs further objects that Defendants offer Exhibit 34 for the

25   improper purposes of harassing Yuga Labs and needlessly increasing the cost of

26   litigation.

27

28

1    Yuga Labs further objects pursuant to Federal Rule of Evidence 401 that this

2  Exhibit 34 does not make a fact regarding Defendants' infringement of the BAYC

3  Marks more or less probable.

4    Yuga Labs further objects that Exhibit 34 is not authenticated.  Fed. R.

5  Evid. 901.  Mr. Tompros does not declare where or when he acquired Exhibit 34, and

6  although Exhibit 34 contains information which might answer those concerns,

7  Mr. Tompros does not establish those facts and the document is not self-

8  authenticating.

9    Yuga Labs further objects pursuant to Federal Rule of Evidence 801 as

10  improper hearsay.

11

12    Plaintiff's objections to Exhibit 34 to the Declaration of Louis Tompros are

13  hereby

14    _____ SUSTAINED.    _____ OVERRULED.

15

16  Dated: October 17, 2022        FENWICK & WEST LLP

17

18                       By: */s/ Eric Ball*
                             Eric Ball
19                           Attorneys for Plaintiff
                             YUGA LABS, INC.

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP

1  Louis W. Tompros (*pro hac vice*)
   louis.tompros@wilmerhale.com
2  Monica Grewal (*pro hac vice*)
   monica.grewal@wilmerhale.com
3  Scott W. Bertulli (*pro hac vice*)
   scott.bertulli@wilmerhale.com
4  **WILMER CUTLER PICKERING**
   **HALE AND DORR LLP**
5  60 State Street
   Boston, MA 02109
6  Telephone: (617) 526-6000
   Fax: (617) 526-5000
7
8  Henry Nikogosyan (SBN 326277)
   henry.nikogosyan@wilmerhale.com
   **WILMER CUTLER PICKERING**
9    **HALE AND DORR LLP**
   350 South Grand Ave., Suite 2400
10 Los Angeles, CA 90071
   Telephone: (213) 443-5300
11 Fax: (213) 443-5400
12 Attorneys for Defendants
   *Ryder Ripps and Jeremy Cahen*
13
14
15             **UNITED STATES DISTRICT COURT**
16             **CENTRAL DISTRICT OF CALIFORNIA**
17                 **WESTERN DIVISION**
18

| | |
|---|---|
| 19  Yuga Labs, Inc., | Case No. 2:22-cv-04355-JFW-JEM |
| 20                          Plaintiff, | **NOTICE OF MOTION; ANTI-SLAPP MOTION TO STRIKE AND MOTION TO DISMISS** |
| 21 | |
| 22  v. | Filed Pursuant to Court Order (Dkt. 44). Hearing Date: Nov. 7, 2022, at 1:30 |
| 23  Ryder Ripps, Jeremy Cahen, Does 1-10, | p.m., Pursuant to Standing Order ¶ 5(a) Judge: Hon. John F. Walter |
| 24 | |
| 25                          Defendants. | |
| 26 | |

27
28

1                                     **<u>NOTICE OF MOTION AND MOTION</u>**

2         TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL

3 OF RECORD:

4         PLEASE TAKE NOTICE that on November 7, 2022, at 1:30 p.m., or at

5 another time convenient for the Court, in Courtroom 7A of the First Street United

6 States Courthouse at 350 W. 1st Street, Los Angeles, California, 90012 or in such

7 manner as the Court directs, Defendants Ryder Ripps and Jeremy Cahen will move

8 this Court to strike Yuga Labs, Inc.'s California law causes of action and award fees

9 and costs pursuant to Cal. Civ. Proc. Code. § 425.16(c) and dismiss Yuga Labs Inc.'s

10 federal law causes of action pursuant to Fed. R. Civ. P 12(b)(6), or in the alternative,

11 to dismiss Yuga Labs, Inc.'s Complaint pursuant to Fed. R. Civ. P. 12(b)(6) in its

12 entirety.

13         This motion is made following conferences of counsel pursuant to L.R. 7-3

14 which took place on August 5, 2022, and August 23, 2022.  Yuga Labs, Inc. indicated

15 that it disagreed with the substance of Ryder Ripps and Jeremy Cahen's motion and

16 was not willing to stipulate to dismissal.  Defendants are re-filing their motion to

17 strike and motion to dismiss as "previously filed" pursuant to the Court's September

18 26, 2022 order (Dkt. 44).

19

20

21

22

23

24

25

26

27

28

1    <u>**STATEMENT OF RELIEF SOUGHT**</u>

2         Defendants Ryder Ripps and Jeremy Cahen respectfully request that the Court

3    strike Yuga Labs, Inc.'s Claims 4-11 in the Complaint and award fees and costs

4    pursuant to Cal. Civ. Proc. Code. § 425.16(c) and dismiss Yuga Labs, Inc.'s Claims 1-

5    3 pursuant to Rule 12(b)(6), or in the alternative, dismiss Yuga Labs, Inc.'s Complaint

6    pursuant to Rule 12(b)(6) in its entirety.

7

8

9    Dated:  October 3, 2022              By: /s/ *Louis W. Tompros*

10                                            Louis W. Tompros (*pro hac vice*)
                                             louis.tompros@wilmerhale.com
11                                            Monica Grewal (pro hac vice)
                                             monica.grewal@wilmerhale.com
12                                            Scott W. Bertulli (pro hac vice)
                                             scott.bertulli@wilmerhale.com
13                                            **WILMER CUTLER PICKERING**
                                               **HALE AND DORR LLP**
14                                            60 State Street
                                             Boston, MA 02109
15                                            Telephone: (617) 526-6000
                                             Fax: (617) 526-5000
16
                                             Henry Nikogosyan (SBN 326277)
17                                            henry.nikogosyan@wilmerhale.com
                                             **WILMER CUTLER PICKERING**
18                                               **HALE AND DORR LLP**
                                             350 South Grand Ave., Suite 2400
19                                            Los Angeles, CA 90071
                                             Telephone: (213) 443-5300
20                                            Fax: (213) 443-5400

21                                            Attorneys for Defendants
                                             *Ryder Ripps and Jeremy Cahen*
22

23

24

25

26

27

28

Case No. 2:22-cv-04355-JFW-JEM              NOTICE OF MOTION; MOTION TO STRIKE

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................ 2

      A.    Mr. Ripps Is a Recognized Artist ............................................... 2

      B.    Yuga Systematically Embedded Racist Messages and Imagery in
            Its Trademarks and Products ....................................................... 3

      C.    Mr. Ripps's Artistic Project Is a Protest of Yuga's Dog Whistles ........... 6

      D.    Yuga Is Attempting To Silence Mr. Ripps ................................. 9

III.  LEGAL STANDARD .................................................................................. 10

IV.   ARGUMENT ............................................................................................... 10

      A.    The RR/BAYC Project Is Protected Speech Made In Connection
            With A Public Issue ................................................................... 10

            i.     Mr. Ripps Created The RR/BAYC Project In Furtherance of
                   His Constitutional Right of Free Speech ....................... 11

            ii.    The RR/BAYC Project Communicates Ideas In Connection
                   With A Public Issue ....................................................... 12

      B.    The Complaint Does Not Support A Plausible Cause of Action ............ 13

            i.     Yuga's Trademark Infringement Claims (Claims 4-7) Are
                   Legally Insufficient Under the *Rogers* Free Speech Test ............. 13

            ii.    Yuga's Trademark Infringement Claims Based on the
                   RR/BAYC Project (Claims 4-7) also Fail Because Use of
                   Yuga's Alleged Marks Is Nominative Fair Use ........................... 17

            iii.   Yuga Did Not Allege a Misleading Representation of Fact in
                   Support of Its False Advertising Claims (Claim 7) ..................... 20

            iv.    Yuga Has Failed To Plausibly Allege Unjust Enrichment
                   (Claim 8) ........................................................................ 21

-i-

v.      Yuga Has Failed To Plausibly Allege Conversion (Claim 9) ....... 22

vi.     Yuga Failed to Plausibly Allege Intentional Interference
        with Prospective Economic Advantage (Claim 10) ...................... 23

vii.    Yuga Has Not Plausibly Alleged Negligent Interference
        With Prospective Economic Advantage (Claim 11)...................... 24

C.      Dismissal Under Rule 12(b)(6) .................................................. 25

V.   CONCLUSION ................................................................................. 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Adobe Systems Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015)...................18

*Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 889
(9th Cir. 2019) ..............................................................................18, 19

*Battle v. Taylor James, LLC*, No. 21-cv-07915-FWS-KES, 2022 WL 2162930
(C.D. Cal. June 15, 2022) ....................................................................14

*BMW of North America v. Mini Works, LLC*, 463 Fed. App'x. 689 (Fed. Cir.
2011)...............................................................................................18

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002) ......................................19

*Calista Enterprises Ltd. v. Tenza Trading Ltd.*, 43 F. Supp. 3d 1099
(9th Cir. 2014) ..................................................................................13

*Denims v. Ram Imports, Inc*, No. CV 20-0254 DSF (JCx), 2021 WL 4814995
(C.D. Cal. Mar. 5, 2021).......................................................................24

*Dr. Suess Enters., L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020)...................13

*E.S.S. Entertainment 200, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th
Cir. 2008)..........................................................................................13

*Gordon v. Drape Creative, Inc*, 909 F.3d 257 (9th Cir. 2018)...........................14, 15

*Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021) ..............................10

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010)...........................................12

*Innospan Corp. v. Intuit, Inc.*, No. C 10-04422 WHA, 2010 WL 5017014 (N.D.
Cal. Dec. 3, 2010)..............................................................................23

-iii-

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 598 P.2d 60 (1979) ....................................25

*Khoja v. Rexigen Therapeutics*, Inc., 899 F.3d 988 (9th Cir. 2018)............................14

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003).......................23

*Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003) ..........................................................22

*Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825 (9th Cir.
    2001)...................................................................................................................23

*Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792
    (9th Cir. 2003) ...................................................................................17, 19, 20

*Mattel, Inc. v. MCA Records,* 296 F.3d 894 (9th Cir. 2002) .......................................11

*Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120 (C.D. Cal. 1998), aff'd,
    296 F.3d 894 (9th Cir. 2002)......................................................................21, 22

*McBride v. Boughton,* 123 Cal. App. 4th 379, 20 Cal. Rptr. 3d 115 (2004)...............22

*Meeker v. Meeker*, No. C 02-00741 JSW, 2004 WL 2554452 (N.D. Cal. Nov.
    10, 2004)............................................................................................................22

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020)................................20

*National Med. Transportation Network v. Deloitte & Touche*, 72 Cal. Rptr. 2d
    720 (1998)..........................................................................................................24

*New Kids on the Block v. New America Pub*, 971 F.2d 302 (9th Cir. 1992)....17, 18, 19

*Planned Parenthood Federation of America, Inc. v. Center for Medical.
    Progress*, 890 F.3d 828 (9th Cir. 2018) .............................................10, 13, 25

*Prager University v. Google LLC*, 951 F.3d 991 (9th Cir. 2020)................................20

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) ...................24

*Stolz v. Wong Comms. LP*, 25 Cal. App. 4th 181, 31 Cal. Rptr. 2d 229 (1994) ..........25

*Tethys Bioscience, Inc. v. Mintz, et al.*, No. 09–5115, 2010 WL 2287474 (N.D. Cal. June 4, 2010) ............................................................................................ 23

*Toyota Motor Sales v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ............................. 18, 20

*Travelers Casualty Insurance Company of America v. Hirsh*, 831 F.3d 1179 (9th Cir. 2016) ................................................................................................ 21

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................. 10

**STATUTES, RULES, REGULATIONS**

California Civil Procedure Code § 425.16(c) ............................................ 10, 11, 13, 25

Federal Rule of Civil Procedure 12(f) ......................................................................... 10

Federal Rule of Civil Procedure Rule 12(b)(6) .................................................... 10, 25

-v-

## I.    INTRODUCTION

This lawsuit is an attempt to silence an artist who used his craft to call out a multi-billion-dollar company built on racist and neo-Nazi dog whistles.  Ryder Ripps used conceptual art to critique hateful imagery in the popular "Bored Ape Yacht Club" project—a commercially successful collection of "NFTs" sold by the plaintiff, Yuga Labs, Inc. ("Yuga").  When called out on their racism, Yuga sued Mr. Ripps not for defamation, but for **trademark** infringement.  The First Amendment and the *Rogers* test preclude exactly this kind of abusive trademark infringement lawsuit.

Mr. Ripps's artistic criticism is well founded and directly connected to Yuga's trademarks.  For example, Yuga's "BAYC logo" imitates the Nazi Totenkopf emblem for the Schutzstaffel (SS), which was the Nazi organization primarily responsible for the Holocaust.  Below is a side-by-side comparison of the BAYC logo, the Nazi SS Totenkopf, and the satirical logo Mr. Ripps created to criticize Yuga:

  

Yuga quietly embedded its company's trademarks, artwork, and products with these coded "dog whistles," drawing from neo-Nazi culture and racist communities within forums like 4chan.org/pol/—while simultaneously racking up celebrity endorsements.

Mr. Ripps brought attention to Yuga's conduct by creating the satirical NFT collection called the "Ryder Ripps Bored Ape Yacht Club" ("RR/BAYC").  Though Yuga never brought action against **any** of the dozens of commercial "ape" NFT collections, it did—without warning—bring this action against Mr. Ripps and his business partner, Jeremy Cahen.  Yuga's purpose was obvious: to bully Mr. Ripps and Mr. Cahen into silence.  But this is precisely why anti-SLAPP statutes exist.

-1-

## II.    BACKGROUND

### A.    Mr. Ripps Is a Recognized Artist

Mr. Ripps is a visual artist and creative designer known for creating artwork that comments on the boundaries between art, the internet, and commerce.  Ripps Decl. ¶ 1.  His work examines popular culture and sheds light on how individuals move through our increasingly digitized world.  *Id.* at ¶ 2.  The *New York Times* has recognized Mr. Ripps's contribution to conceptual art, describing him as "An Artist of the Internet," and *Forbes* listed Mr. Ripps in the 2016 class of 30 under 30:  Art & Style.  Ex. 3 ("Ryder Ripps: An Artist of the Internet"); Ex. 4 (*Forbes* 30 Under 30: Art & Style).

Many important exhibits have showcased Mr. Ripps's work.  For example, in 2015, Mr. Ripps had an exhibition at Postmasters Gallery in New York City—a gallery well-known for representing artists at the cutting edge of technology.  Ex. 5 (Review in *The Brooklyn Rail*).  Mr. Ripps reappropriated Instagram posts from the model Adrienne Ho and digitally manipulated them with a liquefying photo editing tool.  *Id.* at 3.  Postmasters described the portraits as exposing how we "reflexively simulate reality online" and have "authenticity manipulated by multiple filters and amplified by mass circulation."  Ex. 6 (Postmasters Listing) at 1.  Mr. Ripps was also recognized in 2015 as a "bold digital artist and entrepreneur" for remaking the vast internet in miniature with an installation called *Alone Together*.  Ex. 7 (Review in *Complex*) at 1.

In addition to creating fine art, Mr. Ripps has also led creative direction and design projects for companies like Nike and Red Bull, developed branding for products such as Soylent meal replacements, worked closely with Kanye West at his creative agency *Donda*, and has created art and executed creative direction with many leading musicians such as Grimes, James Blake, MIA, Pop Smoke, Pusha T, Tame Impala, and Travis Scott.  Ripps. Decl. ¶ 3.

1    Conceptual, performance, and appropriation art are among Mr. Ripps's most
2    important and popular modes of artistic expression.  In 2021, Mr. Ripps used
3    performance and appropriation art to comment on the purpose and nature of NFTs
4    ("non-fungible tokens").  An NFT is an entry on a decentralized digital ledger known
5    as a "blockchain."  Each NFT is unique by design and cannot be copied.  But NFTs
6    also often link to other content, such as images, that are easily copied.  A purported
7    utility of NFTs in art is verifiable provenance that makes it possible to distinguish
8    original digital works from otherwise perfect duplicates.  Mr. Ripps created his own
9    NFT that linked to a high-resolution version of the image associated with another NFT
10   (the "CryptoPunk #3100 NFT").  Ex. 8 ("CryptoPunks Get Punked").  One element of
11   this artwork was to comment on what it means to "own" an NFT—to control a digital
12   token (data in a blockchain) but not the corresponding digital image.  *Id*. at 2.

**B.    Yuga Systematically Embedded Racist Messages and Imagery in Its Trademarks and Products**

13   Yuga sold a series of 10,000 NFTs known as the Bored Ape Yacht Club
14   ("BAYC").  Each BAYC NFT is associated with an image of an anthropomorphized
15   ape cartoon.  The BAYC collection, related promotional activities, and Yuga's
16   corporate designs are systematically embedded with dog whistles common among
17   neo-Nazis, alt-right groups, and racist bulletins within websites like 4chan.org/pol/.
18   The presence of this symbolism is too prevalent to be a coincidence.
19
20       As noted earlier, Yuga's BAYC logo imitates the Nazi SS Totenkopf.  The
21   BAYC logo simply replaces the human skull and bones with an ape skull and alters
22   the text so that it refers to the BAYC collection.  Ex. 2 (https://gordongoner.com) at 4.
23   Yuga copied all salient features of the Totenkopf in the BAYC logo, including the
24   stylization and orientation of the skull, rough edges around the emblem, text and
25   image layout, and color scheme.  The BAYC logo even copies the 18 teeth in the
26   symbol's skull.  The Anti-Defamation League has recognized that "18 is a white
27
28

Case No. 2:22-cv-04355-JFW-JEM                NOTICE OF MOTION; MOTION TO STRIKE

1  supremacists alphanumeric code for Adolf Hitler" (because A and H are the first the

2  eighth letters in of the alphabet).  Ex. 9 (ADL: Hate Symbol 18).

3       The founders of Yuga also embedded a neo-Nazi dog whistle in the name of

4  their company itself.  The word "Yuga" references the alt-right phrase "Surf the Kali

5  Yuga."  Kali Yuga is the age of sin and conflict in Hinduism, and alt-right groups use

6  the phrase "Surf the Kali Yuga" as an esoteric way of saying enjoy sin and embrace

7  conflict.  Ex. 10 (*Neoecofascism: The Example of the United States*) at 110; Ex. 11

8  ("The Secret Histories of the Radical Right on 4chan/pol") at 8; Ex. 12 ("The Alt-

9  Right Apocalypse") at 1-2.  High profile neo-Nazis, including white supremacist

10  Richard Spencer, routinely discuss the "Kali Yuga" and admit that Yuga is "evoking

11  Nazi iconography."  Ex. 13 (July 31, 2022, 5:54 p.m. Spencer Twitter Post) at 1; Ex.

12  14 (August 22, 2022, 2:22 p.m. Brennan Twitter Post) at 1; Ex. 15 (Spencer Messages

13  to Brennan) at 2.  Yuga co-founder Wylie Aronow was aware of (and apparently

14  embraced) this neo-Nazi dog whistle as part of his public Twitter profile, which in

15  2020 listed "Kali Yuga" as his location.  Ex. 16 ("Thousands of Lies: Wylie Aronow

16  Acknowledges Longtime Friendship with 'Alt-Right' Publisher") at 9; *see also id.* at

17  4, 5 (Aronow acknowledging that he is thanked in the book *Thousands of Lies*, which

18  "runs rampant with racism, antisemitism, pedophilia, white supremacy, misogyny and

19  rape fantasies," for being "instrumental to epiphanies that shape it fundamentally.").

20       The "Surf the Kali Yuga" dog whistle is also often used by neo-Nazis

21  specifically in conjunction with parts of the Totenkopf, as shown in the neo-Nazi shirt:

  

2017 neo-Nazi protester wearing a "Surf the Kali Yuga" t-shirt.        YugaLabs BAYC logo

-4-

1  Ex. 17 ("Matthew Warner: From GamerGate to Identity Evropa") at 6; Ex. 18 (Kali
2  Yuga shirt) at 1.  The Totenkopf's skull and bones depicted on the shirt is one of the
3  most frequently appearing images on 4chan.org/pol/ bulletins discussing the Kali
4  Yuga.  Ex. 11 at 9.  In other words, the company name "Yuga" and the Bored Ape
5  Yacht Club logo contain corresponding neo-Nazi dog whistles.

6       The BAYC collection itself also contains obvious racist messaging and
7  imagery.  The NFTs display anthropomorphized apes in an act of simianization—
8  disparaging ethnic or racial groups by depicting them as apes.  Ex. 2 at 2-3.  Yuga's
9  use of simianization has come under significant public scrutiny.  Ex. 19 (Twitter Posts
10  Compilation).  Carla Hill, a senior researcher at the Anti-Defamation League's Center
11  for Extremism, has criticized the BAYC's depiction of apes with hip hop traits and
12  apes wearing a kamikaze headband.  Ex. 20 ("Bored Ape Yacht Club finally responds
13  to neo-Nazism accusation") at 6.  Below are two NFTs that display these features:

 

BAYC #3721          BAYC #6281

23  The image on the left (BAYC #3721) depicts a gold jacket and gold chain, which
24  Yuga refers to as "Hip Hop" clothing, in reference to a popular musical genre and
25  lifestyle pioneered by African Americans.  Ex. 21 (BAYC #3721).  The image on the
26  right (BAYC #6281) depicts a kamikaze headband, which Yuga refers to as a "Sushi
27  Chef Headband."  Ex. 22 (BAYC #6281).

28

-5-

1    The racist dog whistles that Yuga has embedded in BAYC and associated

2    projects are too numerous to catalog here.  For example, Yuga has gone so far as to

3    create metadata that includes "Stone Hole Jackson" in reference to the confederate

4    general Stonewall Jackson.  Ex. 23 (Otherdeed Metadata Provenance Information).

5    Yuga later changed the metadata to erase this offensive reference.  *Id*.  More examples

6    can be seen in the YouTube video "*The Bored Ape Conspiracy (theory) - A Cultural

7    Disease*" (available at https://www.youtube.com/watch?v=tRPHZQFuT24).  But a

8    key part of Mr. Ripps's work has been to document them, including at his website

9    https://gordongoner.com/.

10    Yuga's systematic use of racist and neo-Nazi messages and imagery appears to

11    be by deliberate design, and, by its co-founder's admission are not "just random."

12    Greg Solano, Yuga's co-founder, stated in an interview that "[i]t's like Wittgenstein's

13    'let the unutterable be conveyed unutterably,' or Hemingway's iceberg theory.  We

14    knew all about what this world was, and why these apes are this way.  And that

15    somebody else might get a little tingle on their neck looking at it, thinking, 'Yeah, this

16    is kind of different.  ***This isn't just random.***'"  Ex. 24 ("The Bored Ape Founders

17    Haven't Yet Joined the Yacht Club") at 6 (emphasis added).

18    **C.    Mr. Ripps's Artistic Project Is a Protest of Yuga's Dog Whistles**

19    Mr. Ripps created the RR/BAYC project as a critique of Yuga's use of racist

20    and neo-Nazi dog whistles.  The RR/BAYC project is a collection of NFTs that point

21    to the same online digital images as the BAYC collection but use verifiably unique

22    entries on the blockchain.  Ripps Decl. ¶ 8.  Mr. Ripps's use of pointers to the same

23    images is a form of "appropriation art" that serves several purposes: (1) to bring

24    attention to Yuga's use of racist and neo-Nazi messages and imagery, (2) to expose

25    Yuga's use of unwitting celebrities and popular brands to disseminate offensive

26    material, (3) to create social pressure demanding that Yuga take responsibility for its

27    actions, and (4) to educate the public about the technical nature and utility of NFTs.

28

Case No. 2:22-cv-04355-JFW-JEM          NOTICE OF MOTION; MOTION TO STRIKE

1   Ripps Decl. ¶ 8; Ex. 1 (https://rrbayc.com/) at 1; Ex. 25 (May 14, 2022, 9:52 p.m.,
2   Twitter Archive).

3       As early as November 2021, Mr. Ripps began exposing Yuga's misconduct
4   through his Twitter and Instagram profiles, podcasts, and cooperation with
5   investigative journalists, and by creating the website https://gordongoner.com.  Ripps
6   Decl. ¶ 5.  Mr. Ripps criticized Yuga's use of neo-Nazi and alt-right dog whistles, and
7   also spoke about the countless celebrities whom Yuga had promoting its offensive
8   material including Tom Brady, Kevin Hart, Jimmy Fallon, Shaquille O'Neal, Mark
9   Cuban, Justin Bieber, Serena Williams, Paris Hilton, LaMelo Ball, Timbaland,
10  Stephen Curry, Eminem, Madonna, Post Malone, Ben Simmons, Steve Aoki, Neymar
11  Jr., Gwyneth Paltrow, Snoop Dog, and others.  Ex. 26 ("The All-Star owners of the
12  Bored Ape Yacht Club") at 2-6.

13      Mr. Ripps created the RR/BAYC project in connection with his efforts to
14  expose Yuga's neo-Nazi and alt-right references.  The project began organically, with
15  Mr. Ripps receiving requests for RR/BAYC NFTs on Twitter from like-minded users
16  critical of Yuga.  Ripps Decl. ¶ 9.  Later, Mr. Ripps posted on Twitter that he would
17  create his satirical NFTs for anyone who requested one for the price of 0.1 Ethereum
18  (currently roughly $150).  Ex. 27 (May 14, 2022, 7:34 p.m., Mr. Ripps Twitter Post).
19  He explained to his followers that "ryder ripps bayc vision is to create an army of
20  educators" with respect to Yuga's connections to neo-Nazi and alt-right culture.  Ex.
21  28 (May 15, 2022, 1:21 a.m., Mr. Ripps Twitter Post).

22      The RR/BAYC NFTs quickly became popular, and Mr. Ripps eventually set up
23  the website https://rrbayc.com.  Ex. 1.  The website ensured that collectors understood
24  the satirical message of the project and that they were not purchasing a BAYC NFT.
25  The front page of the website explained that "RR/BAYC uses satire and appropriation
26  to protest and educate people regarding the Bored Ape Yacht Club and the framework

27

28

-7-

Case No. 2:22-cv-04355-JFW-JEM                    NOTICE OF MOTION; MOTION TO STRIKE

1  of NFTs." *Id.* at 1. Mr. Ripps further required each purchaser to adopt the following

2  disclaimer:



3
4
5
6
7
8
9
10
11
12
13

14  Ripps Decl. ¶ 11. As shown above, the disclaimer required purchasers to

15  acknowledge that RR/BAYC NFTs are "a new mint of BAYC imagery,

16  recontextualizing it for educational purposes, as protest and satirical commentary[.]"

17      Mr. Ripps's criticism of Yuga has become well-known. Even Yuga's

18  Complaint discusses the criticism Mr. Ripps has made about Yuga, alleging that Mr.

19  Ripps has described RR/BAYC as "satire" (Compl. ¶ 5) and has encouraged collectors

20  to purchase RR/BAYC NFTs to ***protest*** Yuga (Compl. ¶¶ 56, 72, 116). Yuga also

21  concedes that Mr. Ripps has conducted "an interview with a popular meme page" to

22  discuss Yuga's use of racist dog whistles. Compl. ¶ 50. The Complaint further

23  acknowledges that Mr. Ripps's message has "reached a significant number of people

24  on social media." Compl. ¶ 51.

25      The public protest against Yuga led to the #BURNBAYC movement

26  (spearheaded by the popular YouTuber Philion). Social media influencers and

27  celebrity YouTubers have been using the #BURNBAYC hashtag, which began

28  trending the same week the RR/BAYC collection sold out. Ex. 29 ("Bored Ape Yacht

-8-

Club (BAYC) Propagating NFT Racism?") at 2; Ex. 30 ("Bored Ape Yacht Club's Creators Declared War on a Vocal Critic.  Could it Backfire?") at 5.  The question of whether BAYC is racist has become a "viral debate" and mainstream newspapers reported that #BURNBAYC is a "public opinion storm" and "too large to ignore." Ex. 31 ("Bored Ape Yacht Club Wants Ryder Ripps to Cease and Desist") at 5; Ex. 32 ("BAYC caught in public opinion storm over Nazi club NFT") at 1. Ex. 33 ("BAYC founders call Nazi conspiracy video 'crazy disinformation campaign'") at 1.  As a result, Mr. Ripps's work is today described as being "pretty brilliant from an artistic point of view."  Ex. 34 ("Yuga Fires Back at #BURNBAYC Creator") at 4.

### D.   Yuga Is Attempting To Silence Mr. Ripps

Yuga has been on a campaign aimed at silencing Mr. Ripps's artistic expression and related criticism of Yuga's connections to neo-Nazi and alt-right culture.  For example, when Mr. Ripps began to speak out about the BAYC collection, Yuga's talent manager, Guy Oseary, called Mr. Ripps to make vague threats.  Ripps Decl. ¶ 7. Oseary stated that "I can be a nice guy or I can be a not nice guy" and that he could make Mr. Ripps's life hard if he continued to call out Yuga.  *Id*.  Oseary also offered to introduce Mr. Ripps to Kanye West (without realizing that Mr. Ripps had already worked with West) and added Mr. Ripps to a group text message with West's manager.  *Id*.  The next week Oseary left a voice memo thanking Mr. Ripps for remaining silent.  *Id*.  But Oseary's statements only galvanized Mr. Ripps to continue his criticism of Yuga and eventually to create the RR/BAYC work.

This lawsuit is the latest Yuga attempt to bully Mr. Ripps into silence.  There are dozens of entities that create knock-off ape NFTs that make no artistic or critical commentary.  Ripps Decl. ¶ 15, Ex. 1 (List of NFT Projects).  Tellingly, Yuga has not sued *any* entities that are intentionally exploiting Yuga's goodwill.  Instead, Yuga has sued only Mr. Ripps and Mr. Cahen for their successful protest and criticism of Yuga's systematic use of racist and neo-Nazi messages and imagery.

-9-

1    III.   **LEGAL STANDARD**

2          Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court

3    may strike from a pleading an insufficient defense or any redundant, immaterial,

4    impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

5          The California Anti-SLAPP statute explains that Rule 12(f) can "allow for early

6    dismissal of meritless First Amendment cases aimed at chilling expression through

7    costly, time-consuming litigation." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148,

8    1155 (9th Cir. 2021) (internal brackets omitted).  The statute provides that a defendant

9    may strike a complaint if it "'arises from any act of that person in furtherance of the

10   person's right of petition or free speech under the United States or California

11   Constitution in connection with a public issue.'" *Vess v. Ciba-Geigy Corp. USA*, 317

12   F.3d 1097, 1109 (9th Cir. 2003) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)).

13         Courts grant anti-SLAPP motions to strike at the pleadings stage when (1) the

14   defendant shows that "an act in furtherance of protected expression is being

15   challenged" and (2) the plaintiff fails to demonstrate that "the complaint is legally

16   sufficient." *Planned Parenthood Fed'n of America, Inc. v. Ctr. for Med. Progress*,

17   890 F.3d 828, 833 (9th Cir. 2018).

18   IV.   **ARGUMENT**

19         The Complaint's state law claims should be stricken under the anti-SLAPP

20   statute because (1) the accused RR/BAYC project is protected speech made in

21   connection with a public issue and (2) the Complaint does not allege legally sufficient

22   facts to support a cause of action.  The Complaint, including Yuga's federal law

23   claims, should also be dismissed under Rule 12(b)(6) for failure to state a claim.

24         **A.     The RR/BAYC Project Is Protected Speech Made In Connection
                    With A Public Issue**

25
26         Anti-SLAPP immunity protects the accused RR/BAYC project because the

27   project is performance and appropriation art that expresses criticism against Yuga's

28   use of racist, neo-Nazi, and alt-right dog whistles. *Planned Parenthood*, 890 F.3d at

                                          -10-

Case No. 2:22-cv-04355-JFW-JEM                    NOTICE OF MOTION; MOTION TO STRIKE

832-33 (citing Cal. Civ. P. Code. § 425.16(b)(1)) (anti-SLAPP immunity applies to acts made (1) in furtherance of the constitutional right of free speech and (2) in connection with a public issue).

### i.   Mr. Ripps Created The RR/BAYC Project In Furtherance of His Constitutional Right of Free Speech

The First Amendment protects expressive works, and an artwork is expressive if it is "communicating ideas or expressing points of view." *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020) (citing *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 900 (9th Cir. 2002)).   As explained below, the RR/BAYC project abundantly communicates protest and criticism of Yuga's references to racist and neo-Nazi themes.

Mr. Ripps created the RR/BAYC project with the specific aim of publicizing how Yuga's founders have embedded Yuga and the BAYC collection with racist and neo-Nazi dog whistles.  Ripps Decl. ¶ 8.  Before launching the RR/BAYC project, Mr. Ripps used his Twitter and Instagram profiles to expose Yuga.  Ripps Decl. ¶ 5.  Mr. Ripps also released the website https://gordongoner.com to document Yuga's references to neo-Nazi and alt-right culture.  *Id*.

The RR/BAYC project elevated Mr. Ripps's criticism of Yuga.  Collectors commissioned RR/BAYC NFTs as an act of protest against Yuga and to form a community that advances Mr. Ripps's messages regarding Yuga's use of racist dog whistles.  Ripps Decl. ¶ 9.  As Mr. Ripps explained on the website that sold his NFTs (https://rrbayc.com), "RR/BAYC uses satire and appropriation to protest and educate people regarding The Bored Ape Yacht Club and the framework of NFTs."  Ex. 1 at 1.  Mr. Ripps also ensured that collectors understood the satirical messages of his NFTs by requiring every purchaser to sign a disclaimer acknowledging that the RR/BAYC NFTs are "a new mint of BAYC imagery, recontextualizing it for educational purposes, as protest and satirical commentary."  Ripps Decl. ¶ 11.

1    The ideas that the RR/BAYC project expressed quickly gained notoriety.  Mr.

2  Ripps's NFTs sold out within weeks and, as Yuga admits in the Complaint, Mr.

3  Ripps's message "reached a significant number of people."  Compl. ¶ 51; Ripps Decl.

4  at 10.  The public protest against Yuga eventually led to the #BURNBAYC

5  movement, which demands that Yuga be held accountable for its offensive and racist

6  behavior.  Ex. 29 at 2; Ex. 32 at 2.  For these reasons, the RR/BAYC project has been

7  described as "pretty brilliant from an artistic point of view."  Ex. 34 at 4.

8         **ii.    The RR/BAYC Project Communicates Ideas In Connection
             With A Public Issue**

9    A work is connected to a public issue if it involves (1) statements "concerning a

10  person or entity in the public eye," (2) "conduct that could directly affect a large

11  number of people beyond the direct participants," or (3) "a topic of widespread public

12  interest."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010).  The

13  RR/BAYC project is connected to a public issue for all three of these reasons.

14    ***First***, RR/BAYC NFTs express commentary about an entity (Yuga) that is in

15  the "public eye."  Yuga is a $4 billion corporation that publicly sells NFTs and

16  various related services.  Compl. ¶ 20.  Moreover, according to the Complaint, Yuga's

17  BAYC collection has received "significant attention from the media" and "has

18  generated massive public interest."  Compl. ¶¶ 1, 19, 20

19    ***Second***, Yuga's coded racism and neo-Nazi messages affect a large number of

20  people beyond Yuga, Mr. Ripps, and Mr. Cahen.  Yuga has enlisted celebrities to

21  promote BAYC and its racist imagery including Tom Brady, Madonna, Kevin Hart,

22  Jimmy Fallon, Shaquille O'Neal, Mark Cuban, Justin Bieber, Stephen Curry,

23  Eminem, Serena Williams, Steve Aoki, LaMelo Ball, Snoop Dog, and others.  Ex. 26

24  at 2-6; Compl. at ¶ 21.  Yuga's BAYC has also worked with major brands including

25  Adidas, Universal Music Group, Arizona Iced Tea, Gucci, Major League Soccer, and

26  Old Navy.  Compl. at ¶ 22; Ripps Decl. ¶ 6.  These public endorsements show that

27  BAYC NFTs are affecting society at large, including American mainstream culture.

28

-12-

1    ***Third***, Yuga's connection to neo-Nazi and alt-right culture is a topic of
2    widespread public interest.  Yuga's use of racist messages and imagery has been
3    repeatedly criticized publicly.  Ex. 19.  Activists, including some celebrities and social
4    media influencers, are standing up against Yuga and participating in the
5    #BURNBAYC movement.  Ex. 29 at 1.  Newspapers have commented on these
6    events, reporting that there is now a "public opinion storm" surrounding Yuga and
7    that #BURNBAYC has become "too large to ignore."  Ex. 32 at 1; Ex. 33 at 1.

8    **B.    The Complaint Does Not Support A Plausible Cause of Action**

9    The Complaint is legally insufficient because Yuga has not alleged a plausible
10   cause of action.  *Planned Parenthood*, 890 F.3d at 832-33 (citing Cal. Civ. P. Code
11   § 425.16(b)(1)) (holding the second step of anti-SLAPP requires plaintiffs to show
12   that the complaint is legally sufficient).

13   **i.    Yuga's Trademark Infringement Claims Are Legally**
14   **Insufficient Under the *Rogers* Free Speech Test (Claims 4-7)**

15   Under the *Rogers* test that insulates artistic free speech from claims of
16   trademark infringement, trademark claims are actionable only if the accused use of a
17   trademark is "(1) not artistically relevant to the underlying work or (2) explicitly
18   misleads consumers as to the source of the content of the work."  *Dr. Suess Enters.,*
19   *L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020).  The *Rogers* test applies to
20   all of Yuga's trademark infringement causes of action.  *Twentieth Century Fox*
21   *Television a division of Twentieth Century Fox Film Corp. v. Empire Distrib. Corp.*,
22   875 F.3d 1192, 1195-99 (9th Cir. 2017) (applying *Rogers* test to false designation of
23   origin, unfair competition, and false advertising under the Lanham Act and California
24   Law); *Dr. Suess Enters.*, 983 F.3d at 461 (*Rogers* test applies to common law
25   trademark infringement); *see Calista Enters. Ltd. v. Tenza Trading Ltd.*, 43 F. Supp.
26   3d 1099, 1031 (9th Cir. 2014) (holding that cybersquatting claims require likelihood
27   of confusion); *E.S.S. Ent. 200, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1098,
28   1101 (9th Cir. 2008) (applying *Rogers* test to trademark infringement and unfair

-13-

1   competition under Cal. Bus. & Pro. Code and California common law).  As explained

2   below, Yuga has failed to plausibly allege both prongs of the *Rogers* test.

3       ***First***, Yuga has conceded in its Complaint that the BAYC marks are artistically

4   relevant to the RR/BAYC project.  The *Rogers* test requires that "the level of

5   relevance must merely be above zero[.]"  *Gordon v. Drape Creative, Inc*, 909 F.3d

6   257, 268 (9th Cir. 2018)* (citation and quotation marks omitted).  The allegations in

7   the Complaint satisfy the "above zero" threshold because they include Mr. Ripps's

8   explanation that his project uses BAYC marks in his conceptual appropriation art as a

9   "provocation" that serves "to illuminate what nfts are and show bayc for what it really

10  is."  Compl. ¶ 57.  Yuga also alleged that Mr. Ripps sold RR/BAYC NFTs so

11  collectors can protest Yuga's racist references.  Compl. ¶¶ 72, 116.  Yuga even

12  alleged that Mr. Ripps promoted his project with the statement, "LONG LIVE

13  CONCEPTUAL ART."  Compl. ¶ 57.  The Complaint also incorporates by reference

14  https://rrbayc.com by repeatedly referencing, discussing, and including hyperlinks to

15  that webpage.[1]  Compl. ¶¶ 34, 36, 48, 81.  The webpage explains that "RR/BAYC

16  uses satire and appropriation to protest and educate people regarding The Bored Ape

17  Yacht Club and the framework of NFTs" and that "[t]he work is an extension of and

18  in the spirit of other artists who have worked within the field of appropriation art."

19  Ex. 1 at 1 (emphasis removed).  These allegations in the Complaint go well beyond

20  the "above zero" relevance requirement because they make clear that the RR/BAYC

21

22

---

23  [1] A complaint incorporates by reference documents that it discusses, repeatedly
    references, or includes via hyperlink.  *Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d
24  988, 1007 (9th Cir. 2018) (affirming incorporation by reference of a document
    repeatedly referenced in the complaint); *United States v. Ritchie*, 342 F.3d 903, 908
25  (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be
    incorporated by reference into a complaint"); *Battle v. Taylor James, LLC*, No. 21-cv-
26  07915-FWS-KES, 2022 WL 2162930, at *6 (C.D. Cal. June 15, 2022) (holding that a
27  hyperlink in a complaint incorporated the linked document).

28

-14-

Case No. 2:22-cv-04355-JFW-JEM                NOTICE OF MOTION; MOTION TO STRIKE

1 | project uses the asserted trademarks to express criticism of Yuga's use of racist dog
2 | whistles.  Compl. ¶¶ 34, 36, 48, 57, 72, 81, 116.

3 |      ***Second***, Yuga has failed to allege (and cannot allege) that Mr. Ripps ***explicitly***
4 | misled consumers as to the source of RR/BAYC NFTs.  *Gordon*, 909 F.3d at 269
5 | ("the key here is that the creator must explicitly mislead consumers[.]").  To the
6 | contrary, Yuga repeatedly alleged that Mr. Ripps publicly communicated that
7 | RR/BAYC NFTs are not Yuga products.  The Complaint in fact alleges statements
8 | that RR/BAYC NFTs are intended to "show bayc for what it really is" and allow
9 | collectors to protest Yuga and "say fuck off to @BoredApeYC!"  Compl. ¶¶ 57, 72,
10 | 116.  According to these allegations, Mr. Ripps did not publicize the RR/BAYC NFTs
11 | as Yuga products but instead as the ***antithesis*** to Yuga and its offensive BAYC
12 | collection.  The incorporated website, https://rrbayc.com, similarly shows that Mr.
13 | Ripps did not explicitly mislead consumers.  Compl. ¶ 57.  The website explains that
14 | Mr. Ripps was the creator of RR/BAYC NFTs and that the project uses "satire and
15 | appropriation" to criticize Yuga's BAYC collection.  Ex. 1 at 1.  The website also
16 | required each purchaser to sign a disclaimer acknowledging that Yuga did not create
17 | RR/BAYC NFTs.  Thus, Yuga itself has alleged that Mr. Ripps took extensive steps to
18 | ensure that collectors understood the correct origin of RR/BAYC NFTs.

19 |      The Complaint also repeatedly alleges facts showing that RR/BAYC NFTs
20 | were differentiated from Yuga's NFTs in the marketplace.  For example, the OpenSea
21 | marketplace images in paragraph 33 show that Mr. Ripps's NFTs were labeled as part
22 | of the "RR/BAYC" collection and not the "Bored Ape Yacht Club" collection:



Case No. 2:22-cv-04355-JFW-JEM           NOTICE OF MOTION; MOTION TO STRIKE

1   Compl. ¶ 33.  Paragraph 34 alleges that Mr. Ripps repeatedly used "RR/BAYC" in
2   connection with his website https://rrbayc.com, where "RR" denoted "Ryder Ripps" to
3   distinguish from Yuga's NFTs.  Compl. ¶ 34.  Paragraph 37 alleges that the
4   Foundation page contained differentiating features including the RR/BAYC satirical
5   logo and identifying "Ryder Ripps" as the creator:

6
7
8   
9
10
11
12
13
14

15   Compl. ¶ 37.  The corresponding Foundation NFT image in paragraph 38 minimizes
16   the image so that the logo and its slogan "THIS LOGO IS BASED ON THE SS
17   TOTENKOPF" does not appear clearly in the Complaint.  Compl. ¶ 38.  And in
18   paragraph 39, the Complaint discusses, hyperlinks, and incorporates by reference the
19   Etherscan page: https://etherscan.io/address/0x2ee6af0dff3a1ce3f7e3414c52c48fd50d
20   73691e to allege that Defendants created misleading token trackers.  Compl. ¶ 39.
21   However, the page clearly and expressly identifies Mr. Ripps—not Yuga—as the
22   token creator:

23
24   
25
26
27
28

-16-

1    Yuga's allegations in relation to the Twitter pages @RR_BAYC and

2  @BOREDAPEV3 similarly fail to allege explicitly misleading acts.  The Complaint

3  alleges no facts connecting Defendants to these accounts—which is no surprise

4  because Defendants actually have nothing to do with these Twitter pages.  Compl. ¶¶

5  42, 44.  The image in paragraph 42 of the Complaint even confirms the @RR_BAYC

6  is "[c]ommunity ran."  Compl. ¶ 42.

7    Lastly, Yuga fails to allege any explicitly misleading acts with regards to the

8  website https://apemarket.com/.  The Complaint does not allege that Yuga has any

9  trademark in "Ape Market" with or without a skull logo.  Further, the hyperlinked and

10 thereby incorporated page shows that the alleged "apemarket.com" website is not yet

11 operating and has never had any content, let alone any misleading content.  Compl. ¶

12 46; Ex. 35 (ApeMarket Webpage).

13   In sum, the Complaint consistently alleges that Mr. Ripps ***differentiated*** the

14 RR/BAYC project from Yuga's NFTs.  That is the opposite of the "explicitly

15 misleading" use that *Rogers* requires.  Thus, under the *Rogers* test, Yuga's allegations

16 render its trademark infringement claims legally insufficient.

17           **ii.    Yuga's Trademark Infringement Claims Based on the**
              **RR/BAYC Project also Fail Because Use of Yuga's Alleged**
18           **Marks Is Nominative Fair Use (Claims 4-7)**

19   Yuga's Complaint also alleges facts demonstrating that the alleged use of

20 Yuga's marks qualifies as protected nominative fair use.  A defendant's use of a mark

21 is protected nominative fair use when (1) the plaintiff's product or service in question

22 is not readily identifiable without use of the trademark; (2) only so much of the mark

23 or marks is used as is reasonably necessary to identify the plaintiff's product or

24 service; and (3) the user does nothing that would, in conjunction with the mark,

25 suggest sponsorship or endorsement by the trademark holder.  *Mattel Inc. v. Walking*

26 *Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003) (quoting *New Kids on the Block*

27 *v. News America Pub. Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)).  Nominative fair use is

28

<div align="center">-17-</div>

1   applicable to and defeats all of Yuga's trademark infringement causes of action.

2   *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 889, 893-98 (9th Cir. 2019)

3   (applying nominative fair use to false designation of origin and unfair competition

4   claims under the Lanham Act and unfair competition under California common law);

5   *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1081 (9th Cir. 2015) (applying

6   nominative fair use to a federal false advertising claim); *New Kids on the Block*, 971

7   F.2d at 305-09 (applying nominative fair use to common law trademark infringement

8   and false advertising under California law); *BMW of N. America v. Mini Works, LLC*,

9   463 Fed. App'x. 689 (Fed. Cir. 2011) (nonprecedential) (applying nominative fair use

10   to cybersquatting, but holding that defendant failed to show fair use).

11        ***First***, Mr. Ripps's appropriation art project would not be readily identifiable, or

12   even possible, without using Yuga's marks to conjure up the BAYC collection—the

13   subject of Mr. Ripps's critique.  As discussed above, the Complaint includes Mr.

14   Ripps's explanation that his project uses BAYC marks in his conceptual appropriation

15   art as a "provocation" that serves to "show bayc for what it really is."  Compl. ¶ 57.

16   Mr. Ripps's "needed to communicate" to his audience that the RR/BAYC project

17   critiques Yuga and, in particular, its BAYC collection, and "so using the mark in the

18   title and description of the program 'accomplished this goal.'" *Applied Underwriters*,

19   913 F.3d at 894 (quoting *Toyota Motor Sales v. Tabari*, 610 F.3d 1171, 1180 (9th Cir.

20   2010)).  Courts have routinely determined that a descriptive alternative need not be

21   employed where, as here, the use of a mark is necessary to refer to a ***specific brand or***

22   ***product***. *Applied Underwriters, Inc.* 913 F.3d at 893-94.

23        ***Second***, Mr. Ripps's used BAYC's marks only to the extent reasonably

24   necessary.  The RR/BAYC project is a satirical work that uses unique and identifiable

25   NFTs that point to the same online digital images associated with the BAYC

26   collection.  Compl. ¶ 57; Ex. 1 at 1.  Thus, the nature of Mr. Ripps's performance and

27   appropriation art project requires use of Yuga's marks in the digital images to which

28

-18-

1    his NFTs point, and in the title of the collection, to accomplish the use of satire to

2    criticize Yuga. *Applied Underwriters*, 913 F.3d at 895 ("The second *New Kids* factor

3    does not implicate the *number* of uses of a mark, but rather the *nature* of the uses.").

4    Moreover, because the RR/BAYC project depends on using descriptions of Yuga and

5    its BAYC collection, more use of Yuga's marks is reasonably necessary. *See Cairns*

6    *v. Franklin Mint Co.,* 292 F.3d 1139, 1154 (9th Cir. 2002) ("Where … the description

7    of defendant's product depends on the description of the plaintiff's product, more use

8    of the plaintiff's trademark is 'reasonably necessary to identify the plaintiff's product'

9    than in cases where the description of the defendant's product does not depend on the

10   description of the plaintiff's product.").

11       **Third**, Mr. Ripps's has done nothing to suggest sponsorship or endorsement by

12   Yuga.  The goal of a nominative use is typically for the "purposes of comparison,

13   criticism [or] point of reference." *Mattel Inc.* 353 F.3d at 809.  As detailed above, Mr.

14   Ripps has been clear that RR/BAYC serves this goal by using the asserted marks to

15   criticize Yuga's use of racist and neo-Nazi dog whistles.  The Complaint alleges that

16   RR/BAYC NFTs are intended to "show bayc for what it really is" and allow collectors

17   to protest Yuga and "say fuck off to @BoredApeYC!"  Compl. ¶¶ 57, 72, 116.

18   Generally, one does not urge its audience to tell a sponsor to "fuck off."  These

19   allegations in the Complaint preclude any suggestion that Yuga sponsors or endorses

20   the RR/BAYC project because they show that the content of RR/BAYC is replete with

21   critical statements about Yuga and the BAYC collection. *See New Kids on the Block,*

22   971 F.2d at 308–09 ("[N]othing in the announcements suggests joint sponsorship or

23   endorsement by the New Kids. The USA Today announcement implies quite the

24   contrary by asking whether the New Kids might be 'a turn off.'")

25       Further, although "[t]his element does not require that the defendant make an

26   affirmative statement that their product is not sponsored by the plaintiff" (*Mattel Inc.*

27   353 F.3d at 811), Mr. Ripps has repeatedly done so.  As explained above, Yuga has

28

-19-

1    extensively alleged that Mr. Ripps made clear that he created the RR/BAYC NFTs as

2    satirical art directed at criticizing Yuga.  Compl. ¶¶ 57, 72, 116.  Moreover, the

3    Complaint incorporates by reference the RR/BAYC website in which Mr. Ripps

4    further explains that the RR/BAYC project is satirical and required every purchaser of

5    an RR/BAYC NFT to sign a disclaimer acknowledging that Mr. Ripps was the

6    creator, not Yuga.  Compl. ¶¶ 34, 36, 48, 81.  Based on these allegations regarding the

7    critical nature of the RR/BAYC, the content on the RR/BAYC website, and Mr.

8    Ripps's repeated criticism of BAYC in RR/BAYC-related communications, Yuga has

9    failed to plausibly alleged that a "reasonably prudent consumer" in the relevant

10   marketplace (*Toyota Motor Sales*, 610 F.3d at 1176) could have interpreted

11   RR/BAYC as being endorsed or sponsored by Yuga.

12        In sum, the Complaint contains only conclusory allegations of consumer

13   confusion that are belied by the critical nature of the RR/BAYC project as described

14   in the Complaint.  These allegations of Mr. Ripps's use of the asserted marks, when

15   considered in the light most favorable to Yuga, is protected nominative fair use.

16   Accordingly, Yuga has failed to allege legally sufficient facts for its trademark

17   infringement causes of action.

18            **iii.**     **Yuga Did Not Allege a Misleading Representation of Fact in**

19                   **Support of Its False Advertising Claims (Claim 7)**

20        Yuga's false advertising claims are legally insufficient, in addition to their

21   deficiencies under the *Rogers* test and nominative fair use, for failure to allege

22   advertising that is "misleading or which has a capacity, likelihood or tendency to

23   deceive or confuse the public." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017

24   (9th Cir. 2020); *Prager Univ. v. Google LLC*, 951 F.3d 991, 999 (9th Cir. 2020)

25   (Under the Lanham Act, false advertising must include a "false or misleading

26   representation of fact.").  The Complaint does not provide a single example of a

27   misleading statement and instead merely concludes that Defendants advertised that

28   "RR/BAYC NFTs are equivalent to authentic Bored Ape NFTs."  Compl. ¶¶ 72, 116.

-20-

1    To support this conclusion, the Complaint alleges the statement "To CLARIFY …

2 how the website http://rrbayc.com works.  You reserve an ape which you can choose.

3 @ryder_ripps will then mint it for you when he is able to. Then it will get transferred

4 to your wallet Then you can say fuck off to @BoredApeYC!"  Compl. ¶¶ 72, 116.

5 But this statement **_distinguishes_** RR/BAYC NFTs from Bored Ape NFTs by

6 clarifying that Mr. Ripps is the creator, not Yuga.  The Complaint also alleges that Mr.

7 Ripps posted, "Looking at @ApeMarketplace and saying fuck you to @BoredApeYC

8 who's with me?"  Compl. ¶¶ 72, 116.  This likewise is not and cannot be alleged to be

9 misleading: it expresses that the RR/BAYC project is a protest against Yuga.

10 Moreover, as explained above, Yuga extensively pleaded that Mr. Ripps promoted the

11 RR/BAYC project as distinct and antithetical to Yuga's NFTs, including on the

12 RR/BAYC website and the disclaimer that every purchaser was required to sign.

13 Compl. ¶¶ 48, 53, 56, 57, 72, 116; Ex. 1 at 1.

        **iv.**     **Yuga Has Failed To Plausibly Allege Unjust Enrichment
(Claim 8)**

     Yuga's unjust enrichment claim is legally insufficient because (1) Yuga has not

plausibly alleged unjust retention of a benefit and (2) the First Amendment precludes

Yuga's unjust enrichment claim.

     **_First_**, unjust enrichment requires the "unjust retention of the benefit at the

expense of another." _Travelers Cas. Ins. Co. of America v. Hirsh_, 831 F.3d 1179,

1182 (9th Cir. 2016).  Yuga's allegation of "unjust retention" is based on Mr. Ripps's

use of "BAYC Marks without authorization."  Compl. ¶ 126.  However, as explained

in Sections IV.B.i-ii, Yuga has not plausibly alleged trademark infringement and

therefore has also failed to plausibly allege unjust enrichment.  _See Mattel, Inc. v.
MCA Recs., Inc._, 28 F. Supp. 2d 1120, 1157 (C.D. Cal. 1998), aff'd, 296 F.3d 894 (9th
Cir. 2002) (holding that defendants' unjust enrichment claim failed where "defendants

did not infringe or dilute plaintiff's trademark .…").

-21-

1    ***Second***, under California Law, Yuga cannot claim unjust enrichment based on

2    Mr. Ripps's exercise of his First Amendment rights.  *See McBride v. Boughton*, 123

3    Cal. App. 4th 379, 387–88, 20 Cal. Rptr. 3d 115, 122 (2004) (explaining that unjust

4    enrichment claims are denied "where application of the doctrine would involve a

5    violation or frustration of the law or opposition to public policy").  The RR/BAYC

6    project is a satirical artistic work protected under the First Amendment right of free

7    speech.  *See supra*-Sections IV.A, B.i-ii.  Requiring Mr. Ripps to pay restitution under

8    an unjust enrichment theory for profits received from the RR/BAYC project would

9    frustrate the strong public policy in favor of First Amendment protections.  *See*

10   *Mattel, Inc. v. MCA Recs., Inc.*, 28 F. Supp. 2d 1120, 1157 (C.D. Cal. 1998), aff'd,

11   296 F.3d 894 (9th Cir. 2002) (denying unjust enrichment claim where "defendants

12   have a strong… First Amendment interest in parodying a popular brand name .…").

13                 **v.    Yuga Has Failed To Plausibly Allege Conversion (Claim 9)**

14          Yuga's claim for conversion is legally insufficient because (1) Yuga has failed

15   to allege wrongful disposition of a property and (2) the tort of conversion does not

16   extend to trademarks in any event.

17          ***First***, to state a claim for conversion, Yuga must allege "right to possession of

18   property" and "wrongful disposition of the property right[.]"  *Kremen v. Cohen*, 337

19   F.3d 1024, 1029 (9th Cir. 2003) (internal quotation omitted).  Yuga alleges "wrongful

20   disposition" by stating that Defendants "substantially interfered with Yuga's

21   ownership and rights in these marks."  Compl. ¶¶ 132-133.  However, because Yuga

22   has not plausibly alleged trademark infringement, Yuga's has also failed to plausibly

23   allege wrongful disposition of property via any such trademark infringement.

24          ***Second***, courts have repeatedly declined to extend conversion to trademarks.

25   *See Meeker v. Meeker*, No. C 02-00741 JSW, 2004 WL 2554452, at *6 (N.D. Cal.

26   Nov. 10, 2004) (holding that "a claim for conversion should not be extended to reach

27   the intangible intellectual property rights in a trademark"); *Innospan Corp. v. Intuit,*

28

<center>-22-</center>

---

Case No. 2:22-cv-04355-JFW-JEM          NOTICE OF MOTION; MOTION TO STRIKE

<center>**SER138**</center>

1  *Inc.,* No. C 10-04422 WHA, 2010 WL 5017014, at *2 (N.D. Cal. Dec. 3, 2010)

2  ("Plaintiff's complaint also alleges a claim for trade infringement under the Lanham

3  Act. That claim is the appropriate legal avenue for trademark infringement, not

4  conversion"); *Tethys Bioscience, Inc. v. Mintz, et al.*, No. 09–5115, 2010 WL

5  2287474, at *7 (N.D. Cal. June 4, 2010) (explaining that "California cases addressing

6  the application of the conversion tort to intangible property have suggested that this

7  theory should not be expanded to displace other, more suitable law").  As in those

8  cases, the appropriate avenue for Yuga to remedy any supposed "conversion" would

9  be its (baseless) trademark claims.

10          **vi.     Yuga Failed to Plausibly Allege Intentional Interference with**
              **Prospective Economic Advantage (Claim 10)**
11

12          Yuga's intentional interference claim is legally insufficient because Yuga has

13  not plausibly alleged (1) an independently wrongful act or (2) specific examples of

14  actual disruption to an economic relationship.

15          ***First***, to state a claim for intentional interference with prospective economic

16  advantage, Yuga must plead that the defendant engaged in an independently

17  "wrongful" act as defined by some constitutional, statutory, regulatory, or other

18  determinable legal standard.  *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*,

19  271 F.3d 825, 831 (9th Cir. 2001).  Yuga alleges that Defendants engaged in an

20  independently wrongful act by infringing Yuga's trademarks. Compl. ¶ 144.  Again,

21  these allegations cannot serve as the independently wrongful act because, for the

22  reasons stated above, Yuga has not plausibly alleged trademark infringement.

23          ***Second***, Yuga has failed to allege a specific economic relationship that

24  Defendants disrupted.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th

25  1134, 1153 (2003) (holding that intentional interference requires alleging specific

26  examples of disruption).  Yuga merely alleged that "[a]n economic relationship

27  existed between Yuga Labs and individuals who have purchased Bored APE NFTs"

28  and that "prior purchasers of Bored Apes 'dumped' Yuga Labs NFTs in favor of …

                                        -23-

Case No. 2:22-cv-04355-JFW-JEM            NOTICE OF MOTION; MOTION TO STRIKE

RR/BAYC NFTs." Compl. ¶¶ 141, 145. These allegations rely on an impermissible "market theory" of liability suggesting that Defendants disrupted Yuga relationship with the entire market of BAYC purchasers. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (affirming dismissal of intentional interference claim when plaintiff merely alleged that "ongoing business and economic relationships with Customers have been disrupted.").

### vii. Yuga Has Not Plausibly Alleged Negligent Interference With Prospective Economic Advantage (Claim 11)

Yuga's negligent interference claim is also legally insufficient because Yuga has failed to allege (1) unreasonable conduct, (2) examples of any prospective or preexisting business relationships or (3) that Defendants owed a duty of care.

*First*, Yuga's negligent interference claim relies on its trademark infringement allegations. Compl. ¶ 156; *see Nat'l Med. Transp. Network v. Deloitte & Touche*, 72 Cal. Rptr. 2d 720, 736 (1998) (negligent interference requires an "independently wrongful" act). Again, Yuga failed to plausibly allege trademark infringement, which renders Yuga's negligent interference claim legally insufficient.

*Second*, to state a claim for negligent interference, Yuga must allege "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff." *Denims v. Ram Imports, Inc*, No. CV 20-0254 DSF (JCx), 2021 WL 4814995, at *3 (C.D. Cal. Mar. 5, 2021) (citing *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008)). Here, Yuga once again states in a general conclusory manner an existing business relationship with customers that "purchased Bored Ape NFTs." Compl. ¶¶ 152, 157. The law is clear that these kinds of conclusory "market theory" allegations cannot support a negligent interference claim. *Denims*, 2021 WL 4814995, at *3 (citing *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996)).

*Third*, Yuga failed to plead that Defendants owed a duty of care to Yuga. *See J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803, 598 P.2d 60 (1979) (negligent

-24-

1    interference requires duty of care); *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 621 (N.D.

2    Cal. 2002) (same).  Yuga has alleged that Defendants are Yuga "competitors in the

3    market for NFTs."  Compl. ¶¶ 66, 150.  This allegation precludes Yuga from plausibly

4    alleging negligent interference because there cannot be a duty of care between

5    competitors.  *See Stolz v. Wong Comms. LP*, 25 Cal. App. 4th 1811, 1825, 31 Cal.

6    Rptr. 2d 229 (1994) ("The complaint did not allege such a duty, nor could it, since it

7    was plain that plaintiff and defendants were competitors.").

8         **C.**     **Dismissal Under Rule 12(b)(6)**

9         Yuga's Complaint is subject to dismissal for failure to state a claim based on

10   the reasons provided above in Section IV.B.  The test for legal sufficiency under the

11   anti-SLAPP statute involves the same analysis as dismissing a cause of action for

12   failure to state a claim.  *Planned Parenthood*, 890 F.3d at 834 ("If a defendant makes

13   a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the

14   motion must be treated in the same manner as a motion under Rule 12(b)(6)[.]").

15   Accordingly, Yuga's federal trademark infringement claims (Claims 1-3) should be

16   dismissed for the reasons provided Sections IV.B.i-iii because, as explained above, the

17   arguments provided in those sections apply equally to Yuga's federal law claims.

18   Yuga has also failed to plausibly plead its state law claims (Claims 4-11) for the

19   reasons provided in Sections IV.B.i-vii.

20   **V.**     **CONCLUSION**

21        For the reasons set forth above, Mr. Ripps and Mr. Cahen respectfully request

22   that the Court strike Claims 4-11 in Yuga's Complaint and award Mr. Ripps and Mr.

23   Cahen their fees and costs pursuant to Cal. Civ. Proc. Code. § 425.16(c) and dismiss

24   Claims 1-3 pursuant to Rule 12(b)(6), or in the alternative, dismiss Yuga's Complaint

25   pursuant to Rule 12(b)(6) in its entirety.

26

27

28

Case No. 2:22-cv-04355-JFW-JEM        NOTICE OF MOTION; MOTION TO STRIKE

1 | Dated:  October 3, 2022

By: /s/  *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
Monica Grewal (pro hac vice)
monica.grewal@wilmerhale.com
Scott W. Bertulli (pro hac vice)
scott.bertulli@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

Henry Nikogosyan (SBN 326277)
henry.nikogosyan@wilmerhale.com
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
350 South Grand Ave., Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Fax: (213) 443-5400

Attorneys for Defendants
*Ryder Ripps and Jeremy Cahen*

-26-

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all attorneys of record via the Court's ECF system on October 3, 2022.

By: /s/ *Louis W. Tompros*

Louis W. Tompros (*pro hac vice*)
louis.tompros@wilmerhale.com
**WILMER CUTLER PICKERING
HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Fax: (617) 526-5000

-1-