**No. 22-56199**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YUGA LABS, INC.,

*Plaintiff-Appellee*,

*v.*

RYDER RIPPS, JEREMY CAHEN,

*Defendants-Appellants*,

*and*

DOES 1–10,

*Defendants.*

On Appeal from the United States District Court
for the Central District of California, No. 2:22-cv-04355 (Walter, J.)

## REPLY BRIEF FOR APPELLANTS
## RYDER RIPPS AND JEREMY CAHEN

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
(650) 858-6062

HENRY M. NIKOGOSYAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
(213) 443-5316

LOUIS W. TOMPROS
ANDREW P. MELENDEZ
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6886

ANDREW K. WAKS
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6297

May 11, 2023

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

ARGUMENT ....................................................................................4

I.  ANTI-SLAPP PRONG 1: YUGA'S STATE LAW CLAIMS ARISE FROM
    ACTS IN FURTHERANCE OF PROTECTED SPEECH ...............................4

    A.  Yuga Misstates The Legal Standard ...................................4

    B.  Yuga Fails To Resuscitate The District Court's
        Reasoning ..................................................................7

    C.  Yuga's Alternative Grounds For Affirmance Fail ...............9

        1.  Yuga's claims fall outside the narrow
            anti-SLAPP exception for criminal conduct............9

        2.  Yuga's assertion that Appellants' expression is
            unprotected by the First Amendment is a red
            herring ...............................................................12

        3.  Yuga's suggestion that Appellants' expression is
            mere background is not supported by the district
            court record .........................................................14

        4.  Yuga has not met its burden to show the narrow
            exception for comparative advertising applies .........16

II. ANTI-SLAPP PRONG 2:  YUGA'S STATE LAW CLAIMS ARE
    LEGALLY INSUFFICIENT .................................................................18

    A.  This Court Should Reach Prong 2....................................18

    B.  Yuga Misstates The Legal Standard .................................19

    C.  Yuga's State Law Trademark Claims Fail Under The
        *Rogers* Free Speech Test ..............................................20

        1.  Expressive work......................................................20

2. Artistic relevance ...................................................................23

3. Not explicitly misleading...........................................................24

D. Alternatively, Yuga's State Law Trademark Claims Fail Under The Nominative Fair Use Doctrine ...........................................26

E. Yuga's Remaining State Law Claims Fail ...........................................28

1. Conversion ...................................................................28

2. Intentional interference ...........................................................29

3. Negligent interference...........................................................29

CONCLUSION ...................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*,
457 F.3d 1062 (9th Cir. 2006) ........................................................25

*Baral v. Schnitt*, 376 P.3d 604 (Cal. 2016) ................................................9

*Bonni v. St. Joseph Health System*, 491 P.3d 1058 (Cal. 2021) ................9

*Burgert v. Lokelani Berice Pauahi Bishop Trust*, 200 F.3d 661
(9th Cir. 2000) ...............................................................................4

*Collier v. Harris*, 240 Cal. App. 4th 41 (2015) ......................................12

*Cross v. Facebook*, 14 Cal. App. 5th 190 (2017) ....................................17

*Doe v. Gangland Products, Inc.*, 730 F.3d 946 (9th Cir. 2013) ..............10

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) .......................................................27

*Edge v. City of Everett*, 929 F.3d 657 (9th Cir. 2019) ..........14, 15, 16, 21

*Estate of Saunders v. C.I.R.*, 745 F.3d 953 (9th Cir. 2014) ......................8

*Feldman v. Arizona Secretary of State's Office*, 843 F.3d 366
(9th Cir. 2016) ...............................................................................14

*FilmOn.com Inc. v. DoubleVerify, Inc.*, 439 P.3d 1156 (Cal. 2019) ............1, 11, 17

*Flatley v. Mauro*, 139 P.3d 2 (Cal. 2006) .........................................10, 11

*Forrest v. Spizzirri*, 62 F.4th 1201 (9th Cir. 2023) ...................................7

*Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294
(2001).............................................................................................10

*Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018)..........21, 22, 24

*Greater Los Angeles Agency on Deafness v. CNN*, 742 F.3d 414
(9th Cir. 2014) ...............................................................................12

*Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021) .......................... 18

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) ................................... 4, 12

*J'Aire Corporation v. Gregory*, 598 P.2d 60 (Cal. 1979)....................................... 30

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)................. 5, 20

*K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962 (9th Cir. 2015) .............................. 29

*Major v. Silna*, 134 Cal. App. 4th 1485 (2005) ...................................................... 16

*Makaeff v. Trump University, LLC*, 715 F.3d 254 (9th Cir. 2013)........... 4, 5, 14, 18

*Maloney v. Scottsdale Insurance Company*, 256 F. App'x 29
    (9th Cir. 2007) ................................................................................................. 30

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) .......................... 22

*Mendoza v. ADP Screening & Selection Services, Inc.*,
    182 Cal. App. 4th 1644 (2010)...................................................................... 10

*Navellier v. Sletten*, 52 P.3d 703 (Cal. 2002) ......................................................... 1

*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP*,
    18 Cal. App. 5th 95 (2017) ............................................................................. 2

*Planned Parenthood Federation of America, Inc. v. Center
    for Medical Progress*, 890 F.3d 828 (9th Cir.), *amended*,
    897 F.3d 1224 (9th Cir. 2018) .................................................................... 6, 18

*Punchbowl, Inc. v. AJ Press, LLC*, 52 F.4th 1091 (9th Cir. 2022) ......................... 26

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)............................................. 22, 25

*Simpson Strong-Tie Company v. Gore*, 230 P.3d 1117 (Cal. 2010)....................... 16

*Stolz v. Wong Communications LP*, 25 Cal. App. 4th 1811 (1994) ........................ 30

*Sybersound Records, Inc. v. UAV Corporation*, 517 F.3d 1137
    (9th Cir. 2008) ................................................................................................. 29

*Trilogy at Glen Ivy Maintenance Association v. Shea Homes, Inc.*,
    235 Cal. App. 4th 361 (2015) ......................................................................... 8

*Verceles v. Los Angeles Unified School District*, 63 Cal. App. 5th 776 (2021)..........................................................................................14

*Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir. 2000) ................................................................................25

*Wilson v. CNN, Inc.*, 444 P.3d 706 (Cal. 2019) .......................................15

## DOCKETED CASES

*Jack Daniel's Properties, Inc. v. VIP Products LLC*, No. 22-148 (U.S.) ...................19

## STATUTES AND RULES

Cal. Code Civ. Proc. § 425.17 ..........................................................16, 17

Fed. R. App. P. 28 ................................................................................19

Fed. R. Civ. P. 12 ............................................................5, 6, 18, 19, 20

9th Cir. R. 28-1 .....................................................................................7

Yuga's opposition brief repeatedly misstates the law—both as it relates to anti-SLAPP Prong 1, and the separate inquiry at Prong 2 of whether the First Amendment protects the expressive conduct Yuga's suit targets.

As to anti-SLAPP Prong 1, Yuga does not deny that the only specific reasons the district court gave for concluding that Appellants had not met their burden were (1) Yuga "has not brought claims against [Appellants] for defamation, slander, or libel" and (2) Yuga's "claims are limited to [Appellants'] heavily commercial use of the BAYC Marks." ER14; *compare* Yuga Br. 17-18. This was error because the Prong 1 inquiry focuses "not [on] *the form* of the plaintiffs' cause of action[,] but, rather, the defendant's *activity* that gives rise to his or her asserted liability." *See Navellier v. Sletten*, 52 P.3d 703, 711 (Cal. 2002) (first emphasis added). Thus, for example, "conduct alleged to constitute breach of contract" (or, in this case, violation of trademark law) "may also come within constitutionally protected speech or petitioning." *Id.* Even Yuga's own case law makes clear that speech that "has a commercial or promotional aspect" satisfies Prong 1 where it "contributes to or furthers public conversation on an issue of public interest." *FilmOn.com Inc. v. DoubleVerify, Inc.*, 439 P.3d 1156, 1168 (Cal. 2019). Yuga has never disputed that Appellants' speech about racist and antisemitic imagery (appearing in "'one of the world's most well-known and successful'" NFT

- 1 -

collections) concerns a matter of public interest. *See* Appellants' Br. 24 n.8 (quoting Yuga's complaint).

Unable to seriously defend the district court's reasoning, Yuga largely relies on alternative grounds for affirmance. But these arguments are also error-ridden. Most notably, Yuga conflates the standard to survive anti-SLAPP Prong 1 with the standard for a viable First Amendment defense. *E.g.*, Yuga Br. 24 (arguing Prong 1 not satisfied because allegedly similar conduct "is not a protected First Amendment expression"). But "[t]he Legislature did not intend that … the defendant must first establish [his or] her actions are constitutionally protected … as a matter of law." *Optional Cap., Inc. v. Akin Gump Strauss*, 18 Cal. App. 5th 95, 112 (2017). Any other rule would render the second prong of the anti-SLAPP analysis "'superfluous in almost every case.'" *Id.* For a similar reason, California courts have rejected Yuga's argument that the anti-SLAPP statute is inapplicable when the complaint alleges the defendant acted illegally. Yuga Br. 24-25. Where, as here, the parties dispute "the legitimacy of the defendant's conduct," "a long line of cases" holds that the "'very narrow'" rule Yuga relies upon is inapplicable. *Optional Cap.*, 18 Cal. App. 5th at 115 n.7.

Here, Yuga's own allegations—whether or not taken with the additional evidence Appellants provided the trial court—establish that Appellants have met the "not … onerous" hurdle Prong 1 poses. *Optional Cap.*, 18 Cal. App. 5th at

112.  The **second page** of Yuga's complaint asserts that "Ripps claims his actions [forming the basis for this litigation] are 'satire,'" and "conceptual art," and alleges that "Ripps has targeted Yuga in a campaign of harassment based on false accusations of racism … [that] have been used to fuel sales of the fake RR/BAYC NFTs."  ER-206; *see also* ER-230 (complaint reproducing in full Mr. Ripps's explanation that the RR/BAYC NFTs are "provocation," intended "to illuminate what nfts are, and show bayc for what it really is").  While Appellants strongly disagree with Yuga's suggestion that their speech is "harassment" or relies on "false accusations," these allegations (which Yuga has incorporated by reference into every cause of action) make clear that Appellants' artistic expression and speech regarding Yuga's NFTs are not merely "context," Yuga Br. 30—they are the basis for Yuga's suit.

Yuga fares no better at Prong 2.  The First Amendment protects Appellants' use of Yuga's trademarks under the *Rogers* test because that use was expressive, artistically relevant to their critical project, and not explicitly misleading.  Yuga's contrary arguments ignore the context in which Appellants used Yuga's marks, a blinkered approach that this Court has held is improper.  And at a minimum, Appellants' use of the marks falls comfortably within the nominative fair use doctrine.  Indeed, Yuga does not seriously defend the district court's rationale and instead relies on several new arguments, none meritorious.  Finally, Appellants'

First Amendment defenses are fatal even to Yuga's non-trademark claims (conversion and interference with prospective economic advantage), at least because none survive without a valid trademark claim.

ARGUMENT[1]

## I. ANTI-SLAPP PRONG 1: YUGA'S STATE LAW CLAIMS ARISE FROM ACTS IN FURTHERANCE OF PROTECTED SPEECH

### A. Yuga Misstates The Legal Standard

Yuga makes two overarching errors regarding the legal standard, both consequences of conflating the Prong 1 and Prong 2 analyses. *First*, Yuga asserts that facts "drawn from the complaint allegations" are assumed to be "true and interpret[ed] in the light most favorable to the plaintiff." Yuga Br. 6 n.3. While Appellants would prevail even under this heightened standard, the only authority Yuga cites is a 12(b)(6) ruling in a case with no anti-SLAPP motion. *See id.* (citing *Burgert v. Lokelani Berice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000)). Courts actually addressing Prong 1 review the record *de novo*, without putting a thumb on the scale for the plaintiff. *See, e.g.*, *Makaeff v. Trump University, LLC*, 715 F.3d 254, 262-263 (9th Cir. 2013) (crediting counterclaim

---

[1] Yuga contends the denial of an anti-SLAPP motion should not be reviewable under the collateral order doctrine. *See* Yuga Br. 4. Binding circuit precedent forecloses that position. *E.g.*, *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 (9th Cir. 2010).

- 4 -

defendant's position that her conduct furthered protected speech because her "explanation is plausible").

*Second*, Yuga wrongly asserts that this Court cannot look beyond the four corners of the complaint in assessing Prong 1. Yang Br. 29-30. Again, while Appellants would prevail regardless, Yuga's approach cannot even be squared with the normal Rule 12(b)(6) standard, which permits courts to consider facts that are either incorporated by reference into the complaint (here, for example, Mr. Ripps's website and Twitter postings, Appellants' Br. 11 n.4) or are judicially noticeable (here, for example, the points raised in Appellants' request for judicial notice, *see* C.A. Dkts. 13, 24). *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

In any event, this Court *has* considered materials beyond the complaint in assessing a defendant's Prong 1 arguments. *See Makaeff*, 715 F.3d at 262 & n.5. Specifically, the *Makaeff* Court relied on the counterclaim defendant's internet postings regarding the counterclaim plaintiff's business practices in determining that her speech arose "from an act protected under the anti-SLAPP statute." *Id.* at 263-264. The *Makaeff* Court explained that the postings were mentioned both in the counterclaim plaintiff's "pleadings *and* the declarations" the parties filed, and that the anti-SLAPP statute "instructs" a "court to base its determination on the 'pleadings' and 'affidavits' of the parties." *Id.* at 262 n.5 (emphasis added). This

rule makes good sense given that the anti-SLAPP statute places the Prong 1 burden on the defendant. If the defendant were (1) limited to the metes and bounds of the complaint and (2) the complaint had to be taken at face value, a clever plaintiff could dodge the anti-SLAPP statute by simply adding a paragraph disavowing that the underlying conduct has any connection to free speech.

Yuga identifies no contrary case law. It relies solely on *Planned Parenthood Federation v. Center for Medical Progress*, 890 F.3d 828, 833-834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018). That case, however, addressed a different question: whether a defendant can rely on outside evidence at *Prong 2* of the anti-SLAPP inquiry. *See id.* at 831 (noting that "the district court assumed" defendants had met their Prong 1 burden). *Planned Parenthood* forbid the use of such evidence at Prong 2 because dismissing a claim based on evidence outside the complaint conflicts with the Federal Rules of Civil Procedure. *Id.* at 833-834. The same concern does not apply to Prong 1, since Prong 1 merely imposes an extra requirement on a party seeking dismissal. Because Rule 12(b)(6) remains available, Yuga cannot reasonably contend that an *extra* burden state law imposes on a movant invoking a special state law rule conflicts with Rule 12 simply because Rule 12 is *easier* to satisfy. In any event, this Court is "compelled to apply [*Makaeff*] unless it is clearly irreconcilable with the reasoning or theory of

intervening higher authority." *Forrest v. Spizzirri*, 62 F.4th 1201, 1205 (9th Cir. 2023) (cleaned up). Yuga has identified no such authority.[2]

### B. Yuga Fails To Resuscitate The District Court's Reasoning

As explained, Yuga's complaint alleges that Appellants infringed Yuga's trademarks—or otherwise wronged Yuga—by using those marks in Appellants' artistic campaign to publicize concerns that the company was relying on racist and antisemitic imagery, and to comment on the misleading concept of "owning" NFTs. Appellants' Br. 20-23. All Yuga's claims turn on Appellants' expressive work: their deployment of Yuga's trademarks within their appropriation/conceptual art critical of the company. *Id.* The district court erred in rejecting Appellants' arguments by relying on two formalistic rules that have no basis in the case law: the fact that Yuga filed trademark claims rather than defamation claims, and that Appellants' work was commercial (i.e., it was sold rather than given away). *Id.* 24-25.

Yuga spends just two pages defending the district court's reasoning that Yuga is insulated from the anti-SLAPP statute simply because it did not file a *defamation* claim. Yuga Br. 23-24. But as noted above, the California Supreme

---

[2] In contrast, Yuga's practice of citing to documents that were (1) never presented to the district court and (2) not the subject of a request for judicial notice is improper. *See* Yuga Br. 3 n.1, 8 n.5. And Yuga's attempt (at 15, 37 n.15) to incorporate by reference its purported "objections" to Appellants' declarations violates Circuit Rule 28-1(b).

Court has rejected this form-over-substance approach. *Supra* p. 1; *accord Trilogy at Glen Ivy Maint. Ass'n v. Shea Homes, Inc.*, 235 Cal. App. 4th 361, 368 (2015) (plaintiffs cannot avoid the anti-SLAPP statute by "characterizing an action as a 'garden variety' tort or contract claim"). In fact, as Appellants explained and Yuga does not contest, courts have applied the anti-SLAPP statute to intellectual property claims. *See* Appellants' Br. 24-25. The relevant question at Prong 1 is just whether the claims at issue arise from conduct in furtherance of protected expression—regardless of the legal theory the plaintiff advances for why that conduct was wrongful. Here, the RR/BAYC collection communicated a specific, critical message about the Bored Ape Yacht Club that was, especially in context, likely to be understood by purchasers and the public in general. *See id*. 22-23. Because each of Yuga's state law causes of actions turns on Appellants' "promotion and sale" of those NFTs, each of those claims "arises from" Appellants' protected conduct. *See* ER-235, 237–242, 244.

Yuga also buries two related arguments in footnotes—neither is meritorious, and both are waived. *See Estate of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) ("Arguments raised only in footnotes … are generally deemed waived."). *First*, Yuga contends that Appellants failed to argue that Mr. Cahen, as opposed to only Mr. Ripps, engaged in expressive conduct. Yuga Br. 16 n.6. In fact, Appellants explained that Mr. Cahen was Mr. Ripps's collaborator in his

artistic project.  Appellants' Br. 14.  In any event, Yuga's claims against Mr. Cahen are premised on the same conduct as those against Mr. Ripps.

*Second*, Yuga argues that Appellants applied the wrong legal test because the opening brief used the word "gravamen" to capture the common-sense concept that the anti-SLAPP statute focuses on the conduct challenged rather than the form of the cause of action.  Yuga Br. 23 n.10.  But the cases Yuga cites confirm that it is permissible for a court to examine the gravamen of a claim, and not its label, "to determine whether particular acts alleged within the cause of action supply the elements of a claim," and whether those acts are in furtherance of the right of free speech.  *Bonni v. St. Joseph Health Sys.*, 491 P.3d 1058, 1067 (Cal. 2021); *see also Baral v. Schnitt*, 376 P.3d 604, 615 (Cal. 2016) (similar).  The concern underlying *Bonni* and *Baral* was the separate question of how to analyze a "so-called mixed cause of action"—i.e., one targeting both protected and unprotected conduct.  *Bonni*, 491 P.3d at 1067; *Baral*, 376 P.3d at 606.  There is no such issue here.

### C.    Yuga's Alternative Grounds For Affirmance Fail

#### 1.    Yuga's claims fall outside the narrow anti-SLAPP exception for criminal conduct

Yuga contends that because its claims allege "tortious commercial conduct," they necessarily fall outside the anti-SLAPP statute.  Yuga Br. 24-25.  "The problem with" Yuga's argument "is that it confuses the threshold question of whether the SLAPP statute applies with the question whether [Yuga] has

established a probability of success on the merits." *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 305 (2001). Requiring Appellants to prove at the threshold that their use of Yuga's marks was permissible would "conflate[] the two distinct prongs of the anti-SLAPP statute." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 954 (9th Cir. 2013).

Yuga relatedly attempts to shoehorn its premature Prong 2 analysis into the exception for illegal activity. *See* Yuga Br. 24-25 (citing *Flatley v. Mauro*, 139 P.3d 2, 18 (Cal. 2006)). But that exception applies only to violations of *criminal* law, on the theory that the First Amendment does not protect "violence and other criminal acts." *Flatley*, 139 P.3d at 10; *see also id* at 12, 18 (providing the example of a defendant "burning down [plaintiff's] office as a political protest"); *Mendoza v. ADP Screening & Selection Servs., Inc.*, 182 Cal. App. 4th 1644, 1654 (2010) (*Flatley* applies only to conduct that is "criminal, and not merely violative of a statute"). Yuga's allegations are limited to violations of *civil* law. *See* ER-231–245. While Yuga's appellate brief uses the word "counterfeit" (or a variation) forty-six times, the term does not even appear once in the complaint.[3] That also distinguishes this case from the examples of obviously criminal conduct Yuga

---

[3] Yuga's assertion (at 25) that the *Flatley* rule encompasses "tortious" *or* "illegal acts" is flat wrong. *Flatley* dealt with conduct equivalent to criminal extortion and does not mention the word "tortious."

offers—the *Flatley* exception removes *criminal* conduct like "throw[ing] a rock through the window of a luxury handbag designer's window," Yuga Br. 31, from the anti-SLAPP statute's protection.

Moreover, *Flatley* applies only in "narrow circumstance[s]"—where the defendant "concedes" his conduct's illegality, "or the evidence conclusively demonstrate[s]" it. *Flatley*, 139 P.3d at 12, 15. Yuga points to no such concession or conclusive demonstration. Rather, Appellants' conduct is lawful both under the First Amendment and the doctrine of nominative fair use. *See* Appellants Br. 26-36; *infra* pp. 20-28.

To the extent Yuga is simply reiterating the district court's conclusion that "commercial" conduct does not receive protection under the anti-SLAPP statute, *see* Yuga Br. 25, this argument also fails. As Appellants explained—and Yuga does not dispute—the mere fact that a creative work is "sold commercially" does not strip away the First Amendment's protection. Appellants' Br. 25-26. The very case Yuga cites for the proposition that courts can "consider" whether conduct is commercial during the Prong 1 inquiry makes clear that speech with "'a commercial or promotional aspect'" is protectable so long as it "contributes to or furthers the public conversation on an issue of public interest." *FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1168 (Cal. 2019). Yuga has not contested that

Appellants' conduct in this case involves a matter of public interest. *See supra* pp. 1-2.

### 2. Yuga's assertion that Appellants' expression is unprotected by the First Amendment is a red herring

Yuga next argues that Appellants have not satisfied their burden under Prong 1 because the conduct at issue would not qualify for protection under the First Amendment. Yuga Br. 24, 26-28. Yuga is wrong on the facts for the reasons explained below in addressing Prong 2. *See infra* pp. 20-26. Yuga is also wrong on the law governing Prong 1, as the "[California l]egislature did *not* intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (emphasis added); *accord Greater Los Angeles Agency on Deafness v. CNN*, 742 F.3d 414, 424 (9th Cir. 2014) (similar). This conclusion follows from the language of the statute, which protects "not merely actual exercises of free speech rights, but also conduct that furthers such rights." *Hilton*, 599 F.3d at 903. Thus, for example, the anti-SLAPP statute has been applied to claims targeting "the registration of domain names" even though the registration might not "constitute speech," because "[r]egistering the domain names helped to advance and assist [defendant] in exercising his free speech rights." *Collier v. Harris*, 240 Cal. App. 4th 41, 53 (2015).

Here, at the bare minimum, Appellants' creation of the RR/BAYC NFTs was conduct in furtherance of their broader artistic project. The purpose of Appellants' NFT sales was to enable their supporters to join in expressing disapproval of the Bored Ape NFTs, and to educate the public about Appellants' criticism. *See* Appellants' Br. 29-30. And the NFTs succeeded in spreading that message. *Id.* 30-31.

Moreover, the record is clear that Appellants intended to link the RR/BAYC NFTs to their criticism of Yuga. The complaint itself quotes Mr. Ripps explaining the connection: "The work is a provocation and its working to take down [Yuga] …. I would like to illuminate what nfts are and show bayc for what it is …. LONG LIVE CONCEPTUAL ART." ER-230. Mr. Ripps made a similar statement on his website, which the complaint undisputedly incorporates by reference. *See* ER-26; *see also* Appellants' Br. 11 n.4, 28 n.10. And in the declaration accompanying Appellants' anti-SLAPP motion, Mr. Ripps explained that "the purpose of" the RR/BAYC NFTs was, *inter alia*, to "bring attention to Yuga's use of racist messages and imagery," "create social pressure demanding that Yuga take responsibility for its actions," and "educate the public about the nature of the NFTs." ER-17.

Yuga's chief response (at 27) is that Appellants' intent is "irrelevant." Even the First Amendment cases Yuga cites do not go that far. They recognize that the

"'intent to convey a particularized message'" is a key—if not dispositive—part of the inquiry into whether conduct is expressive. *See, e.g.*, *Edge v. City of Everett*, 929 F.3d 657, 668 (9th Cir. 2019) (considering both defendant's intent and likelihood message would be understood by others); *Verceles v. Los Angeles Unified Sch. Dist.*, 63 Cal. App. 5th 776, 790 n.6 (2021) (same); *see also Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 392-393 (9th Cir. 2016) (holding merely that intent alone is not dispositive).

In the context of the anti-SLAPP statute, moreover, this Court *has* considered a defendant's intent in speaking before deciding whether the defendant had satisfied its burden at Prong 1. In particular, the *Makaeff* Court stressed that the defendant "spoke out with *the goal* of stopping [the counterclaim plaintiff] from defrauding other consumers," ultimately holding that "[b]ecause at least some of [the defendant's] statements were made *with the intent* to warn consumers … we agree with the district court that [the counterclaim] arises from an act protected under the anti-SLAPP statute." 715 F.3d at 262-263 (emphases added).

### 3. Yuga's suggestion that Appellants' expression is mere background is not supported by the district court record

Yuga next argues that Appellants have improperly attempted to "'redefine the factual basis'" for Yuga's state law claims. Yuga Br. 28-32. Not so. As explained, it was *Yuga* who put Appellants' speech and artistic expression at issue by relying on it prominently in the complaint and incorporating those allegations

into each of the state law claims at issue. *See supra* pp. 2-3; *see also, e.g.*, Appellants' Br. 15-16, 22-23 (collecting citations where the complaint takes aim at Appellants' artwork and speech).

In any event, it was entirely appropriate for Appellants to provide additional evidence to support their anti-SLAPP position. Not only has this Court relied on such evidence in the past, *see supra* pp. 5-7, but Plaintiffs' own case law emphasizes that "[c]ontext is everything" when it comes to assessing whether conduct is protected by the First Amendment. *Edge*, 929 F.3d at 669; *accord* Appellants' Br. 28. The same basic rule applies in the anti-SLAPP context: "Whether … claims arise from activity protected by" the anti-SLAPP statute requires "evaluating the context and content of the asserted activity." *Wilson v. CNN, Inc.*, 444 P.3d 706, 713 (Cal. 2019).

As explained, the context here establishes that Appellants' NFTs were displayed and sold in the context of a widely publicized and disseminated expressive campaign and were accompanied by a website and disclaimer prominently clarifying their satirical function. *See* Appellants' Br. 22-24. While Yuga (at 30) denigrates this evidence as going to Appellants' "subjective motive," intent is important to the First Amendment analysis. *See supra* pp. 13-14. Furthermore, what Appellants expressly and prominently communicated to the public shows more than Appellants' intent—it reveals the likelihood that the public

understood the expressive message conveyed by their work.  *See Edge*, 929 F.3d at 668.[4]

### 4. Yuga has not met its burden to show the narrow exception for comparative advertising applies

Yuga's final Prong 1 argument is that its false advertising claims (count four) fall within the anti-SLAPP statute's narrow exception for comparative advertising.  Yuga Br. 33-34 (citing Cal. Code Civ. Proc. § 425.17(c)).  Yuga cannot meet its burden to establish that this "narrowly construed" exception applies.  *Simpson Strong-Tie Co. v. Gore*, 230 P.3d 1117, 1123 (Cal. 2010).

*First*, the exception does "not apply to … [a]ny action against any person … based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any … artistic work[.]"  Cal. Code Civ. Proc. §425.17(d)(2); *see also Major v. Silna*, 134 Cal. App. 4th 1485, 1497 (2005) (exception-to-the-exception exists because commercial speech exception is meant "[t]o curb corporate abuse," and "not to exclude individuals" subjected to "actions … that implicate important

---

[4] Yuga also contends Appellants cannot invoke the anti-SLAPP statute based on allegations that Yuga's claims are retaliatory or pretextual.  Yuga Br. 32-33. Appellants are not arguing that the claims are retaliatory; the point is Yuga's suit itself challenges protected conduct.  *Supra* p. 8.  And the California Supreme Court has held that pretextual suits (i.e., those that disguise an attack on speech using the label of a garden-variety tort claim) *do* implicate the anti-SLAPP statute.  *Supra* pp. 7-8.

forms of protected speech"). Appellants' NFT sales were themselves artistic and also promoted a larger artistic project. *See infra* pp. 20-24.

*Second*, the exception applies *only* to claims addressed at "comparative advertising." *FilmOn.com*, 439 P.3d at 1163-1164. Here, Yuga alleges not that Appellants wrongly disparaged Yuga's product to sell their own competing product, but instead that Appellants misused Yuga's trademarks such that some purchasers may have mistakenly believed Appellants' NFTs were in fact Yuga's. That is not an allegation based on "comparative advertising" under any normal understanding of that term—and tellingly, Yuga cites no decision in which a court has applied the exception to a trademark infringement claim.

*Third*, Yuga cannot satisfy the required elements for the exception. Yuga has made no effort to establish, for example, that Appellants are "primarily engaged in the business of selling or leasing goods or services." Cal. Code Civ. Proc. § 425.17(c). Rather, Appellants are primarily engaged in artistic endeavors—even though they sell their art. Appellants' Br. 6-7. In addition, Yuga has failed to link its claims to any concrete "representation[] of fact" that Defendants made about anyone's products or services, omitting yet another requirement for the exception to apply. *See Cross v. Facebook*, 14 Cal. App. 5th 190, 203 (2017) (exception applies where speaker made "specific and detailed statements intended to induce reliance").

## II.    ANTI-SLAPP PRONG 2:  YUGA'S STATE LAW CLAIMS ARE LEGALLY INSUFFICIENT

### A.    This Court Should Reach Prong 2

Appellants respectfully submit that in the interest of judicial economy, this Court should address the Prong 2 analysis now.  Appellants' Br. 26.  Yuga does not contest that this Court has the authority to do so, and Prong 2 presents a pure question of law that this Court is just as well-equipped to answer as the district court.  While the district court did not reach Prong 2, it did perform an equivalent analysis under Rule 12(b)(6), meaning that this Court already has the benefit of its reasoning.  *See* Appellants' Br. 17 & n.6.  Finally, resolving the Prong 2 issue now would best serve the purposes of the anti-SLAPP statute in ensuring prompt resolution of lawsuits "intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.'"  *Makaeff*, 715 F.3d at 261.

Yuga's contrary arguments are unavailing.  *First*, Yuga contends that addressing Prong 2 would amount to reviewing an unappealable order:  the district court's refusal to dismiss Yuga's claims under Rule 12(b)(6).  Yuga Br. 35.  But Appellants have not and cannot appeal the district court's 12(b)(6) ruling.  And there is nothing unusual about this Court reviewing Prong 2 rulings under the Rule 12(b)(6) standard.  *See, e.g.*, *Planned Parenthood*, 890 F.3d at 834; *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155-1156 (9th Cir. 2021).

- 18 -

*Second*, Yuga argues that this Court should end its analysis at Prong 1 because "this Court's holding at step one of the anti-SLAPP analysis may bear directly … on the federal proceeding at the district court."  Yuga Br. 35.  But that counsels in favor—not against—reaching Prong 2.  Resolving Appellants' First Amendment defenses as a matter of law will help clarify the issues remaining in the district court, and thus avoid the possibility of repetitive appeals.[5]

*Third*, Yuga argues that the Court should not reach Prong 2 because the Supreme Court may modify the *Rogers* test when it decides *Jack Daniel's Properties, Inc. v. VIP Products LLC*, No. 22-148 (U.S.).  Yuga Br. 36.  But by longstanding tradition, the Supreme Court will almost certainly hand down its decision by the end of next month—before any oral argument in this case will be held.  If necessary, the parties can submit supplemental briefing at that time.

### B.    Yuga Misstates The Legal Standard

Yuga once again errs in suggesting that this Court can consider only the allegations in the complaint when assessing whether the state law claims survive the 12(b)(6) analysis.  Yuga Br. 36-37.  The very case Yuga cites (at 37) for the proposition that it is "wholly improper" to ask this Court to consider judicially noticeable information and documents incorporated by reference in the complaint

---

[5] This Court should, however, reject Yuga's suggestion that it consider the district court's subsequent summary judgment ruling on the federal claims.  *Compare* C.A. Dkt. 29 (Yuga's FRAP 28(j) letter) *with* C.A. Dkt. 30 (Appellants' response).

says the opposite. *See Khoja*, 899 F.3d at 998. While the *Khoja* Court noted that "[g]enerally, district courts may not consider materials outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)," it observed in the very next breath that "[t]here are two exceptions to this rule: the incorporation-by-reference doctrine and judicial notice." *Id.* (emphasis added). Remarkably, this is the second time Yuga has misrepresented *Khoja*'s holding. *See* C.A. Dkt. 17 at 3 (Yuga's opposition to Appellants' request for judicial notice); *see also* C.A. Dkt. 24 at 1-2 (Appellants' reply, pointing out Yuga's error).

### C. Yuga's State Law Trademark Claims Fail Under The *Rogers* Free Speech Test

Appellants' use of Yuga's trademarks is protected by the First Amendment because that use was "part of an expressive work," was "artistically relevant" to that work, and was not "explicitly mislead[ing]." Appellants' Br. 26-32.

#### 1. Expressive work

*First*, Yuga repeats its inaccurate assertion that it is irrelevant whether Appellants intended the RR/BAYC NFTs to send a broader message. Yuga Br. 40. As discussed above, Yuga's own case law makes clear that intent is relevant to

determining whether behavior is protected under the First Amendment. *See supra* pp. 13-14.[6]

In any event, Appellants did more than hope that their NFT sales would communicate a message—they repeatedly and clearly communicated that message to the public, ensuring it would be widely understood. *See supra* p. 13. The conduct at issue in this suit was thus classic expressive conduct—"intent to convey a particularized message" coupled with a "great likelihood that the message [would] be understood by those who viewed it." *Edge*, 929 F.3d at 668-669.

*Second*, Yuga contends that Appellants' use of Yuga's marks "bears no resemblance" to trademark uses considered expressive in other decisions—apparently because Appellants purportedly did not include any "expressive additions or modifications or commentary." Yuga Br. 39 (citing, *inter alia*, *Rogers* and *Mattel*). In reality, Appellants' NFT sales *were* accompanied by commentary and additions making their message clear. *See supra* p. 13. Furthermore, Yuga's argument works only if the court considers Appellants' use of Yuga's marks in total isolation from the larger expressive project of which those uses were a part. But that is not what the Second Circuit did in *Rogers*, or what this Court did in

---

[6] While Yuga cites a new case for its argument that Appellants' intent is irrelevant, that decision too holds that the defendant's intent is important. *See Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 268 (9th Cir. 2018).

*Mattel*.  The court in *Rogers* did not look at the phrase "Ginger and Fred" in isolation—it considered its relationship to the movie for which it served as a title. *See Rogers v. Grimaldi*, 875 F.2d 994, 1001 (2d Cir. 1989) (explaining that "the title has an ironic meaning that is relevant to the film's content").  Similarly, *Mattel* did not consider whether the word "Barbie" in isolation communicated an expressive message—it considered its use in relation to the song as a whole.  *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 901 (9th Cir. 2002) (explaining that "[t]he lyrics confirm" that the title "conveys a message to consumers").  Yuga cites no case that has approached the question of whether a work is expressive in the strained and artificial fashion it attempts to apply here.  Rather, the question is whether, taking into account all the relevant context, the use of another's trademark is sufficiently connected to an expressive message that the public would have generally understood the message that the speaker intended to convey.  *See Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 268 (9th Cir. 2018).

*Third*, Yuga contends (at 40) that Appellants' use of its marks was at least not expressive when they were used on third-party websites.  But the use of Yuga's trademarks on third-party websites is at the very least "auxiliary" to their artistic project because it amplifies their effort to criticize Yuga's connections to neo-Nazi and alt-right culture.  Appellants' Br. 29-30.  Yuga's only answer is that Appellants' uses of Yuga's marks could not have promoted Appellants' message

because "they did not point to" Mr. Ripps's social media posts. Yuga Br. 40 n.17. But that is not the standard. To take an example from *Twentieth Century Fox*, a champagne glass emblazoned with the word "Empire" does not—standing alone— necessarily "point to" a television show either. But when embedded within a larger promotional campaign, it builds excitement and awareness for the expressive work at issue. That is just what Appellants' use of Yuga's trademarks did—build excitement, interest, and coverage for their larger expressive campaign. *See* Appellants' Br. 30.

In any event, the third-party websites Yuga points to did communicate Appellants' satirical message. *See* Appellants' Br. 13, 32. For example, the works on the OpenSea NFT marketplace were labeled as part of the RR/BAYC collection, and not the "Bored Ape Yacht Club" collection. ER-220. And on both the OpenSea and the Foundation NFT marketplaces, Appellants' NFTs were accompanied by a satirical logo accusing the BAYC logo of being modeled on the Nazi Totenkopf. ER-220–221. Yuga says nothing about why those measures were insufficient to ensure an expressive message was communicated to the public.

### 2. Artistic relevance

As explained, Appellants' use of Yuga's marks clears the low bar for artistic relevance because (as the Complaint alleges), Appellants use the asserted

trademarks to criticize Yuga's racist and antisemitic imagery and references. Appellants' Br. 30-31.

Yuga's only response is to quote *Twentieth Century Fox*'s statement that a "mark that has no meaning beyond its source-identifying function is more likely to" lack "artistic relevance." Yuga Br. 41. But Yuga fails to explain the basis for its suggestion that Appellants used the marks only for their "source-identifying function." To the contrary, Yuga's marks reflect more than its NFTs' source— they have cultural significance, ER-204–205, and, in Appellants' view, incorporate racist and antisemitic imagery they sought to critique, Appellants' Br. 8-13. In any event, *Twentieth Century Fox* stands only for the proposition that whether a mark has meaning beyond its "'source-identifying function'" is simply a "consideration" in determining artistic relevance—not a threshold requirement. *See Gordon*, 909 F.3d at 267.

### 3. Not explicitly misleading

As explained, Yuga's complaint did not meet the "high bar" of establishing that Appellants' use of Yuga's marks was explicitly misleading. Appellants' Br. 31-32.

Yuga primarily argues that the use of the marks was misleading because Yuga's and Appellants' NFTs were sold on the same NFT marketplaces and used the same imagery and numbering. Yuga Br. 42. But it is not enough for Yuga to

show that they are "ambiguous or only implicitly misleading … as to source or content." *Rogers*, 875 F.2d at 1000. Even if "some members of the public would draw the incorrect inference" about Yuga's relationship to the RR/BAYC NFTs, that does not overcome Appellants' First Amendment rights unless Yuga alleges that Appellants made an "overt claim" as to source or content. *Id.* at 1001. Yuga has identified no such claim.

Although Yuga's failure to allege an explicitly misleading statement means that it cannot satisfy its burden under the *Rogers* test as a matter of law, Yuga also takes aim (at 42-43) at whether Appellants' disclaimers of a connection with Yuga were sufficient. This ignores that the disclaimers were just one of several methods by which Appellants distinguished their use of the marks. *See* Appellants' Br. 32 (noting commentary on Ripps's website, wide publicization of satirical message, and distinguishable labeling on third-party websites). Yuga also overstates the degree of skepticism with which courts have treated disclaimers in this context. In truth, "[d]isclaimers have frequently been approved … when trademark and First Amendment interests intersect." *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 672 (5th Cir. 2000). Yuga's primary authority for its contrary position concerns a *different* legal standard—the "likelihood of confusion" test under the Lanham Act, *see Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006)—which is easier for a trademark holder to

satisfy than the "explicitly misleading" prong of *Rogers*, *see Punchbowl, Inc. v. AJ Press, LLC*, 52 F.4th 1091, 1103 (9th Cir. 2022) ("Consumer confusion is a potential result … of an explicitly misleading mark. It does not prove the answer to the legal question whether the use is *explicitly* misleading under *Rogers*.").

### D. Alternatively, Yuga's State Law Trademark Claims Fail Under The Nominative Fair Use Doctrine

Yuga's state law trademark claims also fail because Appellants' use of its asserted marks qualifies as protected nominative fair use. *See* Appellants' Br. 32-36. Yuga abandons the district court's principal rationale (i.e., the doctrine is inapplicable because Appellants used Yuga's marks to sell their own NFTs, rather than Yuga's), but its alternative grounds for affirmance are unavailing.

*First*, Yuga contends that Appellants cannot invoke nominative fair use because "they labeled their competing products with Yuga Labs' BAYC marks." Yuga Br. 45. But that assumes the conclusion Yuga is attempting to prove—that it has adequately alleged Appellants used Yuga's marks to "label" their NFTs rather than to criticize Yuga. Moreover, to the extent Yuga is arguing that Appellants' use of its marks constitutes sponsorship or endorsement, this ignores that Appellants actively disassociated themselves from Yuga. *See* Appellants' Br. 36. Yuga has no answer. Yuga also argues that because the Bored Ape Yacht Club is well known, it is identifiable without using its trademarks. *See* Yuga Br. 45 n.19. But Yuga has waived that argument by raising it in a footnote. *See supra* p. 8.

In any event, Appellants did not simply criticize Yuga in the abstract, but specifically sought to identify and comment upon the imagery contained within Yuga's trademarks themselves. That kind of criticism was impossible without using the trademarks themselves.

*Second*, Yuga contends that because Appellants "used the entirety of each mark often without modification," they are ineligible for protection under nominative fair use. Yuga Br. 45. But Yuga ignores Appellants' explanation for why such wholesale use was, in fact, reasonably necessary—because they had to invoke the name and logo to identify the subject of their critique, to explain the logo's and name's connections to Nazi imagery and concepts, and to educate the public about the nature of NFTs. Appellants' Br. 35.[7]

*Third*, Yuga contends that because Appellants used Yuga's trademarks "prominently and boldly," they necessarily suggested Yuga's sponsorship. Yuga Br. 46. But even the complaint indicates that Appellants disclaimed any sponsorship, as they used Yuga's marks to *criticize* the company. Appellants' Br. 36; *see also* ER-226 (accusing Appellants of using the marks as "part of a scheme

---

[7] Yuga also makes the Catch-22-like argument that—if Appellants did modify the marks—"non-identical uses are ineligible for a nominative fair use defense." Yuga Br. 46. The only case Yuga cites for this proposition turned on a different point— the defendant's concession that they were not using the mark to comment on it. *See E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008).

to harass" Yuga). And while Yuga speculates that a "future defendant could claim fair use by arguing that his counterfeiting expressed a similar message of contempt for the plaintiff mark holder," Yuga Br. 46, a trademark user claiming nominative fair use must do more than merely *intend* such criticism—he must make that criticism clear, either explicitly or implicitly, to the public. A real counterfeiter has little to gain from actively and widely disparaging the very product he or she is attempting to knock off.

### E. Yuga's Remaining State Law Claims Fail

#### 1. Conversion

Yuga does not contest that its conversion claim rises and falls with its trademark claims. *See* Yuga Br. 47-39. Moreover, Yuga does not dispute that—if a conversion claim is available for trademark infringement at all—it requires much more than a simple allegation that Appellants used a protected trademark. *Id.* 38. But Yuga has not alleged that Appellants attempted anything like the kind of comprehensive usurpation of a mark necessary to state a claim. Yuga points only to its allegation that Appellants claimed to have registered trademarks like "RR/BAYC." *Id*. 48. But Yuga does not assert that it has a trademark on that term—it simply alleges that it comes too close to Yuga's own trademark.

### 2.     Intentional interference

Yuga does not contest that its intentional interference claim depends on the existence of a valid trademark claim, but argues its federal claims suffice.  But while those federal claims are not before this Court, Appellants' affirmative defenses apply to those claims just as they do to the state claims.  *See* SER-129–130, 133–134.  Accordingly, if the Court agrees with Appellants that those affirmative defenses apply, such a ruling would render Yuga's federal claims equally deficient.

Yuga also attempts to distinguish *Sybersound Records, Inc. v. UAV Corporation*, 517 F.3d 1137 (9th Cir. 2008).  *See* Yuga Br. 49.  But there, as here, the plaintiff alleged the defendants' actions had—as a general matter—disrupted its relationship with its customers, without further specifying which concrete opportunities it lost.  Yuga claims Appellants damaged its specific relationships with celebrities and brands, but still fails to explain what specific opportunities it lost.  In any event, Yuga has waived the point by failing to make any argument in the district court about those particular relationships.  *See K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015).

### 3.     Negligent interference

Yuga's negligent interference claim suffers from the same issues as its intentional interference claim, with one additional flaw:  Yuga has not pled

Appellants owed it a duty of care. Appellants' Br. 40-42. Indeed, Yuga has alleged it and Appellants are "competitors" in the NFT market. ER-231–232, 239. There can be no duty of care between competitors. *See Stolz v. Wong Commc'ns LP*, 25 Cal. App. 4th 1811, 1825 (1994); Appellants' Br. 41-42.

Yuga contends there is no rule that competitors lack a duty of care, and the actual rule is the multi-factor test from *J'Aire Corporation v. Gregory*, 598 P.2d 60 (Cal. 1979). *See* Yuga Br. 51-52. But the *Stolz* rule is a corollary of that test. *See* 25 Cal. App. 4th at 1825. Yuga also contends that it may argue both that Yuga and Appellants were competitors and that Appellants owed it a duty of care. Yuga Br. 51. But while a plaintiff may plead in the alternative, Yuga did not do so—it "expressly incorporated" its "inconsistent allegations … into each cause of action." *Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31 (9th Cir. 2007); *see* ER-244. Accordingly, "the allegation" that Yuga and Appellants were competitors "constitutes a judicial admission" that bars Yuga's claim for negligent interference. *Maloney*, 256 F. App'x at 31.[8]

## CONCLUSION

This Court should reverse the district court's decision.

---

[8] Yuga is wrong that Appellants failed to address its negligent interference claim in their district court reply. *See* SER-17–18 (Appellants' reply brief).

Respectfully submitted,

/s/ Louis W. Tompros

THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
(650) 858-6062

LOUIS W. TOMPROS
ANDREW P. MELENDEZ
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6886

HENRY M. NIKOGOSYAN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
(213) 443-5316

ANDREW K. WAKS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6297

May 11, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-56199

I am the attorney or self-represented party.

**This brief contains** | 6,987 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Louis W. Tompros | **Date** | May 11, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/  Louis W. Tompros
LOUIS W. TOMPROS