

555 California Street
12th Floor
San Francisco, CA 94104

415.875.2300
Fenwick.com

Todd R. Gregorian
tgregorian@fenwick.com | 415.875.2402

May 12, 2023

Molly C. Dwyer, Clerk of the Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
P.O. Box. 193939
San Francisco, CA  94119-3939

Re:   *Yuga Labs, Inc. v. Ripps, et al.*, No. 22-56199

     Yuga Labs provides notice under Federal Rule of Appellate Procedure 28(j) of this Court's decision in *Gunn v. Drage*, — F. 4th ——, No. 20-16046, No. 21-15005, No. 21-15442, No. 21-15549 (2023).   The panel opinion is attached as **Exhibit A**.

     Yuga Labs argued in its answering brief that Ripps and Cahen had not established that they are permitted to use extrinsic evidence to "prove" that a legal claim in the complaint arises from activity protected by the California anti-SLAPP statute.  Resp. at 28-30.   Ripps and Cahen have continued to argue the opposite. Reply at 5, 6, 15; *see also* OB6 n.2.

     The decision in *Gunn* issued after Yuga Labs filed its answering brief, and it supports Yuga Labs' position.  This Court ruled that "a defendant's reliance on evidence at the first step may [] implicate *Erie* issues.  Where a defendant has brought a challenge to a complaint's legal sufficiency under Rule 12(b)(6), we have insisted that a plaintiff's 'reliance on evidence outside of its complaint in defending against [an anti-SLAPP motion] was improper and inconsistent with the Federal Rules.'" Ex. A at 18–19.  Accordingly, the Court concluded, "a district court cannot consider a defendant's evidence of factual sufficiency at the first step of an anti-SLAPP motion without essentially converting the motion into one for summary judgment because in such cases, the first step of anti-SLAPP, a prima facie showing

May 12, 2023
Page 2

of protected activity, significantly overlaps with challenges to 'the factual sufficiency of a claim.'" *Id.* at 19.

Respectfully submitted,

FENWICK & WEST LLP

*s/ Todd R. Gregorian*

Todd R. Gregorian

cc:    All Counsel of Record

# EXHIBIT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEZLIE J. GUNN, | Nos. 20-16046 |
| | 21-15005 |
| *Plaintiff-Appellant,* | 21-15442 |
| | 21-15549 |
| v. | |
| | D.C. No. |
| CHRISTINE E. DRAGE, | 2:19-cv-02102- |
| | JCM-EJY |
| *Defendant-Appellee.* | |
| | OPINION |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted March 15, 2022
Las Vegas, Nevada

Filed April 21, 2023

Before: Johnnie B. Rawlinson and Mark J. Bennett, Circuit
Judges, and Brian M. Cogan,[*] District Judge.

Opinion by Judge Cogan

---

[*] The Honorable Brian M. Cogan, United States District Judge for the
Eastern District of New York, sitting by designation.

# SUMMARY**

## California Anti-SLAPP Statute

The panel vacated the district court's order denying Lezlie Gunn's motion for an extension of time to file her notice of appeal, and affirmed the district court's order granting Christine Drage's motion to strike Gunn's complaint in its entirety pursuant to California's Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute and dismissing the action.

Gunn alleged that Drage had interfered with a release and settlement agreement ("RSA") entered into by Gunn and non-party Dr. Hans Peter Wild, establishing the terms of the breakup of their personal and professional relationship. Subsequently, Wild and Drage began a personal relationship. In this action, Gunn claimed that Wild breached the RSA, and that Drage persuaded Wild to breach the RSA. Gunn sought recovery of $150 million in damages, as well as punitive damages. On April 10, 2020, the district court granted Drage's anti-SLAPP motion.

The panel held that the notice of appeal was timely. Fed. R. Civ. P. 58(a) required a separate document to implement the district court's April 10 Order on Gunn's anti-SLAPP motion. But judgment was not "set forth on a separate document" until May 1, 2020. Therefore, Gunn's notice of appeal was timely when filed on May 28, 2020.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Turning to the merits of Gunn's appeal, the panel applied the California burden-shifting framework to answer whether the claim called for the anti-SLAPP statute's protections, and, if so, whether the claim had sufficient merit. At the first step, the moving defendant must make a *prima facie* showing that the plaintiff's suit arose from an act in furtherance of the defendant's right to free speech. The panel rejected Gunn's argument that the district court erred by considering evidence in the first prong of its anti-SLAPP analysis. The panel held that where an anti-SLAPP defendant lodges a factual challenge, district courts may properly consider extrinsic evidence in evaluating whether a defendant has met her *prima facie* burden under step one. Here, the district court correctly evaluated Drage's challenge as a factual one based on her own statements in her anti-SLAPP motion and her reliance on extrinsic evidence at both steps. The court was therefore entitled to consider evidence at both steps.

Next, the panel considered Gunn's remaining argument that the district court erred in finding that her pre-October 2016 claims arose under the anti-SLAPP statute. In laying out her *prima facie* case, Drage identified both of Gunn's challenged claims as resting upon the allegation that she induced Wild to breach the RSA. She contended that these acts consisted of providing legal advice to Wild in her capacity as his attorney. Next, Drage had to show that the acts were protected under a statutorily defined category of protected activity. The anti-SLAPP statute protects lawyers sued for litigation-related speech and activity. The panel held that Drage's actions, including counseling Wild in anticipation of litigation, easily qualified. A court need not resolve whether Wild actually retained Drage as his lawyer, or if she merely advised him as a prospective client. Both

were protected activities when undertaken in connection with litigation seriously contemplated in good faith at the time those communications took place, as was the case here. Finally, there was no dispute that Gunn's claims arose from Drage's protected activities since Drage's acts satisfying those elements formed the basis for liability. Because Drage met her *prima facie* burden to show that all relief sought was based on allegations arising from protected activity, the district court properly struck Gunn's complaint in its entirety.

The panel filed a contemporaneous memorandum disposition in Gunn's related appeals regarding the attorneys' fees.

**COUNSEL**

Thomas A. Vogele (argued) and Timothy M. Kowal, Thomas Vogele & Associates APC, Costa Mesa, California, for Plaintiff-Appellant.

Todd M. Lander (argued), Rosen Saba LLP, El Segundo, California; Robert M. Heller and John P. Godsil, Freeman Freeman & Smiley LLP, Los Angeles, California; Jason M. Wiley and Ryan S. Petersen, Wiley Petersen Law Offices, Las Vegas, Nevada; Mitchell J. Langberg, Brownstein Hyatt Farber & Schreck LLP, Los Angeles, California; for Defendant-Appellee.

# OPINION

COGAN, District Judge:

Plaintiff-Appellant Lezlie J. Gunn sued Defendant-Appellee Christine E. Drage in California court alleging that Drage had interfered with a release and settlement agreement ("RSA") entered into by Gunn and non-party Dr. Hans Peter Wild. Drage subsequently moved to strike Gunn's complaint in its entirety pursuant to California's Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute. *See* Cal. Civ. Proc. Code § 425.16(b). The district court granted Drage's motion and dismissed Gunn's lawsuit with prejudice. It also denied Gunn's related motion for an extension of time to file her notice of appeal on its decision.

The instant appeal concerns both district court decisions.[1] After first concluding that Gunn's notice of appeal was timely, we find that the district court did not err in its analysis of the first step of Drage's anti-SLAPP motion, and properly dismissed the action.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

The facts of this case would not seem out of place as the plot of a daytime soap opera. They arise out of a love triangle between Gunn, her ex (Wild, a wealthy Swiss businessman), and Drage (Wild's former attorney and new girlfriend). Before 2016, Gunn and Wild had been involved

---

[1] Gunn relatedly appealed other district court decisions regarding the attorneys' fees in this same case. Those arguments and our conclusions related thereto are resolved in a contemporaneously filed memorandum disposition.

in a close personal and professional relationship for approximately thirty years.  Sometime in 2015 or 2016 – the exact dates are disputed – they decided to break up.  To establish the terms of their breakup, on December 21, 2015, Gunn and Wild entered into the RSA.  It provided, among other things: that (a) Wild would make a tax-free gift of approximately $60 million to Gunn by December 31, 2015; (b) Gunn would transfer three properties (the "Dossenheim Properties") to an entity designated by Wild in exchange for payment of $2.78 million; (c) for a period of 10 years, Wild would transfer an additional $3.5 million annually to Gunn, with the first payment to be sent on January 15, 2016; (d) by March 15, 2016, Wild would transfer $20 million for an educational trust fund; and (e) Wild would pay certain of Gunn's expenses.

The RSA did not provide the parties with a clean break.  Soon after its execution, both Wild and Gunn exchanged accusations of breach.  According to Gunn, although she acknowledged receiving the $60 million gift and payment for the Dossenheim Properties soon after executing the RSA, Wild breached others of its provisions almost immediately.  In turn, Wild contended that it was Gunn who breached the RSA by refusing to sign a ratification statement to complete the exchange of the Dossenheim Properties, despite having already received payment.

Mutual threats of litigation followed.  Gunn was the first to expressly articulate these threats.  As memorialized in a December 2017 declaration she submitted in connection with a separate action against Wild, she stated that "[i]n August 2016, I told [Wild] that I was planning on suing him

for his failure to pay me as obligated under the RSA."[2]  She gave him until December 2016 to comply, after which she said she would initiate litigation.

Wild beat her to the punch, initiating litigation in Europe on October 6, 2016.[3]  In that action, Wild alleged, among other things, that the RSA was not binding due to misrepresentations allegedly made by Gunn.  He sought the return of all funds paid to Gunn under it.  That same day, Wild's attorneys also wrote to Gunn, demanding that she either ratify the Dossenheim transaction or confirm she would not.  They explained to her that if she refused to ratify, the RSA would "finally and irreversibly become null and void."  After she refused, legal disputes between Gunn and Wild concerning the RSA proliferated, eventually stretching across multiple jurisdictions, where some remain ongoing to this day.  *See, e.g.*, *Gunn v. Wild*, No. 20-cv-150, 2021 WL 5853586, at *1 (E.D. Ky. Dec. 9, 2021); *Gunn v. Wild*, No. 20-cv-00820, 2020 WL 5167755 (C.D. Cal. June 11, 2020).

## II.

Against this backdrop, on October 15, 2016, Wild reached out to Drage, an attorney.  Drage, a founding

---

[2] In December 2016, Casun Invest, A.G., an entity in which Wild was the sole shareholder, sued Gunn, raising various causes of action related to its sale of a parcel of real property to an entity Gunn owned.  *See Casun Invest, A.G. v. Ponder*, No. 16-cv-02925, 2018 WL 11290228, at *1 (D. Nev. Sept. 13, 2018).  In the same action, Gunn later filed a third-party complaint for express indemnity against Wild premised on an Indemnification Agreement she signed in connection with the RSA.  *See* 2022 WL 2818476, at *1 (D. Nev. July 15, 2022).

[3] Wild initiated formal proceedings in Switzerland against Gunn by submitting a Request for Conciliation to the Conciliation Office of the Canton of Zug.

member of Weil & Drage ("W&D"), a law firm specializing in complex business litigation, had become acquainted with Wild when, in March 2011, she and W&D became litigation counsel for Wild Affiliated Holdings, Inc. ("Wild Holdings"). During that period, in connection with her representation of Wild Holdings, Drage also became acquainted with Gunn.

Drage and W&D represented Wild Holdings until 2014, after which she contends that she did not have any contact with Wild for some time. In a 2017 declaration she filed in the *Casun* litigation, Drage stated that Wild got back in contact to "advise[] [her] that he had permanently separated from" Gunn in "approximately August of 2016." [4] In this litigation, she has since clarified that the exact date Wild informed her that "he was no longer in a relationship with Gunn" was actually on or about October 15, 2016.

In that October 15, 2016 email, Wild informed Drage that because he was no longer in a relationship with Gunn, he would not pay any legal fees or costs she might incur. Drage advised Wild that she had not been working for Gunn and told him to reach out to her (Drage) if he "ever need[ed] anything."

Both Wild and Drage assert that he did need something – namely legal services concerning Gunn and the RSA. At that time, Wild was contemplating numerous lawsuits concerning Gunn. Beginning in November 2016, he wound

---

[4] Although Drage and W&D were not parties to this lawsuit, Gunn had issued subpoenas to both pursuant to Fed. R. Civ. P. 45. The district court quashed these subpoenas, determining that many documents sought were likely protected by attorney-client privilege and the work product doctrine, and awarded W&D sanctions against Gunn.

up initiating or responding to many, including in jurisdictions where Drage was not authorized to practice law.

Emails from that period reflect that Drage and Wild engaged in legal discussions as early as October 28, 2016.[5] Thereafter, Drage became involved in an action that Gunn filed against Wild on January 7, 2017 in the District of Nevada, in which she alleged, among other things, that Wild had breached the RSA.[6] In anticipation of possibly representing Wild in connection with the lawsuit, Drage's assistant set up a secure file for the matter, prepared a new case memorandum which referenced the docket number, and e-mailed the firm's accounting department to inform it of the associated billing code. W&D invoices from February and March 2017 reflect that Drage billed Wild for that matter.

Sometime during the month that Gunn filed this action, Wild and Drage also began a personal relationship. Gunn learned of the personal relationship between Drage and Wild on October 7, 2017.

## III.

In September 2019, Gunn commenced the underlying action against Drage in Orange County Superior Court. She alleged intentional interference with a contract and civil conspiracy. In her complaint, Gunn alleged that despite "Wild partially perform[ing] his obligations under the

---

[5] The subject line of an email sent to Wild on this date, copying Drage, reflects that the recipients were discussing the potential filing of the *Casun* lawsuit.

[6] Ultimately, the district court dismissed Gunn's various contract and tort claims against Wild for lack of personal jurisdiction, and we affirmed. *See Gunn v. Wild*, 771 F. App'x 392 (9th Cir. 2019).

RSA," he had "breached many of the financial and non-financial terms of the RSA since" beginning his relationship with Drage.  Specifically, Gunn claimed that "Wild breached the RSA by, among other things, failing and refusing to make the annual tax-free gifts to Gunn [which were slated to begin as of January 15, 2016], failing and refusing to make the payment to establish the educational trust fund [on March 15, 2016], and failing and refusing to pay [her] expenses."

Gunn went on to contend that "by virtue of her relationship with Wild" "Drage became aware of the terms of the RSA . . . and caused and persuaded Wild to breach" it "in whole or in part."  Gunn included the RSA and the related indemnification agreement as exhibits to her complaint.  She sought recovery of $150 million in damages, as well as punitive damages.

Notably, Gunn's complaint did not disclose any facts surrounding Drage's representation of Wild, although she knew that Drage was representing Wild and had asserted attorney-client privilege claims in other lawsuits as recently as two months prior.

Shortly thereafter, Drage timely removed the action to the Central District of California, and in December 2019, it was transferred by stipulation to the District of Nevada.

On December 27, 2019, Drage filed a special motion to strike or dismiss Gunn's complaint in its entirety under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  She explicitly framed her challenge as a factual one and therefore submitted a significant amount of extrinsic evidence, including declarations, emails, and filings from other court cases.  While the motion was

pending, the parties engaged in discovery, serving initial disclosures and requests for production of documents.

On April 10, 2020, the district court granted Drage's anti-SLAPP motion, dismissing with prejudice the action in its entirety (the "April 10 Order"). As the motion challenged the factual sufficiency of Gunn's complaint, the district court considered it to be one for summary judgment under Fed. R. Civ. P. Rule 56 and it applied California substantive law.

First, the district court concluded that Drage had adequately established that Gunn's claims arose out of protected activity. Although the district court found that there was a genuine dispute of material fact as to whether a formal attorney-client relationship existed between Drage and Wild in 2016, it noted that "Drage need not establish an attorney-client relationship to prove that her conduct is protected" – that she provided specific advice to a prospective client on potential litigation was enough. Further, the district court found that because "Drage indicate[d] that she had no knowledge of the RSA before Wild reached out to her in 2016 . . . [a]ny communications between Wild and Drage regarding the RSA were thus necessarily driven by Wild's anticipation of litigation." "Accordingly, Drage's alleged advice for Wild to breach the RSA occurred as a part of Drage's serious consideration of potential litigation" and constituted protected conduct.

The district court entered judgment on May 1, 2020. Although Gunn filed her notice of appeal on May 28 because she believed that there might be an issue with the timeliness of her appeal, she also filed a motion under Fed. R. App. P. Rule 4(a)(5) for an extension of time to file her notice of appeal.

The district court denied Gunn's motion to extend her time to appeal.[7]  It found that for Gunn to have timely appealed its April 10 dismissal, she must have filed her notice of appeal before May 11 or filed a "proper tolling motion no later than May 8, 2020." The court concluded that she had done neither.[8]  Gunn timely appealed.

Subsequently, we directed the parties to address at oral argument if the appeal would be timely if the time for filing had been calculated from the date of entry of judgment as opposed to the date of entry of the April 10 Order.

## ANALYSIS

## I.

At the outset, we must first determine whether we have jurisdiction to consider Gunn's appeal.  The district court's order granting Drage's anti-SLAPP motion is a final decision, which we have jurisdiction to review.  28 U.S.C. § 1291.  However, the parties dispute the timeliness of the appeal, and timely notice of appeal is a prerequisite to our having jurisdiction over the appeal.  *See United States v. Sadler*, 480 F.3d 932, 937 (9th Cir. 2007).

Generally, a litigant must file a notice of appeal "with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A).  Here, the

---

[7] In the same decision, it also denied her motion for reconsideration.

[8] On May 8, 2020, Gunn filed a motion for a new trial, which the district court construed as a motion for reconsideration under Fed. R. Civ. P. 59(e).  However, due to a technical pleading deficiency, she withdrew and subsequently refiled the motion on May 26, 2020.  The district court declined to review the motion on the merits because it found the motion to be time-barred.

parties, as well as the district court, presumed that this thirty-day period began to run when the district court granted Drage's anti-SLAPP motion on April 10. The district court determined that Gunn's notice of appeal, filed on May 28, would be untimely unless she had either properly filed a tolling motion within 28 days of the April 10 Order, *see* Fed. R. App. P. 4(a)(4)(A)(iv), or successfully moved for an extension of time, s*ee* Fed. R. App. P. 4(a)(5)(A). The district court found that she did neither, concluding that Gunn's tolling motion was untimely and denying her motion for an extension of time. On the issue of timeliness, Gunn disputes the district court's decision only as it relates to when an appeal should have been filed.[9]

Under the Federal Rules of Appellate Procedure, the timeliness of an appeal depends upon whether a party properly filed a notice of appeal after entry of judgment. Where Federal Rule of Civil Procedure 58 requires entry of a separate document as the judgment, judgment is not considered entered until "the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a)" *and* such a separate document is filed. Fed. R. App. P. 4(a)(7)(A)(ii).

Rule 58(a) required a separate document to implement the district court's April 10 Order on Gunn's anti-SLAPP motion. Fed. R. Civ. P. 58(a). But judgment was not "set forth on a separate document" until May 1, 2020. Calculating Gunn's window to appeal based on this later date, her notice of appeal was timely when filed on May 28,

---

[9] Gunn has therefore waived any other arguments by failing to brief them. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003).

2020.  *See Kingsbury v. United States*, 900 F.3d 1147, 1149 (9th Cir. 2018) ("Under Rule 58, an order that is dispositive of the proceedings is usually insufficient to enter judgment. Instead, judgment must be expressly entered in a separate document, except when the district court decides certain listed motions. . . . If a separate document is required, and one is not filed, judgment is entered automatically 150 days after the court enters an order disposing of a case.") (cleaned up); *see also Hajro v. U.S. Citizenship and Immigr. Servs.*, 811 F.3d 1086, 1097 (9th Cir. 2016), *as amended* (reasoning that if summary judgment order "disposed of all claims," it "*would be immediately appealable if immediately followed by the entry of judgment*") (internal quotation marks omitted) (emphasis added).

This argument has not been waived, despite Gunn's failure to raise it below or on appeal.  Although it is possible to waive the requirement for filing a separate judgment, such waiver occurs only where "one has accidentally not been entered."  *Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 386 (1978).  However, in instances where a separate judgment has been entered, as here, "[t]echnical application of the separate-judgment requirement is necessary . . . to avoid the uncertainties that once plagued the determination of when an appeal must be brought."  *Id*.

Since we find the appeal timely, we move to the merits.

## II.

### A.

Having determined that Gunn's notice of appeal was timely and that we otherwise have jurisdiction under 28 U.S.C. § 1291, we may consider the merits of Gunn's appeal of the April 10 Order.  We review such an order *de novo*, *see*

*Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011), and we may affirm "on any ground supported by the record," *Jones v. Allison*, 9 F.4th 1136, 1139 (9th Cir. 2021).

First, courts ask whether "the claim call[s] for the anti-SLAPP statute's protections" and, if so, whether the claim has "sufficient merit." *Serova v. Sony Music Ent.*, 515 P.3d 1, 8 (Cal. 2022).

California courts apply a burden-shifting framework to answer these questions. At the first step, "the moving defendant must make a *prima facie* showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). In making a *prima facie* showing, the "moving defendant bears the burden of identifying all allegations of protected activity[] and the [plaintiffs'] claims for relief supported by them." *Baral v. Schnitt*, 376 P.3d 604, 617 (Cal. 2016). Where the defendant satisfies her burden at the first step, "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Id.*

Gunn appeals only the district court's analysis at the first step.[10] She argues the district court erred by considering evidence in the first prong of its anti-SLAPP analysis. We disagree. Although our prior decisions are not entirely clear, we now hold that where an anti-SLAPP defendant lodges a factual challenge, district courts may properly consider

---

[10] She has therefore waived any challenge as to the second. *See Indep. Towers of Washington*, 350 F.3d at 929.

extrinsic evidence in evaluating whether a defendant has met her *prima facie* burden under step one.

## B

Under California's anti-SLAPP statute, defendants are entitled to rely on their own proffered evidence to show that they have met the *prima facie* burden of demonstrating protected activity. Indeed, California's anti-SLAPP statute *requires* courts to consider evidence outside the pleadings at both steps of the analysis. *See* Cal. Civ. Proc. Code § 425.16(b)(2) ("[C]ourt[s] *shall* consider the pleadings[] and supporting and opposing affidavits stating the facts upon which the liability or defense is based."); *see also Wang v. Wal-Mart Real Est. Bus. Tr.*, 63 Cal. Rptr. 3d 575, 585 (2007) (quoting, applying same). A defendant need not necessarily introduce evidence at the first step, but if extrinsic evidence is necessary to meet the *prima facie* burden as to the applicability of the anti-SLAPP statute, then she must.

California state courts regularly consider extrinsic evidence in determining whether a defendant has met his burden at the protected activity (first) step of the anti-SLAPP analysis. *See Rand Res., LLC v. City of Carson*, 433 P.3d 899, 910 (Cal. 2019) (defendant's failure "to introduce such evidence is a material deficiency since defendants bear the burden at the first stage of the anti-SLAPP analysis"); *see also Geiser v. Kuhns*, 515 P.3d 623, 631 (Cal. 2022) (considering evidence in determining whether defendants "have met their burden of demonstrating that the activity from which the lawsuit arises falls within the scope of the anti-SLAPP statute's protection"); *Navellier v. Sletten*, 52 P.3d 703, 709 (Cal. 2002) (examining declarations and other documents at step one to determine whether each of the acts

"about which plaintiffs complain falls squarely within the plain language of the anti-SLAPP statute").

California state courts also routinely look outside the pleadings at the first step. The Supreme Court of California has held that a court need not accept or be limited to the allegations in a plaintiff's complaint. *See Wilson v. Cable News Network, Inc.*, 444 P.3d 706, 715 (Cal. 2019). This is because "[s]uch conclusive deference would be difficult to reconcile with the statutory admonition that courts must look beyond the pleadings to consider any party evidentiary submissions as well." *Id.*; *see also Bonni v. St. Joseph Health Sys.*, 491 P.3d 1058, 1071 n.5 (Cal. 2021) (noting that "Even if [the plaintiff's] complaint omits specific detail . . . [t]he statute instructs us to take account of those additional allegations [from plaintiff's opposition to the anti-SLAPP motion] in our analysis"); *Stewart v. Rolling Stone LLC*, 105 Cal. Rptr. 3d 98, 110 (2010) ("[W]e do not evaluate the first prong of the anti-SLAPP test solely through the lens of a plaintiff's cause of action.").

However, even though consideration of a defendant's extrinsic evidence is required under California law, that does not mean this procedural requirement applies in federal court. Although we have repeatedly affirmed the applicability of California's anti-SLAPP statute in diversity cases, *see e.g.*, *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022), we have also recognized that some provisions of California's anti-SLAPP law cannot apply in federal practice. *See, e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("Because the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery-allowing aspects of Rule 56, these aspects of subsections [425.16](f) and (g) cannot apply in federal court.") (internal quotation omitted). Throughout the years,

we have therefore sought to "weed[] out specific provisions of the law that ran afoul of the *Erie* doctrine and fine-tun[e] our application of those provisions that remained." *CoreCivic, Inc*, 46 F.4th at 1140 (declining to reconsider whether the special motion to strike provision of California's anti-SLAPP statute is inapplicable in federal court because it conflicts with Federal Rules of Civil Procedure 8, 12, and 56).

Recently, we clarified that to "eliminate[] conflicts between California's anti-SLAPP law's procedural provisions and the Federal Rules of Civil Procedure," courts must "review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *as amended*, 897 F.3d 1224 (9th Cir. 2018). If a defendant moves to strike "on purely legal arguments," courts must analyze the motion under Rules 8 and 12, but where a defendant asserts "a factual challenge," courts must treat the motion to strike as "a motion for summary judgment," triggering discovery. *Id*. (citation omitted); *see also CoreCivic, Inc*, 46 F.4th at 1143.

We now hold that these rules for anti-SLAPP motions to strike apply in federal court regardless of whether a plaintiff challenges the first or second step of the anti-SLAPP analysis. And courts are entitled to rely on extrinsic evidence whether the challenge is as to the first step, the second step, or both steps.

To be sure, a defendant's reliance on evidence at the first step may still implicate *Erie* issues. Where a defendant has brought a challenge to a complaint's legal sufficiency under Rule 12(b)(6), we have insisted that a plaintiff's "reliance on evidence outside of its complaint in defending against [an

anti-SLAPP motion] was improper and inconsistent with the Federal Rules." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021). This is because "[w]hen ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

However, a district court cannot consider a defendant's evidence of factual sufficiency at the first step of an anti-SLAPP motion without essentially converting the motion into one for summary judgment because in such cases, the first step of anti-SLAPP, a prima facie showing of protected activity, significantly overlaps with challenges to "the factual sufficiency of a claim." 890 F.3d at 834. For example, as here, in evaluating whether a defendant's speech is protected under the anti-SLAPP statute, district courts may need to consider evidence relevant to the litigation privilege. *See Neville v. Chudacoff*, 73 Cal. Rptr. 3d 383, 388–89 (2008) (noting that as "the [anti-SLAPP and litigation privilege] statutes serve similar policy interests", courts utilize litigation privilege in construing scope of protected conduct at first prong). This very same evidence may also be implicated at the second step when a district court determines whether the litigation privilege precludes a plaintiff from succeeding on the merits.

Here, the district court correctly evaluated Drage's challenge as a factual one based on her own statements in her anti-SLAPP motion and her reliance on extrinsic evidence at both steps. *See Herring Networks, Inc.*, 8 F.4th at 1156 ("The defendant determines which motions she files, not the plaintiff."). The court was therefore entitled to consider evidence at both prongs.

## C.

Having determined that the district court could properly consider evidence at both steps, we turn to Gunn's remaining argument, which is only that the district court erred in finding that her pre-October 2016 claims arose under the anti-SLAPP statute.  Because Gunn does not contest on appeal that the district court erred at the second step of its analysis, nor does she argue that Drage's post-October 2016 conduct falls under the ambit of the anti-SLAPP statute, we need only consider whether Drage's earlier activity is entitled to anti-SLAPP protection.  We find that it is.

"The first prong of the anti-SLAPP analysis involves two related inquiries: (1) whether the Complaint alleges activity protected by section 425.16 and (2) whether the cause or causes of action alleged arise from those activities." *Contreras v. Dowling*, 208 Cal. Rptr. 3d 707, 717 (2016). Importantly, "[a]t this stage, the question is only whether a defendant has made out a *prima facie* case that activity underlying a plaintiff's claims is statutorily protected." *Wilson*, 444 P.3d at 715.

In laying out her *prima facie* case, Drage was first required to "identify what acts each challenged claim rests on." *Bonni*, 491 P.3d at 1065–66.  Drage identified both of Gunn's challenged claims as resting upon the allegation that she induced Wild to breach the RSA.  These acts, she contends, consisted of providing legal advice to Wild in her capacity as his attorney.

Next, she had to "show how those acts are protected under a statutorily defined category of protected activity." *Id*. at 1066.  The categories of activity protected under the anti-SLAPP statute include "any written or oral statement or writing made before a legislative, executive, or judicial

proceeding" or made "in connection with an issue under consideration or review" in such proceedings.  Cal. Civ. Proc. Code § 425.16(e)(1)-(2).  Accordingly, "[n]umerous cases have held that the SLAPP statute protects lawyers sued for litigation-related speech and activity."  *Thayer v. Kabateck Brown Kellner LLP*, 143 Cal. Rptr. 3d 17, 27 (2012) (collecting cases).  An attorney-client relationship is not necessarily required: "a cause of action arising from a lawyer's conduct, when the conduct includes advice to a prospective client on pending litigation," is also protectable. *Taheri L. Grp. v. Evans*, 72 Cal. Rptr. 3d 847, 853 (2008).

Additionally, "[s]tatements made in preparation for litigation or in anticipation of bringing an action fall within these categories."  *Pech v. Doniger*, 290 Cal. Rptr. 3d 471, 485 (2022) (citations omitted).  This includes "[c]ounseling others in anticipation of litigation or encouraging others to sue."  *Id.* at 486 (attorneys' advice to clients about proposed litigation and their obligations under fee agreement which led to client breaching agreement was protected prelitigation speech activity).  For pre-litigation statements to be protected, courts have imposed the additional requirement that "the contemplated litigation [be] seriously proposed in good faith for purposes of resolving the dispute."  *Ruiz v. Harbor View Cmty. Assn.*, 37 Cal. Rptr. 3d 133, 146 (2005).[11]

---

[11] There is some disagreement about the applicability of this requirement at the first step of the anti-SLAPP analysis.  In *Pech*, the court of appeal cast doubt on whether this additional requirement should apply.  *See* 290 Cal. Rptr. 3d at 487.  However, the court ultimately declined "to decide whether the additional limitations of the litigation privilege apply in the anti-SLAPP context," since the conduct at issue was considered protected under either standard.  *Id.*

Under this broad standard, Drage's actions, including counseling Wild "in anticipation of litigation," easily qualify. *Pech*, 290 Cal. Rptr. 3d at 485. For the purposes of this analysis, a court need not resolve whether Wild actually retained Drage as his lawyer, or if she merely advised him as a prospective client. Both are protected activities when undertaken in connection with litigation seriously contemplated in good faith at the time these communications took place, as was the case here. When Wild purportedly reached out to Drage in October 2016, litigation regarding the RSA was already ongoing in Switzerland, with more to follow in jurisdictions where Drage was licensed.**12**

Finally, there is no dispute that Gunn's claims arose from Drage's protected activities since Drage's acts "satisfying those elements [] form the basis for liability." *Pech*, 290 Cal. Rptr. 3d at 481. Gunn's intentional interference claims require a showing that Drage acted intentionally "to induce a breach or disruption of the contractual relationship." *Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 530 (Cal. 1998). Drage's legal communications with Wild satisfy this element, as they were not "incidental background." *Bonni*, 491 P.3d at 1067.

Although Gunn concedes that Drage satisfied her step one burden of showing protected activity as to some of the allegations, she argues that other allegations were improperly struck. Her argument relies on the Supreme Court of California's recent clarification regarding situations where a complaint includes a count with a mixed cause of

---

12 Even if Drage's original declaration was correct and the communications started in August 2016, litigation was still clearly and sufficiently imminent.

action, "supported by allegations of unprotected activity as well as protected activity." *Baral*, 376 P.3d at 607. In *Baral*, the court held that because an anti-SLAPP motion "does not reach claims based on unprotected activity," any "unprotected activity [must be] disregarded at this stage." *Id*. at 617. Gunn insists that her complaint includes such mixed causes of action, with allegations that implicate unprotected activity. In other words, because Drage's protected activity began in October 2016, Gunn argues Drage's conduct between January and October 2016 is not covered by anti-SLAPP.

However, Gunn is limited by her complaint. *See Bel Air Internet, LLC v. Morales*, 230 Cal. Rptr. 3d 71, 81 (2018) ("[C]ourts have rejected attempts by plaintiffs opposing anti-SLAPP motions to disavow their own allegations in favor of evidence that is inconsistent with their complaints."). Her complaint provides only that "Drage became aware of the terms of the RSA by virtue of her relationship with Wild and caused and persuaded Wild to breach the RSA." Therefore, on its face, Gunn can only seek relief for activity that took place *after* Drage became aware of the RSA by virtue of her relationship with Wild. Drage and Wild's first contact after the RSA's execution was on October 15, 2016, the date the protected activity began. Because Drage met her *prima facie* burden to show that all relief sought was based on allegations arising from protected activity, the district court properly struck Gunn's complaint in its entirety.

## CONCLUSION

Accordingly, the district court's order finding the notice of appeal untimely is vacated, and its order dismissing the case is **AFFIRMED.**