# EXHIBIT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KIM CARTER MARTINEZ, on behalf of herself and all others similarly situated, | No.22-35305 |
| | D.C. No. 3:21-cv-05725-MJP |
| *Plaintiff-Appellee,* | |
| v. | |
| | OPINION |
| ZOOMINFO TECHNOLOGIES, INC., a Delaware corporation, | |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted April 14, 2023
Seattle, Washington

Filed September 21, 2023

Before: M. Margaret McKeown and Roopali H. Desai,
Circuit Judges, and Roslyn O. Silver,[*] District Judge.

---

[*] The Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting by designation.

Opinion by Judge McKeown;
Concurrence by Judge McKeown;
Concurrence by Judge Desai

## SUMMARY**

### California Anti-SLAPP Statute

The panel affirmed the district court's denial of ZoomInfo Technologies, Inc.'s motion to strike Kim Carter Martinez's complaint under California's anti-SLAPP law on the alternative ground that Martinez's complaint fell within the public-interest exemption to the anti-SLAPP law.

Martinez asserted that ZoomInfo did not obtain her permission or compensate her when it used her name and likeness in its online directory to promote its product, in violation of California's Right of Publicity statute and her common-law privacy and intellectual property rights. ZoomInfo moved to strike the complaint under California anti-SLAPP statute.

The panel held that it had appellate jurisdiction under the collateral order doctrine to review the denial of ZoomInfo's anti-SLAPP motion. The panel also held that, at this stage, Martinez has plausibly pleaded that she suffered sufficient injury to establish constitutional standing to sue.

Before engaging in a merits analysis, a court must consider any claims by the plaintiff that a statutory

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

exemption to California's anti-SLAPP law applies. Although the district court did not address the exemptions, the panel held that her case fell within the public-interest exemption to the anti-SLAPP law. Martinez met the three conditions for the public interest exemption: Martinez requests all relief on behalf of the alleged class of which she is a member and does not seek any additional relief for herself; Martinez's lawsuit seeks to enforce the public interest of the right to control one's name and likeness; and private enforcement is necessary and disproportionately burdensome.

Concurring, Judge McKeown wrote separately to question the propriety of the court reviewing on interlocutory appeal denials of anti-SLAPP motions to strike.

Concurring, Judge Desai, joined by Judge McKeown, wrote separately to urge the court to reconsider its precedent that the district court's denial of anti-SLAPP motions to strike are collateral orders subject to interlocutory appeal.

## COUNSEL

Jeffrey A. Lamken (argued), Lucas M. Walker, Lauren M. Weinstein, and Jennifer E. Fischell, MoloLamken LLP, Washington, D.C.; Eugene A. Sokoloff, Jordan A. Rice, and Kenneth E. Notter III, MoloLamken LLP, Chicago, Illinois; Alexandra C. Eynon, MoloLamken LLP, New York, New York; Shon Morgan, Daniel C. Posner, and John W. Baumann, Quinn Emanuel Urquhart & Sullivan LLP, Los Angeles, California; Cristina Henriquez, Quinn Emanuel Urquhart & Sullivan LLP, Redwood Shores, CA; for Defendant-Appellant.

Ben R. Osborn (argued), Law Office of Benjamin R. Osborn, Brooklyn, New York; Michael F. Ram and Marie N. Appel, Morgan & Morgan Complex Litigation Group, San Francisco, California; Sam Strauss and Raina Borrelli, Turke & Strauss LLP, Madison, Wisconsin; for Plaintiff-Appellee.

Mark A. Lemley, Stanford Law School, Stanford, California; Rebecca Tushnet, Harvard Law School, Cambridge, Massachusetts; for Amicus Curiae Intellectual Property and First Amendment Law Professors.

John Nadolenco, Jennifer M. Chang, and Daniel D. Queen, Mayer Brown LLP, Los Angeles, California; Nicole A. Saharsky, Mayer Brown LLP, Washington, D.C.; Benjamin D. Bright, Mayer Brown LLP, New York, New York; for Amici Curiae Spokeo Inc., PeopleFinders LLC, and BeenVerified LLC.

Megan Iorio and Tom McBrien, Electronic Privacy Information Center, Washington, D.C.; Ellen Noble, Public Justice, Washington, D.C.; for Amici Curiae Electronic Privacy Information Center and Public Justice.

**OPINION**

McKEOWN, Circuit Judge:

Countless websites offer access to personal information, ranging from phone numbers to residence data, employment information, and more. One such website is ZoomInfo, an online directory of professionals and their employment information. Clicking on a ZoomInfo link in a search engine—or searching the ZoomInfo website itself for a specific professional—produces a redacted "teaser profile," offering the individual's name, employer, and job title. On the same page are links inviting the viewer to sign up for a trial subscription or subscribe to ZoomInfo to view the full profile.

Kim Martinez, a California citizen and political director for a local union, objects to ZoomInfo providing such a "teaser profile" of her information along with these subscription links. Her complaint asserts that, because ZoomInfo did not obtain her permission or compensate her, the directory is using her name and likeness to promote its product in violation of California's Right of Publicity statute and her common-law privacy and intellectual property rights.

In the district court, ZoomInfo moved to dismiss the complaint and to cut off the claims at the pleading stage under California's anti-SLAPP—strategic lawsuits against public participation—law, a statute that restricts suits aimed at repressing free speech. Cal. Civ. Proc. Code § 425.16. The district court denied the motion to dismiss and rejected ZoomInfo's special motion to strike the complaint under California anti-SLAPP statute.

At this stage, we have interlocutory jurisdiction solely with respect to the motion to strike. We do not address the district court's ruling on the motion to dismiss. We affirm the district court's denial of ZoomInfo's motion to strike under California's anti-SLAPP law.

## BACKGROUND

ZoomInfo maintains a database of 125 million business professionals and their employment information. When someone searches for an individual professional, either through a search engine or on ZoomInfo's website, ZoomInfo displays a "teaser profile," which shows partially redacted information about the individual. The profile also includes several "buttons," offering "Get Access to [Name's] Full Info," "Get Email Address," "We have who you are looking for: View [Name's] Full Org-Chart," and "See more information about [Name]." Clicking on one of these buttons leads the user to a page detailing options to subscribe to ZoomInfo before viewing the individual's full profile. As pleaded, a paid ZoomInfo subscription costs a minimum of $10,000 annually. Alternatively, a user can register for the "Community Edition," a free subscription in which the subscriber provides ZoomInfo with the names and contact information of everyone with whom the subscriber has emailed.

Kim Martinez is the Political and Legislative Director of the American Federation of State, County, and Municipal Employees ("AFSCME"), Local 51, a labor union that represents public sector employees. ZoomInfo has a profile of Martinez in its database, and an internet search for Martinez reveals a teaser profile stating her job title, employment at AFSCME, the contact information for AFSCME's national headquarters, and the names and job

MARTINEZ V. ZOOMINFO TECH. INC.          7

titles of Martinez's colleagues.[1]  The teaser profile includes the above-referenced subscription buttons offering full access to Martinez's profile to subscribers.  Martinez, who has never used ZoomInfo, objects to "ZoomInfo using her name and personal information" without her consent "to advertise subscriptions to zoominfo.com."

Martinez filed suit in September 2021, on behalf of herself and a proposed class of California citizens whose information is included in ZoomInfo's directory and provided in teaser profiles.  Her complaint asserts that ZoomInfo's use of the class's information to advertise subscriptions is a tortious misappropriation of their names and likenesses under California law and violates California's Right of Publicity Statute, California Civil Code § 3344. Martinez pleads that ZoomInfo's nonconsensual use has injured her and the class by unlawfully taking their intellectual property, invading their privacy rights, profiting from their names and information, and harming their peace of mind.  Martinez seeks a declaration that ZoomInfo infringes on her state-law privacy and intellectual property rights, injunctive relief, restitution, and damages.

ZoomInfo moved to dismiss the complaint for lack of Article III standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  ZoomInfo also moved to strike Martinez's claims pursuant to California's anti-SLAPP statute, California Civil Procedure Code § 425.16. The district court denied ZoomInfo's motions to dismiss,

---

[1] ZoomInfo makes much of the fact that, in its view, much of Martinez's professional information is publicly available on other websites. Because our review is limited to the complaint and Martinez's teaser profile, of which the district court took judicial notice, we do not address that argument here.

finding Martinez had sufficiently pleaded her alleged injuries to have standing to sue and that the conduct alleged did not fall within the publicity statute's exception for "use of a name . . . or likeness in connection with any news [or] public affairs," Cal. Civ. Code § 3344(d). The district court also denied ZoomInfo's special motion to strike the complaint, holding that California's anti-SLAPP law did not require throwing out the case because the speech at issue is commercial in nature and therefore not protected under the statute and because Martinez showed a reasonable probability of prevailing on the merits of her claims. ZoomInfo filed a notice of appeal regarding the denial of its anti-SLAPP motion. In its briefing on appeal, ZoomInfo now asks us to decide not only the anti-SLAPP issue, but also to review the district court's ruling on whether Martinez has standing to bring this action.

## ANALYSIS

### I.   Jurisdiction

The parties take polar opposite positions on whether this court has jurisdiction over Martinez's appeal. Neither is wholly correct. ZoomInfo raises two issues on interlocutory appeal: (1) whether the district court erred in denying ZoomInfo's anti-SLAPP motion; and (2) whether the district court erred in concluding that Martinez has standing to sue. Martinez asserts that we lack jurisdiction to review either issue. We conclude that we have appellate jurisdiction under the collateral order doctrine to review the anti-SLAPP issue and assure ourselves of our subject matter jurisdiction to reach that issue.

### A. Jurisdiction Over Interlocutory Appeal of Anti-SLAPP Motion

In general, our jurisdiction is limited to appeals from a district court's final order. 28 U.S.C. § 1291. Under the collateral order doctrine, however, we may review a district court's ruling if it (1) is "conclusive," (2) "resolve[s] important questions separate from the merits," and (3) is "effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)). Consistent with our precedent in *Batzel v. Smith*, 333 F.3d 1018, 1025–26 (9th Cir. 2003), we recently held that an order denying a motion to strike under an anti-SLAPP law is a collateral order subject to immediate interlocutory appeal. *Langer v. Kiser*, 57 F.4th 1085, 1104 (9th Cir. 2023). Accordingly, the district court's denial of ZoomInfo's anti-SLAPP motion is properly before us on appeal.

Martinez challenges our appellate jurisdiction on the ground that statutory exemptions remove this case from the scope of California's anti-SLAPP law. This is incorrect. As California law provides—and we have held—if a district court denies an anti-SLAPP motion based on one of the statutory exemptions, that denial may not be appealed. Cal. Civ. Proc. Code § 425.17(b)–(e); *see also Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 765 (9th Cir. 2017). Here, the district court did not deny ZoomInfo's anti-SLAPP motion on the exemptions, but rather based on ZoomInfo's failure to establish the elements for SLAPP relief. *See* Cal. Civ. Proc. Code § 425.16(b). Therefore, the exemption from appeal is not applicable and we have jurisdiction over the interlocutory appeal from the denial of the anti-SLAPP motion. *See Langer*, 57 F.4th at 1104.

## B. Jurisdiction Over Interlocutory Appeal of Standing

Although this is an interlocutory appeal, we first ensure that we have subject matter jurisdiction to hear this appeal, including the threshold question of constitutional standing.**[2]** *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.") (internal citations and quotation marks omitted). At this stage, Martinez has plausibly pleaded that she suffered sufficient injury to establish standing to sue. ZoomInfo's arguments to the contrary primarily attack fact and merits

---

[2] We recognize that, in some circumstances, a few circuits have addressed subject matter jurisdiction in interlocutory appeals using pendent jurisdiction. *See, e.g.*, *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1200–01 (10th Cir. 2002) (holding that resolving subject matter jurisdiction over the underlying claim was necessary to ensure meaningful review of the collateral order denying Eleventh Amendment immunity on that claim); *Merritt v. Shuttle*, 187 F.3d 263, 267–69 (2d Cir. 1999) (same conclusion regarding subject matter jurisdiction and order on qualified immunity). We also recognize that a few circuits have declined to address standing under pendent jurisdiction. *See, e.g.*, *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 166–68 (4th Cir. 2023) (holding that the standing analysis was not inextricably intertwined with or necessary to ensure meaningful review of the Eleventh Amendment immunity claim); *Freyre v. Chronister*, 910 F.3d 1371, 1379 (11th Cir. 2018) (same). And other cases on interlocutory review reference standing without discussion of pendent jurisdiction. *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771–78 (2000) (addressing the purely legal question of whether a private party has standing when bringing a *qui tam* action without discussing pendent jurisdiction); *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 n.6 (9th Cir. 2010) (noting that "the jurisdictional elements of standing . . . are unarguably present here" without analyzing standing through pendent jurisdiction). None of these cases involved SLAPP statutes.

issues that we do not reach. Nonetheless, standing remains an issue throughout the litigation and we take no position on whether, upon discovery and further examination, Martinez will meet the standing requirements. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992))).

## II. The Anti-SLAPP Motion to Strike

We now turn to the question of whether the district court should have struck Martinez's action as a SLAPP, an issue that we review de novo. *Jordan-Benel v. Univ. City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017). California's anti-SLAPP law was enacted to "protect against 'lawsuits brought primarily to chill' the exercise of speech and petition rights" and to "encourage continued participation in matters of public significance." *Film-On.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1160 (Cal. 2019) (quoting Cal. Civ. Proc. Code § 425.16(a)). The scope of the law is limited, however, by two exemptions: it does not apply to "any action brought solely in the public interest or on behalf of the general public," Cal. Civ. Proc. Code § 425.17(b), or to causes of action arising from commercial speech, *id.* § 425.17(c); *Simpson Strong-Tie Co., Inc. v. Gore*, 230 P.3d 1117, 1129 (Cal. 2010).

California law teaches that "[b]efore engaging in [the merits] analysis, a court must consider any claims by the plaintiff that a statutory exemption contained in section 425.17 applies." *Takhar v. People ex rel. Feather River Air Quality Mgmt. Dist.*, 237 Cal. Rptr. 3d 759, 766 (Ct. App. 2018) (quoting *San Diegans for Open Gov't v. Har Constr., Inc.*, 192 Cal. Rptr. 3d 559, 567 (Ct. App. 2015)).

12          MARTINEZ V. ZOOMINFO TECH. INC.

Although the district court put the cart before the horse and did not address the exemptions, on *de novo* review we do so here.   This approach is consistent with the analytical framework adopted by the California courts of appeal.  *See, e.g.*, *Xu v. Huang*, 288 Cal. Rptr. 3d 558, 561–62 (Ct. App. 2021) (addressing commercial speech exemption after it was pressed, but not passed upon, below); *Takhar*, 237 Cal. Rptr. 3d at 766–68 (same for public interest exemption).  It is also consistent with the express language of the statute: if Martinez's action satisfies either exemption, her action cannot be struck as a SLAPP.  *See* Cal. Civ. Proc. Code § 425.17(b)–(c).  We hold that, on the face of Martinez's complaint, her case is brought solely in the public interest and therefore is exempt from California's anti-SLAPP law.

California's anti-SLAPP law exempts a case "brought solely in the public interest or on behalf of the general public" if three conditions are met:

> (1)  The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member.

> (2)  The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.

> (3)  Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

*Id.* § 425.17(b). The California Supreme Court counsels that the public interest exception is to be narrowly construed and applies "only when the entire action is brought in the public interest." *Simpson*, 230 P.3d at 1123 (quoting *Club Members for an Honest Election v. Sierra Club*, 196 P.3d 1094, 1096 (Cal. 2008)). The applicability of the exemptions is evaluated based on the allegations in the complaint. *See Tourgeman v. Nelson & Kennard*, 166 Cal. Rptr. 3d 729, 741 (Ct. App. 2014).

ZoomInfo's primary argument regarding the public interest exemption is that Martinez fails to satisfy the first criterion because she seeks "individualized" or "personal" relief. We disagree. While no California Supreme Court case answers the precise question here, that court has signaled approval of the result we reach. *See Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013) ("Decisions of the California Supreme Court, including reasoned dicta, are binding on us as to California law."). ZoomInfo argues that, by seeking relief that may require an individualized determination—namely damages, Martinez is seeking "personal relief," as forbidden by *Club Members for an Honest Election v. Sierra Club*, 196 P.3d 1094, 1098 (Cal. 2008). But in that case, the plaintiff sought certain relief that would advance solely its members' own interests. *Id.* at 1099. For example, the plaintiff asked the court to order the Sierra Club to give board seats to plaintiff's members and to pay to publish an article advancing plaintiff's view on the direction of the Club. *Id.* Therefore, the plaintiff impermissibly sought "relief greater than or different from the relief sought for the general public." *Id.* (quoting § 425.17(b)). The California Supreme Court clarified that the bar on "any personal relief" prohibits seeking "a more narrow advantage for a particular plaintiff." *Id.* at 1098

(internal quotation marks omitted). In context, "a more narrow advantage" is most reasonably construed as referring to relief that applies only to the plaintiff, and not the class.

Here, a California Court of Appeal decision is the most relevant authority and our best indication of how the California Supreme Court would rule. *See Muniz*, 738 F.3d at 219 (noting that California appellate decisions are "persuasive," not binding, but "[w]e should nevertheless follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it"). The bottom line is that seeking individualized relief is permissible and not a death knell to the public interest exemption. In *People ex rel. Strathmann v. Acacia Research Corp.*, 148 Cal. Rptr. 3d 361 (Ct. App. 2012), the court observed that "[a] claim brought on behalf of the general public *might include some kind of individual relief*, in which case, it would have to be determined under section 425.17(b)(1) whether that relief is greater than or different from the relief sought for the general public." *Id.* at 371 (emphasis added). Thus, a request for individual relief is the starting, not the ending, point for the § 425.17(b)(1) analysis.

No California intermediate appellate authority undermines this conclusion. ZoomInfo rests its argument on *Ingels v. Westwood One Broadcasting Services, Inc.*, where the court held that an action seeking "recovery of damages personal to [the plaintiff]" did not fall within the public interest exemption. 28 Cal. Rptr. 3d 933, 937, 943 (Ct. App. 2005). But the important distinction is that the plaintiff in *Ingels* sought damages solely for himself and not for members of the alleged class. *Id.* Therefore, the court's use of "personal" damages is most reasonably understood as relief sought solely on behalf of the individual plaintiff.

MARTINEZ V. ZOOMINFO TECH. INC.                    15

Similarly, the California appellate courts have found the public interest exemption does not apply when the plaintiff seeks damages that apply to a fraction of the class, not its entirety. *Thayer v. Kabateck Brown Kellner LLP*, 143 Cal. Rptr. 3d 17, 29 (Ct. App. 2012), *as modified* (June 22, 2012) (noting that Thayer sought damages that were statutorily available only to senior citizens and concluding that Thayer sought "relief much greater than the relief sought for the purported class").**3**   Here, by contrast, Martinez has requested all relief on behalf of the alleged class; she has not requested any additional relief that would not apply to some or all of the class. Given this critical difference between the above cases and the one before us, we cannot reasonably construe these authorities to prohibit all requested class-wide relief that might require individualized calculations to award damages.   Rather, as instructed by *Strathmann*, the possibility of "some kind of individual relief" prompts us to proceed to the § 425.17(b)(1) analysis.

Martinez's complaint does not seek relief that is greater than or different from the relief sought on behalf of the alleged class. Martinez seeks relief solely on behalf of a class of which she is a member. She does not seek any additional relief solely for herself, the fatal flaw for the plaintiffs in *Club Members for an Honest Election* and *Ingels*. Nor does she seek, at least from the face of the

---

[3] The court in *Thayer* also noted that the plaintiff had requested general damages, which "includes pain and suffering, emotional distress, and other 'subjective' items." 143 Cal. Rptr. 3d at 29 (quoting *Beeman v. Burling*, 265 Cal. Rptr. 719, 727 (Ct. App. 1990)). But because the court found fault with the plaintiff's complaint for seeking "much greater"— rather than different—relief, *Thayer* should not be read to mean that requesting "subjective" damages such as emotional distress on behalf of the entire class violates § 425.17(b)'s requirements. *See id.*

complaint, relief that would apply only to a subset of the class, as at issue in *Thayer*. Nothing in Martinez's complaint suggests that, if her action is successful, her recovery will be greater than the recovery of other members of the class.

On the second criterion, Martinez's action, if successful, would "enforce an important right affecting the public interest" and would "confer a significant benefit" on the general public. *See* Cal. Civ. Proc. Code § 425.17(b)(2). Courts make this determination by "examining [the] complaint to determine whether [the] lawsuit is of the kind that seeks to vindicate public policy goals." *Tourgeman*, 166 Cal. Rptr. 3d at 743. Martinez's lawsuit clearly intersects with California's public policy goals.

The birthplace of American cinema and home of Hollywood, California has long declared a policy of protecting artists' and other individuals' right to control the use of their persona. California's original constitution substantively began by identifying "protecting property" and "pursuing and obtaining . . . happiness" as "inalienable rights." Cal. Const. Art. I, § 1 (1849). Nearly a century ago, California's courts enshrined the right to privacy in the state constitution by interpreting this right to happiness as "includ[ing] the right to live free from the unwarranted attack of others upon one's liberty, property, and reputation." *Melvin v. Reid*, 297 P. 91, 93 (Cal. Ct. App. 1931). In doing so, the court in *Melvin* concluded that the right to privacy supported a tort action for using the plaintiff's name and biography without her permission. *Id.* at 92–93.

Since then, California has continued to firmly declare its public policy commitment to protecting its citizens' property and privacy rights. Subsequent decisions confirmed that the

unauthorized use of a person's name for commercial exploitation is actionable. *Stilson v. Reader's Dig. Ass'n, Inc.*, 104 Cal. Rptr. 581, 582 (Ct. App. 1972); *Fairfield v. Am. Photocopy Equip. Co.*, 291 P.2d 194, 197 (Cal. Ct. App. 1955) (condemning such exploitation as "one of the most flagrant and common means of invasion of privacy"). These decisions underscore the breadth of the privacy protection, permitting actions not just by celebrities and well-known corporations, but also by private citizens with no public reputation. *See Stilson*, 104 Cal. Rptr. at 582. The California public has also endorsed the state's commitment to privacy. In 1972, California voters explicitly added privacy to the state's constitutional rights. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 15 (1994); *see also* Cal. Const. Art. I, § 1.

This longstanding protection demonstrates that California considers the right to control one's name and likeness to be an important right affecting the public interest. Although we take no position on the merits, Martinez's lawsuit, on the face of the complaint, seeks to enforce this right. California's common-law and statutory recognition of this right suggests that if Martinez prevails, she will confer a significant benefit on thousands of Californians.

Finally, Martinez also satisfies the third criterion of the public-interest exemption because private enforcement is both necessary and disproportionately burdensome. *See* Cal. Civ. Proc. Code § 425.17(b)(3). California Courts of Appeal have held that if no public entity has sought to enforce the right plaintiff seeks to vindicate in the lawsuit, "[t]his fact alone is a sufficient basis to conclude the action is 'necessary,' within the meaning of the public interest exception." *Inland Oversight Comm. v. County of San Bernardino*, 190 Cal. Rptr. 3d 884, 887–88 (Ct. App. 2015);

18      MARTINEZ V. ZOOMINFO TECH. INC.

*see also Tourgeman*, 166 Cal. Rptr. 3d at 744 (citing cases). There is no indication in the record or briefing here that a public entity has brought a right-to-publicity, misappropriation, or similar action against ZoomInfo. On the relative financial cost, a case is disproportionately burdensome if "the cost of [Martinez's] legal victory transcends [her] personal interest." *Tourgeman*, 166 Cal. Rptr. 3d at 744 (quoting *Blanchard v. DIRECTV, Inc.*, 20 Cal. Rptr. 3d 385, 393 (Ct. App. 2004)). As a non-celebrity who may struggle to demonstrate the economic value of her name or likeness, Martinez may well recover only the minimum statutory damages. At \$750 per person, these damages would not even cover the cost of litigating this action. *See* Cal. Civ. Code § 3344(a). But, if her class action is successful, Martinez's personal recovery would be dwarfed by the total recovery for the putative class, which she alleges may number in the millions.

We therefore conclude that Martinez's complaint is exempted from California's anti-SLAPP law as a suit "brought solely in the public interest" under § 425.17(b). Because the public interest exemption applies, it is unnecessary for us to determine whether the commercial speech exemption also applies or to reach the merits grounds on which the district court decided the motion.

We affirm the district court's denial of ZoomInfo's motion to strike Martinez's complaint under California's anti-SLAPP law on the alternative ground that Martinez's complaint falls within the public-interest exemption to the anti-SLAPP law. Costs shall be awarded to Martinez.

**AFFIRMED.**

McKEOWN, Circuit Judge, concurring:

I write separately to question the propriety of our court reviewing on interlocutory appeal denials of anti-SLAPP motions to strike. My particular objection is that a motion based on California's anti-SLAPP statute is wholly grounded in that state's procedural law, yet we have infused it with substantive significance. *Rusheen v. Cohen*, 128 P.3d 713, 717 (Cal. 2006) ("The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights."); Cal. S. Judiciary Comm., Analysis of S.B. No. 515 (2003–2004 Reg. Sess.), as amended May 1, 2003, p. 12 ("At its core, the anti-SLAPP law is a procedural device crafted by the Legislature to weed out certain frivolous lawsuits arising out of the defendant's valid (and thus protected) first amendment conduct."). Over time, we have turned the statute into a ground for interlocutory appeal in the federal courts.

What is more, at odds with the venerable doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), we have even decided that we will adopt the California state procedural rules as to when the denial of a SLAPP motion is appealable. *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017) (holding that the statutory prohibition on interlocutory appeals of denials of anti-SLAPP motions to strike on public-interest-exemption grounds, California Civil Procedure Code § 425.17(e), applies in federal court). Ironically, we let anti-SLAPP denials jump the line and become automatically classified as appealable under the collateral order doctrine, but we decline interlocutory review of the more draconian result when a trial court grants an anti-SLAPP motion and ousts a party from court. *See, e.g.*, *Hyan*

20     MARTINEZ V. ZOOMINFO TECH. INC.

*v. Hummer*, 825 F.3d 1043, 1047 (9th Cir. 2016) (holding that the grant of an anti-SLAPP motion to strike is fully reviewable on appeal from final judgment, and thus not appealable under the collateral order doctrine). We cannot justify this discrepancy on the grounds that anti-SLAPP is a form of immunity from suit. *Cf. Batzel v. Smith*, 333 F.3d 1018, 1025–26 (9th Cir. 2003), *superseded by statute*, Cal. Civ. Proc. Code § 425.17(e). That line of reasoning has been soundly rejected by the California Supreme Court, which has repeatedly insisted that "the anti-SLAPP statute neither constitutes—nor enables courts to effect—any type of 'immunity.'" *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 743–44 (Cal. 2003) (quoting *Navellier v. Sletten*, 52 P.3d 703, 712 (Cal. 2002)).

Our jurisprudence on anti-SLAPP statutes places us in the minority among our sister circuits. The Second, Seventh, Tenth, Eleventh, and D.C. Circuits do not recognize the applicability of SLAPP statutes' provisions for motions to strike or dismiss. The Second Circuit put it succinctly: "[W]e lack appellate jurisdiction to consider the district court's order passing on the merits of the defendants' anti-SLAPP motions to strike." *Ernst v. Carrigan*, 814 F.3d 116, 122 (2d Cir. 2016). *See also Intercon Sols., Inc. v. Basel Action Network*,[1] 791 F.3d 729, 732 (7th Cir. 2015) (holding that Washington's anti-SLAPP law, as a whole, is inapplicable in federal court); *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668–73 (10th Cir.

---

[1] Before the Seventh Circuit's decision, the Washington Supreme Court ruled that the state's anti-SLAPP statute violated the Washington Constitution and that its special motion to strike provision was not severable. *Davis v. Cox*, 351 P.3d 862, 864, 871–74 (Wash. 2015) (en banc), *abrogated on other grounds*, *Maytown Sand & Gravel, LLC v. Thurston Cnty.*, 423 P.3d 223, 248 n.15 (Wash. 2018) (en banc).

2018) (holding that New Mexico's anti-SLAPP statute is inapplicable in a federal diversity action); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349–51 (11th Cir. 2018) (holding that the motion to strike provision of Georgia's anti-SLAPP statute does not apply in federal court); *Abbas v. Foreign Pol'y Grp.*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (declining to apply the District of Columbia's anti-SLAPP law's special motion to dismiss provision).  Only two circuits side with the Ninth Circuit approach—the First and Fifth Circuits.  *See Franchini v. Inv.'s Bus. Daily, Inc.*, 981 F.3d 1, 6–8 (1st Cir. 2020) (holding the appellate court had jurisdiction to hear an interlocutory appeal of a denial of a motion to dismiss under Maine's anti-SLAPP law); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 180–81 (5th Cir. 2009) (holding that interlocutory appeal of denial of anti-SLAPP dismissal under Louisiana law permitted); *but see Cuba v. Pylant*, 814 F.3d 701, 718–21 (5th Cir. 2016) (Graves, J., dissenting) (disagreeing with circuit's applying Texas's anti-SLAPP law on the basis that, under *Erie*, such a procedural law is inapplicable in federal court).

Several of my colleagues have already registered their doubts whether it is appropriate to review anti-SLAPP motions on interlocutory appeal.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 835–38 (9th Cir.) (Gould, J., joined by Murguia, J., concurring), *amended*, 897 F.3d 1224 (9th Cir. 2018); *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1182–86 (9th Cir. 2016) (Kozinski and Gould, JJ., concurring); *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188–92 (9th Cir. 2013) (Watford, J., joined by Kozinski, Paez, & Bea, JJ., dissenting from denial of rehearing en

banc); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 272–76 (9th Cir. 2013) (Kozinski, C.J. & Paez, J., concurring).

We have turned a blind eye to the incongruity of this practice—with *Erie* and with common sense—for too long.

---

DESAI, Circuit Judge, with whom McKEOWN, Circuit Judge, joins, concurring:

As discussed in the panel's opinion, ZoomInfo's interlocutory appeal of the district court's denial of its anti-SLAPP motion to strike is properly before us because binding circuit precedent establishes that denials of such motions are collateral orders subject to interlocutory appeal. While I join my colleagues in affirming the trial court's denial of ZoomInfo's anti-SLAPP motion to strike, I write separately to urge our court to reconsider our precedent allowing interlocutory appeals of such collateral orders in the first place.

In *Batzel v. Smith*, this court held that denials of anti-SLAPP motions to strike are immediately appealable collateral orders. 333 F.3d 1018, 1024–26 (9th Cir. 2003). Since then, some of my colleagues have challenged the appropriateness of reviewing denials of anti-SLAPP motions to strike on interlocutory appeal, urging the court to reconsider this precedent. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 835–38 (9th Cir. 2018) (Gould, J., joined by Murguia, J., concurring), *amended*, 897 F.3d 1224 (9th Cir. 2018). And several of my colleagues have separately questioned the propriety of reviewing denials of anti-SLAPP motions to strike on interlocutory appeal even when they more broadly urge no federal court review of any action arising under state

anti-SLAPP laws. *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1182–86 (9th Cir. 2016) (Kozinski and Gould, JJ., concurring); *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188–92 (9th Cir. 2013) (Watford, J., joined by Kozinski, Paez, & Bea, JJ., dissenting from denial of rehearing en banc). Moreover, two of our sister circuits have reasoned that anti-SLAPP motions are not collateral orders subject to interlocutory appeal. *Ernst v. Carrigan*, 814 F.3d 116, 122 (2d Cir. 2016); *cf. Intercon Sols., Inc. v. Basel Action Network*, 791 F.3d 729, 731 (7th Cir. 2015) (stating in dicta that anti-SLAPP motions to strike are not collateral orders).

Because denials of anti-SLAPP motions do not qualify as collateral orders, this court does not have jurisdiction to entertain them on an interlocutory basis. For an otherwise non-appealable, interlocutory decision to be subject to immediate review by a court of appeals, it must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006). The denial of an anti-SLAPP motion to strike does not satisfy the final two elements of the *Will* collateral order analysis.

First, the denial of an anti-SLAPP motion to strike, which necessarily considers the plaintiff's likelihood of success, *see* Cal. Civ. Proc. Code § 425.16(b), does not resolve an important issue completely separate from the merits. Nor is the denial of an anti-SLAPP motion to strike "effectively unreviewable on appeal from a final judgment." *Will*, 546 U.S. at 349. Courts typically find this factor satisfied when a decision denies a defendant immunity from suit, such as denials of absolute or qualified immunity. *See*

*Mitchell v. Forsyth*, 472 U.S. 511, 526–30 (1985). But "the anti-SLAPP statute neither constitutes—nor enables courts to effect—any type of 'immunity.'" *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 743–44 (Cal. 2003) (quoting *Navellier v. Sletten*, 52 P.3d 703, 712 (Cal. 2002)). And the merits of the plaintiff's claims and the defendant's defenses can be reviewed upon a final judgment. That the anti-SLAPP statute itself may provide for interlocutory appeal of denials of anti-SLAPP motions to strike in state court does not alter this analysis in federal court.

In sum, because anti-SLAPP motions to strike require the court to assess the merits of a plaintiff's claims and are not effectively unreviewable on appeal from a final judgment, I join many of my colleagues and two of our sister circuits in concluding that the court lacks jurisdiction to consider denials of such motions on interlocutory appeal absent certification from the district court under 28 U.S.C. § 1292(b).